**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| Point Bridge Capital, LLC, | § | |
| Hal Lambert | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | Case No. 4:24-cv-00988-P |
| | § | |
| Charles Johnson, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO
<u>DEFENDANT'S MOTION TO DISMISS</u>**

<u>**TABLE OF CONTENTS**</u>

**Page**

STATEMENT OF THE CASE ................................................................................................. 1

ARGUMENT AND AUTHORITIES ....................................................................................... 4

I.      Defendant waived his venue argument by failing to raise it in his answer to the
        First Amended Complaint. ........................................................................................... 4

II.     This Court Has Personal Jurisdiction over Defendant. ................................................ 4

        A.      Legal Standard ................................................................................................... 4

        B.      Defendant purposefully availed himself of Texas. ............................................ 5

                1.      Defendant perpetuated substantial parts of the conspiracy while he
                        was residing in Texas—and the falsehood-riddled declaration he
                        submitted cannot overcome the unambiguous facts to the contrary. ........... 5

        C.      Defendant purposely directed his conspiratorial and tortious conduct at
                Texas and, specifically, Fort Worth. ................................................................. 8

        D.      Personal jurisdiction is in the interest of substantial justice. ............................ 14

III.    Venue is proper in the Northern District of Texas. ...................................................... 15

CONCLUSION ....................................................................................................................... 17

CERTIFICATE OF SERVICE ................................................................................................ 18

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*Admar Int'l, Inc. v. Eastrock, L.L.C.*,
  18 F.4th 783 (5th Cir. 2021) ...........................................................................................5, 13

*Amarillo Medical Specialists, LLP v. AKOS MD IPA, LLC*,
  No. 2:23-cv-026-Z, 2023 WL 11926442 (N.D. Tex. June 30, 2023) ..................................3, 10

*Bear Stearns Cos. Inc. v. Lavalle*,
  No. Civ.A. 300CV1900-D, 2001 WL 406217 (N.D. Tex. 2001) ...........................................16

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)...........................................................................................................13

*Cent. Freight Lines Inc. v. APA Transport Corp.*,
  322 F.3d 376 (5th Cir. 2003) ...............................................................................................5

*Daniel v. Am. Bd. of Emergency Med.*,
  428 F.3d 408 (2d Cir. 2005)...............................................................................................15

*Dupree v. Valero Energy Corp.*,
  No. 03-cv-834, 2003 WL 22466234 (E.D. La. Oct. 29, 2003)..............................................14

*Feline Instincts, LLC v. Feline Future Cat Food Co.*,
  No. 4:09-cv-644-Y, 2010 WL 4942188 (N.D. Tex. Dec. 6, 2010).........................................14

*First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.*,
  703 F.3d 742 (5th Cir. 2012) ...............................................................................................5

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021)............................................................................................................2

*Founders Ins. Co. v. Billy's Bar & Grill, LLC*,
  No. 3:18-cv-00367-M, 2019 WL 5425478 (N.D. Tex. Oct. 23, 2019)..............................14, 15

*Freudensprung v. Offshore Technical Servs., Inc*,
  379 F.3d 327 (5th Cir. 2004) ...............................................................................................5

*Ice Melon, LLC v. Morgan*,
  No. 4:19-cv-1291, 2020 WL 12863808 (S.D. Tex. Jan. 14, 2020)........................................16

*Johnson v. TheHuffingtonPost.com, Inc.*,
  21 F.4th 314 (5th Cir. 2021) ................................................................................................7

*Kwik-Kopy Corp. v. Byers*,
37 F. App'x 90 (5th Cir. 2002) ..............................................................................13

*Latshaw v. Johnston*,
167 F.3d 208 (5th Cir. 1999) .............................................................................5, 13

*Munz v. Schreiber*,
No. 14-17-00687-CV, 2019 WL 1768590 (Tex. App.—Houston [14th Dist.]
Apr. 23, 2019, no pet.) ..........................................................................................12

*National Computer Ltd. v. Tower Indus., Inc.*,
708 F. Supp. 281 (N.D. Cal. 1989) .........................................................................8

*NDX Advisors, Inc. v. Advisory Fin. Consultants, Inc.*,
No. 11-cv-0517, 2011 WL 2200623 (N.D. Ill. June 6, 2011) ................................15

*Nissho Iwai Am. Corp. v. M/V KYVERNITIS*,
No. 96-cv-2241, 1998 WL 2853 (E.D. La. Jan. 5, 1998) ........................................3

*Paz v. Brush Engineered Materials, Inc.*,
445 F.3d 809 (5th Cir. 2006) ...................................................................................5

*Pulley v. Ground Effects Landscaping*,
No. 1:18-cv-0452, 2019 WL 2565278 (W.D. Tex. Apr. 5, 2019) ...........................12

*Revell v. Lidov*,
317 F.3d 467 (5th Cir. 2002) .................................................................................13

*Rogers v. McDorman*,
521 F.3d 381 (5th Cir. 2008) ...................................................................................4

*Sangha v. Navig8 ShipManagement Private Ltd.*,
882 F.3d 96 (5th Cir. 2018) .............................................................................12, 13

*Schoot v. United States*,
664 F. Supp. 293 (N.D. Ill. 1987) ............................................................................9

*Sergio Estrada Rivera Auto Corp. v. Kim*,
717 F. Supp. 969 (D.P.R. 1989)...............................................................................8

*Stampley v. RCNI Freight, LLC*,
No. 3:23-cv-1625-B, 2023 WL 5333273 (N.D. Tex. Aug. 18, 2023) ...............14, 15

*Tabletop Media, LLC v. Citizen Sys. Am. Corp.*,
No. 3:16-cv-1304-C, 2016 WL 11522083 (N.D. Tex. Sept. 21, 2016) .............15, 16

*Textron, Inc. v. Maloney-Crawford Tank and Mfg. Co.*,
252 F. Supp. 362 (S.D. Tex. 1966) ..........................................................................4

*Trois v. AppelTreeAuctionCtr., Inc.*,
    882 F.3d 485 (5th Cir. 2018) .......................................................................3, 5, 10

*Warren Chevrolet, Inc. v. Qatato*,
    No. 03-17-00298-CV, 2018 WL 6729855 (Tex. App.—Austin [3rd Dist.] Dec.
    21, 2018, no pet.) ...........................................................................................12

*Weber Aircraft, L.L.C. v. Krishnamurthy*,
    No. 4:12-cv-0666, 2013 WL 1898280 (E.D. Tex. Apr. 12, 2013) .......................8, 9

*Williamsondickie Mfg. Co. v. M/V Heinrich J*,
    762 F. Supp. 2d 1023 (S.D. Tex. 2011) ...........................................................3, 4

*Woodfield v. Bowman*,
    193 F.3d 354 (5th Cir. 1999) ..............................................................................4

*X Corp. v. Media Matters for Am.*,
    No. 4:23-CV-01175-O, 2024 WL 4001803 (N.D. Tex. Aug. 29, 2024) ..........11, 12

**Rules / Statutes**

18 U.S.C. § 1965 ........................................................................................................14

28 U.S.C. § 1391(b)(2) ......................................................................................14, 15, 16

RICO ...........................................................................................................................1

Rule 12(b) ....................................................................................................................4

**Other Authorities**

5B Charles A. Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE
    § 1352 (3d ed. 2004) ..........................................................................................3

14D Wright & Miller, Fed. Prac. & Proc. § 3806 (4th ed.) ..........................................16

Plaintiffs Point Bridge Capital, LLC and Hal Lambert ("Plaintiffs") submit this Memorandum of Law in opposition to Defendant Charles Johnson's ("Defendant" or "Johnson") motion to dismiss for lack of personal jurisdiction and improper venue or, alternatively, to transfer venue to the Eastern District of Virginia, dkt. 15. The motion to dismiss relies on a false and perjurious affidavit, raises no defect in exercising personal jurisdiction in Texas, and poses no obstacle to venue in the Northern District of Texas.[1] The motion should be denied.

## STATEMENT OF THE CASE

Plaintiffs, residents of Fort Worth, Texas, bring this case alleging that Defendant and his co-conspirator have engaged in a RICO conspiracy involving fraud and extortion, which Defendant furthered by making vile and defamatory statements about Mr. Lambert. Defendant falsely portrays himself as an intelligence agent or asset of U.S. government agencies. His purpose: to exploit connections he claims to have with the defense and intelligence sectors—industries that depend on government contracts—and to pressure companies or investors into giving him favorable investment terms or equity. Defendant's method is twofold: he promises access to government contracts on one hand and threatens to unleash audits, investigations, or other regulatory action if his demands are not met. Plaintiffs are among the victims of this scheme, which Defendant has been perpetrating since at least 2020. (First Amended Complaint ("Am. Compl."), dkt. 4 ¶¶ 108–111).

Defendant did not adequately preserve, and thus waived, his venue argument when submitting his perfunctory four-page answer, which contained fifteen boilerplate affirmative

---

[1] In further support of the arguments in this Memorandum of Law, Plaintiffs submit the Declarations of Will Thompson, Ex. 1 ("Thompson Decl."), and Hal Lambert, Ex. 2 ("Lambert Decl."), along with accompanying exhibits.

defenses. He outright failed to even mention venue in the answer. The Court can easily dispose of this unpreserved argument without reaching the merits.

Even on the merits, all of Defendant's arguments fail. In his Declaration in Support of the motion to dismiss, signed under penalty of perjury, Defendant asserts that "[a]t all times relevant herein, I was not a resident of the State of Texas," and "[a]t all times relevant herein, all actions taken by me, as related to the transactions set forth in the First Amended Complaint, I was not residing in, nor was I present in, nor was I transacting business in the State of Texas." (Dkt. 14-2 ¶¶ 5–6).

These statements are false and perjurious: At the time the alleged conspiracy began, Defendant was a Texas resident, and he has maintained substantial ties to the state. In 2022, he voted in Texas and appears to remain an active registered voter in Montgomery County. His 2024 political contributions list his address in Conroe, Texas. And between 2019 and 2022, Defendant filed multiple lawsuits in the Fifth Circuit where he described himself as a "resident of Texas" and "domiciled in Montgomery County, Texas." His own public statements further confirm these ties. Given these connections, Defendant cannot argue with a straight face that his contacts with Texas are "random," "fortuitous," or "attenuated." Together with these records, the First Amended Complaint's allegations place him squarely within Texas when the events in question occurred. Exercising jurisdiction under these circumstances is neither unreasonable nor inconsistent with principles of due process.[2]

---

[2] Previously, Johnson twice sued Mr. Lambert and Point Bridge in the Eastern District of Virginia, asserting claims that somewhat overlap with the present litigation. The court granted two motions to dismiss for lack of personal jurisdiction, finding that Johnson failed to show that Mr. Lambert or Point Bridge "conduct[ed] business in the Eastern District of Virginia and" failed to establish that defendants' conduct connects them to the forum in a meaningful way." (Exs. P & Q, Appx. 113-126)

Moreover, Plaintiffs' allegations also arise out of Defendant purposefully directing his activities at Texas in meaningful ways. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). In obtaining investment in a Point Bridge special-purpose investment vehicle ("SPV") and later attempting to push Mr. Lambert out of the venture through improper means, Defendant participated in at least one in-person meeting in Fort Worth at Winslow's Wine Cafe with Mr. Lambert and co-conspirator Gator Greenwill. (Am. Compl. ¶ 137; Lambert Decl. ¶ 3, Appx. 128). Defendant also telephoned and sent multiple emails to Mr. Lambert and Point Bridge knowing they resided in Texas, and—to perpetuate the scheme—falsely accused Mr. Lambert of engaging in sexual misconduct and money laundering in Texas, specifically mentioning Mr. Lambert's Fort Worth residence. Such conduct certainly constitutes "purposeful availment" of Texas under Fifth Circuit caselaw where "even a single phone call" will suffice to establish personal jurisdiction. *See Amarillo Medical Specialists, LLP v. AKOS MD IPA, LLC*, No. 2:23-cv-026-Z, 2023 WL 11926442, at *2 (N.D. Tex. June 30, 2023) (quoting *Trois v. AppelTreeAuctionCtr., Inc.*, 882 F.3d 485, 491 (5th Cir. 2018). Finally, on the basis of Plaintiff's RICO claim, the minimum-contacts analysis is satisfied because Defendant "allegedly committed mail and wire fraud through misrepresentations made via phone to the plaintiff 'whom he knew to be in Texas.'" *Energium Health v. Gabali*, No. 3:21-cv-2951-S, 2023 WL 6202043, at *4 (N.D. Tex. Sept. 22, 2023) (internal quotations omitted).

Last, venue is proper in the Northern District for all the reasons why the Court has personal jurisdiction over Defendant. Plaintiffs have alleged that Defendant's communications and conduct were directed to this District and that their claims derive directly from such communications and conduct, which is enough to establish venue here. *See Trois*, 882 F.3d at 494.

## ARGUMENT AND AUTHORITIES

**I.    Defendant waived his venue argument by failing to raise it in his answer to the First Amended Complaint.**

As an initial matter, Defendant did not preserve his venue argument in his Answer. To be sure, "[c]ourts generally permit a Rule 12(b)(6) motion to be filed after the answer," but only "if the defense was included as an affirmative defense in the original answer." *Dynamic Robotic Sols., Inc. v. Simwon Tech, Inc.*, No. 1:23-cv-0070-DAE, 2024 WL 3404804, at *6 (W.D. Tex. July 10, 2024). That's because "certain affirmative defenses like personal jurisdiction and venue . . . may be waived by a defendant." *Dillon v. Rogers*, 596 F.3d 260, 271 (5th Cir. 2010). And the "Federal Rules require an affirmative defense to be pleaded; failure to plead such a defense constitutes a waiver." *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999).

In their First Amended Complaint, Plaintiffs described in detail why venue is proper in the Northern District of Texas. (*See* Am. Compl. ¶¶ 20-22). But in his Answer, Defendant didn't even deny Plaintiffs' position; he instead claimed to "[l]ack[ ] sufficient knowledge to neither admit no deny the allegations, and/or calls [sic] for a legal conclusion for which [he] lacks the knowledge to answer." (Dkt. 8 at ¶ 2). And he didn't raise a venue challenge as an affirmative defense. He thus waived the argument, and the Court should deny the venue aspect of his motion on that basis alone.

**II.    This Court Has Personal Jurisdiction over Defendant.**

**A.    Legal Standard**

A federal court's "exercise of personal jurisdiction over a nonresident defendant must comport with both federal due-process requirements and the long-arm statute of Texas." *Trois*, 882 F.3d at 488 (citing *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006)). But "[b]ecause Texas's long-arm statute extends to the limits of federal constitutional due

process," a court can assert personal jurisdiction over a non-resident so long as doing so would not violate due process. *Id.* (citing *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)). As "a matter of due process, courts may exercise personal jurisdiction over a nonresident defendant only if (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021) (cleaned up).

A party seeking to assert jurisdiction need only "present sufficient facts to make out a *prima facie* case supporting jurisdiction." *Trois*, 882 F.3d at 488 (citing *Cent. Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003)). In determining whether a *prima facie* case for jurisdiction exists, "this Court must accept as true [the Plaintiff's] uncontroverted allegations, and resolve in [its] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation." *First Inv. Corp. v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 746 (5th Cir. 2012) (quoting *Freudensprung v. Offshore Technical Servs., Inc*, 379 F.3d 327, 343 (5th Cir. 2004) (alteration in the original).

### B.  Defendant purposefully availed himself of Texas.

#### 1.  Defendant perpetuated substantial parts of the conspiracy while he was residing in Texas—and the falsehood-riddled declaration he submitted cannot overcome the unambiguous facts to the contrary.

Defendant's supporting brief asserts that he has "absolutely no personal or business ties to, not only the Northern District of Texas, but also, the State of Texas." (Dkt. 15 at 4). In his Declaration in Support of the motion, signed under penalty of perjury, Defendant asserts that "[a]t all times relevant herein, I was not a resident of the State of Texas" and "[a]t all times relevant herein, all actions taken by me, as related to the transactions set forth in the Amended Complaint,

I was not residing in, nor was I present in, nor was I transacting business in the State of Texas."
(Doc. 14-2 ¶¶ 5-6).

These assertions are false, contradicted by Defendant's own statements, court filings, government records, and even the cases he cites. At the time he is alleged to have organized and carried out the RICO shake-down conspiracy in the present case, Defendant filed numerous business and legal filings in Texas, as well as in other jurisdictions, claiming to be a Texas resident:

- According to Defendant's FEC disclosures, in at least eight political donations made between September 19, 2019 and September 22, 2021, he listed his address as Conroe, Texas. (Ex. A, Appx. 007-08).

- On January 16, 2020, Defendant sued Verizon Media in the Southern District of Texas. The lawsuit took issue with a January 19, 2019 article describing Defendant as a Holocaust denier based on his statement that he agreed with a prominent Holocaust denier "about Auschwitz and the gas chambers not being real." According to that complaint, "Plaintiff Johnson is a natural person and is domiciled in Montgomery County, Texas." (Ex. B, Appx. 010, *Johnson v. Verizon CMP Holdings, LLC*, 4:20-cv-00179, dkt. 1 at 1 (S.D. Tex) (Jan. 16, 2020).

- On April 9, 2020, Defendant amended his complaint against Verizon, reiterating that he was a resident of Montgomery Texas. (Ex. C, Appx. 016).

- The court dismissed the case for lack of jurisdiction, and Defendant on appeal described himself as a "resident of Texas," including in his July 2022 petition for certiorari to the U.S. Supreme Court. (*Johnson v. The HuffingtonPost.com, Inc.*, 2022 WL 2987282, at *3).

- Defendant's supporting brief even cites the Fifth Circuit's decision upholding dismissal of his lawsuit against the Huffington Post—**that he filed in Texas.** (Dkt. 15 at 11 (citing *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314 (5th Cir. 2021))). The decision notes that "**Johnson based jurisdiction on his Texas citizenship.**" 21 F.4th. at 316 (emphasis added).

- On September 12, 2020, Defendant wrote on Substack: "I had a child, divorced, and **moved to** the one place where I felt happiest as a child — **Texas, specifically Montgomery County** . . . . I found my home and my people, at last. My neighbors have taught me that we Texans don't run from a fight. Not at the Alamo. Not now. Texas, like America, is a state of mind." (Ex. D, Appx. 029-30 (emphasis added)).

- On October 6, 2020, after having begun perpetrating the conspiracy, Defendant texted Mr. Lambert that he was "[a]t the Worthington [Renaissance Hotel in **Fort Worth, Texas**] working." (Ex. E, Appx. 036).

- Defendant describes himself as the CEO of Traitwell Inc. on his X, LinkedIn, and Substack bios. As recently as December 11, 2024, he posted on X, "I'm currently CEO of @traitwell." (Ex. F, Appx. 038). On October 12, 2020, Our Perfect Score, Inc. d/b/a Traitwell, Inc. filed an application for recognition as a foreign for-profit corporation to the Texas Secretary of State's office. The application listed the company's principal office address as The Woodlands, Texas. (Ex. G, Appx. 040). Traitwell's LinkedIn page lists the same city as its location. (Ex. H, Appx. 043).

- On March 4, 2022, Defendant wrote on his Substack blog, "I am a California and Massachusetts refugee really **but I am also a Texas resident** . . . and **I voted in the Republican Primary** in early voting. . . . It was my first time voting in Texas." (Ex. I, Appx. 048 (emphasis added)).

- On April 22, 2022, Defendant emailed Mr. Lambert and other Clearview AI, Inc. board members a draft complaint, which the First Amended Complaint described in paragraphs 117 and 118. Defendant's draft complaint stated that "**Charles Johnson is a citizen and resident of Texas**." (Ex. J., Appx. 059) (emphasis added).

- On September 28, 2022, Defendant personally filed an Application for Registration of a Foreign Limited Liability Company for Metis Funding LLC. The application listed both Metis Funding's principle place of business and Defendant's registered-agent address as Conroe, Texas. (Ex. L, Appx. 082).

- On October 25, 2022, Defendant wrote a Substack blog describing Representative Dan Crenshaw, who represents Texas's Second Congressional District, as "my Congressman." (Ex. M, Appx. 085).

- On November 6, 2022, Defendant wrote a Substack blog referring to "my adopted Texas." (Ex. N, Appx. 104).

- On January 11, 2024, Defendant contributed $264 to Missouri State Representative Sarah Unsicker's campaign and listed Conroe, Texas as his personal address in disclosures to the Missouri Ethics Commission. (Ex. O, Appx. 111).

- On an August 18, 2024 X Space, Defendant said, "I was living in Texas at the time [immediately prior to the Russia-Ukraine war], so just got in my car and I drove, you know, to Northern Virginia. And I've been here basically six weeks before the Ukraine war broke out." (Am. Compl. ¶ 116 & Ex. 1 to Am. Compl.). The Russia-Ukraine War began on or around February 24, 2022.

This evidence leaves no doubt that Defendant's motion is based in large part on provable falsehoods he submitted under the penalty of perjury. Courts have sanctioned parties for similar conduct. *See, e.g.*, *Sergio Estrada Rivera Auto Corp. v. Kim*, 717 F. Supp. 969, 974–76 (D.P.R. 1989) (imposing sanctions for falsehoods and omissions in an affidavit filed in support of a motion

to dismiss for lack of personal jurisdiction); *National Computer Ltd. v. Tower Indus., Inc.*, 708 F. Supp. 281, 284 (N.D. Cal. 1989) (imposing sanctions for falsehoods contained in an affidavit offered in support of a motion to dismiss for lack of venue).

And regardless whether Defendant actually resides in Virginia, under the relevant jurisdictional inquiry, "[t]he fact that Defendant[] moved from Texas does not deprive the Court of personal jurisdiction." *Weber Aircraft, L.L.C. v. Krishnamurthy*, No. 4:12-cv-666, 2013 WL 1898280, at *6 (E.D. Tex. Apr. 12, 2013), *report and recommendation adopted*, No. 4:12-cv-666, 2013 WL 1898267 (E.D. Tex. May 7, 2013). In that case, "[t]he Court reject[ed] Defendants' notion that simply moving out of state somehow severs their connection to Texas." *Id.*; *see also Schoot v. United States*, 664 F. Supp. 293, 295 (N.D. Ill. 1987) ("The fact that [defendant] has since moved out of state does not insulate him from the long arm jurisdiction of the state of Illinois for acts that took place while he lived and worked in the state. Therefore, it is clear that this Court has personal jurisdiction over [him].").

### C.     Defendant purposely directed his conspiratorial and tortious conduct at Texas and, specifically, Fort Worth.

Defendant's supporting brief incorrectly claims that Plaintiffs' allegations are limited to "statements . . . posted on a passive website" that "were not at all directed toward Texas, and did not involve Texas in any way." (*E.g.*, dkt. 15 at 16). Defendant ignores that Plaintiffs' core allegations do not rely on Defendant's social-media postings. Rather, the First Amended Complaint is replete with allegations that Defendant affirmatively reached into Texas and/or knew that the effects of his conduct would be felt in Texas:

- Traveled to Fort Worth, where he participated in a meeting with his co-conspirator and Plaintiffs at Winslow's Wine Cafe to perpetuate the conspiracy, (Am. Compl. ¶ 137; Lambert Decl. at ¶ 3, Appx. 128);

- Contacted Plaintiffs numerous times via phone and email knowing that they were based in Fort Worth, (Am. Compl. ¶¶ 148, 151, 154, 173, 213; Lambert Decl. ¶¶ 5–6, Appx. 129);

- Tried to initiate a proxy fight to remove Mr. Lambert from the Clearview SPV based on his false allegations that Mr. Lambert was corrupt and engaged in "disqualifying" conduct towards "female founders," (Am. Compl. ¶¶ 154, 155); and

- Defamed Plaintiffs by accusing Mr. Lambert and Point Bridge of being a front for the "Russian mafia" and "Israeli influences," (Am. Compl. ¶¶ 188–89).

Further, unlike in cases where personal jurisdiction was deemed lacking because the defendant did know that the effects of his conduct would be felt in the forum state, Plaintiffs have pointed to many statements where Defendant expressly recognized that Mr. Lambert is a Fort Worth resident with deep connections to Texas:

- Defendant falsely claimed that Defendant "assaulted some women at parties in Austin." (Am. Compl. ¶ 21).

- In January 2022, Defendant texted venture capitalist Gary Lauder and noted that Mr. Lambert was "someone based in Texas" (Am. Compl. ¶ 121).

- Defendant claimed Mr. Lambert is a "dirty player in Fort Worth, maybe a front for the cartels" (Am. Compl. ¶ 173).

- Defendant said that, "Hal [Lambert] is very much tied in with the Russian world, particularly in the Russian and the COVID world, particularly operating in Texas." (Am. Compl. ¶¶ 21, 173).

- Defendant wrote that Mr. Lambert was a "fraudulent Texas businessman." (Am. Compl. ¶ 213).

- Defendant said, "Hal is very much, you know, tied in with the, with the Russian world, particularly in the Russian and Likud world, particularly operating in Texas." (Am. Comp. Ex. 1).

Taken altogether, Defendant cannot characterize this litigation's ties to Texas as random or fortuitous. Indeed, Defendant's contacts with Texas far exceed the "minimum contacts" necessary under Fifth Circuit law because just a "single phone call" phone with a Texas resident is sufficient to establish personal jurisdiction when the contents of the phone call form the basis of

a plaintiff's cause of action. *Amarillo Medical Specialists*, 2023 WL 11926442, at \*2. There, the defendant argued there was no personal jurisdiction because its "only interactions with Plaintiffs and contacts with Texas were through three telephone calls between Plaintiffs and representatives of [the defendant] in Florida." *Id.* (internal quotations omitted). The court rejected that argument, noting that a defendant "should have reasonably anticipated being haled into Texas court as a result of reaching out to Texas via phone in order to garner business and make specific representations." *Id.* (quoting *Trois*, 882 F.3d at 491); *see also Trois*, 882 F.3d at 491(finding personal jurisdiction over out-of-state defendant on the basis of phone calls that the defendant's president made to a Texas plaintiff). Here, Plaintiffs claims are based on, among other things, statements Defendant made at the meeting in Fort Worth at Winslow's Wine Cafe and in his phone calls and emails to Plaintiffs, who are Fort Worth residents. Defendant's availment of Texas and Fort Worth goes far beyond the contacts that the defendants in *Amarillo Medical Specialists* and *Trois* had with Texas, which were nonetheless sufficient to assert personal jurisdiction in the state.

A recent Northern District case further illustrates the jurisdictional analysis in light of the Defendant's (false) declaration saying neither he nor this suit have any connection to Texas. In *X Corp. v. Media Matters for Am.*, No. 4:23-CV-1175, 2024 WL 4001803 (N.D. Tex. Aug. 29, 2024), a defendant published an internet article that did not specifically mention Texas, but referenced companies (*e.g.*, Oracle and AT&T) that reside in Texas. The defendant's affidavit stated that he "was not aware of any connection—and continue[s] to believe the articles have no connection— to Texas, Texas residents, Texas users of X, or X's alleged operations in Texas." *Id.* at \*4 (brackets in the original). Yet the affidavit did not "disclaim that [the defendant] knew Oracle and AT&T were based in Texas," and the court ultimately concluded that he "targeted his conduct at Texas."

Like the defendant in *X Corp.*, Defendant's declaration in this case never "disclaims" that he knew that the Plaintiffs are residents of Texas. *See id.* Nor could he—Defendant met with Plaintiffs in Fort Worth, (Am. Compl. ¶ 137; Lambert Decl. ¶ 3, Appx. 128); Defendant texted Mr. Lambert that he was at the Worthington Hotel in Fort Worth (which is near Plaintiffs' offices), (Ex. E, Appx. 036, Lambert Decl. ¶ 4, Appx. 129); Defendant called and texted Mr. Lambert's cell phone, which has a Texas area code, (Lambert Decl. ¶¶ 5–6, Appx. 129); and Defendant specifically mentioned Mr. Lambert's Texas connections when defaming him (*e.g.*, Am. Compl. ¶¶ 21, 173, 213). Armed with this knowledge, Defendant cannot seriously dispute that he "targeted his conduct at Texas" under the reasoning in *X Corp.* 2024 WL 4001803, at *4. "Because Defendant . . . 'purposefully directed [his] activities' at Texas, and Plaintiff[s'] claims against [Defendant] are 'deriving from, or [are] connected with' those activities, specific jurisdiction exists." *Id.* (quoting *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 102 (5th Cir. 2018)).

Personal jurisdiction is also appropriate on the basis of RICO jurisdiction. Section 1965(a) provides that RICO claims may be brought in any federal district "in which [the defendant] resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). "[M]any district courts" in the Fifth Circuit, including the Northern District, "have construed § 1965(a)'s 'transacts his affairs' language to require traditional minimum contacts analysis under the state's long arm statute." *Energium*, 2023 WL 6202043, at *4 (internal quotation marks omitted) (collecting cases). And the minimum-contacts analysis is deemed satisfied, and personal jurisdiction conferred, "over RICO defendants where one defendant allegedly committed mail and wire fraud through misrepresentations made via phone to the plaintiff 'whom he knew to be in Texas.'" *Id.* (quoting *ESPOT, Inc. v. MyVue Media, LLC*, 492 F. Supp. 3d 672, 691 (E.D. Tex. 2020).

For example, "a defendant who was 'a willing participant on a conference call' and who 'actively engaged in conversation' in which he made specific representations regarding his business to an individual that he knew to be in Texas had the requisite contacts with Texas to establish specific jurisdiction with respect to fraud." *ESPOT, Inc.*, 492 F. Supp. 3d at 689 (quoting *Trois*, 882 F.3d at 491); *see also Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.").

Similar to RICO allegations that withstood personal-jurisdiction challenges in *Energium Health* and *ESPOT*, the First Amended Complaint in this case "alleges that [Defendant] committed . . . wire fraud" involving "invest[ments] . . . in furtherance of the alleged scheme to defraud Plaintiff[s] . . . by directing these intentional acts at Plaintiff[s], 'whom he knew to be in Texas[.]'" *Energium Health*, 2023 WL 6202043, at *4 (quoting *ESPOT, Inc.*, 492 F. Supp. 3d at 691. Plaintiffs have thus "alleged sufficient contacts between [Defendant] and Texas to make a prima facie showing that he is subject to personal jurisdiction in this Court for Plaintiff[s'] RICO claim." *Id.*

And when a court has personal jurisdiction over the defendant on one claim, it can exercise pendent personal jurisdiction over the same defendant on all other claims arising out of the same nucleus of operative facts. *See Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 783–84 (citing *United States v. Botefuhr*, 309 F.3d 1263, 1272–73 (10th Cir. 2002)). The First Amended Complaint alleges that the breach-of-contact and defamation claims stem directly from the RICO shakedown scheme, so the Court should exercise pendent jurisdiction over Defendant on these state law claims.

Defendant's submissions effectively ignore all of the above-cited conduct and legal authority. Instead of addressing Plaintiffs' core allegations that he affirmatively reached into Texas to carry out the conspiracy, Defendant artificially attempts to limit the scope of his conduct to "posting information on a passive website that can be accessed from any state." (Dkt. 15 at 10-11). Again, Plaintiffs do not rely on Defendant's social-media postings as the sole (or even primary) basis for asserting personal jurisdiction.

Defendant relies on a host of unpublished cases, mostly from Texas state courts, where the most compelling basis for asserting jurisdiction was simply that the plaintiff was a resident of Texas. And none of the Defendant's cited authority is remotely on point with the facts in the present case. *See Pulley v. Ground Effects Landscaping*, No. 1:18-cv-0452, 2019 WL 2565278, at *6 (W.D. Tex. Apr. 5, 2019), *report and recommendation adopted*, No. 1:18-cv-452, 2019 WL 2565250 (W.D. Tex. May 14, 2019) (resolving a dispute concerning a property in Alaska; the Alaska defendant contacted the plaintiff via an Alaska phone number; the plaintiff *may have been a resident of Alaska*, not Texas; and the basis for jurisdiction were emails that the plaintiff *may* have "opened . . . while he was in Texas"); *Munz v. Schreiber*, No. 14-17-00687-CV, 2019 WL 1768590, at *7 (Tex. App.—Houston [14th Dist.] Apr. 23, 2019, no pet.) (mem. op.) (observing that defendant in breach-of-contract case was resident of Nevada, that contract-provided truck was to be delivered to Nevada, and that all modifications to truck would occur in Nevada); *Warren Chevrolet, Inc. v. Qatato*, No. 03-17-00298-CV, 2018 WL 6729855, at *3 (Tex. App.—Austin [3rd Dist.] Dec. 21, 2018, no pet.) (mem. op.) (noting that plaintiff argued *general jurisdiction* over Iowa car dealer on the basis of the defendant's contract with a third-party vendor in Texas "that manage[d] the information systems and websites for all GM dealers").

13

In sum, the events described in the First Amended Complaint show that Defendant has purposefully availed himself of the benefits and protections of doing business in Texas. *See Latshaw v. Johnston*, 167 F.3d 208, 214 (5th Cir. 1999) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)). He therefore has sufficient minimum contacts with Texas to permit the Court to exercise personal jurisdiction over him.

### D.    Personal jurisdiction is in the interest of substantial justice.

Because Plaintiffs have carried their burden of establishing purposeful availment, the Court need only find that exercising personal jurisdiction in Texas comports with "substantial justice." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). Defendant "must make a 'compelling case" against jurisdiction once Plaintiffs identify the requisite minimum contacts. *Sangha*, 882 F.3d at 102 (quoting *Burger King Corp.*, 471 U.S. at 477). In doing so, Defendant must show that the exercise of jurisdiction "would prove unfair or unreasonable." *Admar*, 18 F.4th at 786.

Defendant cannot show that the exercise of personal jurisdiction is unjust—let alone make a compelling case to that effect. The "inquiry into fairness captures the reasonableness of hauling a defendant from his home state before the court of a sister state; in the main a pragmatic account of reasonable expectations—if you are going to pick a fight in Texas, it is reasonable to expect that it be settled there." *Revell*, 317 F.3d at 476. "Even a defendant's single act aimed at the forum can support specific personal jurisdiction if that act gives rise to the cause of action asserted." *Frankl v. Netopia, Inc.*, No. 3:05-cv-1757-B, 2007 WL 9712232, at *5 (N.D. Tex. Mar. 26, 2007) (citing *Kwik Copy Corp. v. Byers*, 37 F. App'x 90, 2002 WL 1021889, at *5 (5th Cir. 2002) (per curiam)).

A defendant who repeatedly pressures a Fort Worth company (Plaintiff Point Bridge) partly through defaming its Fort Worth resident owner (Mr. Lambert)—as Defendant did when he said that Mr. Lambert was a "front" and "very much . . . tied in with the . . . Russian world, particularly in the Russian and the covid world, particularly operating in **Texas**"—and when he accused Mr.

Lambert of having "sexually [ ] assaulted some women at parties in **Austin**"—cannot claim surprise at being held to answer for his conduct in Texas. (Am. Compl. ¶ 21 (brackets in the original; emphasis added)).

### III.   Venue is proper in the Northern District of Texas.

If the Court were inclined to consider Defendant's waived venue challenge, it should still reject this argument. Venue is proper "under 28 U.S.C. § 1391(b)(2) because a substantial part of the events described herein occurred within the district" and "is further proper in this district pursuant to 18 U.S.C. § 1965 . . . because[Defendant] is subject to personal jurisdiction in this district." (Am. Compl. ¶ 22). Plaintiff has properly alleged that "'substantial' activities took place in [the Northern District]." *Feline Instincts, LLC v. Feline Future Cat Food Co.*, No. 4:09-cv-644-Y, 2010 WL 4942188, at *4 (N.D. Tex. Dec. 6, 2010) (citation and internal quotations omitted). "Courts have provided the plaintiff with the benefit of the doubt when determining the governing facts," *Dupree v. Valero Energy Corp.*, No. 03-cv-834, 2003 WL 22466234, at *1 (E.D. La. Oct. 29, 2003), and "tend to liberally construe the 'substantial part of the events' option for proper venue," *Founders Ins. Co. v. Billy's Bar & Grill, LLC*, No. 3:18-cv-367, 2019 WL 5425478, at *6 (N.D. Tex. Oct. 23, 2019).

Defendant's venue argument essentially rehashes his jurisdictional arguments. He misconstrues the federal venue rules in his (erroneous) focus on conduct that he purportedly engaged in within Virginia. "The question is not whether a substantial part of the events took place elsewhere; rather, the question is whether 'a substantial part of the events or omissions giving rise to the claim occurred' in this judicial district." *Stampley v. RCNI Freight, LLC*, No. 3:23-cv-1625, 2023 WL 5333273, at *1 n.2 (N.D. Tex. Aug. 18, 2023) (quoting 28 U.S.C. § 1391(b)(2)). "[V]enue may be proper in a judicial district even if a substantial part of the events or omissions giving rise to the claim occurred elsewhere." *Id.* (citation omitted). Because § 1391(b)(2)

15

"contemplates that venue can be appropriate in more than one district," it "does not restrict venue to the district in which the 'most substantial' events or omissions giving rise to a claim occurred." *Id.* (quoting *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005)); *accord NDX Advisors, Inc. v. Advisory Fin. Consultants, Inc.*, No. 11-cv-517, 2011 WL 2200623, at *2 (N.D. Ill. June 6, 2011).

Regardless, Plaintiffs have alleged several connections to the Northern District. For example, Plaintiffs alleged that Defendant intentionally perpetrated a shakedown conspiracy against a Texas business (Point Bridge) and then defamed the principal of that Texas business (Mr. Lambert) when they would not comply with Defendant's demands. And to further the conspiracy, Defendant personally met with Plaintiffs in Fort Worth along with his co-conspirator. (*See, e.g.*, Am. Comp. ¶ 137; Lambert Decl. ¶ 3). Such allegations alone defeat any argument that venue is improper because this case lacks a connection to Texas generally.

Likewise, Defendant's well-documented communications directed to the Northern District also support venue. "[C]ommunications to the district can constitute a substantial part of the events giving rise to a plaintiff's claims, if the claims derive directly from those communications." *Founders Ins. Co.*, 2019 WL 5425478, at *6 (citation omitted). "This includes telephone communications and electronic transmissions." *Id.* Venue is proper in the Northern District because Plaintiffs have alleged (a) that Defendant's "communications [were] directed into [the Northern District]," and (b) that Plaintiffs' claims derive directly from those communications. *Tabletop Media, LLC v. Citizen Sys. Am. Corp.*, No. 3:16-cv-1304-C, 2016 WL 11522083, at *2-3 (N.D. Tex. Sept. 21, 2016).

Defendant's venue argument relies primarily on *Ice Melon, LLC v. Morgan*, No. 4:19-cv-1291, 2020 WL 12863808 (S.D. Tex. Jan. 14, 2020), a magistrate's report and

recommendation to which no other court has cited. *Ice Melon* is inapposite because the Court's analysis focused on emails that the defendant sent and whether they "were fortuitously opened in Texas." *Id.* at *4; *see also id.* at *3-4 (internal quotations omitted) (collecting cases for the proposition that "courts are reluctant to find jurisdiction based only on emails . . . because reliance on . . . email can no longer reliably prove purposeful availment, given the fact that technology now permits an individual anywhere in the world to be reached by . . . a single e-mail address") (ellipses in the original). What's more, both the plaintiff and defendant in *Ice Melon* were "citizens of Mexico, not Texas," and they met "twice in Mexico and never in Texas." *Id.* at *4. Here, by contrast, Defendant met with Mr. Lambert, a Fort Worth resident, in Fort Worth and in furtherance of the conspiracy. (Am. Compl. ¶ 137).

Finally, to the extent that the personal-jurisdiction and venue inquiries overlap, if "the defendant is amenable to personal jurisdiction under the relevant jurisdictional statute and the constitutional minimum contacts analysis, then . . . venue is proper because a substantial part of the claim arose in the forum district." 14D Wright & Miller, Fed. Prac. & Proc. § 3806 (4th ed.) (citing, *inter alia*, *Bear Stearns Cos. Inc. v. Lavalle*, No. Civ.A. 300CV1900, 2001 WL 406217, at *5 (N.D. Tex. 2001)). If a "defendant's contacts satisfy personal jurisdiction," then they would "ipso facto show that the claim is sufficiently related to the forum to justify venue under Section 1391(b)(2)." *Id.* Defendant cannot argue otherwise.

## CONCLUSION

The Court should deny Defendant's Motion to Dismiss in its entirety. To the extent that the Court believes that further factual development of the record would be appropriate, Plaintiffs request that the Court order the parties to engage in targeted jurisdictional discovery, which will further show that Defendant's declaration is false and perjurious. But no such discovery is necessary based on the current record.

Dated: December 23, 2024                Respectfully submitted,

                                        **QUINN EMANUEL URQUHART &**
                                        **SULLIVAN LLP**

                            By:     */s/ Will Thompson*
                                    Will Thompson
                                    State Bar No. 24094981
                                    willthompson@quinnemanuel.com
                                    3100 McKinnon St., Ste. 1125
                                    Dallas, Texas 75201
                                    Telephone: (469) 902-3600
                                    Facsimile: (469) 902-3610

                            **ATTORNEY FOR PLAINTIFFS**

                        **CERTIFICATE OF SERVICE**

    I hereby certify that on December 23, 2024 I filed the foregoing document with the clerk

of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served

the document on all counsel of record by a manner authorized by the Federal Rules of Civil

Procedure.

                                    */s/ Will Thompson*
                                    Will Thompson