**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| Point Bridge Capital, LLC, | § | |
| Hal Lambert | § | |
| | § | Case No. 4:24-cv-00988-P |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| Charles Johnson, | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFFS' FIRST MOTION TO COMPEL PRODUCTION OF DOCUMENTS
<u>AND MEMORANDUM IN SUPPORT</u>**

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 4

    A.    Johnson's Pattern of Obstructing Discovery and Disregard for the Judicial Process ..................................................................................................................... 5

    B.    Plaintiffs' Written Discovery Requests ................................................................ 6

ARGUMENT ......................................................................................................................... 8

    A.    Johnson's Exclusive Reliance on a Single Gmail Account, and His Failure to Search Other Relevant Sources, Renders His Production Incomplete and Improper Under the Rules ...................................................................................... 8

    B.    Johnson's Failure to Produce Emails in a Reasonably Usable Form— Including the Stripping of Metadata and Attachments—Violates Rule 34 .......... 12

    C.    Johnson's Failure to Disclose What Was Withheld or What Sources Were Searched Violates Rule 34 and Obscures the Scope of His Noncompliance ....... 14

    D.    Sanctions: Johnson's Pattern of Obstruction—Including Prior Falsehoods in Federal Court—Merits Sanctions Under Rule 37 ............................................ 15

CONCLUSION..................................................................................................................... 16

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Beattie v. Madison County Sch. Dist.*,
    254 F.3d 595 (5th Cir. 2001) ................................................................8

*Export Worldwide, gmail.coLtd. v. Knight*,
    241 F.R.D. 259 (W.D. Tex. 2006) .........................................................8

*IV Solutions, Inc. v. United HealthCare Servs.*,
    No. 16-cv-09598, 2019 WL 9088037 (C.D. Cal. May 2, 2019).........................................2, 11

*Johnson v. Clearview AI, Inc.*,
    No. 1:23-cv-024 (S.D.N.Y.)...................................................................5

*Johnson v. Clearview AI, Inc.*,
    No. 1:23-cv-02441, ECF No. 68 (S.D.N.Y. Jan. 16, 2025.)................................................5, 13

*Osborne v. Billings Clinic*,
    No. 14-cv-0126, 2015 WL 1412626 (D. Mont. Mar. 25, 2015) ...........................................11

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*,
    No. 05-md-1720. 2007 WL 121426 (E.D.N.Y. Jan. 12, 2007)...............................................11

*Piazza's Seafood World, L.L.C. v. Odom*,
    No. 07-cv-0413, 2011 WL 3664437 (M.D. La. 2011)............................................8

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*,
    685 F.3d 486 (5th Cir. 2012) ................................................................14

*Thomason v. Metro. Life Ins. Co.*,
    No. 14-cv-086, 2015 WL 1914557 (N.D. Tex. 2015) ...........................................8

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ...............................................................................7

Fed. R. Civ. P. 26(g) ...................................................................................9

Fed. R. Civ. P. 34 ...............................................................................9, 10, 11, 12

Fed. R. Civ. P. 34(b) .................................................................................2

Fed. R. Civ. P. 34(b)(2)(C) ....................................................................... *passim*

Fed. R. Civ. P. 34(b)(2)(E)(i)......................................................................11

FED. R. CIV. P. 37 ....................................................................................................................3, 13

FED. R. CIV. P. 37(a)(1) ................................................................................................................1

FED. R. CIV. P. 37(b) ..................................................................................................................14

Plaintiffs Point Bridge Capital and Hal Lambert (together, "Plaintiffs") respectfully move for an order, pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, compelling Defendant Charles Johnson to (a) produce certain documents that have either been withheld or not searched for, (b) produce the documents in a manner that is not stripped of metadata and otherwise complies with the production requirements of the Federal Rules, (c) overrule his boilerplate objections, and (d) impose appropriate sanctions given Johnson's history of obstruction.

## INTRODUCTION

Defendant Charles Johnson has ignored the basic obligations that the Federal Rules of Civil Procedure impose on every litigant, and in doing so, he has repeated a pattern of discovery misconduct already documented in other federal courts.

Just weeks ago, a federal judge in New York sanctioned and admonished Johnson for refusing to participate in discovery and for launching personal attacks on opposing counsel. His excuse? He claimed that two Department of Homeland Security agents told him not to comply with discovery. When the judge followed up with DHS, the agency confirmed that no such agents exist, and no such instruction was ever given.

Now, Johnson brings the same conduct to this matter. Plaintiffs served routine discovery requests aimed at the core allegations in this case: that Johnson and his co-conspirator, Gator Greenwill, presented themselves as federal operatives to extort early-stage technology companies dependent on government contracts to obtain favorable investment terms and access. Johnson's scheme was straightforward—cooperate and be rewarded, or resist and be punished through defamatory attacks and sabotage of any business opportunities. When Plaintiffs resisted, Johnson told Plaintiffs that he followed through with his threats and sabotaged one of Plaintiffs' portfolio companies. Johnson sent such threats from a non-Gmail account, *charles@traitwell.com*, which stated, in pertinent part, as follows:

1

> Gave you the Agency (which you f[***]ed up) and the FBI (which you
> arrogantly ignored). I wonder why your revenue so low. . . huh. Didn't I tell
> you you'd get no contracts if you kicked me out of the company? And you
> haven't gotten a single federal contract yet. Weird! Biden government very,
> very good. All my family friends in the government now, especially intel
> services. I even got promoted.

(Ex. F, Appx. 089.)

That email, and others like it, are squarely within the scope of Plaintiffs' discovery requests. But Johnson has not produced that email—or any other—from the *traitwell.com* address. Plaintiffs possess that one message only because they already had it.

Instead of providing responsive materials, Johnson submitted a boilerplate-laden set of objections that raise more questions than they answer. He did not say what he searched. He did not identify what, if anything, he withheld. He did not even confirm that he searched beyond a single Gmail account. That violates Rule 34(b)(2)(C), which requires a party to state whether any responsive materials have been withheld. Johnson's silence leaves Plaintiffs—and this Court—in the dark.

What he did produce falls far short of his obligations. Johnson's production consists of a single 1,731-page PDF, cobbled together from one Gmail account, despite maintaining at least three other email accounts. The file is bloated with duplicates, scrubbed of all metadata, and delivered in a format that cannot be meaningfully sorted, searched, or reviewed. The Rules do not permit a litigant to render discoverable material unusable. *See* FED. R. CIV. P. 34(b) advisory committee's note to 2006 amendment.

And we know, definitively, that the production is deficient because it did not search emails from *charles@traitwell.com*—the very account Johnson used to threaten Plaintiffs. That omission is not a mistake. It is concealment. And Johnson cannot plausibly claim he lacks access to that account. His own counsel, in their motion to withdraw, listed *charles@traitwell.com* as Johnson's

official point of contact. ECF 41 at 2. That representation to the Court confirms what Plaintiffs already suspected: Johnson controls the account and actively uses it. His failure to produce emails from it is not a matter of burden or oversight. It is a refusal.

Moreover, Johnson's omissions contradict his own public statements about this case. In an October 2024 Substack post—published shortly after being served in this case—Johnson bragged: "Oh well. Everything was recorded, everything was noted, everything is in email and in text messages. Yes, I screenshotted them . . . ." (Ex. A at 4, Appx, 013, Charles Johnson, *Best Birthday Yet! A Foreign Compromised Billionaire is Backing A Frivolous Lawsuit Against Me*, Substack, Charles Johnson's Thoughts and Adventures, (Oct. 23, 2024), https://charlesjohnson.substack.com/p/best-birthday-yet-a-foreign-compromised.)

Despite that boast, Johnson has produced no Signal messages. No texts. No messages to or from his FBI handler, Jonathan Buma (who is currently under indictment for copying FBI materials) and who helped effectuate the conspiracy. And, again, no emails from the *traitwell.com* email account he continues to use (or other email addresses he uses).

Johnson's conduct cannot be characterized as mere carelessness. Rather, it is a pattern—one that has already drawn judicial scrutiny elsewhere. A litigant who fabricates excuses in one federal court and stonewalls discovery in another does not need a reminder. He needs a sanction.

Plaintiffs respectfully request that the Court compel full and proper discovery, including production from all accounts under Johnson's control—specifically including *charles@traitwell.com*. And because Johnson is no longer represented by counsel and cannot be trusted to conduct the search himself, Plaintiffs submit that a third-party vendor should conduct the collection. The vendor can collect documents based on search terms run against Johnson's devices and accounts and also screen out any privileged communications that may exist. Finally,

Plaintiffs request that the Court impose sanctions under Rule 37, including attorneys' fees and costs, for Johnson's willful noncompliance.

## BACKGROUND

Point Bridge Capital, LLC is a Fort Worth-based investment firm that provides strategic capital to emerging technology companies, many of which operate in the defense and intelligence sectors. Its founder, Hal Lambert, is a long-time Fort Worth resident, a husband, and a father of two. (Second Amended Complaint ("SAC") ECF 33 at ¶¶ 28-33.)

Beginning in 2020, Charles Johnson and his co-conspirator, Gator Greenwill, launched a multi-year scheme to defraud and extort technology companies and investors by falsely presenting themselves as U.S. intelligence assets. (SAC ¶¶ 1-9.) They offered a coercive "carrot and stick" proposition: if a target cooperated, they promised investment, access to federal contracts, and government protection; if the target resisted, they threatened regulatory action, reputational sabotage, and false allegations. (SAC ¶¶ 11.)

Johnson and Greenwill pitched this scheme to Plaintiffs in 2020 during a meeting with Mr. Lambert at Winslow's Wine Café in Fort Worth. (SAC ¶11.) They invoked their supposed government ties while discussing companies they knew were affiliated with Plaintiffs. (SAC ¶11.)

After Plaintiffs refused their demands, Johnson retaliated. He launched a campaign of defamatory attacks, false public statements, and litigation threats. (SAC ¶¶ 194–226.) Among other things, Johnson accused Mr. Lambert of being a "front for Russian money," a "dirty player in Fort Worth," and someone who "grabs the t[***] of younger women." (SAC ¶¶ 203-04.) In an X Space broadcast to thousands, Johnson falsely stated that Lambert had "sexually assaulted some women at parties in Austin." (SAC ¶¶ 24, 207.) These statements are categorically false and entirely unsupported.

After Plaintiffs filed suit, Johnson deactivated his X account, eliminating access to many of the defamatory posts/tweets at issue. He publicly claimed that Elon Musk suspended the account at Plaintiffs' request, but his own screenshots show he deactivated it himself and retains the ability to restore it and produce his posts/tweets. (SAC ¶ 16.)

A.      **Johnson's Pattern of Obstructing Discovery and Disregard for the Judicial Process**

Johnson has a documented history of evading discovery and misleading the courts. In *Johnson v. Clearview AI, Inc.*, No. 1:23-cv-024 (S.D.N.Y.), he refused to produce documents, claiming that agents of the Department of Homeland Security instructed him to withhold them. When the court asked him to identify those agents, he named two individuals—"Alexander Rodriguez" and "Alexander Fletcher." (*Johnson v. Clearview AI, Inc.*, No. 1:23-cv-02441, ECF No. 68 at 5 (S.D.N.Y. Jan. 16, 2025), Ex. B at 5, Appx. 023.) Judge Failla, on her own initiative, inquired with DHS, who stated that no such agents existed. (*Id.*)  The court then ordered Johnson and his counsel to submit a sealed, in camera statement outlining how he would meet his discovery obligations. Soon after that order—and after his basis for obstruction unraveled—Johnson moved to dismiss his complaint. *See Johnson v. Clearview AI, Inc.*, No. 1:23-cv-02441, ECF No. 84. Although the court allowed the dismissal, Clearview's counterclaims remain pending.

Johnson has continued this obstructive pattern in the present case. He deactivated his X account after Plaintiffs cited it in their complaint. That deletion erased access to key statements central to Plaintiffs' claims. (SAC ¶ 16.)

His misconduct extends to sworn filings in this action. In support of his motion to dismiss for lack of personal jurisdiction, Johnson submitted a declaration claiming he was not a Texas resident. (ECF 14-2.) But public records, litigation filings, political donations, and campaign disclosures suggest otherwise: Johnson lived in Texas through at least late 2022, voted in Texas in

2022, and remains a registered voter in Montgomery County. (*See* ECF 27 at 6-8 (pointing out why Johnson's "assertions are false, contracted by [his] own statements, court filings, government records. . .").) These contradictions suggest Johnson submitted false testimony in an effort to avoid facing Plaintiffs' claims in Texas.

**B.    Plaintiffs' Written Discovery Requests**

Plaintiffs served their "First Set of Requests for Production on Charles Johnson" on January 31, 2025. (Ex. C, Appx. 026-33.) These requests seek core materials relating to Johnson's shakedown scheme and defamation campaign, including:

- The factual basis and support for Johnson's false statements about Mr. Lambert (RFP Nos. 18-24);

- Communications with key individuals and entities, including communications with co-conspirator Gator Greenwill, currently indicted FBI agent Jonathan Buma, and the companies to whom Johnson presented himself as a government agent, (RFP Nos. 1-5, 10-12, 16-17);

- Johnson's Financial and Ownership Interests, which are relevant to show the ways in which he profited from and orchestrated the shakedown, (RFP Nos. 13-15);

- Evidence of Johnson's involvement with the government or  intelligence community, (RFP Nos. 25-33);

- Johnson's public statements, including his tweets and postings on X Plaintiffs and this lawsuit, including any tweets or posts that Johnson deleted, (RFP Nos. 6-7);

- Factual support for Johnson's claim that governments or third parties fund or otherwise support his lawsuits, (RFP Nos. 8-9); and

- Communications Johnson sent about Plaintiff Hal Lambert and about this lawsuit to reporters (RFPs 40-52).

Johnson served his written responses on March 11, 2025, but they were plainly deficient. (Ex. D, Appx. 036-72.) Johnson offered a series of boilerplate, non-specific objections—often copied and pasted verbatim across multiple requests—without explaining the basis for his objections or what documents, if any, were being withheld. (*See, e.g.*, *id.* at 3-5, Appx. 038-40.)

He failed to identify the custodians, devices, or sources he searched, an omission that is particularly concerning given that many of the relevant communications in this case—such as threats, extortion attempts, and defamatory statements—occurred via text message, encrypted messaging apps like Signal, or other non-email mediums. Moreover, Johnson's objections do not comply with Federal Rule of Civil Procedure 34(b)(2)(C), which requires a responding party to state whether any responsive materials are being withheld on the basis of the objection. By failing to provide this basic information, Johnson has left Plaintiffs in the dark as to what has or has not been searched or produced, rendering it difficult to assess the full scope of his noncompliance and requiring judicial intervention to obtain clarity and enforcement.

The actual substance of Johnson's production confirms his production's deficiencies. He produced only a single document:

- A 1,731-page PDF of emails exported from a Gmail account;[1]

- The document contained extensive duplicate emails, many repeated verbatim;

- All metadata was stripped, making it nearly impossible to assess senders, recipients, timestamps, or attachment details;

- All attachments appear to be stripped;

- No text messages, Signal messages, or other non-email communications were produced;

- No communications with government officials or agencies were included;

- No social media content was provided other than isolated Substack references;

- No documents were produced to support Johnson's defamatory accusations against Mr. Lambert.

(Declaration of Will Thompson ("Thompson Decl."), Ex. 1 at ¶8, Appx. 003-04.)

---

[1] In order to avoid burdening the Court with unnecessary amounts of paper, Plaintiffs have not attached these voluminous compilations to this Motion, but will submit them for the Court's review, if requested.

### ARGUMENT

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). "In the discovery context, 'relevancy' is broadly construed, and relevant matter includes 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Thomason v. Metro. Life Ins. Co.*, No. 14-cv-086, 2015 WL 1914557, at *1 (N.D. Tex. 2015) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "Discovery should therefore ordinarily be allowed, under the concept of relevancy, unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." *Piazza's Seafood World, L.L.C. v. Odom*, No. 07-cv-0413, 2011 WL 3664437, at *2 (M.D. La. 2011).

With respect to managing discovery, a "district court has broad discretion in all discovery matters." *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001) (internal quotations omitted). "[Rule] 37(a) empowers the court to compel the production of documents and complete responses to interrogatories upon motion by the party seeking discovery." *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006).

**A.    Johnson's Exclusive Reliance on a Single Gmail Account, and His Failure to Search Other Relevant Sources, Renders His Production Incomplete and Improper Under the Rules**

Johnson has produced a single PDF in response to Plaintiffs' discovery requests: a 1,731-page document comprised almost entirely of emails pulled from a single Gmail account. That is the sum total of his production. There are no text messages. No Signal communications. No encrypted chats. He did not search at least three other email accounts that he uses. Nor is there a single document—email or otherwise—reflecting communications with Jonathan Buma, the FBI, or any other government agent Johnson claims to have interacted with. None.

The absence of these materials is not merely suspicious—it is incompatible with Johnson's own public statements and prior representations. Johnson has publicly stated, repeatedly and without equivocation, that he keeps meticulous records. When talking about the case, he boasted that he "welcomed" this litigation, stating "I kept everything, I recorded everything and so I fear nothing." (Ex. E at 4, Appx. 077, Charles Johnson, *Last Gasp of A Criminal Syndicate: Why I Welcome The Lawfare Attacks Against Me*, Substack, Charles Johnson's Thoughts and Adventures (Oct. 17, 2024), available at https://charlesjohnson.substack.com/p/last-gasp-of-a-criminal-syndicate.

Just days later, he doubled down: "Everything was recorded, everything was noted, everything is in email and in text messages. Yes, I screenshotted them . . . ." (Ex. A at 4, Appx. 013) Those are not ambiguous claims. They are sweeping representations of comprehensive recordkeeping. Such sweeping claims are impossible to reconcile with the barren document production that Johnson provided.

As to Signal messages specifically, Judge Failla explicitly admonished Johnson's refusal to produce messages on that platform, citing his "misstatements and omissions":

> [T]he Court is deeply concerned that the initial review of [Johnson's] materials for discoverable information may have been inadequate, in light of . . . [Johnson's] misstatements and/or omissions to the Court regarding the message-deleting capabilities of the Signal platform.

(Failla, J. Order at 2, Ex. B, Appx. 020.)

Indeed, there is no excuse for the absence of Signal messages because Johnson regularly used Signal (and retained screenshots of any automatically deleted messages) as well as texts messages. For example, he retained messages with reporters and his X account (before he deleted his X account). *See, eg*, Isaac Stanley-Becker, *JD Vance in texts with far-right figure: Profane and off-the-cuff*, Wash. Post (Aug. 7, 2024) https://www.washingtonpost.com/politics/2024/08/07/jd-

vance-charles-johnson-texts/ (sharing messages with JD Vance with Washington Post); Ex. G at 10, Appx. 101, Charles Johnson, *How Joe Lonsdale Works For The Russians*, Substack, Charles Johnson's Thoughts and Adventures, (Sep. 4, 2024) https://charlesjohnson.substack.com/p/how-joe-lonsdale-works-for-the-russians (stating "I have a lot of text messages and email which show him in another light" and complaining that journalists would not publish them.).

The Federal Rules of Civil Procedure impose a duty of reasonable diligence. That obligation is not satisfied by limiting a search to the one email account that a litigant finds most convenient or beneficial. Plaintiffs, for their part, left no room for ambiguity. Their discovery requests were explicit: Johnson was to search all platforms—including "direct messages on X, Twitter, Instagram, or other social media." (Ex. C at 2, Appx. 027.) The language wasn't buried. It was bolded. (*Id.*) Johnson doesn't get to pick and choose his platforms. He doesn't get to limit his search to the one repository he found convenient. He is required—under the Rules—to conduct a good-faith, comprehensive search of every location where relevant documents might be found. That means phones. That means apps. That means all email accounts. Johnson was not free to confine his search to a narrow subset of communications.

Indeed, it strains credulity to suggest that a conspiracy of such scale—years in the making, involving threats, coordination, and ostensible connections to federal agents—played out solely through a single Gmail account and left no other trace. That is not plausible. It is not remotely consistent with how digital communication works in the modern world.

Notably, Johnson's production omits all emails from *charles@traitwell.com*—an account he used to send threatening communications directly to Plaintiffs. (*See* Ex. F at 1-2, Appx. 088-89) The omission of documents from that email account, standing alone, renders Johnson's production deficient under Rule 26(g) and Rule 34. And Johnson cannot credibly claim that the *traitwell.com*

account is inaccessible or inactive. Johnson's former counsel listed *charles@traitwell.com* as his point of contact in their motion to withdraw. ECF 41 at 2. That filing confirms that Johnson retains control of the account and actively uses it. He has no basis to disclaim possession, custody, or control of emails from that account. Likewise, Johnson also communicates from two other accounts that were not searched in response to Plaintiffs document requests:

- charlesjohnsonwork@protonmail.com

- chuckwalla1022@gmail.com

(Thompson Decl. ¶9, Appx. 004.)

Moreover, the omission of any communications with former, and now indicted, FBI agent Jonathan Buma reveals Johnson's obstruction. Johnson claimed that he was "writing . . . reports for Jonathan Buma and for others." (SAC ¶ 99 (quoting Johnson, X Space, Sept. 24, 2024).) Yet, Johnson has not produced a single report, a single text, nor a single email involving Buma. Nothing. But such documents must exist and are responsive to Plaintiffs' document requests. (*See* RFP No. 27, Ex. C at 5, Appx. 030 (seeking "[a]ll Documents and Communications between [Johnson] and any person affiliated with the Federal Bureau of Investigation[.]").

Johnson's obligation under Rule 34 is clear: he must conduct a good-faith, diligent search of all locations where responsive documents are likely to be found. Johnson has not done that. And he has offered no justification for those omissions.

Discovery is not a game of hide-and-seek. A party cannot ignore entire categories of communications simply because their contents are inconvenient. Johnson's failure to conduct a complete and competent search violates his obligations under the Rules and warrants both an order compelling production.

In sum, Plaintiffs request the following relief given that counsel for Johnson has recently withdrawn (the second set of lawyers that have withdrawn their representation of Johnson in this matter) and he cannot be trusted to perform the search without oversight:

➢ Compel Johnson to search the following email addresses and messaging platforms for responsive documents based on search terms that the Plaintiffs provide

- charlesjohnsonwork@protonmail.com

- chuckwalla1022@gmail.com

- charlescarlislejohnson@gmail.com

- charles@traitwell.com

- Signal

- Telegram

- Instagram

- Substack

➢ Compel Johnson to provide his phone and devices to a third-party vendor that will conduct the search of his devices and accounts for responsive documents using search terms that Plaintiffs provide.

➢ Plaintiffs will submit (a) search terms to be run against his accounts and devices and (b) a protocol to ensure that privileged communications are excluded. Johnson can object to the search terms and protocol but—given his prior obstruction—the burden should fall on him to demonstrate why the search terms or protocol is not appropriate.[2]

➢ Compel Johnson to re-activate his X account to search for responsive posts, or allow Plaintiffs to archive his prior tweets and posts.

---

[2] In a prior case in the Fort Worth Division of the Northern District of Texas, the undersigned counsel implemented a similar protocol to search the devices of a party who refused to participate in discovery. *See Antero Resources Corporation v. C&R Downhole Drilling Inc.*, No. 4:16-cv-668 (N.D. Tex.), ECF 243 (granting motion to compel and ordering party to "provide . . . access to any electronic devices in his possession" to be searched). This protocol was successful in collecting relevant documents and avoided the disclosure of any privileged material.

**B.     Johnson's Failure to Produce Emails in a Reasonably Usable Form—Including the Stripping of Metadata and Attachments—Violates Rule 34**

Johnson's email production—consisting of a single, 1,731-page PDF file is fundamentally defective. The production was not only duplicative and disorganized, but also stripped of all metadata. It includes no header information, no timestamps, no sender or recipient fields. As a result, it is not "reasonably usable" as required under the Federal Rules.

Rule 34 makes clear that electronically stored information must be produced as it is kept in the usual course of business or organized and labeled to correspond to the requests. *See* FED. R. CIV. P. 34(b)(2)(E)(i) (stating that parties must "produce documents as they are kept in the usual course of business"). The Advisory Committee notes to the 2006 amendment further clarify that if ESI is kept in a searchable format, it "should not be produced in a form that removes or significantly degrades this feature."

Federal courts have repeatedly enforced these principles and found that emails that are combined into a single PDF are incompatible with the Rules. *See In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, No. 05-md-1720, 2007 WL 121426, at *1, 3-4 (E.D.N.Y. Jan. 12, 2007) (holding that documents stripped of searchable metadata are not Rule 34 compliant); *Osborne v. Billings Clinic*, No. 14-cv-0126, 2015 WL 1412626, at *7 (D. Mont. Mar. 25, 2015) (finding that duplicative PDFs of thousands of pages of medical bills were not reasonably usable and should have been produced in their ordinary maintained format); *IV Solutions, Inc. v. United HealthCare Servs.*, No. 16-cv-09598, 2019 WL 9088037, at *1 (C.D. Cal. May 2, 2019) (holding that producing 20,000 pages of documents in a single PDF file "was not reasonably usable").

Here, Plaintiffs cannot determine whether the emails were complete, who received them, when they were sent, or whether attachments were omitted. Indeed, the PDF format in which the

email was provided stripped out all the attachments in the email thread. (*See* Thompson Decl. ¶10, Appx. 004-07.) The format obstructs—not facilitates—review and use. As a result of the altered form in which Johnson has produced emails in this case, Plaintiffs have been prejudiced.

Accordingly, Plaintiffs respectfully request that the Court compel Johnson to re-produce all responsive emails in their native format, with metadata, thread structure, and attachments preserved, in accordance with Rule 34 and well-established discovery standards.

### C.    Johnson's Failure to Disclose What Was Withheld or What Sources Were Searched Violates Rule 34 and Obscures the Scope of His Noncompliance

Rule 34(b)(2)(C) imposes a clear requirement: if a party objects to a discovery request and withholds responsive documents, he must affirmatively state that he is doing so, and specify the scope of the withholding. *Id.* ("An objection must state whether any responsive materials are being withheld on the basis of that objection."). This requirement is designed to prevent ambiguity and ensure a fair and transparent discovery process.

Johnson has not complied. His written responses consist of generalized, boilerplate objections. (Ex. D at 3-5, Appx. 038-40.) Nowhere does he disclose whether any responsive documents were withheld on the basis of those objections, nor does he clarify the categories of documents excluded or the rationale for doing so.

Even more concerning, as mentioned before, Johnson has provided no information whatsoever about the sources he searched. He has not identified any custodians, devices, communication platforms, or repositories of potentially responsive information. While it is evident that the production is deficient, the true extent of that deficiency remains obscured. Plaintiffs are, in essence, left to litigate in the dark—unable to determine whether the omissions are isolated or systemic, and unable to ascertain what has been intentionally or inadvertently excluded. This lack

14

of transparency frustrates both the letter and the purpose of the Federal Rules. The Court should compel Johnson to amend his responses to comply with Rule 34(b)(2)(C).

### D. <u>Sanctions</u>: Johnson's Pattern of Obstruction—Including Prior Falsehoods in Federal Court—Merits Sanctions Under Rule 37

Johnson's discovery misconduct in this case is not a one-off lapse. It is part of a sustained pattern of disregard for his obligations under the Federal Rules of Civil Procedure—a pattern that mirrors his behavior in other federal courts.

In ongoing litigation before the Southern District of New York, Johnson has refused to comply with discovery, claiming that he had been instructed by two named agents of the Department of Homeland Security not to produce responsive documents. (*Johnson v. Clearview AI, Inc.*, No. 1:23-cv-02441, ECF No. 68 at 5 (S.D.N.Y. Jan. 16, 2025), Ex. B at 5, Appx. 023.) When the court investigated, DHS confirmed that no such agents existed. *Id.* He thus fabricated this fabricated. When confronted, Johnson attempted to sidestep the consequences by dismissing his own claims and exiting the case. His gambit failed because the court allowed the counterclaims to proceed and left Johnson as a party. The court's order also calls out multiple other instances where Johnson has frustrated the discovery process, including his "misstatements and omissions" about Signal and other sources of responsive documents. (Failla, J. Order at 2, Ex. B, Appx. 020.)

Here, Johnson is replaying a familiar hand. What stands out most—both for its brazenness and its legal consequence—is his refusal to produce categories of documents that he himself has admitted exist. His own words: "Everything was recorded, everything was noted, everything is in email and in text messages." And yet, here we are. No emails to or from his FBI handler. No texts. No Signal chats. Nothing beyond a solitary, metadata-stripped PDF. The documents Johnson is withholding go to the heart of Plaintiffs' claims. By any measure, the Federal Rules require more. Johnson has concealed the breadth of his noncompliance and offered no sign that he intends to fix

it. Not voluntarily, at least. The inescapable conclusion is that Johnson does not believe the Rules apply to him. But they do. That's why court intervention is not only justified—it's necessary. When a litigant repeatedly flouts the Rules—especially after having been called to account in another federal case—sanctions are not merely appropriate, they are necessary.

A district court "has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (internal quotations omitted). Plaintiffs respectfully request that the Court impose sanctions on Johnson, including the award of reasonable attorneys' fees and costs incurred in preparing this motion, and such additional relief as the Court deems just and proper under the circumstances.

## CONCLUSION

Johnson has disregarded his discovery obligations, produced documents in an unusable format, refused to identify what he is withholding, and failed to search—or admit to searching— critical sources of evidence. Worse still, he has declined to produce categories of documents that he has publicly acknowledged exist. These are not technical deficiencies; they are deliberate acts of evasion that prejudice Plaintiffs and obstruct the judicial process. This conduct, especially in light of Johnson's similar misconduct in prior federal litigation, warrants judicial intervention and sanction. Accordingly, Plaintiffs respectfully request that the Court:

> ➢ Compel Johnson to search the following email addresses and messaging platforms for responsive documents based on search terms that the Plaintiffs provide.

- charlesjohnsonwork@protonmail.com

- chuckwalla1022@gmail.com

- charlescarlislejohnson@gmail.com

- charles@traitwell.com

- Signal

- Telegram

- Instagram

- Substack

➢ Plaintiffs will submit (a) search terms to be run against his accounts and devices and (b) a protocol to ensure that privileged communications are excluded.  Johnson can object to the search terms and protocol but—given his prior obstruction—the burden should fall on him to demonstrate why the search terms or protocol is not appropriate and he should pay the costs of the collection and production.

➢ Compel Johnson to re-activate his X account to search for responsive posts, or allow Plaintiffs to archive his prior tweets and posts.

➢ Compel Johnson to produce all responsive documents in a usable format, including complete email productions with metadata intact;

➢ Compel Johnson to supplement his written responses in compliance with Rule 34(b)(2)(C), including identifying what documents have been withheld and what sources have been searched; and

➢ Award Plaintiffs their reasonable attorneys' fees and costs incurred in connection with preparing and filing this Motion.

➢ Grant such other and further relief as the Court deems just and proper under the circumstances.


Dated: April 28, 2025                              Respectfully submitted,

                                                   _/s/ Will Thompson_
                                                   Will Thompson
                                                   DLA PIPER LLP (US)
                                                   Will Thompson
                                                   State Bar No. 24094981
                                                   will.thompson1@us.dlapiper.com
                                                   1900 N. Pearl Street
                                                   Dallas, Texas 75201
                                                   Telephone: (406) 546-5587

                                                   COUNSEL FOR PLAINTIFFS

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that conferred with counsel for the defendant, Carter Boisvert, multiple times about the contents of this motion, beginning on Friday, March 21, 2025. Counsel did not agree to the relief requested herein. Following the withdraw of Mr. Boisvert's firm, I contacted Mr. Johnson via the contact information provided in the motion to withdraw. I informed him that Plaintiffs were preparing to file this motion to compel in substantially the same form as attached and that his silence would be taken as opposition to the relief requested in this motion. Mr. Johnson responded to my email, but did not address any of the relief requested in this motion specifically.

*/s/ Will Thompson*
Will Thompson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 28, 2025, a true and correct copy of the foregoing document was filed electronically using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Will Thompson*
Will Thompson

18