IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| Point Bridge Capital, LLC, § <br> Hal Lambert § <br> § <br> *Plaintiffs,* § <br> § <br> v. § <br> § <br> Charles Johnson, § <br> § <br> *Defendant.* § | Case No. 4:24-cv-00988-P |

## PLAINTIFFS' MOTION TO SUPPLEMENT THE RECORD WITH EVIDENCE OF DEFENDANT'S FALSE STATEMENTS

Plaintiffs Point Bridge Capital and Hal Lambert (together, "Plaintiffs") respectfully submit this Motion to Supplement the Record with Evidence of Defendant's False Statements and Misconduct.

## INTRODUCTION

Plaintiffs respectfully submit this supplemental submission to highlight Defendant Charles Johnson's deepening and documented pattern of obstruction and dishonesty. The evidence now before this court—drawn from a recent federal hearing and Johnson's own public posting about his travels—confirms what the Plaintiffs have argued from the outset: Johnson is not merely careless or slow. He is willful, evasive, and operating with contempt for his discovery obligations and the judicial process generally. Court intervention is necessary.

During a discovery and sanctions hearing on April 2, 2025 in the Southern District of New York, Judge Katherine Polk Failla repeatedly called out Johnson's misconduct before sanctioning him. Johnson had falsely claimed that agents from the Department of Homeland Security had instructed him not to comply with discovery. After personally contacting DHS, Judge Failla

1

concluded, "You gave me names. I went to the top people at DHS, and they said they do not exist." (*See* Transcript, *Johnson v. Clearview AI, Inc.*, No. 1:23-cv-2441 (S.D.N.Y. Apr. 2, 2025), (hereinafter, "Tr.") Ex. A at 25:9-10, Appx. 034). She called out Johnson's conduct and observed: "Sir, I'm not nearly as stupid as you take me to be." (*Id.* at 24:2, Appx. 033). The Court noted that it had "tried to talk to [prior counsel]. They tried to tame his baser instincts and to check his more racist and anti-Semitic impulses. I've given him second, third, and fourth chances," and concluded flatly: "Mr. Johnson does not care" and noting his "complete refusal to comply with my orders in this case." (*Id.* at 58:25-59:5, Appx. 067-68).

Against that backdrop, Johnson tells this Court he is medically unable to travel. But the facts say otherwise. In the weeks and months surrounding that claim, Johnson moved freely—from a court hearing in New York, to restaurants in Washington, D.C., to the San Diego Zoo, to a leisurely Easter weekend in Boston. On March 30, 2025, he even posted a photograph of himself behind the wheel of a convertible. The steering wheel is unmistakably visible, reflected in the lenses of his sunglasses and he is seated in the front-left driver's side seat. The photo was taken just two days before his scheduled court appearance in New York on April 2—a hearing he entered twenty minutes late, offering a perfunctory "sorry" and blaming his tardiness on Fuchs' disease. The court, unimpressed, responded that he was "[n]ot looking very sorry." (Tr. 2:5-16, Appx. 011). This is not the conduct of someone who is immobile. It is the conduct of someone who is evasive, which the travels below highlight:

- He appeared in court in New York City on January 8 and again on April 2.
- He posted from the San Diego Zoo on January 28.
- He attended the National Prayer Breakfast in Washington, DC, on February 6.
- He posted a photo of himself driving a car on March 30, with the steering wheel clearly reflected in his sunglasses.

- He posted Easter greetings from Boston, including photos from walking tours on April 20-21.

Johnson's conduct is not accidental, and it is not isolated. It is strategic, sustained, and corrosive to the administration of justice. The relief Plaintiffs seek through their motion to compel—third-party oversight and appropriate sanctions—is not only justified. It is long overdue.

Finally, Plaintiffs want to emphasize that they are in no way implying that current counsel for Johnson, Carter Boisvert, has any involvement or responsibility in Johnson's misconduct. In all interactions with counsel, Mr. Boisvert has been honest and candid and fully met the standards set forth in *Dondi Properties Corp. v. Commerce Savings & Loan Ass'n*, 121 F.R.D. 284, 287 (N.D. Tex. 1988) (en banc) (per curiam).

### A. Johnson's statements in the S.D.N.Y. show he can't be trusted—only court-appointed oversight and sanctions will compel compliance

As part of their motion to compel, Plaintiffs have asked the Court to appoint a neutral third-party vendor—at Johnson's expense—to review his electronic devices and accounts for responsive documents. That request is not just reasonable; it is necessary. Johnson cannot be relied upon to conduct that review himself, or even with the assistance of counsel. Plaintiffs made that point in their initial submission. Since then, the need for independent oversight has only grown. Plaintiffs have now obtained the transcript of Johnson's statements to the court in litigation pending in the Southern District of New York, where his refusal to engage meaningfully in discovery was made plain. That record has only sharpened the urgency of the relief Plaintiffs seek. What follows are specific examples, drawn from the April 2 hearing, of Johnson's refusal to engage in discovery, his repeated misrepresentations, and overall lack of respect for the judicial process—all which he made while represented by counsel.

- **Johnson falsely claimed he was instructed by DHS agents not to comply with discovery.**
  Court's response:
    - "You gave me names. I went to the top people at DHS, and they said they do not exist." (Tr. 25:9-10, Appx. 034 ).

    - "[N]either one was a DHS agent. One was not employed in any capacity at DHS. . . . And the other was the equivalent of a security guard. He's not an agent of DHS and certainly would not have the power to be a handling agent." (Tr. 25:15-21, Appx. 034).

- **Johnson accused the Court of participating in a "scam."**
  Court's response:
    - "You've accused me of using my office to perpetrate a scam against you. That seems bad." (Tr. 23:21-23, Appx. 032).
    - "Sir, I'm not nearly as stupid as you take me to be. . . . I'm not part of anyone's scam." (Tr. 24:2-4, Appx. 033).

- **Johnson refused to respond to his counsel's request to assist with discovery, even after a court order**
  Defense Counsel:
    - "I sent all the [discovery] documents, the original demands from [opposing] counsel and your order, and so forth, to my client. I never received a response, Judge." (Tr. 39:12-14, Appx. 048 ).

  Court's Response:
    - "Hmm, that seems bad." (Tr. 39:15, Appx. 048).

- **Johnson and his counsel admitted they had not searched for documents even though search terms had been agreed to**
  Court's response:
    - "Everything is already due. There's no excuse for this not to have been produced. . . . "[R]ight now you're in complete violation of my order." (Tr. 33:24-34:3, Appx 042-43),

The record from the April 2, 2025 hearing before Judge Failla leaves no doubt: Johnson cannot be trusted to comply with discovery obligations, to search his own files, or to engage in this process with good faith. And that was in a federal case where Johnson was represented by an experienced attorney. Even under professional supervision, he admitted that no search had been conducted, refused to assist his attorney in complying with discovery, misled the Court, and defied court orders without remorse.

4

There is no reason—none—to believe the situation will improve here. Johnson is now either proceeding pro se or on his third lawyer in this matter. The revolving door of counsel, coupled with his established pattern of deception and evasion, makes clear that the Court cannot rely on Johnson to self-police. The only path forward that protects the integrity of this case is the one Plaintiffs have proposed: a neutral third-party vendor, operating under court authority, must be tasked with the collection and review of Johnson's documents. Nothing short of that will ensure compliance, fairness, and truth.

**B. Johnson's apparent fabrications about the severity of his medical condition reinforces the need for sanctions and court-appointed oversight.**

Johnson now tells this Court that a "debilitating medical condition" makes it "impossible" for him to travel or appear in person, citing a note from a Houston-based doctor—despite a prior affidavit where Johnson swore he never lived in Texas during the relevant time period of this case. *See* Ex. B, Appx. 078; ECF 14-2). But his own social media posts tell a different story—and cast serious doubt on the truthfulness of that claim. Johnson's claim that he is medically unable to travel cannot be reconciled with his own conduct. Since making that representation to the Court, Johnson has documented a series of trips—often in real time—on social media. These posts depict him traveling across the country, attending events, dining out, and, in at least one instance, driving a car. They form a sustained pattern of mobility inconsistent with the representations Johnson has made to this Court, which reinforces the need for third-party oversight and sanctions. These examples, shown below, are not isolated incidents.

**January 7, 2025:** Johnson posts photo at the Yerevan Restaurant in Washington, DC.[1]



**January 8, 2025**: Johnson appears at hearing before Judge Failla in New York City.

**January 28, 2025**: Johnson posts a photo of himself at The San Diego Zoo.[2]



---

[1] https://substack.com/@charlesjohnson/note/c-84960277
[2] https://substack.com/@charlesjohnson/note/c-89246607

**February 6, 2025**: Johnson attends National Prayer Breakfast in Washington, DC and posts about it on February 11, 2025[3]



---

[3] https://charlesjohnson.substack.com/p/at-the-national-prayer-breakfastand

**March 30, 2025**: Johnson posts a Substack Note: "Nothing like the Drive Back" with an image of himself in the driver's side seat with the steering wheel visible as a reflection in his sunglasses.[4]





**April 2, 2025**: Johnson appears before Judge Failla in New York City.

**April 15, 2025**: Johnson makes a Substack post suggesting he resides in Washington, DC noting "I'm once again trapped in the Imperial Capital."[5]

---

[4] https://substack.com/@charlesjohnson/note/c-104669202
[5] https://charlesjohnson.substack.com/p/president-trumps-tariffs-tell-the

8

**April 20, 2025**: Johnson posts "Happy Easter from my hometown."[6] Johnson grew up in the Boston area.[7]



---

[6] https://substack.com/@charlesjohnson/note/c-110557522
[7] https://www.politico.com/magazine/story/2014/12/charles-johnson-a-digital-darth-vader-113522/
("Charles Johnson grew up down the street from the home of Massachusetts Gov. Deval Patrick and attended prep school at the elite Milton Academy.")

9

**April 21, 2025**: Johnson makes two posts indicating he is in the Boston Massachusetts area. One of himself at Mt. Auburn Cemetery in Cambridge, Massachusetts,[8] and a second at the Granary Burying Ground in Boston, and a picture of himself with a "Boston by Foot"[9] walking tour sticker.





## CONCLUSION

Johnson's misrepresentations are not harmless errors. They are deliberate falsehoods aimed at evading discovery and undermining this Court's authority. Plaintiffs respectfully request that the Court supplement the record with this evidence, grant their motion to compel, impose appropriate sanctions, and appoint a third-party vendor to ensure compliance with discovery obligations that Johnson has repeatedly and willfully ignored.

Dated: May 7, 2025

Respectfully submitted,

/s/ *Will Thompson*
Will Thompson
DLA PIPER LLP (US)
Will Thompson
State Bar No. 24094981
will.thompson1@us.dlapiper.com
1900 N. Pearl Street
Dallas, Texas 75201
Telephone: (406) 546-5587

COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with counsel for the defendant, Carter Boisvert. Mr. Boisvert was not opposed to supplementing the record and was previously aware of the relief that Plaintiffs seek.

*/s/ Will Thompson*
Will Thompson

---

[8] https://substack.com/@charlesjohnson/note/c-110969323. Based on information from findagrave.com, the headstone for Charles Marden Brockunier, which Johnson is posing in front of, is located at the Mount Auburn Cemetery in Cambridge, Massachusetts. (*See* https://www.findagrave.com/memorial/259053093/charles-marden-brockunier; Thompson Declaration, Ex. 1 at ¶5).

[9] https://substack.com/@charlesjohnson/note/c-110902832

11

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2025, a true and correct copy of the foregoing document was filed electronically using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Will Thompson*
Will Thompson