# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **Point Bridge Capital, LLC,** | § | |
| **Hal Lambert** | § | |
| | § | |
| _**Plaintiffs**_, | § | |
| **v.** | § | **Case No. 4:24-cv-00988-P** |
| | § | |
| **Charles Johnson,** | § | |
| _**Defendant.**_ | § | |
| | § | |
| | § | |

**<u>DECLARATION OF WILL THOMPSON</u>**

I, Will Thompson, declare as follows. I am an attorney admitted to the State Bar of Texas and this Court and a partner at the law firm of DLA Piper LLP. I am attorney of record for the plaintiffs in the above captioned action. I am over the age of twenty-one years and am not a party to this action. I have personal knowledge of the facts set forth in this declaration. I declare under penalty of perjury that the facts stated in this document are true and correct.

1.      Exhibit A attached hereto is a true and correct copy of the April 2, 2025 hearing transcript in the matter _Johnson v. Clearview AI, Inc._, No. 1:23-cv-2441 (S.D.N.Y. Apr. 2, 2025). I did not obtain this document until after the plaintiffs' motion to compel was filed.

2.      Exhibit B attached hereto is an image attachment from an email that Charles Johnson sent on Tuesday, April 29, 2025, copying the undersigned and copying among others, Pittman_orders@txnd.uscourts.gov .

3.      Exhibit C attached hereto is a true and correct copy of "Plaintiffs served their First Set of Requests for Production" in this matter, which were served on January 31, 2025.

1

Appx. 002

4.    The pictures included in the Plaintiff's motion were downloaded from Johnson's social media and are unaltered in any way. Those pictures, along with their URLs, are included below.

https://substack.com/@charlesjohnson/note/c-84960277



https://substack.com/@charlesjohnson/note/c-89246607



Appx. 003

https://charlesjohnson.substack.com/p/at-the-national-prayer-breakfastand

**Charles Johnson's Thoughts and Adventures**

## At the National Prayer Breakfast...and In Conversation and in Solidarity with My Middle East Christian Friends

And a much needed discussion of the "Jesus We Haven't Heard Yet"

 CHARLES JOHNSON
FEB 11, 2025

 ♡ 17    ⬭ 2    ⇄ 2                    Share



Massad Boulos, President Trump's special advisor on Arab and Middle Eastern Affairs

3

https://charlesjohnson.substack.com/p/president-trumps-tariffs-tell-the





4

https://substack.com/@charlesjohnson/note/c-110557522"



5

https://substack.com/@charlesjohnson/note/c-110969323



https://substack.com/@charlesjohnson/note/c-110902832



6

5.      Based on information from findagrave.com, the headstone for Charles Marden Brockunier, which Johnson is posing in front of, is located at the Mount Auburn Cemetery in Cambridge, Massachusetts. (*See* https://www.findagrave.com/memorial/259053093/charles-marden-brockunier).

My name is Will Thompson, my date of birth is November 20, 1982, and my business address is 1900 N. Pearl Street Dallas, Texas 75201, and USA. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Dallas County, State of Texas, on May 7, 2025.


_____*/s/ Will Thompson*_____
                Will Thompson

7

# Exhibit A

F43Wjohc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   CHARLES JOHNSON,

4                 Plaintiff,

5            v.                              23 Civ. 2441 (KPF)

6   CLEARVIEW AI, INC., *et al.*,

7                 Defendants.
                                            Conference
8   ------------------------------x
                                            New York, N.Y.
9                                           April 2, 2025
                                            12:20 p.m.
10
    Before:
11
                    HON. KATHERINE POLK FAILLA,
12
                                            District Judge
13

14                        APPEARANCES

15  BERNARD V. KLEINMAN
         Attorney for Plaintiff
16
    GORDON REES SCULLY MANSUKHANI LLP
17       Attorneys for Defendants
    BY:  MALLORY J. BENNER
18       RONALD A. GILLER

19

20

21

22

23

24

25

F43Wjohc

```
 1          (Case called)
 2          THE COURT:  Mr. Johnson, is there something wrong with
 3   the courtroom that causes the need to wear sunglasses, sir?
 4          MR. JOHNSON:  Yes.  I have Fuchs disease, your Honor.
 5          THE COURT:  All right.  Does that explain why you were
 6   20 minutes late for the conference today?
 7          MR. JOHNSON:  It does.  I got the last train after
 8   meeting with some people, and got the last train and got here.
 9   And it's very hard to see in New York.  It's a very difficult
10   city to navigate when you're not from here, especially with bad
11   vision.
12          THE COURT:  This conference has been scheduled for a
13   while.  There's really no reason for you to be this late for
14   it, sir.
15          MR. JOHNSON:  OK.  Sorry.
16          THE COURT:  Not looking very sorry.
17          All right.  Mr. Kleinman, I'm taking appearances now.
18          MR. KLEINMAN:  I'm sorry.  Bernard Kleinman, on behalf
19   of Mr. Johnson.
20          THE COURT:  All right.  Thank you.
21          MR. KLEINMAN:  Thank you, Judge.
22          THE COURT:  Mr. Giller and Ms. Benner.
23          MS. BENNER:  Good afternoon, your Honor.  Mallory
24   Benner, from Gordon Rees on behalf of defendant Clearview.
25          THE COURT:  Thank you so much.
```

```
 1              MR. GILLER:  Good afternoon, Judge.  Ron Giller, also
 2    on behalf of the defendant.
 3              THE COURT:  Thank you.
 4              As between the two of you, to whom should I be
 5    directing my questions?
 6              MS. BENNER:  Me, your Honor.
 7              THE COURT:  Thank you so much.
 8              Can I ask you to remain standing, Ms. Benner.
 9              Ms. Benner and then Mr. Kleinman as well, thank you.
10              Ms. Benner, there are three issues on the docket for
11    today.
12              MS. BENNER:  Correct, your Honor.
13              THE COURT:  And the first is the issue of sanctions.
14              MS. BENNER:  Correct.
15              THE COURT:  And the second is the issue of discovery.
16              MS. BENNER:  Correct.
17              THE COURT:  And the third is the issue of a possible
18    motion to dismiss.
19              MS. BENNER:  Correct, your Honor.
20              THE COURT:  From your perspective, is there anything
21    else that I should be addressing with the parties today?
22              MS. BENNER:  No, your Honor.
23              THE COURT:  Mr. Kleinman, sir, from your perspective,
24    are there other things I should have on the agenda today?
25              MR. KLEINMAN:  My client wishes to make a statement,
```

4

F43WJohC

1    as he has in the past.

2            Of the three issues that you mentioned, those are the

3    three legal issues that I think are before the Court -- my

4    request to file a 12(b)(1) motion and the two discovery issues,

5    Judge.

6            THE COURT:  OK.  And your client wishes to make a

7    statement when, sir?

8            MR. JOHNSON:  As soon as possible.

9            MR. KLEINMAN:  As soon as possible.  Now or when we're

10   done, Judge.

11           THE COURT:  All right.  I'll let him do it now.

12           Please bring the microphone closer to you, sir --

13           MR. JOHNSON:  Sure.

14           THE COURT:  Go ahead, Mr. Johnson.

15           MR. JOHNSON:  Do you need me to stand, or be seated's

16   fine?

17           THE COURT:  I'll let you be seated if you're having

18   difficulty --

19           MR. JOHNSON:  Thank you.

20           THE COURT:  -- with your vision and other things.

21           MR. JOHNSON:  Yes.  So thank you for your attention

22   today, and please accept my apologies.  It's been a lot, this

23   whole -- this whole thing has been a lot.

24           So since we last saw one another, a lot of things have

25   happened at Clearview.

1          THE COURT:  I'm going to ask you to slow down just so

2     the court reporter and I --

3          MR. JOHNSON:  Oh, of course.

4          THE COURT:  Thank you.

5          MR. JOHNSON:  Yeah.  Sorry.  Sorry.

6          THE COURT:  Yes.

7          MR. JOHNSON:  So since we last saw one another, a lot

8     of things have happened at Clearview, which, to my mind,

9     substantiate that I'm not a cofounder of the company.  The CEO

10    has abruptly departed, and I'm sure you're aware of the recent

11    judicial ruling in Illinois that makes it appear that I'm not

12    and likely was never involved in the company beyond as a mere

13    investor.  It really doesn't matter what I think my role within

14    the company is because if I were a shareholder, wouldn't I be

15    included among the list of people responsible for Clearview's

16    malfeasance, like in the Illinois case?  But I'm not included

17    on that list.  So I'd like your Honor's judgment on this matter

18    because it's a bit -- it's a bit confusing, to be honest, to

19    have one courtroom going in one direction and another going in

20    another.

21          So, you know, I've gone through a lot of things over

22    the years.  I've had a lot of conversations with people about

23    this case.  And after a lot of consultation, I think it's clear

24    that Clearview was right not to see me as a cofounder.  I mean

25    its real cofounders told The Washington Post, and many other

1    reporters for that matter, that I was never involved in the

2    company.  And that's not strictly true.

3                    THE COURT:  Slow down, please.

4                    MR. JOHNSON:  Oh, sure.  Forgive me.

5              That's not strictly true, because I was a shareholder

6    and I did help the company raise money.  But I did that on

7    certain expectations that were not really true.  They're not

8    really borne out.  And I think that explains -- just, like,

9    logically I think that explains why I wasn't really able to

10   sell the products, because the agreement that we had really

11   wasn't really a real agreement.  So I'm left with one of two

12   conclusions:  Either I am a cofounder, in which case I should

13   be included on that list of people responsible for Clearview's

14   malfeasance, which would be really terrible for me given that I

15   had no role in the day-to-day operations of the company.

16                    THE COURT:  Slow down, please, sir.  Thank you.

17                    MR. JOHNSON:  Sure.

18             Or I'm not one.  And then it raises a lot of questions

19   about, you know, the -- my own communications with the company,

20   because if I'm -- you know, if I'm communicating with the

21   company based upon wrong assumptions, or some might even say

22   lies, about my status within the company, then it's really

23   unfair to the people who I've communicated with because they're

24   being compounded in that lie.  You see?

25             So does that make sense?

F43WJohC

```
 1              THE COURT:  Well, in part.  I want you to understand
 2   what you think it does for this case, sir.
 3              MR. JOHNSON:  Well, I think it's extremely -- it makes
 4   it either makes it extremely complicated or extremely simple,
 5   so -- obviously that's up to your Honor's judgment, but you did
 6   ask me my opinion.
 7              THE COURT:  No, I didn't.
 8              MR. JOHNSON:  Oh, sorry.
 9              THE COURT:  Let me be more specific.
10              MR. JOHNSON:  Yeah, sure.
11              THE COURT:  Your counsel advised me that you wished to
12   speak to me.
13              MR. JOHNSON:  Yes.
14              THE COURT:  I have let you speak to me.
15              MR. JOHNSON:  Yes.
16              THE COURT:  You've spoken about an Illinois case that
17   is not my case.
18              MR. JOHNSON:  Yes, ma'am.
19              THE COURT:  You've spoken about the possibility or the
20   concern about inconsistent findings, perhaps, among the courts.
21              MR. JOHNSON:  Yes.
22              THE COURT:  And I want to understand why you are
23   speaking to me this morning about the Illinois case and why you
24   are speaking to me this morning about the topics on which
25   you're speaking.  I'm imagining that there's going to be "and
```

F43WjohC

1    therefore, X."

2           MR. JOHNSON:  Oh, OK.

3           THE COURT:  So --

4           MR. JOHNSON:  Sure.

5           THE COURT:  And therefore, what?

6           MR. JOHNSON:  And therefore, it seems to me that the

7    judge in the Illinois case -- this case came out a few days

8    ago.  It's fairly lengthy.  I finished it last night, finished

9    reading it last night.

10          I think the logic of that case means that I'm not a

11   cofounder, and so if I'm not a cofounder, then certainly I

12   can't enter into promises with people or business relationships

13   with people if I'm not a cofounder.  Right?  Just logically.

14          MR. KLEINMAN:  Judge, if I may intercede here for a

15   moment?

16          THE COURT:  Yes, sir.

17          MR. KLEINMAN:  Thank you, your Honor.

18          I think also I wasn't aware of this Illinois case, and

19   I haven't read the decision.

20          THE COURT:  Were you aware that your client was going

21   to speak about it this morning?

22          MR. KLEINMAN:  Yes, I was.  OK?

23          THE COURT:  OK.

24          MR. KLEINMAN:  I have not read the decision, but I

25   mean there's also -- if there was a decision in Illinois, in

1    the district court, that found that Mr. Johnson was not a

2    founder or not a principal of Clearview, then there are

3    questions that I would need to look into -- whether the

4    contract that he executed with Clearview, which is the basis

5    for this litigation, whether he even had the capacity to enter

6    that contract, and if he did not have the capacity to enter

7    that contract, then I don't know.  There may be questions about

8    whether there would be a basis for him breaching the contract

9    because he never had that capacity to begin with.  So I mean

10   I'm working kind of in the blind here, Judge.

11             THE COURT:  Yes.

12             MR. KLEINMAN:  I think maybe we all are.  But I don't

13   know what that decision was, and I'm not sure how it would

14   impact this litigation.  When I raised the issue --

15             THE COURT:  Just one moment, please, sir.

16             MR. KLEINMAN:  Yeah, sure.

17             THE COURT:  Obviously your client's claims are

18   withdrawn.  It wouldn't change them.  They're not being

19   reinstated.  What you're suggesting, sir, is it would impact

20   the resolution of the counterclaims.

21             MR. KLEINMAN:  Absolutely, Judge, because that's

22   purely based -- the only claim there was breach of contract.

23   There's no other claim in that counterclaim.  It's a one-count

24   breach of contract.  If my client never had the capacity to

25   enter that contract to begin with, then there's no way he could

```
 1    have breached the contract, because from the beginning, the
 2    contract would have been void *ab initio*.  But I don't know.  I
 3    haven't briefed this.  I don't know what the law is.  I don't
 4    know if the law is different in Illinois or New York, or
 5    wherever.  But I just -- I'm just raising this as an issue that
 6    is -- just came upon me, and I just, just want to just give you
 7    some sense of what my position may be.  OK?
 8              THE COURT:  Sir --
 9              MR. KLEINMAN:  I'm not committing myself.
10              THE COURT:  No.  That's obvious.  Yes.
11              All right.  Thank you.
12              Mr. Johnson, was there something you wanted --
13              MR. JOHNSON:  Yes.  It's terribly confusing, because
14    if -- if your Honor is not in agreement with the other judge,
15    whom I don't know -- I've never sat before her; I've never
16    spoken to her.  If, if you're in conflict, I don't know what to
17    do, your Honor.
18              THE COURT:  All right.
19              MR. JOHNSON:  I mean it's very confusing, and I've
20    been trying to figure it out.  And it leads to stress, which
21    triggers Fuchs.  So this is why I'm kind of stuck here, if that
22    makes sense.
23              THE COURT:  I understand.
24              MR. JOHNSON:  OK.
25              THE COURT:  I understand that that's your position.
```

F43wjohC

1   Thank you.

2            Ms. Benner, do you want to be heard on this issue?

3            MS. BENNER:  Yes, your Honor.

4            THE COURT:  OK.

5            MS. BENNER:  Your Honor --

6            THE COURT:  And I'll ask you the same thing.  For

7   court reporter and judge, everyone please speak slowly and

8   clearly because the courtroom acoustics are horrible.  Thank

9   you.

10           MS. BENNER:  Thank you, your Honor.

11           THE COURT:  Thank you.

12           MS. BENNER:  I mean, first and foremost, this is not

13  before the Court.  This is the first time we're hearing of

14  this.

15           THE COURT:  Are you aware of this decision?

16           MS. BENNER:  No, your Honor.

17           THE COURT:  And I am not either.  I have not read it,

18  because Mr. Johnson doesn't seem to realize I have 300 cases of

19  my own, and therefore, I'm not focusing on the decisions of

20  other judges.  But certainly I will look into it.  Had I been

21  advised, perhaps, before this moment, I would have looked at

22  it.  So you don't know whether it applies or doesn't apply or

23  how it applies to this case.

24           MS. BENNER:  No, your Honor, but at the same time, you

25  know, it's our position that it would be irrelevant anyway.

F43WjohC

| | |
|---|---|
| 1 | This is a contract between the parties that Mr. Johns entered |
| 2 | into in his individual capacity.  There's no reference to his |
| 3 | status as a cofounder or, you know, his involvement with |
| 4 | Clearview in the contract.  It clearly states that he's -- |
| 5 | THE COURT:  Slow down, please. |
| 6 | MS. BENNER:  It clearly states that he's entering into |
| 7 | the contract in his individual capacity.  So we don't see how |
| 8 | it's relevant whether or not he's a cofounder and how that has |
| 9 | an impact on the counterclaims in this case. |
| 10 | THE COURT:  All right.  I understand that.  And I'm |
| 11 | sure the folks at the front table hold a different view, and I |
| 12 | understand Mr. Johnson's view is one of trying to prevent |
| 13 | inconsistent findings, which I do understand. |
| 14 | All right, Mr. Johnson, sir, you know the most about |
| 15 | this case than any of this.  What is the caption of the case, |
| 16 | please?  Do you know the name of the case, the Illinois case? |
| 17 | MR. JOHNSON:  I'm unfamiliar, but it's Judge Coleman, |
| 18 | is the woman's -- |
| 19 | THE COURT:  All right. |
| 20 | MR. JOHNSON:  It's Sharon Coleman, and it's *ACLU v.* |
| 21 | *Clearview.* |
| 22 | THE COURT:  *ACLU v. Clearview.* |
| 23 | MR. JOHNSON:  It's a Northern District of Illinois, |
| 24 | and I've read it twice.  I'm not a lawyer.  I -- you know, I |
| 25 | took common law, barely.  You know, I don't know.  Forgive me. |

1          THE COURT:  But, sir, you have an attorney.

2          MR. JOHNSON:  Yeah, for -- obviously.  But I've had it

3   looked at by a lot of friends who are attorneys and I've had

4   it -- I mentioned it to Bernie the other day.  It just came out

5   a few days ago, your Honor.  There's a lot of things going on

6   in it, from what I understand.  It's been written about a lot

7   in the media and analyzed, so it's --

8          THE COURT:  I guess what's confusing to me, sir -- and

9   of course, we'll find the case and be looking at it -- is how

10  the ACLU would be filing a lawsuit as to which your status or

11  not as a cofounder would matter.

12         MR. JOHNSON:  Oh.  This is why, your Honor.  This is,

13  as I understand it, and forgive me if I'm mistaken, but this is

14  what I understand of it.

15         So the company is in trouble for a number of

16  malfeasance issues when it comes to breaking the law in terms

17  of privacy, being generally dishonest, some might even say

18  lying about other --

19         THE COURT:  You realize everything you say, sir,

20  brings you closer and closer to sanctions.

21         MR. JOHNSON:  I'm well aware.  I'm just repeating what

22  is in -- from my interpretation of what's there.

23         THE COURT:  I'm not sure the word "malfeasance" is

24  there.  Is that in the decision?

25         MR. JOHNSON:  I think it is, your Honor, but I'm not

```
 1    100 percent sure.

 2              THE COURT:  OK.  We'll be looking for it.

 3              MR. JOHNSON:  Maybe we should all read the decision

 4    and come back.  Or I don't know, but --

 5              THE COURT:  All I'm saying is be careful how you

 6    interpret things.

 7              MR. JOHNSON:  OK.  So let me -- can I step back a

 8    second?

 9              THE COURT:  Please.

10              MR. JOHNSON:  OK.  So if it is true that a company --

11    this is hypothetically.  If a company is in trouble with

12    violating certain aspects of the law and certain aspects of

13    being truthful, then it stands to reason logically that they

14    might be not truthful in other matters as well.  And maybe one

15    of those things that they're truthful on is whether or not I

16    was actually even able to enter into that contract in the first

17    place.

18              Do you follow my logic?

19              THE COURT:  I do, sir, except once again, I can see a

20    world, a hypothetical, in which a lawsuit is brought against

21    Clearview but not against its founders.  And therefore, I'm not

22    sure that that lawsuit resolves fully and finally the issue of

23    who the founders are or resolves the issue of your capacity to

24    contract as a cofounder of Clearview.  But your colleagues at

25    the back table said to me that you entered into the contract in
```

F43WJohC

```
 1   your individual capacity.

 2           MR. JOHNSON:  Right, but based upon the assumption

 3   that I was, in fact, a cofounder.

 4           THE COURT:  But if it doesn't say that, I don't know

 5   why -- that's what they're saying, and I'll have to look at the

 6   contract --

 7           MR. JOHNSON:  Yes.

 8           THE COURT:  -- is that it was done, again, in your

 9   individual capacity.

10           Just one moment, please, because I'm looking at it

11   right now.

12           The decision is In Re Clearview AI Inc. Consumer

13   Privacy Litigation.  I see it's Northern District of Illinois,

14   case No. 21 Civ. 135, document 631, issued March 20, 2025.  I

15   don't mean to make folks wait here, but let me just look at

16   this for a moment, please.

17           It is a class action settlement.  In this action,

18   Mr. Ton-That and Mr. Schwartz are listed as the cofounders, and

19   Mr. Johnson is not listed as a defendant in this.

20           The word "malfeasance" is nowhere found.

21           MR. JOHNSON:  Forgive me.

22           THE COURT:  Ms. Noriega, could I trouble you to print

23   out a copy for the front table and the back table, please.

24           I won't make you all read it, but I'm glancing at this

25   right now.  What I understand this to be, and I could be proven
```

F43WjohC

```
 1   wrong, is this is a final settlement of a class action.  It's
 2   the fairness hearing and the inquiry that one makes as part of
 3   the settlement of a class action.  I don't know, but I would be
 4   surprised if there are actually findings about misconduct on
 5   the part of Clearview, because often, class actions of this
 6   type -- and it's about access to biometric data.  Certainly I'm
 7   not seeing anything about foreign powers having an influence in
 8   this, but to me, it's the fairness inquiry that I do when I do
 9   a class action settlement.
10           For those of you who do not do these things, there are
11   factors regarding the fairness of the settlement and then there
12   are also factors regarding the fairness of an attorney's fee
13   award.  That's what I'm seeing.  I'm not sure.
14           MR. JOHNSON:  As I -- if I --
15           THE COURT:  Thank you, sir.
16           Mr. Johnson, I'm not sure it is dispositive of the
17   issue of whether you were or were not a cofounder.  I just
18   don't know that.  But OK.
19           We're talking about the same decision; yes, sir?
20           MR. JOHNSON:  Yes, we are.
21           THE COURT:  All right.  I understand, and I'll give
22   everyone a copy.  I don't think -- it might impact
23   Mr. Kleinman's discussion with me about the motion to dismiss
24   he wants to file.  Maybe.  I don't know, but we'll talk about
25   that.
```

1           Let's move on to some other things.  Mr. Johnson,

2   again, do I have everything you wanted to tell me about this

3   case?

4           MR. JOHNSON:  Yes, ma'am.

5           THE COURT:  OK.

6           MR. JOHNSON:  If I may, just one final point, if

7   that's possible?

8           THE COURT:  Yes, sir.

9           MR. JOHNSON:  Well, it follows -- as I understand it,

10  this is a very unusual, novel application of the law.  And from

11  what I read online about it -- forgive me.  I'm -- again, I'm

12  not an attorney.  You know, from -- but from what I understand,

13  and I've even taken it to, as I said, other attorneys and they,

14  too, are kind of -- that it's a very novel application of rules

15  around biometrics and tort law or in terms of class actions.

16  And you'll notice that in this particular case, from what I

17  understand, and I could be wrong about this -- again, I'm not

18  an attorney, but from what I understand, is that it's a very

19  novel case, and so because of that, I'd like to have it looked

20  at even more, given what implications it may have for this

21  case.  And it seems to me that it likely would have some

22  applications to this case, because it seems likely that the two

23  cofounders -- I think they're named defendants in this, but I

24  could be wrong on that.

25          THE COURT:  OK.

1          MR. JOHNSON:  And if they are, then it raises a lot of

2     interesting questions about this case and about how other

3     things are going to be paid for and, you know, all that.

4          THE COURT:  But there is no admission of fault by

5     Clearview in this case.  Correct?

6          MR. JOHNSON:  I don't know.

7          THE COURT:  I don't see one.  It's a settlement, but I

8     don't see that there's an admission of liability.  I don't see

9     that Clearview's saying we did wrong, and so I'm not sure.

10          I think we should stop at the moment hypothesizing at

11     the moment about how it might impact this case until everybody

12     gets to read it carefully, including the judge.  You are of the

13     view that it might or indeed that it does.  Your attorney would

14     like to know.  The folks at the back table would also like to

15     know.  I'm not sure, therefore, that it's useful to talk about

16     its applicability today --

17          MR. JOHNSON:  Sure.

18          THE COURT:  -- because I'm not going to take a break

19     to have us read it.  So let's move on with other things.

20          MR. JOHNSON:  Thank you, your Honor.

21          THE COURT:  All right.

22          Ms. Benner, returning to you, please, on the issue of

23     sanctions, I have the letters that I have, and I don't

24     really -- if more has happened, I guess I want to know.  If

25     more has not happened, I want the briefest of arguments,

1    because you've already given it to me in writing, and I don't

2    want to waste everyone's time just repeating what's already in

3    writing, not to suggest time is being wasted.

4             Go ahead, Ms. Benner.

5             MS. BENNER:  Sure, your Honor.

6             As far as we know, since our submissions, there hasn't

7    about this anything else that's brought to our attention, so as

8    of now, that's all we have.  But with that, I know your Honor's

9    well aware, as we discussed at our prior conference, the Court

10   has inherent authority to issue sanctions for bad faith conduct

11   in this case.  And here, plaintiff is clearly acting in bad

12   faith.  He's intentionally violating court orders by placing

13   false harassing statements about defendants as well as defense

14   counsel.

15            THE COURT:  Is my only basis inherent authority, or do

16   I have anything from the Rules of Civil Procedure?

17            MS. BENNER:  Your Honor --

18            THE COURT:  I'm just asking.  I don't know.  I'm

19   asking this, and this isn't a rhetorical question.  I don't

20   know that this is a situation where Rule 37 would come into

21   play because it's somehow related to discovery.

22            Your view is it's inherent power.

23            MS. BENNER:  Your Honor, with respect to these

24   statements, I believe it's just on the basis of inherent

25   authority, but there is the issue of sanctions for failure to

1    comply with discovery that we'd like to address, as I'm sure

2    your Honor will address later in this hearing.  But for the

3    purposes of just these statements, we're just going off of

4    inherent authority at this point.

5         THE COURT:  All right.  In the Rule 37 context, there

6    is a case that I know of -- that is, *Agiwal*, and that tells me

7    to consider the willfulness of the noncompliance, the efficacy

8    of lesser sanctions, the duration of noncompliance and the

9    warning of consequences of noncompliance.

10         In the inherent powers context, is the analysis

11   different?

12         MS. BENNER:  It's the same, your Honor.

13         THE COURT:  It's the same.  OK.

14         All right.  So is that it on the issue of sanctions?

15   I didn't mean to cut you off.

16         MS. BENNER:  No, no.  It's OK, your Honor.

17         The only thing I just would like to note is I think

18   your Honor made very clear, especially with comments about

19   defense counsel, your Honor had told plaintiff, in person, that

20   any comments about defense counsel, no matter how benign, the

21   Court would take as a threat to intimidate and undermine the

22   Court's orders.  And despite that being clear two months ago,

23   plaintiff did just that, and the comments were far from benign,

24   as I'm sure your Honor saw.

25         So we're here again today to request sanctions.  This

1    conduct has gone on for two years now, and despite multiple

2    warnings, in-person conferences, at this point we think there's

3    nothing left to do but to issue sanctions in this case.

4              THE COURT:  All right.

5              Mr. Kleinman, you disagree.

6              MR. KLEINMAN:  Well, I think as far as the issue about

7    any comments that Mr. Johnson may have made, I'm not sure if

8    any of them go beyond the point of him merely expressing

9    opinions which have already been made by third parties, like

10   Bloomberg Business, and so forth, about Clearview.  I don't

11   recall if there were any specific comments about Mr. Giller

12   or --

13             THE COURT:  "Giller is really mad that I've been very

14   politely but very firmly refusing to be gagged by him and his

15   firm.  What part of 'I won't be gagged when I'm whistle-blowing

16   about a corrupt foreign-backed company' do you not get?  God,

17   take the L, man."

18             MR. KLEINMAN:  Take the what, Judge?

19             THE COURT:  "Take the L," the loss.

20             MR. KLEINMAN:  Oh, oh.  OK.

21             THE COURT:  Take the L.

22             MR. KLEINMAN:  Oh, I'm not --

23             THE COURT:  You've got to be in on --

24             MR. KLEINMAN:  -- up on the colloquialism.

25             THE COURT:  That's to Mr. Giller; that's directed to

F43WJohC

 1    him.

 2            MR. KLEINMAN:  That is directed to Mr. Giller, but I

 3    don't know if it's --

 4            THE COURT:  "You should really withdraw from the case

 5    with what's left of your reputation, but I think we both know

 6    why you can't do that."

 7            MR. KLEINMAN:  You know, it's -- it's, it's not

 8    something that I -- that I would ever do.  Or it's not

 9    something that a lot of people would do, but I think at the

10    same time, it's merely a party to the litigation venting some

11    frustration, and I don't know that there is any --

12            THE COURT:  "Is Mr. Giller trying to throw the kitchen

13    sink at me now?  Perhaps on behalf of a foreign government?

14    Gosh, I really hope not."

15            On behalf of a foreign government?

16            MR. KLEINMAN:  Well, I don't know if he quite said it

17    that way, Judge.  OK?  I still -- I can read it, but I don't

18    know the --

19            THE COURT:  Oh, please.

20            MR. KLEINMAN:  -- intonation and so forth.

21            THE COURT:  Don't.  Don't.  Don't.

22            MR. KLEINMAN:  I just think --

23            THE COURT:  To use your client's expression, "take the

24    L."

25            MR. KLEINMAN:  All right.

1          MR. JOHNSON:  Your Honor, if I may?

2          THE COURT:  No.  You've said so much, sir.

3          MR. JOHNSON:  Forgive me.

4          MR. KLEINMAN:  No, but I don't know that those

5     statements actually merit a, some type of a sanction, and if

6     there was a sanction, I think there should be a -- sanctions

7     should be given in a, different levels:  If you violate this

8     sanction --

9          THE COURT:  Agreed.

10         MR. KLEINMAN:  -- then you're, you know, you're going

11    to get one whack.  If you violate this sanction, then you're

12    going to get 18 whacks, and a third sanction, you'll get heel

13    holed.

14         THE COURT:  Sir, we don't use that.  OK?

15         Also, your client accused me of being part of a scam.

16         MR. KLEINMAN:  Sorry, Judge?

17         THE COURT:  And he's shaking his head now.  He

18    believes me to be part of a scam.

19         MR. JOHNSON:  It's not your Honor's fault.  It's -- if

20    I may?

21         THE COURT:  No.  You've made your point, sir.  You've

22    accused me of using my office to perpetrate a scam against you.

23    That seems bad.  No.  That's OK.  That's what you wrote.

24         MR. JOHNSON:  To be precise about it, if I can, a scam

25    that you may not be necessarily -- you may be the victim of it

 1   as well as I was.

 2          THE COURT:  Sir, I'm not nearly as stupid as you take

 3   me to be.  I myself do not feel as though I've been misled by

 4   the defense team.  I'm not part of anyone's scam.

 5          MR. JOHNSON:  Sure, but your Honor, we have many cases

 6   now that are coming out -- you have Theranos, of Biome, of

 7   WireCard -- in which counsel will sue.  People are talking

 8   openly and publicly about fraudulent conduct on behalf of

 9   companies, and this is becoming a routine thing.  It's

10   something that's talked about all the time at the SEC, and it's

11   a real concern, and so --

12          THE COURT:  Mr. Johnson, where are your DHS agents?

13   They don't exist.

14          MR. JOHNSON:  Your Honor, there's -- I believe, your

15   Honor -- and I checked on this -- there's over 300, 400 Alex

16   Rodriguezes in the Department of Transportation alone.  And in

17   fact, I did --

18          THE COURT:  You gave me Department of Homeland

19   Security.

20          MR. JOHNSON:  I did.

21          THE COURT:  There was one.  One, sir.

22          MR. JOHNSON:  Well, this is what he told me after he

23   and I spoke after this court proceeding last time.  But I'm

24   happy to give the phone number again, and you're free to call

25   him.

F43WJohC

```
 1              THE COURT:  He's not a real DHS agent.  He's only --

 2              MR. JOHNSON:  No.  No.

 3              THE COURT:  One of them doesn't work for DHS.  The

 4    other one is effectively a security guard at an office.

 5              MR. JOHNSON:  No, your Honor.  That's not -- that's

 6    incorrect.  And I will tell you, and I'm happy to -- we can put

 7    them on the phone, you know.

 8              THE COURT:  Oh, no.  I don't trust them enough to talk

 9    to them on the phone.  You gave me names.  I went to the top

10    people at DHS, and they said they do not exist.

11              MR. JOHNSON:  I don't think that's --

12              THE COURT:  I went to DHS.

13              MR. JOHNSON:  OK.

14              THE COURT:  Sir, speaking of people being misled, it

15    may well be you, but the two names you gave to me, one was

16    not -- neither one was a DHS agent.  One was not employed in

17    any capacity at DHS.

18              MR. JOHNSON:  Yes.

19              THE COURT:  And the other was the equivalent of a

20    security guard.  He's not an agent of DHS and certainly would

21    not have the power to be a handling agent.

22              MR. JOHNSON:  I don't think that's correct, your

23    Honor, but I'm happy to -- I'm sure it will come out, given

24    that this is all on the record.

25              THE COURT:  All right.
```

1          Mr. Kleinman, anything else you wish to say, sir?

2          MR. KLEINMAN:  No, Judge.

3          THE COURT:  Thank you so much.

4          Ms. Benner, anything in reply?  It's fine if there

5     isn't at this time.

6          MS. BENNER:  Your Honor, just one comment I'd like to

7     make.

8          Just the fact that, you know, Mr. Kleinman had made a

9     comment that these could be Mr. Johnson's opinion, his

10    statements.  But your Honor made it clear, this is a court

11    order, not to make any statements about Mr. Giller, and

12    Mr. Johnson violated the court order.  So in the interest of

13    the fairness of this litigation and ensuring judicial integrity

14    for this process, Mr. Johnson shouldn't be allowed to violate

15    court orders.

16         THE COURT:  All right.  Thank you.

17         Ms. Benner or Mr. Kleinman, who wants to speak on the

18    issue of discovery first?

19         MR. KLEINMAN:  Ms. Benner can, Judge.

20         THE COURT:  OK.

21         Ms. Benner, I believe the last thing I did was issue

22    an order that said that Mr. Johnson had to comply with his

23    discovery obligations.  So where are we?

24         MS. BENNER:  That is correct, your Honor, and since

25    then we have received nothing.

```
 1              THE COURT:  And so my last order was, I believe,
 2     according to my notes, March 13 --
 3              MS. BENNER:  Correct.
 4              THE COURT:  -- is that correct?
 5              All right.  Now let me understand where the parties
 6     are right now.  There was agreement as to search terms, but the
 7     search term review has not been conducted.
 8              MS. BENNER:  Correct.
 9              THE COURT:  From your perspective, what else are you
10     anticipating?
11              MS. BENNER:  Your Honor, we also -- plaintiff was
12     supposed to give us supplemental responses to answers to
13     interrogatories, the written RPFs, the RFAs, all of which --
14              THE COURT:  Slow down, please.  Thank you.
15              MS. BENNER:  Sorry.
16              -- all of which were outlined in your January 16
17     order.  So essentially all of the discovery that was ordered
18     was not complied with.
19              THE COURT:  All right.
20              Mr. Kleinman.
21              MR. KLEINMAN:  Well, as far as the search terms, I
22     received search terms from counterclaimants' counsel, and I did
23     respond to those.  OK?  And I have questions about whether they
24     were too broad or some of them were just too general, and I
25     don't think any resolution was finally made as to what those
```

1    search terms should be.

2            THE COURT:  Why I'm confused, sir, is that in the

3    defense's letter of March 7, 2025, the note I have is that the

4    parties reached agreement on the search terms but that there

5    was an issue about performing the actual searches.

6            MR. KLEINMAN:  Well, that too, also, the performing

7    the searches.  But there are questions that I had raised about

8    some of the search terms that had not been resolved, as far as

9    I'm aware.

10           THE COURT:  Oh, excuse me, because I had been told

11   that they have been resolved.

12           Just one moment, please, sir.

13           MR. KLEINMAN:  Sure.

14           THE COURT:  Thank you.

15           You'll excuse me while I fight with my computer.

16           Sir, docket entry 68, I believe, March 7, 2025, letter

17   from Mr. Giller and Ms. Benner, in the second paragraph:

18           "The parties conferred and have agreed upon a set of

19   search terms for plaintiff to use in searching for relevant

20   discovery.  However, plaintiff is now refusing to conduct these

21   searches."

22           I don't believe he ever wrote in a letter saying,

23   wrong, Failla, we do not have agreement.  So I've been

24   proceeding for the last month on the understanding that there

25   was agreement.

```
 1              MR. KLEINMAN:  No --

 2              THE COURT:  Are you telling me there's not?

 3              MR. KLEINMAN:  -- anything indicating that the terms

 4    were agreed upon.

 5              THE COURT:  But you did receive this letter --

 6              MR. KLEINMAN:  Yes, I did.

 7              THE COURT:  The letter I did.

 8              MR. KLEINMAN:  Yes.

 9              THE COURT:  OK.  Let me imagine then that the search

10    terms have been agreed upon, because I wasn't told otherwise.

11              MR. KLEINMAN:  I'm sorry to interrupt.  Yeah, that's

12    fine.  We can say that that's the question.  I think the

13    question was more about actually effectuating those search

14    terms --

15              THE COURT:  Agreed.

16              MR. KLEINMAN:  -- was more the issue.  I know you

17    issued an order, and I think you boldfaced it, that it was

18    defendants' responsibility to make those -- search -- to fund

19    that deep search.

20              THE COURT:  Hold on.  Hold on.

21              MR. KLEINMAN:  Well, I may be paraphrasing.

22              THE COURT:  Right, but --

23              MR. KLEINMAN:  Look at memo endorsed.  I think it's on

24    ECF 80.

25              THE COURT:  Sir, I'm looking at my endorsement of the
```

| | |
|---|---|
| 1 | 13th of March.  It says, "plaintiff is ordered to comply with |
| 2 | the Court's January 16, 2025, order.  Further, the Court finds |
| 3 | absolutely no basis for defendants to be forced to retain an |
| 4 | ESI vendor." |
| 5 | MR. KLEINMAN:  That's what I'm talking about, Judge. |
| 6 | THE COURT:  Yes, but that's the point.  That means you |
| 7 | have to do it.  They don't have to pay for it.  It's got to |
| 8 | come from you. |
| 9 | MR. KLEINMAN:  I understand that, Judge. |
| 10 | THE COURT:  OK.  All right. |
| 11 | MR. KLEINMAN:  Well, I understand that, Judge.  It's |
| 12 | got to come from the defendant Johnson.  Got it. |
| 13 | THE COURT:  No, sir.  No, sir.  There's a single |
| 14 | plaintiff, who is your client, and a single set of defendants, |
| 15 | who are the folks at the back table.  So you had to comply and |
| 16 | they don't have to pay for it. |
| 17 | Now, I'm fine if you agree to let them set up a |
| 18 | separate team to review it so you don't have to.  I believe |
| 19 | that's what they offered to do, but I want to understand how |
| 20 | this is going -- who is going to do this review?  Because it |
| 21 | was supposed to be done by the 14th of March. |
| 22 | MR. KLEINMAN:  Right, and hasn't been done.  I |
| 23 | don't -- I mean if there is a separate team, then -- I mean |
| 24 | I've dealt with this, for example, in the U.S. Attorney's |
| 25 | Office, where there's a Chinese Wall created. |

F43Wj0hC

```
 1              THE COURT:  Yes.

 2              MR. KLEINMAN:  And they observe, that separate team

 3    has to observe certain requirements.  And I haven't gone over

 4    the details with Mr. Johnson, so I'm sure that that is a

 5    possibility.  OK?

 6              THE COURT:  Mr. Giller's giving me a strange face, so

 7    I don't want to misstate what they said to me.  Give me a

 8    moment, please.

 9              "Alternatively, if plaintiff's counsel would prefer to

10    send us the hard drive, we will conduct the agreed-to

11    searches."

12              I understood that to be with a taint team in place.  I

13    did not think that Mr. Giller and/or Ms. Benner were going to

14    be doing the searches.

15              MR. KLEINMAN:  I didn't -- I don't -- I can't make any

16    assumptions.

17              THE COURT:  No, of course.

18              MR. KLEINMAN:  OK?

19              THE COURT:  What I'm saying, sir, is we're here

20    together, and somehow this material has to be reviewed and it

21    has to be produced.  You or your client has to do it.

22              MR. KLEINMAN:  OK.

23              THE COURT:  The question is how are you going to do

24    it?  And if the issue is you want to do it -- and we can talk

25    to your friends at the back table and see if they would put a
```

Appx. 040

1    taint team in place.  Or if you just want to spend nights and

2    weekends doing it yourself, that's fine by me, but it's got to

3    be done.

4          MR. KLEINMAN:  If you counted on me to do it, Judge,

5    this case would go on a long time.

6          THE COURT:  No, no.  You think that, but I have ways.

7          Mr. Giller, perhaps I'm misconstruing your facial

8    expression, sir.  When you said that you would accept the hard

9    drive and do the searches, what then did you mean?

10          MR. GILLER:  Your Honor, I apologize if my facial

11    expressions expressed anything other than disbelief to counsel,

12    not from your Honor.

13          What we meant is if they're refusing to do the

14    searches that you've now ordered them to do twice, we would

15    take the hard drive and the entirety of the database and do the

16    searches ourselves.  We are not offering to pay anybody to do

17    it, because we shouldn't have to, and we're not offering to

18    have a separate team of people do it at my firm.

19          We are the ones with knowledge of the case and

20    involved in the case.  If we have to because there's no other

21    way, because they're refusing to comply, then we'll do it.

22          THE COURT:  I understand that.  What I'm saying is --

23          Mr. Kleinman, it has to be done.  Right?  And I'm

24    trying to figure out how it can be done.  I'm uncomfortable,

25    given that there may be attorney-client privileged information

Appx. 041

 1    going to you two in the back, but I believe you could teach

 2    somebody else in your firm to run searches with the terms and

 3    to print out the responsive documents and to exclude the

 4    attorney-client privileged stuff.  I think you could do that.

 5    Is it a pain?  Absolutely.  Would it get done?  Yes.

 6         MR. GILLER:  Your Honor, if that's what the Court

 7    directs, obviously we'll comply.

 8         THE COURT:  Well, what are my options?  What are my

 9    options?

10         Mr. Kleinman, what else is there to do?

11         MR. KLEINMAN:  If my client can end up hiring a

12    third-party ESI firm to search using those search terms, I

13    assume that would be acceptable.  I don't see any reason why

14    not.

15         THE COURT:  That would be acceptable.  Yes, but I

16    thought the point was that there were financial constraints --

17         MR. KLEINMAN:  There are financial constraints,

18    obviously.

19         THE COURT:  OK.  But he's still willing to do that?

20         MR. KLEINMAN:  I believe that it depends upon what the

21    cost would be, but I did not have a discussion with him and

22    might recommend that at the Court's direction.

23         THE COURT:  Mr. Kleinman, it's already due.

24    Everything is already due.  There's no excuse for this not to

25    have been produced.  So I don't know.  I feel like it's a

1    little late in the day for him to be saying maybe he should

2    consider it and have a third-party ESI.  Give me other options,

3    because right now you're in complete violation of my order.

4            MR. KLEINMAN:  I understand that, Judge.

5            My client said that he would be willing to -- he will

6    hire an ESI firm and that they will get the documents, the

7    drive that I received from Alston & Bird, and they will use the

8    search terms that were agreed upon and provide that discovery.

9            THE COURT:  Let me please ask this, and I'm asking

10    this of both sides.  This idea of these ESI firms, it's not

11    something I did in practice and it's not something I've seen as

12    a judge.  Are we talking about contract attorneys?

13            MR. KLEINMAN:  No, no.

14            THE COURT:  Are we talking about tech wizards?  What

15    is the ESI -- I don't know what their competence is to do this.

16            MR. KLEINMAN:  The firms, I've dealt with a firm like

17    this in a case in California, where they got massive amounts of

18    emails and documents.  They were given these search terms and

19    then they produced the documents in a manner, and format that

20    would be acceptable under the federal rules.  This is what they

21    do for a living.

22            THE COURT:  Of course, sir.  How do you make sure that

23    privileged information isn't disclosed?  Do you get the first

24    cut?

25            MR. KLEINMAN:  Yeah.

F43Wjohc

```
 1              THE COURT:  Does it go to you first?

 2              MR. KLEINMAN:  Right.  They would give me the first

 3    cut.  I would review it, make sure it didn't include any

 4    documents -- part of the instructions would be, for example,

 5    that any communications between Mr. Johnson and his prior

 6    counsel and Mr. Johnson and myself would obviously be excised,

 7    because they'd be subject to privilege.  But any

 8    communications, for example, that fit within -- they were

 9    parameters of emails between Mr. Johnson and Mr. Ton, for

10    example.  OK?  Where there was -- they were not privileged, but

11    those would be available.  Those would be provided.

12              THE COURT:  All right.

13              Ms. Benner, your response.

14              MR. GILLER:  If I may, your Honor?

15              THE COURT:  Sir.

16              MR. GILLER:  First, we're interested to hear that they

17    now agree that there were these search terms, because there

18    weren't.

19              THE COURT:  Well, as far as I'm concerned, I've

20    already told Mr. Kleinman it's too late to tell me there wasn't

21    agreement.

22              MR. GILLER:  OK.  I just have two things about what

23    was just said.

24              One is we would like the ability to know in advance

25    which ESI firm they're proposing, and we're not going to object
```

1   to any -- any of a number of companies that do this for a

2   living.  We work with many different companies.  I don't have

3   any preference.  I just want to make sure it's a legitimate

4   company that does discovery ESI for a living.  That's my only

5   request with respect to that, that it's not some type of

6   business that does something else and is doing this as a favor

7   or a friend, or something else.

8           That's my first point.  My second point --

9           THE COURT:  No, no.  We'll take your first point.

10          Mr. Kleinman, any objection?

11          MR. KLEINMAN:  Mr. Giller has said that his firm's

12  dealt with a number of ESI third parties that do this.  If he

13  wants to provide me with three or four that his firm has used,

14  we can eliminate that problem.  I'm not asking my

15  brother-in-law or my wife to do this.

16          THE COURT:  OK.

17          MR. KLEINMAN:  I don't know if that was the inference,

18  but I did ask --

19          THE COURT:  No, no.  There was no inference.  There

20  are firms he knows and firms he doesn't know.  I'm sure he can

21  give you a list of many firms.

22          MR. GILLER:  Judge, this afternoon, I'll send an email

23  with three names.

24          MR. JOHNSON:  I would not feel comfortable with that,

25  your Honor.  I would like to use whatever the standard one that

1    is used by the courts.

2          THE COURT:  There is no standard one.

3          MR. JOHNSON:  If there's a list of them, I think the

4    list should be jointly provided.

5          THE COURT:  By whom, sir?

6          MR. JOHNSON:  By us and by opposing counsel.

7          THE COURT:  Mr. Kleinman may know the one he used in

8    California.

9          Do you remember it, sir?

10          MR. KLEINMAN:  Well, I remember the individual.  I

11   remember the individual I dealt with.  I mean I'd have to get

12   back in touch with him, and if he's still doing this.  They've

13   been doing this for a long time.  This firm's been doing this

14   for a long time.

15          THE COURT:  Mr. Johnson, I'm confused.  Your counsel

16   suggested, requested the three.  Now you're saying no.

17          MR. JOHNSON:  No, no.  With respect, your Honor, I'm

18   sure there's lots of firms that do that.  I'm not, I do not

19   feel comfortable with having opposing counsel make that list of

20   firms.  I'm happy to use standard firms that are out there that

21   are maybe not the list that Mr. Giller provides.  But I'm happy

22   to -- you know, I'm sure that there are ones that are out there

23   that may not necessarily be on his list.  There could be 10,

24   20, 30, 40 firms.  I'd like to do some research before I'm

25   comfortable agreeing to any firm.

F43WJoHC

```
 1              THE COURT:  Then, Mr. Kleinman, Mr. Giller will get a
 2      right of first refusal.  You'll have to tell him who it is, and
 3      if it's not a firm that was considered to be reputable, he'll
 4      oppose and you'll bring it to me and I'll decide.
 5              MR. KLEINMAN:  Your Honor, I will provide that list to
 6      Mr. Giller, and if anything -- the same thing as choosing a
 7      mediator, an arbitrator.
 8              THE COURT:  Right.
 9              MR. KLEINMAN:  You get three.  You choose one of them,
10      the one that you agree upon.  That's the one you use.
11              THE COURT:  Yes, I still think Mr. Giller should send
12      a list, if he would indulge me, because it might help the
13      process.
14              MR. KLEINMAN:  Yeah, Judge.  In fact, it probably will
15      help the process, because if it's a large firm that I've dealt
16      with in the past or I'm familiar with, then -- you know, I
17      mean, I don't think I would have a problem with it.
18              THE COURT:  All right.  But we know it's not your
19      brother-in-law.  Thank you.
20              MR. KLEINMAN:  No, it's not.
21              THE COURT:  Mr. Giller, what's your second point?
22              MR. GILLER:  My second point is just with respect to
23      privileged materials, your Honor.  I would just ask that if
24      they're going to claim documents that are found using the
25      search terms, that they provide us with a privilege log at the
```

F43WjohC

1    same time.

2         THE COURT:  Agreed.  Anything that's removed will have

3    to be logged.  Yes, I agree with that.

4         MR. GILLER:  Thank you, your Honor.

5         THE COURT:  All right.  That's the discovery -- well,

6    partly.

7         Mr. Kleinman, that only gets us to the issue about the

8    production of ESI for which the search terms are hits.  What

9    about the supplemental responses to the interrogatories, the

10   requests for admission, the requests for production?

11        MR. KLEINMAN:  I sent that request.  I sent the -- I'm

12   sorry.  I sent the -- I sent all the documents, the original

13   demands from Clearview's counsel and your order, and so forth,

14   to my client.  I never received a response, Judge.

15        THE COURT:  Hmm, that seems bad.

16        All right.  You do understand -- you do understand,

17   sir, because I know you've been here before; I know you've been

18   in this courthouse for decades -- that court orders should be

19   followed, right?  You know that.

20        MR. KLEINMAN:  Yes, I do.

21        THE COURT:  Yes.  Why can't my orders be followed,

22   sir?

23        MR. KLEINMAN:  I'm just the lawyer, Judge.

24        THE COURT:  No, no, sir.  Ultimately you're on the

25   hook for this.  Where are these responses, sir?

F43WJOHC

```
 1              MR. KLEINMAN:  I asked my client to provide responses.
 2     He did not provide the responses.
 3              THE COURT:  But is it not on you to cajole him, to
 4     pressure him, to persuade him?
 5              MR. KLEINMAN:  I sent him more than one email
 6     reminding him of his obligation, Judge.
 7              THE COURT:  OK.  So this is the basis for sanctions
 8     under Rule 37.  OK.  I understand.  I just think it's
 9     unfortunate.  OK.  Thank you.
10              Mr. Kleinman, actually, before you sit down, I think
11     we're moving now to the third topic, which is your motion to
12     dismiss.
13              Sir, I've understood, and I recently had to look into
14     this for another matter, that a statement in a pleading of an
15     amount in controversy in excess of $75,000 is presumptively
16     correct.  So I don't know how you'd be able to rebut that
17     presumption in a 12(b)(1) context.  Separately, I'd like you,
18     please, to respond to your adversary's contention that, in
19     fact, their compulsory counterclaim receives supplemental
20     jurisdiction by being a compulsory counterclaim.
21              MR. KLEINMAN:  May I address those?
22              THE COURT:  You may, please.  Thank you.
23              MR. KLEINMAN:  OK.
24              Merely stating and pleading what's in 1332(a) is not
25     sufficient under the cases that have been cited in this
```

1    circuit, Judge.

2          THE COURT:  The case that I'm looking at, sir, is

3    *Scherer v. Equitable Life Insurance Society of the United*

4    *States*, 347 F.3d 394 (2d Cir. 2003), that a statement of an

5    amount in controversy in excess of $75,000, there's a

6    rebuttable presumption of a good faith representation.

7          MR. KLEINMAN:  Judge.  If I can quote, it says, the

8    party invoking the jurisdiction of the federal court has the

9    burden of proving that it appears to a reasonable probability

10   that the claim is in excess of the statutory jurisdictional

11   amount, *Security Plans Inc. v. Cuna Mutual Insurance*, 769 F.3d

12   807, 814 (2d Cir. 2014).  Where the plaintiff alleges damages

13   in a sum that exceeds the sum or value established by --

14         THE COURT:  Slow down.  For court reporter and judge,

15   please slow down.

16         MR. KLEINMAN:  I'm sorry.

17         THE COURT:  Thank you.

18         MR. KLEINMAN:  "Where the plaintiff alleges damages in

19   a sum that exceeds the sum or value established by 28 U.S.C.

20   Section 1332(a), exclusive of interests and costs and is

21   lacking in additional details to support this assertion, it

22   constitutes a conclusory reference to 28 U.S.C. Section 1332(a)

23   and fails to adequately establish that the amount in

24   controversy exceeds $75,000."  That's *Dawkins v. Carmack*, 2023

25   U.S. Dist. LEXIS 35313 (S.D.N.Y. Mar. 2, 2023).

Appx. 050

1           I have three other cases that say exactly the same

2    thing -- that merely repeating that it will exceed 75,000 is

3    not sufficient under the statute.  Otherwise, everyone would be

4    in this courthouse.  You won't have 300 cases, you'll have

5    3,000, because people will realize all they need to do is

6    regurgitate the statute.

7           THE COURT:  Of course, but I think one of those cases

8    that you were suggesting said if it was reasonably apparent

9    from the face of the complaint that the damages were in

10   excess --

11          MR. KLEINMAN:  They're both --

12          THE COURT:  They're going to suggest that want more

13   than $75,000 in damages for their counterclaims.

14          MR. KLEINMAN:  I have no doubt they want more than

15   75,000.

16          THE COURT:  I understand what you're saying.  Could

17   you turn, please, to their argument that their counterclaim is

18   a compulsory counterclaim, and therefore, I have supplemental

19   jurisdiction.

20          MR. KLEINMAN:  Well, first of all, their compulsory

21   counterclaim is based on Rule 13, and since there is no more

22   claim for my client, I don't know that Rule 13 applies anymore,

23   because his claim was completely dismissed.

24          THE COURT:  There are multiple cases at page 2 of

25   their letter of March 20, 2025, showing that I retain

1  supplemental jurisdiction even if plaintiff's claims are

2  dismissed.

3           MR. KLEINMAN:  Also, Judge, there is -- if you read

4  their complaint, their counterclaim complaint --

5           THE COURT:  Yes.

6           MR. KLEINMAN:  -- the only time they mention damages

7  that they suffered is in their conclusory statement that it

8  exceeded $75,000.  They don't say we lost business.  They don't

9  say that we lost a contract with XYZ.  They merely say that it

10  will be proven later on.  And Judge, you know what rules are.

11  The issue of subject matter jurisdiction can be raised at any

12  time at all.  There's, I believe, case law that says even after

13  verdict you can raise it, because if the Court doesn't have

14  jurisdiction, the Court doesn't have jurisdiction to begin

15  with.

16           THE COURT:  Yes.

17           MR. KLEINMAN:  And if look at their complaint, there's

18  no place in this complaint where they say as a result of

19  Mr. Johnson's breaching the contract clauses, we lost a

20  contract with ABC or something else happens specific that

21  caused our damages in excess of $75,000.  And I, too, Judge,

22  have been in front of cases with a number of district court

23  judges, and with all due respect, Judge --

24           THE COURT:  Oh, please don't ever say that.

25           MR. KLEINMAN:  Sure.

1          THE COURT:  That usually is going to be followed by

2    something suggesting a lack of respect.

3          Just finish.  Go ahead, sir.

4          MR. KLEINMAN:  With all due respect, Judge, I had a

5    case recently in front of Judge Matsumoto, and the question

6    arose about my client satisfying the jurisdictional amount.

7    And she said, well, I'm not going to rule on that, but

8    Mr. Kleinman, you'd better provide me with some proof or some

9    offer of proof that the amount actually exceeded your client's,

10   that the damages exceeded that, and my client had to provide

11   some documentary proof to Judge Matsumoto that, in fact, the

12   amount could exceed 75,000.

13         We have nothing whatsoever that's been offered here.

14   And remember, all that's here is the, all that's here is the

15   breach of contract claim.  There's nothing else.  There's no

16   defamation, nothing else.

17         THE COURT:  There is a defamation claim.

18         MR. KLEINMAN:  That was withdrawn.

19         THE COURT:  That was withdrawn.

20         MR. KLEINMAN:  That was withdrawn.  The amended

21   complaint only has and the two clauses that are cited are the

22   disclosure of the wind-down agreement and the clause about

23   impugning the company, and so forth.  Well, there's no evidence

24   that says that, in the complaint that says as a result of

25   Mr. Johnson's actions, which they delineated with 20 or 30

1   paragraphs, the -- you know, the Butte, Montana, police

2   department didn't sign a contract with us or we were refused

3   entry to some trade fair.  Nothing at all.  It's completely --

4   it's completely guesswork.  It's not even guesswork.  They're

5   just throwing that in in order to invoke the jurisdiction of

6   this court.

7           And Judge, I don't even know if they would have enough

8   jurisdictional amount to prove, to be in Civil Court at 111

9   Centre Street, because all it is is that we did this and we

10  lost business and that business exceeds $75,000.  Well, in the

11  meantime, this is costing everybody a lot of time and money --

12  your time, the Court's time, my client's time and money, their

13  client's time and money.  And there actually may be no damages

14  at all, and all I'm saying is I wish to be able to make that

15  motion in front of the Court.  And if they can't provide any

16  proof that they have or any plausible explanation as to how my

17  client's actions exceeded $75,000 in damages -- that doesn't

18  include attorney's fees, as you know -- then the case should be

19  dismissed.  And there's other courthouses they can go to.  They

20  can go to 60 Centre Street or 111, you know, or go to Small

21  Claims Court, but there's a lot of other places besides this

22  building and your Honor.

23          THE COURT:  All right.  Thank you.

24          MR. KLEINMAN:  Thank you, Judge.

25          THE COURT:  And the back table, Ms. Benner.

1          MS. BENNER:  Your Honor, I just would like to focus

2     back on that first argument that we made in our letter, that

3     the fact that this counterclaim is a compulsory counterclaim

4     and that the Court can retain supplemental jurisdiction to hear

5     this counterclaim even though plaintiff's claims are dismissed.

6     As we've cited numerous case law from this circuit in our

7     letter, this is something that clearly can happen here, so I

8     think the fact that plaintiff has kind of disregarded this

9     argument should be considered by the Court, because that would

10    be dispositive of this motion in and of itself.

11          Moving on to plaintiff's second argument, that we've

12    not properly pled diversity jurisdiction under the law, first,

13    Mr. Kleinman focused specifically on the counterclaims action,

14    but he neglected to say that the Court can look at other

15    documents as well.  In our initial disclosures, which we

16    included as an exhibit to our premotion letter, defendants

17    specifically stated that based on Mr. Johnson's breaches, they

18    suffered damage, harm to client relationships, investors.  So

19    when you take that in combination with the allegations in the

20    complaint, where defendants make numerous examples and include

21    exhibits of statements that Mr. Johnson made that did violate

22    the wind-down agreement, clearly the amount in controversy has

23    been pled.

24          I also want to frame for the Court, too, the

25    position --

```
 1            THE COURT:  I want to pause for a second.
 2            Mr. Kleinman is contemplating a 12(b)(1) motion.
 3   You're suggesting that this would not be a facial 12(b)(1)
 4   motion but fact-based 12(b)(1) motion, where I can consider not
 5   merely the complaint but rather other things.
 6            MS. BENNER:  Yes, your Honor.
 7            THE COURT:  I see.
 8            MS. BENNER:  Under Second Circuit law, we found that
 9   the Court can consider other things as well on this motion.
10            THE COURT:  All right.  Thank you.
11            Please continue.
12            MS. BENNER:  Sure.  So I think it's important to frame
13   with the Court, too, the positions of the parties here.  We're
14   not talking about a small mom-and-pop shop here, where
15   plaintiff may have made a few comments to, maybe, some small
16   local news outlets or to people on the street.  Clearview is a
17   massive company that's known worldwide.  They contract with --
18   actually, almost all of their clients are governmental
19   agencies, police forces.  And you have plaintiff, who was, you
20   know, going around telling people that he was a cofounder,
21   making these disparaging false statements about the company
22   that clearly have the potential to cause significant damage to
23   the company.  You know, someone who maybe doesn't know the
24   company's history or Mr. Johnson's involvement could take his
25   comments at face value, saying, oh, you know, this gentleman
```

1  who is a cofounder is saying that this is a criminal

2  corporation, the CEO is lying, you know, the company's not well

3  run, a whole slew of things.  So I think that is important to

4  take into consideration in this counterclaim.

5        Mr. Kleinman also talks about how defendants did not

6  name any, you know, specific harm in this case, that any

7  investors lost or business opportunities, but I think it's

8  important to note that, as I said before, my client's contracts

9  are with government agencies.  Their business is highly

10  confidential.  This isn't information that we would put in a

11  public pleading or discuss at a public hearing.  This

12  information would be exchanged under a confidentiality order in

13  the course of discovery.  And as your Honor know, we're in the

14  thick of discovery.  We haven't engaged in any depositions, no

15  experts.  So you know, at this time --

16        THE COURT:  There is no confidentiality order between

17  the parties as of this moment.

18        MS. BENNER:  We did enter into one.

19        THE COURT:  There was?  With the Alston & Bird firm or

20  with Mr. Kleinman?

21        MS. BENNER:  No.  With Mr. Kleinman.  I believe that

22  was filed with the Court, your Honor.

23        THE COURT:  All right.  I heard you say it would be

24  exchanged with a confidentiality stip, basically, but I thought

25  there was one.  OK.  Thank you.

1             Go ahead.

2             MS. BENNER:  There is one in this case.

3             So that's also a reason why that information was not

4    included in the pleading.  But as your Honor said at the

5    beginning, you know, the defendant's burden for a pleading

6    under diversity and the amount in controversy is hardly an

7    onerous burden.  All they have to show --

8             THE COURT:  Slow down, please.  Thank you.

9             MS. BENNER:  -- is a reasonable probability that the

10   claims made 75,000, and we clearly have done so here.

11            THE COURT:  All right.  Thank you.

12            Mr. Kleinman.

13            MR. KLEINMAN:  Yes.  Couple of things, Judge.

14            THE COURT:  Yes.

15            MR. KLEINMAN:  In the initial Rule 26(a) disclosures,

16   the 26(a)(1)(A)(iii), computation of damages, all I got from

17   defendants' firm was defendants are seeking damages due to

18   plaintiff's breach of the wind-down agreement as set forth in

19   defendants' counterclaim.  Damages are based on harm to

20   reputation as well as harm to business and client

21   relationships.  Defendants have sustained damages exceeding

22   $75,000.  However, the exact amount of damages are unknown at

23   this time."

24            So in other words, the exact amount could be less than

25   75,000, because they're unknown.

```
 1              THE COURT:  Except they said we don't know what it is,
 2     we just know it's more than 75,000.
 3              MR. KLEINMAN:  Right.  We don't know what it is, but
 4     we think it's above 75,000.  OK?
 5              THE COURT:  All right.
 6              MR. KLEINMAN:  Also, as far as the argument that
 7     Clearview has secret agreements with other parties and they may
 8     have lost business, they could have filed anything under seal
 9     with the Court that would show that they've lost business as a
10     result of this.  Nothing was presented.
11              THE COURT:  Sir, when you file your motion, they may
12     choose to do just that.
13              MR. KLEINMAN:  They may.  I agree.
14              THE COURT:  I want you to understand the skepticism
15     with which I'm viewing your motion.  I can't stop you from
16     making it, sir, but I think they have a very strong argument
17     with respect to the compulsory counterclaim argument.  But OK.
18              MR. KLEINMAN:  We'll see.
19              THE COURT:  Go ahead.
20              MR. KLEINMAN:  I'm sorry, Judge.
21              THE COURT:  That's fine.
22              MR. KLEINMAN:  I just want to finish my argument.  OK?
23              There's case law that repeatedly says that allegations
24     of damages, including conclusory statements that, quote, they
25     have suffered damages in the form of litigation and trial
```

1    expenses and loss of income and damages to be set forth in the

2    future are insufficient.  *Maitland v. LAN*, 2017 U.S. Dist.

3    LEXIS 40467, Eastern District of New York.

4            Also, as far as the issue about supplemental

5    jurisdiction, in *Cohen v. Postal Holdings*, 873 F.3d 394, 399,

6    Second Circuit discussion discussing Section 1367, said that

7    supplemental jurisdiction is only available if the Court

8    originally had jurisdiction.  If you had no jurisdiction at the

9    very beginning of this case, then their counterclaim can't

10   bootstrap itself if their damages aren't less than $75,000.

11           THE COURT:  I don't think they dispute that.  Are you

12   suggesting that your complaint, or is this going back --

13           MR. KLEINMAN:  Well, he has no complaint anymore.

14           THE COURT:  Please.  That argument doesn't work.

15           MR. KLEINMAN:  OK.

16           THE COURT:  The argument is if I did have it, if I had

17   jurisdiction when your client filed his complaint, then the

18   fact that the complaint was withdrawn doesn't deprive me of

19   jurisdiction.

20           I thought you were going elsewhere.  What I thought

21   you were going to say was given all the uncertainty about this

22   Illinois decision, maybe your client didn't actually have a

23   jurisdictionally filed the complaint.  I just don't think

24   that's going to work.  But I understand that that might make

25   its way into your argument; that's where I thought you were

1    going.

2            MR. KLEINMAN:  Yeah.  I haven't read the decision in

3    Illinois.  OK?

4            THE COURT:  Yes.

5            MR. KLEINMAN:  So I mean that is another issue.  It

6    would be, I think, something that would be -- it might be a

7    12(b)(1) because -- also, it's on the merits; it would be a

8    12(b)(6), I guess, that he didn't have authority to sign the

9    contract to begin with, so if he had no authority to sign the

10   contract -- but that's a matter -- I haven't looked into the

11   issue, so I don't want to be bound.

12           THE COURT:  You haven't read the decision yet.  I

13   understand.

14           MR. KLEINMAN:  I haven't read the decision, and I want

15   to research the law.

16           THE COURT:  I hear you, sir.  I cannot stop you from

17   filing this motion.

18           MR. KLEINMAN:  I appreciate that fact, Judge.  OK?

19   Because I don't make any assumption that judges can't do

20   anything.  OK?  You could make an order, and then I got to

21   follow it.  OK?  And honestly if you had done that, I would

22   have asked for permission of the 1292 to file an appeal with

23   the Second Circuit, because I really do feel, Judge, that their

24   complaint was drafted so that it does not satisfy 1332(a).

25   Merely saying our damages exceed $75,000 is -- does not satisfy

1    the statute and that if a motion under 12(b)(1) is made -- and

2    I've had this before, maybe not before your Honor, but you've

3    said a lot of other judges, and I like to say, just show me a

4    little more.  I'm not asking for the Encyclopedia Britannica,

5    but just show me something that shows that there might've been

6    a loss.  Was there a contract canceled?  Did you get kicked --

7    this case in front of Judge Matsumoto, my client showed me the

8    contract's canceled and that the other issue -- it's happened

9    in state court also, because I had a case in the, across, in

10   front of, in Brooklyn, OK, Brooklyn Supreme, where there, as

11   you probably know, they really never look at jurisdictional

12   amount; you just have to plead it.  But I mean the issue was

13   raised, and I had to show to the judge that, wait a second, my

14   client has had contracts canceled, you know, as a result of the

15   actions of the plaintiff.  And the judge said OK.  So

16   sufficient basis to show that his damages exceeded $50,000.

17          So I'm not asking for a lot here, Judge, but if they

18   don't have anything that they can show, then it's purely

19   conclusory, and I don't think that this Court has jurisdiction.

20   And I think that we can all move on, the Court, myself and my

21   adversaries, to another court.  Or as my client has offered

22   multiple times to settle this case.

23          THE COURT:  All right.  Thank you very much.

24          MR. KLEINMAN:  Thank you, Judge.  Thank you for the

25   time, Judge.

1              THE COURT:  Absolutely.  I want to hear the full

2      expression of your arguments, and I certainly haven't prejudged

3      them, because I don't do that.  I do want to go back, though,

4      because I'm still bothered by the discovery issue.

5              Ms. Benner, you heard me speaking with Mr. Kleinman.

6      You heard him say where things are with respect to what I'll

7      call the supplemental responses category.

8              What do you want?  And I say that as a declarative

9      statement; there's no emotion in it whatsoever.  What is it

10     that you want?  Do you want him to be sanctioned monetarily?

11     Do you want a default judgment?  Do you want me to find that he

12     has admitted everything in these documents?  What is it that

13     you're seeking, please?

14             MS. BENNER:  Sure, your Honor.

15             I mean the bare minimum, we definitely would like our

16     fees for having to come to the Court now on multiple occasions

17     to deal with these issues.  As your Honor knows, we spent

18     significant time on these issues a few months ago.  We've had

19     to write your Honor multiple times.  We're here again on this

20     issue.  So at a minimum we would definitely like our fees paid.

21             We also would like the answer stricken.  We believe at

22     this point the plaintiff knows what his discovery obligations

23     were.  Your Honor was very clear.  The order was clear.  After

24     we had a little bit of a dispute about him complying with the

25     order, we wrote your Honor.  Your Honor again ordered him to

1    comply, and he still hasn't complied.  And after we discussed

2    it today and now he's open to using an ESI vendor, but this

3    could have been resolved months ago without the need for your

4    Honor.  But that's what we suggested, that he go to see an ESI

5    vendor to get these documents searched, and he didn't.

6    Unfortunately, then we had to come to court again to get any

7    sort of resolution on this.  So for those reasons --

8                THE COURT:  You want his answer stricken, his answer

9    to your counterclaims?

10                MS. BENNER:  Correct.

11                THE COURT:  All right.  I hear the words.  I

12    understand that.  All right.  Anything else?  I don't mean to

13    cut you off.

14                MS. BENNER:  No, your Honor.

15                THE COURT:  Mr. Kleinman, tell me why that's crazy.

16                MR. KLEINMAN:  Well, I think striking the answer would

17    be really egregious because it would remove from my client any

18    attempt to defend this action.  OK?  And I think that, again,

19    if your Honor, and it was deemed decided I filed my motion and

20    you decide that you deny it, OK, and whatever other

21    jurisdictional, whatever other procedural issues I might follow

22    as a result of that, and this does go through discovery and

23    there is a trial.  And I just don't think, Judge, that they're

24    going to be able to show that they have the damages that they

25    wish to sustain.  So I think that striking his answer is really

```
 1   egregious and goes beyond what's necessary here.

 2              THE COURT:  What is necessary, sir?

 3              MR. KLEINMAN:  Well --

 4              THE COURT:  There was a deadline.  You've clearly

 5   blown past it.  You know that you have, and you haven't yet

 6   given me a good excuse.

 7              MR. KLEINMAN:  I haven't given you a good excuse,

 8   Judge, no.  No.

 9         I mean I could beg the Court's indulgence for an

10   additional ten days in which to respond, but that's entirely --

11   because that violates -- that's in violation -- well, that's

12   not in violation of the Court's order, but that currently

13   there's a violation of the Court's order, but that's --

14              THE COURT:  I want to know how all depositions are

15   going to be done on or before April 11.  That's not going to

16   happen.

17              MR. KLEINMAN:  No.

18              THE COURT:  No, because there's no discovery, because

19   it hasn't been produced.

20              MR. KLEINMAN:  Right.  And I don't know how that would

21   take place on or before April 11.  And I haven't -- I think I

22   may have received a notice, the EBT notice, but there was no

23   date on it.  So I mean it's obviously not going to take place.

24              THE COURT:  Right, but that also seems bad.

25         My point, sir, is I do not know how to get you and
```

1    your client to comply with my orders.  I don't.  That's where

2    we are.

3         MR. KLEINMAN:  OK.

4         THE COURT:  All right.  We've been here a while.  I

5    need about five or ten minutes, because we have a couple of

6    issues and I want to actually give you some decisions on these

7    issues.  So I'm going to ask for your patience for about five

8    or ten minutes.  My apologies to madam court reporter that

9    we're still here.  Sorry.

10        Let me ask friends at the front table to order this

11   transcript.  I'll be back as soon as I can.  If you need to

12   stretch your legs in the five minutes, you can.

13        Thank you.

14        (Recess)

15        THE COURT:  There are three issues for me to discuss

16   this afternoon, and I will discuss them in the order that we've

17   been talking about them, beginning with the issue of sanctions.

18        I've talked to the parties about the *Agiwal* case.

19   I've talked to counsel about the bases that I have, inherent

20   powers I have and other bases for sanctions here that I'm being

21   asked to impose based on inherent powers.  And as I'm about to

22   describe, I will be imposing sanctions for the recent postings

23   of Mr. Johnson.

24        Let me say this.  What I haven't really considered is

25   the exchange with the reporter, because I don't know precisely

1    what was published.  I believe it's behind a pay wall.  And

2    while there are some unfortunate comments, I don't have enough

3    to think that it is worthwhile.  But let me back up a moment

4    and talk about the issues that I've been wrestling with or at

5    least considering in the context of sanctions.

6              Mr. Kleinman has very wisely and consistently

7    discussed First Amendment issues, and I have thought about that

8    at some length.  And that is why I have been as careful as I

9    have in the past.  But the First Amendment does not foreclose

10   defamatory statements or court sanctions for them.  It does not

11   protect against false statements to me, hate speech.  And I do

12   believe it gives way when the statements are being used, as

13   they are here, to subvert and undermine the remaining

14   litigation before me.  And to suggest, with no evidence and no

15   basis in reality, that somehow the litigation that Mr. Johnson

16   commenced is itself part of a broader scheme to silence

17   Mr. Johnson, in which this Court has been co-opted by the other

18   side to silence him, I think that's just ridiculous.  I'm not

19   going to stand by and let Mr. Johnson poison the well of this

20   case, the jury pool and other things, by misstating what's

21   happening here.

22             This case is in bad enough shape because of his

23   conduct.  The record is also clear that I've repeatedly tried

24   to prevent Mr. Johnson from digging himself into deeper holes.

25   I tried to talk to Alston & Bird.  They tried to tame his baser

1    instincts and to check his more racist and anti-Semitic

2    impulses.  I've given him second, third, fourth chances.  I've

3    tried to be as direct as I could.  I've required in-person

4    appearance precisely so that I can tell him what is of concern

5    to me.  Mr. Johnson does not care, and I've made clear today my

6    continuing frustration with plaintiff's complete refusal to

7    comply with my orders in this case.

8            Talking first about the first article, which I believe

9    was posted on February 20, it makes clear Mr. Johnson's

10   willfulness because he begins by explaining his lack of

11   intention from the start to abide by my orders.  He made that

12   first clear in the first paragraph by discussing it and

13   directing it to me.  He claims that it is because the public

14   has a right to know what is going on.  But there's a decided

15   absence of any evidence of malfeasance, as he calls it.  And

16   therefore, there's not much whistle-blowing going on here.

17   There is just innuendo and invective.  There's a decrying of

18   Mr. Lambert.  There's a decrying of Clearview's public

19   relations representative.  There's a suggestion that I'm

20   somehow part of a scam.

21           Then there are quotes from a biometric update article

22   that repeats what I believe to be a wholly refuted statement,

23   that somehow you have handling agents who were operating at the

24   behest of DHS.  Basically that whole article just sort of

25   throws out names, throws out some rumors and attempts to

1    connect dots that cannot logically be connected.  But even then

2    I warned plaintiff.  I told him to adhere to my order.  But did

3    he?  No, of course not.

4         There's the March 5 article, and that's just a

5    complete return to old habits.  Somehow a conversation about

6    Turkey became a declination of Mr. Giller, and to announce "I

7    won't be gagged when I'm whistle-blowing" is a wonderful

8    statement except for the absolute absence of evidence of

9    whistle-blowing.  More than that, even if there were problems

10   with Clearview, and of course, I've seen no evidence of same,

11   there's absolutely no basis to go after Mr. Giller in the

12   article.

13        As you can tell from my discussions with Mr. Kleinman,

14   I especially loved the "take the L" comment, because that was

15   just A list projection.  Mr. Johnson is either lying to me or

16   has been misled to an embarrassing degree about the information

17   he is receiving about Clearview.  There's more mudslinging.

18   There's no point.  There certainly is not proof of the foreign

19   influence that you ascribe to Mr. Giller.

20        So my problem has been that there has been just

21   consistent violation of my orders over a period of months

22   despite written warnings, despite oral warnings.  And

23   therefore, unfortunately, my efforts to do something less than

24   sanctions have not worked, and sanctions are warranted.

25        With respect to the first article, which again, I

1    believe, is dated February 20, I am imposing a monetary

2    sanction of $2,000 to be paid to defendants within 30 days.  I

3    would consider halving that amount if the posting were removed

4    from SubStack, but I'm not pushing for its removal.  I'm happy

5    to sanction him on that basis.

6         With respect to the March 5 posting, which came after

7    another warning from the Court, I am imposing a sanction of

8    $5,000 to be paid to defendants within 30 days.  And I want to

9    make clear if there are additional postings that violate my

10    prior orders, the next set of penalties will be substantially

11    higher and almost certainly will involve a default judgment

12    against Mr. Johnson on the counterclaims or the striking of the

13    answer or some equivalent.  The case will end.

14         With respect to the issue of discovery, I am again

15    just devastated because we had so many discussions.  I wrote

16    that order myself, and I thought it was pretty clear.  But

17    apparently it could not be abided by.

18         Mr. Kleinman, I will take your generous offer of ten

19    additional days from today -- I'll give you two weeks from

20    today, so ten business days -- to respond to the supplemental

21    requests of the parties.

22         With respect to the ESI schedule, I will reset that

23    schedule as follows:

24         May 16 is the date for the production of all documents

25    and discovery and for the production of the logs.

1          June 6 is the date by which depositions are to be

2     completed.

3          Again, let me say this on the discovery issues.

4          Under Rule 37, I am well within my rights to impose

5     sanctions here.  I will do it in this manner:

6          If there are further violations of the discovery

7     schedule that I have just set, I will impose a monetary

8     sanction on plaintiff, if he is responsible for the discovery

9     violations, that approximate what I believe the legal fees are

10    for all of these discovery issues.  And as well I will strike

11    the answer or I will enter a default judgment.  That is, I

12    don't want to say a certainty because I don't like to box

13    myself in, but it is a near certainty that further discovery

14    violations and further violations of my orders will result in

15    default against Mr. Johnson in this case, because I've run out

16    of things that I can do to get him to abide by my orders.

17         That leaves us now with the 12(b)(1) motion.

18         Mr. Kleinman, I will, of course, let you file it, and

19    I will consider it very carefully, because you and I both will

20    be looking at the Illinois decision.  My very thoughtful law

21    clerk, who has reviewed the decision while we've all been

22    talking -- because this conference has been that long -- is of

23    the view that it doesn't impact any of our matters, but we'll

24    find out.  Maybe.  Perish the thought, she could be wrong.  I

25    doubt it, but she could be wrong.  I will let you submit that

F43WjohC

 1   motion, sir.

 2           I just want to tell my friends at the back table, I

 3   don't know what the motion's going to look like.  And yes, I

 4   will want a response from you, but I will understand if your

 5   response is "see our premotion letter" or that it's just a cut

 6   and paste of your premotion letter into another brief with a

 7   few more sentences.  I'll let him file it.  I'll let you

 8   respond as you see fit.  I don't know.  I need to see what is

 9   submitted, but I'm just saying if you believe that a shorter

10   response is warranted, I will accept your shorter response.

11           Mr. Kleinman, sir, what time would you like to file

12   your motion papers, sir?

13           MR. KLEINMAN:  I think I could have my motion filed by

14   the 11th of April, Judge.

15           THE COURT:  OK.

16           MR. KLEINMAN:  I would like to get this issue resolved

17   as quickly as possible.

18           THE COURT:  Of course.

19           OK.  Thank you, sir.

20           MR. KLEINMAN:  And -- oh, sorry.

21           THE COURT:  I was just going to ask for the

22   opposition.  Was there something you wanted to say before I do

23   that?

24           MR. KLEINMAN:  No, no, no.  I mean I would assume

25   that -- I mean three weeks is the normal, but I don't know how

F43WJohC

```
 1    much time, if they're just going to cut and paste their
 2    letter --
 3              THE COURT:  Of course.  I don't know.  They, of
 4    course, don't know what you're writing so they don't know what
 5    they're responding to.  But let me ask Ms. Benner.
 6              Ms. Benner, how much time do you need to respond?
 7    Three weeks?  May 2?
 8              MS. BENNER:  Three weeks, your Honor.
 9              THE COURT:  May 2.
10              And then May 9 for reply, Mr. Kleinman.
11              MR. KLEINMAN:  One week?  Yeah, that's not a problem,
12    Judge.
13              THE COURT:  OK.  That's the motion to dismiss
14    schedule.
15              All right.  Mr. Kleinman, sir, from your perspective,
16    is there anything that I have failed to address in today's
17    conference?
18              MR. KLEINMAN:  I don't believe so.
19              Just is there a date that you're going to want
20    everybody to come back, or do you want to wait and see what
21    happens, or what?
22              THE COURT:  When I get the motion papers is when I
23    think I'd be setting the next conference, sir.  I have some
24    dates here already.  I've got dates for your motion to dismiss.
25    I've got dates for discovery.
```

```
 1                MR. KLEINMAN:  Right.

 2                THE COURT:  And we'll probably do another order just

 3     to get that out there in writing.

 4                In terms of seeing the parties again, I think I'd like

 5     to have the motion to dismiss fully briefed.  And I'm going to

 6     tell myself that there will be no problems in discovery so we

 7     won't have to have you in for a conference on discovery

 8     violations.

 9                MR. KLEINMAN:  Your mouth to God's ears.

10                THE COURT:  Mr. Kleinman, just before you sit down,

11     sir, is there anything that I have said this afternoon that is

12     in any way unclear?

13                MR. KLEINMAN:  No.  I believe that your schedule and

14     your decision is clear.  I understand it.  I might take

15     exception to the sanctions, but that's certainly within your

16     purview as an Article III judge to make that determination.  I

17     do take exception on behalf of my client to the sanctions.

18                THE COURT:  OK.  Understood.  Thank you.

19                Ms. Benner, have I omitted anything that you wanted me

20     to address this afternoon?

21                MS. BENNER:  No, your Honor.  Thank you.

22                THE COURT:  And is there anything about any of the

23     decisions that I've made this afternoon that is unclear to you

24     or to Mr. Giller?

25                MS. BENNER:  No, your Honor.
```

```
 1              THE COURT:  OK.
 2              MR. KLEINMAN:  I'm sorry to interrupt, Judge.  I have
 3    a brief question.
 4              THE COURT:  Please, sir.
 5              MR. KLEINMAN:  On just a practical level, how would my
 6    client pay the sanction?  I mean do you know how that is --
 7              THE COURT:  I think it would be a check going to the
 8    firm.  Mr. Giller will accept a check.
 9              Mr. Giller, how would your client like to receive this
10    money, or do you want to have that talk off-line with
11    Mr. Kleinman?
12              MR. GILLER:  Any way other than bags of cash, your
13    Honor, would be fine.
14              THE COURT:  Mr. Kleinman.
15              MR. KLEINMAN:  I didn't understand.
16              THE COURT:  Any way other than bags of cash.
17              MR. KLEINMAN:  I won't respond to that.
18              THE COURT:  No, of course you won't.
19              Mr. Kleinman, speak to Mr. Giller.  He'll give you
20    whatever instructions you will need.
21              MR. JOHNSON:  Your Honor --
22              THE COURT:  Mr. Johnson.
23              MR. JOHNSON:  If it's possible, I'd like to say
24    something very quickly.  Is that --
25              THE COURT:  Sir, yes.
```

Appx. 075

F43WJohC

1              MR. JOHNSON:  So, I just want to, you know, apologize

2      to the public and to the Court for being involved with this in

3      the first place.

4              THE COURT:  All right.

5              MR. JOHNSON:  I was stupid and wrong about a lot of

6      things in this case and about this company, and I should never

7      have filed, should never have gotten involved in this company.

8      And if I were a normal person I wouldn't have found myself in

9      this place in the first place, and I'd like that apology to be

10     on the record.

11             When I started this, I was pretty young, and I hope

12     age brings wisdom, but I know the Court's time is limited and I

13     know that every second I take on these stupid mistakes of my

14     own, that that's something that is addressed by other people.

15     And so I want to apologize.

16             THE COURT:  Thank you, sir.  It is on the record.

17             MR. JOHNSON:  Thank you.

18             THE COURT:  All right.  Go forth, everyone.

19             Thank you very much.

20             (Adjourned)

21

22

23

24

25

# Exhibit B

**HOUSTONIAN MEDICAL ASSOCIATES**
THE CENTER FOR PREVENTION
123 North Post Oak Lane Ste 420
Houston, TX 77024
(713) 680-2611

April 28, 2025

Re: Charles Johnson
DOB: 10/22/1988

To Whom It May Concern:

My patient, Charles Johnson,  has an exacerbation of a debilitating medical condition that makes it impossible for him to travel. I respectfully request that he be  excused from reporting  for his scheduled court date between May and  and August of 2025.

My recommendation is for: no travel between May and August 2025.

Thank you for your timely consideration in this matter.  If you have any further questions regarding the care of this patient, please do not hesitate to contact me at (713) 680-2611.

Sincerely,

John C Matocha MD

Appx. 078

# Exhibit C

**Will Thompson**

| | |
|---|---|
| **From:** | Charles Johnson <charles@traitwell.com> |
| **Sent:** | Tuesday, April 29, 2025 2:35 AM |
| **To:** | Thompson, Will |
| **Cc:** | Pittman_Orders@txnd.uscourts.gov; Faulkner, Sherry; Bernie Kleinman |
| **Subject:** | Re: Proposed Order FW: Activity in Case 4:24-cv-00988-P Point Bridge Capital, LLC v Johnson Motion to Compel |
| **Attachments:** | IMG_4144.jpeg |

⚠️ EXTERNAL MESSAGE

Judge Pittman,

There are several problems with that order — several of the accounts mentioned either aren't germane or are inaccessible.

These matters were already handled elsewhere as my counsel can confirm.

Plaintiff is suing me in New York through Clearview and a lot of the material offered here would be duplicative. We are signing an agreement with a service provider to provide ediscovery.

I'll also be submitting a doctor's note that I cannot travel. I am happy to be available through Zoom or other electronic means. I have attached that doctor's note.

I will also need additional time to secure local counsel. I request additional time.

Opposing counsel is also conflicted here from representing Plaintiff. My family trusts already employ DLA Piper where opposing counsel works.

In the New York case my counsel filed a motion to dismiss which is before the judge there.

I believe there is also a motion to dismiss which is before your Honor as well.

Finally, Plaintiff also was recently affected by the ruling of yet another federal judge in Illinois which made him as a board officer responsible.

Your Honor has requested that we do meditation but given that Plaintiff is subject to considerable damages it's unclear he has the resources.

Please advise,
Charles Johnson
617 429 4718

Sent from Proton Mail for iOS

Appx. 080

On Mon, Apr 28, 2025 at 18:28, Thompson, Will <will.thompson1@us.dlapiper.com> wrote:

Judge Pittman, Attached is the word version of the proposed order submitted in conjunction with Plaintiffs' First Motion to compel. The defendant, Charles Johnson, is copied on this email.


Best,


Will


Will Thompson
Partner

---

**From:** ecf_txnd@txnd.uscourts.gov <ecf_txnd@txnd.uscourts.gov>
**Sent:** Monday, April 28, 2025 5:13 PM
**To:** Courtmail@txnd.uscourts.gov
**Subject:** Activity in Case 4:24-cv-00988-P Point Bridge Capital, LLC v Johnson Motion to Compel


⚠️ EXTERNAL MESSAGE

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

If you need to know whether you must send the presiding judge a paper copy of a document that you have docketed in this case, click here: Judges' Copy Requirements. Unless exempted, attorneys who are not admitted to practice in the Northern District of Texas must seek admission promptly. Forms and Instructions found at www.txnd.uscourts.gov. If admission requirements are not satisfied within 21 days, the clerk will notify the presiding judge.

Appx. 081

**U.S. District Court**

**Northern District of Texas**

**Notice of Electronic Filing**

The following transaction was entered by Thompson, William on 4/28/2025 at 5:12 PM CDT and filed on 4/28/2025

| | |
|---|---|
| **Case Name:** | Point Bridge Capital, LLC v Johnson |
| **Case Number:** | 4:24-cv-00988-P |
| **Filer:** | Hal Lambert |
| | Point Bridge Capital, LLC |
| **Document Number:** | 43 |

**Docket Text:**
**First MOTION to Compel *Production of Documents* filed by Hal Lambert, Point Bridge Capital, LLC with Brief/Memorandum in Support. (Attachments: # (1) Proposed Order) (Thompson, William)**

**4:24-cv-00988-P Notice has been electronically mailed to:**

Bernard Kleinman (Terminated)    attrnylwyr@yahoo.com

David Lattimore Evans    evansdavidl@msn.com

Lawrence J Friedman    lfriedman@fflawoffice.com, lfpara@fflawoffice.com, lfsec@fflawoffice.com

William Bennett Thompson    will.thompson1@us.dlapiper.com, sherry.faulkner@us.dlapiper.co, sherry.faulkner@us.dlapiper.com

William Carter Boisvert    cboisvert@fflawoffice.com, nalmaleh@fflawoffice.com

**4:24-cv-00988-P The CM/ECF system has NOT delivered notice electronically to the names listed below. The clerk's office will serve notice of court Orders and Judgments by mail as required by the federal rules. An attorney/pro se litigant is cautioned to carefully follow the federal rules (see FedRCivP 5) with regard to service of any document the attorney/pro se litigant has filed with the court. The clerk's office will not serve paper documents on behalf of an attorney/pro se litigant.**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**

3

Appx. 082

[STAMP dcecfStamp_ID=1004035775 [Date=4/28/2025] [FileNumber=16270416-0] [ad3046ad2b2562975ef73931b09db03aaf65d8e580fd5db09aeca7843947875332 93bec5bf6678507d72669308130f812a064ae5398456bde45bf7e22f2fda6b]]

**Document description:**Proposed Order

**Original filename:**n/a

**Electronic document Stamp:**

[STAMP dcecfStamp_ID=1004035775 [Date=4/28/2025] [FileNumber=16270416-1] [9b36a4590a08a3d1bb44f27aacc73515ab7689e98d02ccaf2693a6d53c005afc84 d5f4a5f485056df890251d8fc1a2cb26156e303c45d2cef6770fb920342d3d]]

The information contained in this email may be confidential and/or legally privileged. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message. To contact us directly, send to postmaster@dlapiper.com. Thank you.

Appx. 083