IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **Point Bridge Capital, LLC,** | § | |
| **Hal Lambert** | § | |
| | § | |
| *Plaintiffs*, | § | |
| v. | § | **Case No. 4:24-cv-00988-P** |
| | § | |
| **Charles Johnson,** | § | |
| *Defendant.* | § | |

**PLAINTIFFS' MOTIONS IN LIMINE**

Pursuant to the Court's Amended Final Scheduling Order, (ECF 76), Plaintiffs Point Bridge Capital, LLC and Hal Lambert ("Plaintiffs") respectfully request that the Court grant the following motions in limine.

## **MOTIONS IN LIMINE**

**1.      Motion in limine to exclude references to litigation funding or third-party support.**

Plaintiffs respectfully move to exclude from trial any reference to litigation funding, third-party financial backing, or the identities or motives of individuals or entities allegedly supporting this lawsuit. This includes direct evidence, argument, or innuendo concerning any such support. These matters are wholly irrelevant to the claims and defenses in this case and risk confusing the jury, inviting prejudice, and derailing the proceedings with speculation and conspiratorial rhetoric.

The Court is already familiar with Defendant Charles Johnson's pattern of promoting fringe theories about this lawsuit's origins. In court and across social media, Johnson has claimed that the case is financed by private individuals nursing personal grudges—and, more fantastically, that it is part of a "Mormon-Chinese conspiracy" linked to the undersigned counsel's affiliation with Quinn Emanuel Urquhart & Sullivan, LLP and DLA Piper LLP. These assertions are not just false, but they are a transparent attempt to shift focus from Johnson's own conduct to imagined institutional enemies. They have no bearing on the issues the jury must decide: the amount of damages that Johnson must pay Plaintiffs.

Courts within the Fifth Circuit and elsewhere have consistently barred references to litigation funding for precisely this reason: such material invites prejudice and confusion without contributing to the fact-finding process. A sampling of decisions illustrates the point:

- *Eidos Display, LLC v. Chi Mei Innolux Corp.*, 2017 WL 2773944, at *1 (E.D. Tex. May 26, 2017) *(*granting motion in limine to prohibit "references, argument, or evidence regarding litigation funding documents").

2

- *SSL Servs., LLC v. Citrix Sys., Inc.*, 2012 WL 12906091 at *1 (E.D. Tex. May 24, 2012) *(*precluding parties from "making any reference to investors in the litigation, litigation financing or attorney's fee arrangements").

- *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 2015 WL 627430, at *2 (E.D. Tex. Jan. 31, 2015) (precluding "any references, evidence, testimony (including expert testimony), arguments regarding, or inquires attempting to elicit testimony" regarding "individuals with an ownership interest in [Plaintiff] (e.g., shareholders)").

- *Williams v. IQS Ins. Risk Retention*, 2019 WL 937848, at *4 (E.D. La. Feb. 26, 2019) *(*evidence of litigation funding arrangement was inadmissible as it was irrelevant to any issue being tried and would only confuse jury and unfairly prejudice Plaintiffs).

- *Fleet Connect Sols. LLC v. Waste Connections US, Inc.*, 2022 WL 2805132, at *3 (E.D. Tex. Jun. 29, 2022) (finding litigation funding agreements irrelevant and not discoverable).

- *Mondis Tech., Ltd. v. LG Elecs., Inc.*, 2011 WL 1714304, at *3 (E.D. Tex. May 4, 2011) (ruling that litigation funding documents were not discoverable).

- *MGI Digital Tech. S.A. v. Duplo U.S.A. Corp.*, 2024 WL 655481, at *8 (C.D. Cal. Jan. 26, 2024) (granting motion in limine to preclude reference to third-party litigation funding).

These decisions reflect a consistent principle: funding arrangements are not evidence. They do not tend to prove or disprove any element of the claims or defenses. But they do carry a high risk of prejudice—particularly when, as here, a party has demonstrated an intent to leverage them for no purpose other than to confuse or mislead the jury.

Plaintiffs therefore respectfully request that the Court grant this motion and instruct Johnson to refrain from making any reference—direct or indirect—to litigation funding, third-party support, or related financial arrangements in the presence of the jury.

**Granted** _____   **Denied** _____

**2.    Motion in limine to bar Johnson from invoking his financial condition, relative wealth, pro se status, or similar "David v. Goliath" arguments.**

This Court should exclude any evidence, testimony, or argument referring to Johnson's financial condition, personal resources, or ability to satisfy a judgment—except for the limited

3

purpose of punitive damages, which the Court has already ruled the jury will consider. The Court should likewise exclude any suggestion that Johnson's past or present pro se status entitles him to special treatment or jury sympathy.

Throughout this case, including in public commentary, Johnson has repeatedly invoked themes of financial hardship and institutional opposition to avoid his discovery obligations. Plaintiffs anticipate that Johnson will attempt—directly or indirectly—to invoke the parties' relative financial positions to portray himself as a lone individual facing a well-resourced opponent. That tactic constitutes an improper appeal to passion and prejudice, as recognized by the Sixth Circuit. *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756–57 (6th Cir. 1980) (granting defendant re-trial where plaintiff's counsel repeatedly informed jury of defendant's size in improper "appeal to passion and prejudice.").

Courts routinely reject this type of appeal. As one court explained, "Courts routinely exclude evidence regarding a company's revenue, financial condition, profits, net worth, and the like" because such "[e]vidence of a party's financial condition is generally not relevant and can be unduly prejudicial, as it can distract the jury from the real issues in the case." *In re Homestore.com, Inc.*, No. 01-cv-11115, 2011 WL 291176, at *1 (C.D. Cal. Jan. 25, 2011). Similarly, "[a]ny evidence regarding the relative wealth of the parties, the wealth of the Defendant, or any similar information . . . is clearly not relevant to the issues in this lawsuit." *Oden v. Wellfirst Techs., Inc.*, No. 20-cv-034, 2021 WL 4391715, at *2 (S.D. Tex. Apr. 22, 2021).

Permitting Johnson to invoke his financial status would distort the jury's view of liability and damages by suggesting that he should be judged by what he can afford, rather than by what he did. It would also imply—wrongly—that Plaintiffs, by contrast, are more capable of absorbing harm and thus less entitled to redress.

Examples of arguments that should be excluded include:

- Suggestions that Johnson is a "lone individual" opposing "big law firms" or "institutional actors";
- Comments that he cannot afford to pay a damages award;
- Appeals to his self-representation as a reason for leniency;
- Comparisons between the parties' financial standing;
- Suggestions that Plaintiffs' resources diminish the seriousness of the harm caused.

None of these statements speak to the actual conduct at issue or to the calculation of compensatory harm. Their only effect would be to draw the jury away from the facts and toward sympathy.

As other courts have recognized, "The danger of [evidence's] probative value being outweighed by its unfairly prejudicial impact is particularly high where a plaintiff references a defendant's financial status for the purpose of invoking the jury's sympathy by conjuring a David versus Goliath scenario." *Wielgus v. Ryobi Techs., Inc.*, No. 08 CV 1597, 2012 WL 1853090, at *6 (N.D. Ill. May 21, 2012); *see also Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, No. 11-cv-268, 2016 WL 10706086, at *2 (N.D. Ind. Oct. 28, 2016) ("[T]he probative value of abstract references to [the party's] size and strength is substantially outweighed by its likely unfair prejudicial impact where such references would serve only to invoke the jury's sympathy by conjuring a David versus Goliath scenario."); *Balu v. Costa Crociere S.p.A., Co.*, No. 11-cv-60031, 2011 WL 13217270, at *1 (S.D. Fla. Nov. 3, 2011) ("Plaintiff shall not be permitted to introduce evidence regarding the size, value, or assets of [the other party], to make a 'David and Goliath' argument to the jury.").

Accordingly, this Court should grant Plaintiffs' motion in limine and exclude all evidence, testimony, or argument that invokes Johnson's financial condition, relative wealth, pro se status,

or similar "David v. Goliath" arguments—except when directly and narrowly tied to the issue of punitive damages.

**Granted** _____   **Denied** _____

3. **Motion in limine to exclude references to the First Amendment or Johnson's supposed claim to be a "journalist."**

Plaintiffs respectfully move to exclude from trial any evidence, testimony, or argument by Johnson invoking the First Amendment or his claimed status as a journalist. These concepts have no bearing on the issue now before the jury: damages. Any such reference would be irrelevant, confusing, and highly prejudicial.

Throughout this litigation—including at hearings—Johnson has repeatedly claimed that his actions should be excused or viewed more leniently because he is a "journalist" or because he believes the First Amendment protects his conduct. But this trial is not about Johnson's opinions or constitutional philosophy. The Court has already determined liability. The jury's sole task is to determine the extent of the harm Johnson caused and the appropriate amount of damages. Whether Johnson believes he was acting as a journalist, or claims some special constitutional identity, has no relevance to that inquiry.

Allowing Johnson to make such statements at trial would only mislead the jury, encourage impermissible nullification, and invite confusion about the scope of their responsibility. He should not be permitted to reframe the trial as a referendum on press freedom or political expression. The Court's gatekeeping role under Federal Rules of Evidence 401 and 403 squarely bars that approach.

As the court made clear in *Hollybrook Cottonseed Processing, LLC v. Carver, Inc.*, where liability has already been determined, "[t]he second jury will be instructed that the issue of liability has already been determined, and the only question they must answer is what damages the

6

redhibitory defect caused. . . . [B]ut [Defendant] will not be permitted to argue, nor will the jury be permitted to find, that there was no redhibitory defect." 2012 WL 12929817, at *14 (W.D. La. Mar. 22, 2012).

While *Watts v. Laurent*, 774 F.2d 168, 181 (7th Cir. 1985), acknowledges that limited evidence from the liability phase may be admissible, it does so only "to the extent such evidence is relevant . . . in any way to damages." Johnson's First Amendment references are not. They do not relate to Plaintiffs' injuries, to causation, or to any legitimate measure of damages. They are entirely collateral and would serve only to improperly influence the jury with broader political or constitutional themes that have no role in this phase of the case.

Accordingly, Plaintiffs request that the Court preclude Johnson from referencing the First Amendment, freedom of the press, journalism, or any similar justification or identity during voir dire, opening statement, witness examination, or closing argument. These references are irrelevant to damages and would only prejudice the jury's task.

**Granted** _____   **Denied** _____

**4.   Motion in limine to exclude any mention of the trebling of damages under the RICO statute and the ability of any party to collect attorney's fees.**

The trebling of damages has no bearing on any claim or defense in this case. As the Fifth Circuit has explained, "informing a jury would serve no useful function and its probable consequence would be harmful—an impermissible lowering of the amount of damages." *Pollock & Riley, Inc. v. Pearl Brewing Co.*, 498 F.2d 1240, 1243 (5th Cir. 1974) (addressing treble damages under the Clayton Act). The court cautioned:

"[I]t is not for the jury to determine the amount of a judgment. Its function is to compute the amount of damages. Congress's authorization . . . to triple the award of damages is a matter of law to be applied by the district court without interference from the jury. The fact that the awarded

7

amount will be tripled has no relevance in determining the amount a plaintiff was injured by the [] violation." *Id.*

The court further warned that "a jury might take the revelation of the treble damage provision as an intimation from the court to restrict the amount of damages." *Id.* That same logic applies fully to RICO. *See Embry-Riddle Aeronautical Univ. v. Ross Aviation, Inc.*, 504 F.2d 896, 905 (5th Cir. 1974) ("The District Court properly refused to inform the jury that any award of damages would be trebled."); *HBE Leasing Corp. v. Frank*, 22 F.3d 41, 45 (2d Cir. 1994) (informing the jury of RICO's treble damages provision "is irrelevant to the jury questions of liability and damages and may tend to confuse or prejudice a jury into reducing its eventual award, thus frustrating Congress's goal of deterring improper conduct by assessing treble damages"); *In re Exxon Valdez*, 229 F.3d 790, 799 (9th Cir. 2000) ("Juries are also not to be told of statutory caps on damages, or, in antitrust and RICO cases, that damages will eventually be trebled.").

The same rule applies to any reference to attorney's fees. In *U.S., ex rel. Miller v. Bill Harbert Int'l Const., Inc.*, the court held that "it is error to instruct a jury as to . . . attorney's fees, or other court-determined awards that might pervert the jury's damages determination." 2007 WL 851868, at *2 (D.D.C. Mar. 14, 2007). Likewise, in *U.S. ex rel. Laymon v. Bombardier Transp. (Holdings) USA, Inc.*, the court recognized that "[t]here is also a great weight of authority in a variety of other contexts establishing a general rule that it is error to instruct a jury as to . . . attorneys fees, or other court-determined awards that might corrupt the jury's damage determination." 656 F. Supp. 2d 540, 547–48 (W.D. Pa. 2009) (collecting cases).

Because treble damages and attorney's fees are legal remedies to be applied, if at all, by the Court, any mention of them at trial would risk misleading the jury and distorting its assessment of compensatory harm. Plaintiffs therefore respectfully request that the Court exclude any

8

reference to treble damages under RICO or the availability of attorney's fees during voir dire, opening statement, witness examination, or closing argument.

**Granted** _____  **Denied** _____

5. **Motion in limine to exclude any reference to the political affiliations, beliefs, or contributions of any party, witness, attorney, or law firm.**

This case is not about politics. But Charles Johnson wants to make it one. From the outset, Johnson has attempted to reframe this suit as a partisan crusade—invoking Hal Lambert's political views, referencing his GOP ties, and publicly smearing him in ways calculated to inflame rather than inform. But political affiliation is not evidence. It is prejudice. And courts routinely bar precisely this kind of inflammatory rhetoric.

Federal Rule of Evidence 403 prohibits evidence that risks "unfair prejudice, confusing the issues, [or] misleading the jury." That standard is squarely met here. Courts across the country have granted motions in limine to bar political references that serve no probative purpose:

- In *Virtru Corp. v. Microsoft Corp.*, the court excluded "evidence, testimony, or argument that raises . . . political beliefs . . . of a party, witness, attorney, or law firm." 2023 WL 11898407, at *1 (W.D. Tex. Apr. 26, 2023).

- In *Chamberlain Grp. LLC v. Overhead Door Corp.*, the court's standard limine order barred "references to political beliefs." 2023 WL 2776854, at *9 (E.D. Tex. Apr. 4, 2023).

- In *Low v. Trump Univ., LLC*, the court excluded "any evidence or argument relating to witnesses' political affiliation, voting preferences, and political contributions," holding that "such evidence has no apparent relevance and may be unduly inflammatory" and "membership in a political party, without more, does not impugn witnesses' credibility." 2016 WL 6732110, at *4 (S.D. Cal. Nov. 15, 2016).

- In *Evans v. Cernics, Inc.*, the court ordered that Defendants are precluded from offering any evidence or testimony regarding their political affiliations, as such evidence is "irrelevant in this case." 2017 WL 4863207, at *1 (W.D. Pa. Oct. 26, 2017).

- In *Shirley v. Washington State Dep't of Fish & Wildlife*, the court barred "testifying about, offering into evidence, arguing, or otherwise providing information regarding the political affiliations or viewpoints of any party or witness," finding such information irrelevant. 2025 WL 1568205, at *4 (W.D. Wash. June 3, 2025).

To be clear: Plaintiffs are not seeking to exclude Johnson's own defamatory statements—some of which contain political innuendo—where those statements form the basis of the claims. But generalized references to Mr. Lambert's political identity, contributions, or ideology are irrelevant to any element of damages. Their only likely effect is to bias the jury or encourage decision-making on impermissible grounds.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motions in limine.

Dated: July 10, 2025

Respectfully submitted,

/s/ *Will Thompson*
Will Thompson
DLA PIPER LLP (US)
Will Thompson
State Bar No. 24094981
will.thompson1@us.dlapiper.com
1900 N. Pearl Street
Dallas, Texas 75201
Telephone: (406) 546-5587

COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 10, 2025, a true and correct copy was served via the Court's electronic filing system.

/s/ *Will Thompson*
Will Thompson

## **CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that I contacted the defendant, Charles Johnson, about the relief sought through this motion. Mr. Johnson responded, "I leave it to Judge Pittman to make the determinations as he sees fit."

/s/ *Will Thompson*
Will Thompson