IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| Point Bridge Capital, LLC,<br>Hal Lambert<br><br>*Plaintiffs*,<br><br>v.<br><br>Charles Johnson,<br><br>*Defendant.* | §<br>§<br>§   Case No. 4:24-cv-00988-P<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

### PLAINTIFF'S POST-TRIAL MOTION FOR ATTORNEY'S FEES UNDER RICO

Plaintiffs Point Bridge Capital, LLC and Hal Lambert ("Plaintiffs") respectfully move for an award of $1,033,130 in attorneys' fees under 18 U.S.C. § 1964(c). The statute mandates that a prevailing civil RICO plaintiff's recovery "shall . . . includ[e] a reasonable attorney's fee." Here, Plaintiffs prevailed on their RICO claims and thus entitled to recover the full measure of their reasonable fees.[1]

### INTRODUCTION

Under the civil RICO statute, a prevailing plaintiff "shall recover . . . the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). That entitlement applies to all phases of the litigation. The jury awarded Plaintiffs $15,500,000 on the two RICO questions. They now seek full recovery of their attorney's fees incurred in this matter. Specifically, Plaintiffs seek to recover the following amounts:

---

[1] Plaintiffs' proposed final judgment reflects these requested fees. The proposed final judgment was submitted as an attachment to their Motion for Treble Damages and Asset Preservation Relief.

1

| Firm | Attorney's Fees Requested |
|---|---|
| Quinn Emanuel | $18,753.00 |
| DLA Piper | $1,014,377.00 |
| **TOTAL** | **$1,033,130.00** |

This request is reasonable, well-supported, and fully recoverable under RICO. Plaintiffs achieved a substantial verdict with extraordinary efficiency. One lead trial lawyer and one paralegal managed the case from pre-suit through post-trial, with only minimal support from junior attorneys. This lean staffing contrasts sharply with the magnitude of the result, further reinforcing the reasonableness of the fees requested. Plaintiffs have substantiated the request with detailed billing records and a comprehensive declaration explaining the work performed and its necessity at every stage of litigation.

## ARGUMENT

### I. Legal Standard

The federal civil RICO statute provides that persons injured under the statute "shall recover . . .the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c) (emphasis added). The Fifth Circuit has consistently interpreted this language as creating a mandatory entitlement to costs and attorney's fees. *Alcorn Cnty., Miss. V. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1165 (5th Cir. 1984) ("Congress made the fee award mandatory to successful civil RICO plaintiffs."); *DHI Grp., Inc. v. Kent*, No. 21-20274, 2022 WL 3755782, at *7 (5th Cir. Aug. 22, 2022) (recognizing that "fees are required when a plaintiff establishes RICO liability").

Accordingly, Plaintiffs Lambert and Point Bridge Capital are due all reasonable costs and attorney's fees incurred in this action.[2]

Courts in the Fifth Circuit apply a two-step process to determine the appropriate award of attorney's fees. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323–24 (5th Cir. 1995) (per curiam) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). First, courts determine the lodestar, which is the reasonable number of hours expended on the litigation multiplied by the reasonable hourly rates for the participating lawyers. *Kellstrom*, 50 F.3d at 324. The hourly rate is determined "according to the prevailing market rates in the relevant community." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011) (citation omitted). "[T]he relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).

Then, courts decide whether to accept the lodestar or adjust it, considering the factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[3] *Id.*

---

[2] Parties seeking costs and fees will generally "segregate" time and expenses on claims for which costs and fees are authorized from time and expenses on claims for which costs and fees are <u>not</u> authorized. *See, e.g.*, *Shelton v. Schar*, 2018 WL 4289654, at *5 (M.D. Fla. Aug 23, 2018). But federal and state courts alike recognize that such a division is only possible "when claims are based on distinct facts or legal theories." *Id.* Here, Defendant's statements that founded Plaintiff Hal Lambert's defamation claim also served as part of the "retaliation" of Defendant's racketeering scheme. Therefore, "all of Plaintiffs' claims were related to the same set of operative facts." *Id.; see also Sharif v. Wellness Intern. Network, Ltd.*, 2008 WL 2885186, at *3 (N.D. Tex. July 22, 2008) ("the party suing for attorney's fees may recover the entire amount covering all claims" if "the causes of action involved in the suit are dependent upon the same set of facts or circumstances") (citation omitted). Because Plaintiffs' claims all "relate to the same set of operative facts," it is "impractical (if not impossible)" to isolate the costs and fees incurred pursuing the RICO claims. *Shelton*, 2018 WL 4289654, at *5. So Plaintiffs are due all reasonable costs and fees incurred in this action.

[3] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717–19.

at 329. "The lodestar, however, is presumptively reasonable and should be modified only in exceptional cases." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). "The party desiring modification of the lodestar bears the burden of establishing that a reduction is justified." *Ferguson v. Sw. Reg'l PCR, LLC*, No. 5:22-CV-182-H, 2023 WL 9890884, at *2 (N.D. Tex. July 31, 2023) (citation omitted).

In addition to fees for the attorney's time, a party seeking fees may recover "fees for a paralegal's time." *Janvey v. Alguire*, No. 09-cv-0724, 2019 WL 13075934, at *3 (N.D. Tex. Feb. 6, 2019).

## II.     The requested attorney's fees are reasonable under established lodestar principles and supported by the record.

Plaintiffs seek a consolidated award of $1,033,130.00 in attorney's fees under 18 U.S.C. § 1964(c). The requested amount reflects time reasonably expended throughout the litigation (from pre-suit investigation to post-trial briefing) at market-appropriate rates and is supported by contemporaneous billing records and the sworn declaration of Will Thompson. (*See* Declaration of Will Thompson ("Thompson Decl.") ¶¶ 1–25, Appx. 002–009; Billing Records Ex. A, Appx. 011–028.)

As set forth in detail in the Thompson Declaration, from the outset of this case, Plaintiffs litigated with exceptional efficiency and discipline. (Thompson Decl. at ¶¶5, 10, Appx. 003-05). The matter was staffed exclusively by a single lead attorney and one paralegal for nearly the entire case. (*Id.* at ¶10, Appx. 005). This approach minimized redundancy and maintained a lean cost profile across all phases of the litigation. (*Id.* at ¶5, Appx. 003-05).

This staffing strategy stands in sharp contrast to how most peer firms would approach a matter of this scope and complexity. It is standard practice at such firms to assign at least one full-time associate—if not a team of associates and support staff—to handle legal research, drafting,

4

discovery, motion practice, and trial preparation. (*Id.* at ¶10, Appx. 005). Here, by comparison, Plaintiffs relied almost entirely on one experienced lead attorney and one paralegal. That lean configuration allowed Plaintiffs to maintain tight control over costs while still executing a full-spectrum litigation strategy.

The jury's verdict reflects the quality and efficiency of Plaintiffs' results. (*Id.* at ¶12, Appx. 006). Plaintiffs' counsel personally performed the full scope of litigation tasks: factual investigation, complaint drafting, responding to motions to dismiss, managing written discovery, preparing for and participating in hearings, taking and defending depositions, drafting dispositive and pretrial motions, and trying the case through a successful jury verdict. He also led all post-trial efforts, including final judgment briefing and this fee application.

Plaintiffs' counsel billed at his firms' customary and reasonable hourly rates. (*Id.* at ¶¶7, 15, Appx. 004, 006) When this matter began, counsel was a partner at Quinn Emanuel Urquhart & Sullivan LLP, a litigation-only firm with more than 1,000 lawyers across 35 offices worldwide. Courts across the country have repeatedly found Quinn Emanuel's rates reasonable, given the firm's national reputation, the experience of its attorneys, and the consistently high quality of its work.[4] (*Id.* at ¶8, Appx. 004).

---

[4] *See, e.g., Rudi v. Wexner*, No. 2:20-cv-3068 (MHW), 2022 WL 1682297, at *5 (S.D. Ohio May 16, 2022) ("The Court finds that [Quinn Emanuel's] hourly rates are reasonable under the circumstances of this particular [contingency] case. Accordingly, this factor weighs in favor of granting the requested fee."); *Blattman v. Siebel*, No. 15-cv-530 (CFC) (D. Del. Dec. 6, 2021) (ECF No. 434) (finding attorneys' fees requested by Quinn Emanuel reasonable and declining to reduce the fee award by the requested percentage); *Proofpoint, Inc. v. Vade Secure, Inc.*, No. 3:19-cv-4238 (MMC) (RMI) (N.D. Cal. Dec. 17, 2020) (ECF No. 376 at 7) (finding Quinn Emanuel attorneys "are experienced and seasoned practitioners; that they are employed at a large international firm with a highly regarded reputation; that they have highly specialized . . . backgrounds" and that the firm's fees are reasonable); *Liqwd, Inc. v. L'Oréal USA, Inc.*, 17-cv-14 (JFB) (SRF) (D. Del. Dec. 16, 2019) (ECF No. 1162 at 25-28) (finding Quinn Emanuel's "hourly rates and [] hours spent [are] reasonable").

Counsel now practices at DLA Piper, a peer firm to Quinn Emanuel. DLA Piper charges rates comparable to those of other leading firms in the Dallas–Fort Worth market. (*See id.* ¶¶7-8, Appx. 004; *see also* Ex. B, Brenda Sapino Jeffreys, Partner Compensation, *Billing Rates Are Trending Higher in Dallas Than Houston*, Law.com (Nov. 14, 2024), https://www.law.com/texaslawyer/2024/11/14/partner-compensation-billing-rates-are-trending-higher-in-dallas-than-houston-/ (reporting that Dallas partners' average hourly billing rate was $1,157, based on responses from partners across firm sizes, not limited to Am Law 100 or "Big Law" firms), Appx. 24–27.)

Courts in this District have approved similar rates charged by other national firms and peers of Quinn Emanuel and DLA Piper. *See, e.g.*, *Hill v. Estate of Hill*, 2022 WL 17475788, at *16 (N.D. Tex. Dec. 5, 2022) ("As the court recently recognized in considering similar requested hourly rates charged by counsel with similar experience in the 2020 Action, counsel practicing at large firms (such as Winston & Strawn) and their rates are in line with the rates charged at comparable large firms in the area for similar legal services."); *Indus. Print Techs., LLC v. Cenveo, Inc.*, 2020 U.S. Dist. LEXIS 156538, at *18 (N.D. Tex. June 12, 2020) ("The Court . . . finds both the standard rates and the confidential, negotiated rates charged by Weil and Fish to be reasonable," after noting that prevailing hourly rates for partners were $1,210 in 2020).

The paralegal assisting in this matter, Sherry Faulkner, provided critical support throughout the litigation—organizing discovery, managing exhibits, preparing filings, and ensuring compliance with procedural requirements. Her work reduced attorney time and kept costs down. (*See* Thompson Decl. ¶¶4, 7, 10, 14, 18, Appx. 003-07). Her hourly rate falls well within the range commonly charged by large commercial firms in the Dallas–Fort Worth area and reflects a cost-effective staffing approach. *See Michaels Stores Procurement Co. v. DMR Constr., Inc.*, 2019 WL

399074, at *2 (N.D. Tex. Jan. 31, 2019) (finding $225 per hour a reasonable fee for paralegals in 2019).

The total hours billed are detailed in the accompanying records. A substantial portion of those fees were necessitated by Johnson's repeated discovery obstruction which forced Plaintiffs to engage in extensive motion practice, compliance monitoring, and hearing preparation. (Thompson Decl. ¶¶10-11, Appx. 005-06). Plaintiffs sought to avoid judicial intervention, but Johnson's refusal to meet his basic obligations required multiple rounds of briefing, Court appearances, and follow-up enforcement efforts. That discovery-related burden alone justifies a significant portion of the overall fee request.

None of the twelve *Johnson* factors supports a downward adjustment of the lodestar. (*See* Thompson Decl. ¶¶9–21, Appx. 005-07 (discussing each *Johnson* factor in detail)). Additionally, the requested fee award is modest when compared to the overall recovery in this case. Plaintiffs prevailed on their civil RICO claim and secured a substantial judgment, including treble damages, making the fee sought a fraction (roughly 1.5%) of the overall verdict. This further underscores the reasonableness and proportionality of the fee request.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the Court award them **$1,033,130.00** in attorney's fees under 18 U.S.C. § 1964(c).

Dated: July 21, 2025                    Respectfully submitted,

                                                        /s/ *Will Thompson*
Will Thompson
DLA PIPER LLP (US)
Will Thompson
State Bar No. 24094981
will.thompson1@us.dlapiper.com
1900 N. Pearl Street
Dallas, Texas 75201
Telephone: (406) 546-5587

COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 21, 2025, a true and correct copy was served via the Court's electronic filing system.

/s/ *Will Thompson*
Will Thompson

8