# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| Point Bridge Capital, LLC, | § | |
| Hal Lambert | § | |
| | § | |
| *Plaintiffs*, | § | |
| v. | § | Case No. 4:24-cv-00988-P |
| | § | |
| Charles Johnson, | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

**DECLARATION OF WILL THOMPSON IN SUPPORT OF PLAINTIFF'S**
**POST-TRIAL MOTION FOR ATTORNEY'S FEES UNDER RICO**

I, Will Thompson, declare as follows. I am an attorney admitted to the State Bar of Texas and this Court and a partner at the law firm of DLA Piper LLP. I am attorney of record for the plaintiffs in the above captioned action. I am over the age of twenty-one years and am not a party to this action. I have personal knowledge of the facts set forth in this declaration. I declare under penalty of perjury that the facts stated in this document are true and correct.

1.    I have been licensed to practice in the State of Texas since 2014. I am admitted to appear before the U.S. Court of Appeals for the Fifth Circuit and the U.S. Court of Appeals for the Ninth Circuit, and the U.S. Districts Courts for the Northern, Southern, and Western Districts of Texas, as well as other federal district courts across the country. I am a first-chair trial lawyer with appellate experience in a broad range of practice areas. I was recognized by Lawdragon 500 in 2023 and 2024. My law firm biography can be found at https://www.dlapiper.com/en/people/t/thompson-will.

2.    Following my graduation from Stanford Law School in 2012, I clerked for the Honorable Mary M. Schroeder from 2012-2013 on the United States Court of Appeals for the

1

Ninth Circuit and from 2013-2014 for the Honorable Lee H. of the United States District Court for the Southern District of Texas. After completing two federal clerkships, I worked as an associate at the law firm Susman Godfrey and then Burns Charest, where I became partner in 2018. I have provided representations in a broad range of matters, including matters involving RICO, fraud, and conspiracies, including RICO and fraud cases in the Fort Worth Division of the Northern District of Texas.

3.      For the overwhelming majority of the case, I was sole attorney who billed time and worked on the matter. Shortly before trial, roughly one week before trial, I enlisted the help of a junior to mid-level associate to provide some spot legal research. That associate was Sun Bing. I also had another first-year associate, Cooper Millhouse, assist with legal research on entry of the final judgment, the motion for post-verdict fees, and treble damages. These lawyers worked at my direction and billed a minimal amount of time to this case.

4.       Paralegal, Sherry Faulkner, provided support on administrative and litigation tasks, including document organization, vendor coordination, and preparation of evidentiary materials. In advance of trial, I also used people from DLA Piper's internal graphics department to assist with slides, demonstratives, and collecting exhibits for the trial list. In my experience, these people were cheaper than using third-party vendors for graphics and demonstratives, which is the route that I have typically undertaken in the past. One other person, Matt Lawnicki, was billed to help collect vendor quotes and assist in the collection of Mr. Johnson's electronic devices.

5.      Our staffing approach was lean, efficient, and deliberate. All of the time billed was necessary to prosecute this matter on behalf of Plaintiffs, and the time spent was reasonable and necessary for the respective task, and no time was duplicative or excessive.

6.    DLA Piper maintains contemporaneous billing records for all client matters. Each timekeeper records time in one-tenth-of-an-hour increments. I reviewed and approved all time entries reflected in this Motion. Attached as Exhibit A are true and correct copies of the billing entries associated with this matter, both from Quinn Emanuel and DLA Piper.

7.    My hourly rate and Ms. Faulkner's hourly rate are consistent with those charged by similarly qualified professionals at peer firms in the Dallas–Fort Worth legal market. These rates are well within the range approved by courts in this District. *See, e.g., Hill v. Estate of Hill*, No. 20-cv-3634, 2022 U.S. Dist. LEXIS 219331, at *49 (N.D. Tex. Dec. 5, 2022); *Indus. Print Techs., LLC v. Cenveo, Inc.*, No. 15-md-02614, 2020 U.S. Dist. LEXIS 156538, at *18 (N.D. Tex. June 12, 2020); *Michaels Stores Procurement Co. v. DMR Constr., Inc.*, No. 3:18-cv-01232, 2019 WL 399074, at *2 (N.D. Tex. Jan. 31, 2019) (approving $225/hour for paralegal time).

8.    DLA Piper regularly benchmarks its rates against firms of comparable size and reputation. The firm also reviews published legal industry data to ensure our rates remain competitive. Attached as Exhibit B is a true and correct copy of a November 14, 2024 article published by Law.com reporting that average partner billing rates in Dallas are $1,157/hour—including firms of all sizes, not limited to Am Law 100 firms. See Brenda Sapino Jeffreys, Partner Compensation, Billing Rates Are Trending Higher in Dallas Than Houston, Law.com, https://www.law.com/texaslawyer/2024/11/14/partner-compensation-billing-rates-are-trending-higher-in-dallas-than-houston-/. My previous firm, Quinn Emanuel, performed similar work to ensure that rates were reasonable, which has led to multiple courts approving of fee awards incorporating Quinn Emanuel's hourly rates. Tue and correct copies of the Quinn Emanuel attorney's fee statements in this matter are also attached with Exhibit A.

3

### Application of the *Johnson* Factors

9.      I have analyzed the twelve factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), and discuss them below. I analyzed those factors to assess whether a departure from the lodestar standard was appropriate. In my judgment, these factors support the reasonableness of the hours expended and the rates charged. They do not justify any downward adjustment to the lodestar.

10.      *Time and Labor Required*: In addition to Johnson's refusal to engage in basic discovery, which forced Plaintiffs to shoulder the entire burden of compliance efforts, this case proceeded through a full jury trial. Plaintiffs litigated the matter from initial investigation to post-trial briefing. Trial preparation required focused effort on pretrial filings, exhibit preparation, evidentiary planning, and strategy. Trial included opening statement, direct and cross examinations of witnesses, evidentiary argument, and closing statement—all performed by Plaintiffs' sole trial counsel. Post-trial work included briefing on final judgment and fee recovery. Plaintiffs staffed this matter with essentially just a single trial lawyer and one paralegal for nearly the entire duration. That level of staffing was extraordinarily lean given the magnitude and complexity of the case, especially in light of the $71 million damages award ultimately obtained. In my experience, most peer firms would approach a matter of this scope and complexity with at least one full-time associate—if not a team of associates and support staff—to handle legal research, drafting, discovery, motion practice, and trial preparation

11.      *Novelty and Difficulty*: While the legal standards were not necessarily novel, the circumstances were unusually difficult. Johnson's obstruction during discovery, coupled with a trial centered on RICO and defamation theories, required navigation of complex legal issues and

factual records. Johnson also presented unique difficulties as a trial witness due to his evasive conduct and public persona, which required heightened strategic planning for cross-examination.

12. *Skill Required*: This case required a high level of trial advocacy, including strategic witness preparation, jury argument, and the presentation of complex facts in a compelling narrative. The discovery and enforcement phases required experience with metadata preservation, forensic protocol design, and general discovery nuance. Trial demanded additional skill in direct and cross-examination, evidentiary argument, and jury persuasion. In particular, Johnson proved extremely difficult to deal with—both procedurally and substantively—which necessitated extensive planning and strategy in preparing his cross-examination to ensure credibility challenges and evidentiary hurdles could be effectively addressed. The resulting $71 million verdict stands as one of the largest civil RICO and defamation awards in recent years, underscoring the level of legal acumen and trial skill required to prevail.

13. *Preclusion of Other Work*: The trial and its lead-up demanded nearly my full-time attention. I was unable to accept new matters or meaningfully advance other client work during the final month before trial and in the weeks following, when post-trial submissions and enforcement efforts were underway.

14. *Customary Fee*: The rates charged in this case are consistent with market rates for similarly situated attorneys and paralegals in the Dallas–Fort Worth legal market

15. *Fixed or Contingent*: Plaintiffs retained my law firms on a standard hourly basis. Fees were invoiced monthly and reviewed for reasonableness before submission

16. *Time Limitations*: Tight pre-trial deadlines imposed significant time constraints, especially given Johnson's noncompliance and delayed productions. These delays compressed

Plaintiffs' trial preparation into a tighter window and increased the need for efficient, high-impact work.

17.    *Amount Involved and Results* Obtained: Plaintiffs prevailed at trial on their RICO and defamation claims and obtained a $71 million judgment, including treble damages. The relief obtained was sweeping. The requested fee award represents a fraction, roughly ~1.5% of the total award, which underscores the requests proportionality and reasonableness.

18.    *Experience, Reputation, and Ability*: I am a seasoned federal litigator with trial experience in RICO, fraud, and complex tort cases and has been recognized by Lawdragon 500 in consecutive years. Both Quinn Emanuel and DLA Piper are national litigation firms with reputations for excellence, and both provided support at different phases of the case. This matter was handled by one experienced trial lawyer and one senior paralegal throughout

19.    *Undesirability of the* Case: The case was made undesirable by Johnson's repeated defiance of court orders, public attacks on me, and disparagement of my law firms. Johnson used social media platforms to launch personal and professional attacks, further attempting to undermine the legitimacy of the litigation and my integrity. The necessity of litigating against a defendant who regularly disregarded judicial process and engaged in targeted harassment created reputational, personal, and logistical difficulties

20.    *Nature and Duration of Client Relationship*: I have represented Plaintiffs for the entirety of this matter.

21.    *Awards in Similar Cases*: Plaintiffs prevailed on all claims after trial and obtained one of the largest civil RICO and defamation verdicts in recent years. That result, combined with the procedural burden imposed by Johnson's discovery violations, fully justifies a complete award of fees under 18 U.S.C. § 1964(c).

6

22.     Based on my experience, review of the records, and direct supervision of the work performed, I believe the fees requested in the Plaintiffs' post-verdict motion for fees are reasonable and necessary to address the trial and pre-trial stages of this matter.

23.     Attached as Exhibit A are true and correct copies of the billing entries associated with this matter, including time billed by Quinn Emanuel Urquhart & Sullivan LLP and DLA Piper LLP (US). These records were created and maintained in the ordinary course of business. All time entries were recorded contemporaneously by the timekeeper performing the work, in one-tenth-of-an-hour increments, and reflect tasks reasonably undertaken across the life of the case—from pre-suit investigation through post-trial briefing. The DLA Piper billing entries are provided in Excel format that was printed into a PDF format.

24.     Plaintiffs' lead counsel personally reviewed and approved all invoices submitted by DLA Piper. Prior to joining DLA Piper, he served as lead counsel at Quinn Emanuel, where he likewise supervised and approved the billing entries for this matter. Each invoice reflects necessary, accurate, and non-duplicative work performed in direct response to the demands of the litigation. The records submitted fairly reflect the fees Plaintiffs incurred in prosecuting this action from inception through verdict and post-trial motion

25.     Attached as Exhibit B is a true and correct copy of a November 14, 2024 article published by Law.com, titled Partner Compensation, Billing Rates Are Trending Higher in Dallas Than Houston, authored by Brenda Sapino Jeffreys. This article was obtained from the Texas Lawyer section of the Law.com website and reports that the average hourly billing rate for Dallas partners is $1,157—based on data from law firms of all sizes, not limited to Am Law 100 or so-called "Big Law" firms.

My name is Will Thompson, my date of birth is November 20, 1982, and my business address is 1900 N. Pearl Street Dallas, Texas 75201, and USA. I declare under penalty of perjury that the foregoing is true and correct.

Executed in Dallas County, State of Texas, on July 21, 2025.

/s/ *Will Thompson*
Will Thompson

8

# Exhibit A

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 1 | Client # | Client | Timekeeper | Work Date | Timecard Description | Fees Generated (Hourly Rate x Hours) | Hourly Rate | Base Hrs |
| 2 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 03/07/2025 | Review of discovery requests, add to case file, forward to Docketing requesting diary of new deadlines and send calendar invites to team. | $ 129.00 | $ 430.00 | 0.30 |
| 3 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 03/07/2025 | Conferring with mediator regarding dates and procedures; conferring with opposing counsel regarding mediation; conferring with opposing counsel regarding discovery; legal research on protective order obligations. | $ 5,313.00 | $ 1,610.00 | 3.30 |
| 4 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 03/10/2025 | Research of court's docket for order and forward scheduling order to Docketing requesting diary of deadlines; confer with W. Thompson regarding filing of notice of firm change; prepare for and file Notice of Change of Firm; confer with attorney regarding mediation confirmation; confer with H. Rivera requesting downloading of all case files from docket and adding to pleadings folder. | $ 301.00 | $ 430.00 | 0.70 |
| 5 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 03/10/2025 | Conferring with mediator regarding dates and procedures; conferring with opposing counsel regarding mediation; conferring with opposing counsel regarding discovery; legal research on protective order obligations. | $ 5,313.00 | $ 1,610.00 | 3.30 |
| 6 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 03/12/2025 | Review of Defendant's discovery responses, add to file and create discovery log; create case contact sheet; correspond with attorney regarding discovery for case. | $ 258.00 | $ 430.00 | 0.60 |
| 7 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 03/13/2025 | Complete Vendor onboarding form for payment to mediator and send to accounting. | $ 86.00 | $ 430.00 | 0.20 |
| 8 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 03/14/2025 | Correspond with Business Center advising of check printing in Dallas for Mediator; draft letter to Mediator forwarding mediation fee. | $ 172.00 | $ 430.00 | 0.40 |
| 9 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 03/14/2025 | Conducting legal research on RICO claim and necessary elements of proof and evicence, investigating potential experts on the issue. Reviewing potential experts and reviewing CVs. | $ 4,508.00 | $ 1,610.00 | 2.80 |
| 10 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 03/17/2025 | Revise cover letter and correspond with Business Center to coordinate transmission of mediation fee to mediator. | $ 43.00 | $ 430.00 | 0.10 |
| 11 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 03/17/2025 | Continued investigation of potential experts, including conferring with experts on phone and video. | $ 3,703.00 | $ 1,610.00 | 2.30 |
| 12 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 03/19/2025 | Receipt and review of correspondence relating to mediation logistics and changing of mediation date; receipt of production from defendant, add to case file and forward to W. Thompson for review; prepare production log. | $ 215.00 | $ 430.00 | 0.50 |
| 13 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 03/19/2025 | Investigation of potential expert; reviewing prior testimony and reports on potential experts; reviewing document production; holding conference call with trial team. | $ 6,923.00 | $ 1,610.00 | 4.30 |
| 14 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 03/20/2025 | Conferring with potential experts regarding engagement; conferring with trial team regarding the same; reviewing document production. | $ 4,025.00 | $ 1,610.00 | 2.50 |
| 15 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 03/21/2025 | Conferring with potential expert regarding engagement; conferring with client regarding the same; conferring with opposing counsel regarding extension to expert deadlines; research on court procedures for moving for extension. | $ 3,059.00 | $ 1,610.00 | 1.90 |
| 16 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 03/24/2025 | Preparing motion for continuance of expert reports. Updating S. Faulker on pending discovery. Conferring with potential experts. | $ 4,508.00 | $ 1,610.00 | 2.80 |
| 17 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 03/25/2025 | Review of Motion for Extension of Expert Report Deadlines, compile appendix with proposed order and forward to attorney for filing approval; create email distribution list to court for service of proposed order. | $ 172.00 | $ 430.00 | 0.40 |
| 18 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 03/25/2025 | Drafting Motion for Continuance; drafting appendix in support of motion for continuance. Conferring with opposing counsel regarding motion for continuance; conferring with potential expert. | $ 4,347.00 | $ 1,610.00 | 2.70 |
| 19 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 03/26/2025 | Review of new filings, add expert materials to file and confer with attorney on proposed order to Chambers. | $ 129.00 | $ 430.00 | 0.30 |

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 20 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 03/27/2025 | ...investigation of expert issues and motion to compel issues. | | $ 1,610.00 | 3.90 |
| 21 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 03/27/2025 | Research of case files for motions to compel with production issues of natives and metadata and ESI orders related to same; forward zip file of examples to attorney for review; confer with attorney regarding extended deadlines and correspond with Docketing requesting diary of additional deadlines per Court's order. | $ 258.00 | $ 430.00 | 0.60 |
| 22 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 03/27/2025 | Continued investigation of expert issues and motion to compel issues. | $ 4,025.00 | $ 1,610.00 | 2.50 |
| 23 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 03/28/2025 | Review of experts biography, CV and letters of commendation and save to case file. | $ 129.00 | $ 430.00 | 0.30 |
| 24 | 447846 | Hal Lambert and Point Bridge Capital | Baxter, Barbara | 03/28/2025 | Prepare client data from Dropbox to network share file for case team review. | $ 204.00 | $ 510.00 | 0.40 |
| 25 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 03/28/2025 | Continued investigation of expert issues and motion to compel issues. | $ 4,669.00 | $ 1,610.00 | 2.90 |
| 26 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 03/31/2025 | Continued investigation of expert issues and motion to compel issues. | $ 4,991.00 | $ 1,610.00 | 3.10 |
| 27 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/01/2025 | Conferring with LEO expert and factual research on Buma and relevance of adding him as a co-conspirator. | $ 4,830.00 | $ 1,610.00 | 3.00 |
| 28 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/02/2025 | Legal research in support of motion to compel; conferring with opposing counsel on motion to compel. | $ 4,025.00 | $ 1,610.00 | 2.50 |
| 29 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/03/2025 | Conferring with expert regarding reputational harm and evidence of reputation. Legal and factual research about the same. | $ 5,313.00 | $ 1,610.00 | 3.30 |
| 30 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 04/04/2025 | Review of correspondence from mediator and forward to docketing requesting diary of new deadlines. | $ 86.00 | $ 430.00 | 0.20 |
| 31 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/04/2025 | Conferring with expert regarding government procurement considerations; drafting follow up summary concerning the same; conferring with expert regarding factual record of Johnson social media postings. | $ 5,635.00 | $ 1,610.00 | 3.50 |
| 32 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/07/2025 | Conference with mediator and beginning drafting of mediation statement. | $ 5,474.00 | $ 1,610.00 | 3.40 |
| 33 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 04/08/2025 | Confer with attorney regarding extension of Defendant's discovery responses; email to Docketing requesting diary of new response date. | $ 129.00 | $ 430.00 | 0.30 |
| 34 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/08/2025 | Video call with expert and follow up factual collection for expert; phone call with expert regarding parameters of report; reviewing draft expert report. | $ 3,542.00 | $ 1,610.00 | 2.20 |
| 35 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/09/2025 | Video call with expert and follow up factual collection for expert; phone call with expert regarding expert disclsoure requirements under federal law; providing comments and assessment of expert report. | $ 3,542.00 | $ 1,610.00 | 2.20 |
| 36 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/10/2025 | Video call with expert and follow up factual collection for expert; phone call with expert regarding parameters of report; reviewing draft expert report; conferring with separate expert on deadlines and scope of assignment. | $ 3,542.00 | $ 1,610.00 | 2.20 |
| 37 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/11/2025 | Conferring with experts and providing comments to expert reportss. | $ 4,991.00 | $ 1,610.00 | 3.10 |
| 38 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/14/2025 | Conferring with experts; reviewing draft expert reports; conferring with opposing counsel regarding motion to compel. | $ 5,313.00 | $ 1,610.00 | 3.30 |
| 39 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/15/2025 | Conferring with expert regarding draft report; providing comments on draft report; conferring with opposing counsel regarding motion to compel and status of supplementation and potential withdrawal. Editing motion to compel and performing legal research on the same. | $ 7,245.00 | $ 1,610.00 | 4.50 |
| 40 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/16/2025 | Conferring with opposing counsel on motion to compel and motion for withdrawal. Conferring with expert regarding investigation and update on conspiracy. | $ 3,703.00 | $ 1,610.00 | 2.30 |

Appx. 012

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 41 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/20/2025 | Conferring with opposing counsel on motion for withdrawal; conferring with expert regarding investigation and update on conspiracy. Reviewing draft expert report; reviewing marketing draft expert report; conferring with expert conducting legal research in support of motion to compel; drafting and editing motion to compel. | $ | $ 1,610.00 | 4.10 |
| 42 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/21/2025 | Conferring with opposing counsel on motion for withdrawal. Conferring with expert regarding investigation and update on conspiracy; revising motion to compel. | $ 6,923.00 | $ 1,610.00 | 4.30 |
| 43 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/22/2025 | Conferring with opposing counsel motion for withdrawal. Conferring with expert regarding investigation and update on conspiracy; revising motion to compel. | $ 7,889.00 | $ 1,610.00 | 4.90 |
| 44 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/23/2025 | Conferring with opposing counsel on motion to compel and motion for withdrawal. Conferring with expert regarding investigation and update on conspiracy; revising motion to compel and circulating. | $ 8,372.00 | $ 1,610.00 | 5.20 |
| 45 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 04/24/2025 | Review of court's order and forward to Docketing requesting diary of hearing date. | $ 86.00 | $ 430.00 | 0.20 |
| 46 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/24/2025 | Conferring with counsel on motion for withdrawal; revising motion to compel; conferring with experts and reviewing revised expert reports. | $ 8,855.00 | $ 1,610.00 | 5.50 |
| 47 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 04/25/2025 | Confer with attorney regarding Motion to Compel; coordinate formatting with Legal Support; pull referenced cases and create zip file of same; draft proposed order granting Motion to Compel; forward motion, order and cases to attorney for review;  draft shell of request for admissions and forward to attorney for review. | $ 559.00 | $ 430.00 | 1.30 |
| 48 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/25/2025 | Conferring with defendant on motion to compel; drafting correspondence to client on motion to compel; drafting correspondence to defendant; editing and revising motion to compel. | $ 9,821.00 | $ 1,610.00 | 6.10 |
| 49 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 04/28/2025 | Revise proposed order on Motion to Compel and forward to attorney for review. | $ 86.00 | $ 430.00 | 0.20 |
| 50 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/28/2025 | Finalizing and filing motion to compel; preparing appendix; preparing proposed order. | $ 11,431.00 | $ 1,610.00 | 7.10 |
| 51 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 04/29/2025 | Review of correspondence from opposing counsel and update case file with doctors note. | $ 86.00 | $ 430.00 | 0.20 |
| 52 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/29/2025 | Conferring with two different experts (Brady and Baker) on their respective reports, conferring with opposing counsel; conferring with court on upcoming hearing; corresponding with client on case updates; preparing for hearing. | $ 7,889.00 | $ 1,610.00 | 4.90 |
| 53 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 04/30/2025 | Conferring with experts and expert report review; holding multiple meetings and video conferences re: the same. | $ 8,694.00 | $ 1,610.00 | 5.40 |
| 54 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 05/01/2025 | Attention to Court's order and forward to Docketing requesting diary of new hearing date on Motion to Compel and Withdraw; confer with attorney regarding items needed for hearing and pull from case file;  create index, prepare E-Binder for hearing and forward to attorney for review;  coordinate duplication of hearing binder and delivery to attorney; create index to cases in Motion  to compel, prepare E-Binder and forward to Business Center with Duplication instructions. | $ 215.00 | $ 430.00 | 0.50 |
| 55 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 05/02/2025 | Formatted Expert Report with information on Hal Lambert and forward revised report to attorney for review. | $ 172.00 | $ 430.00 | 0.40 |
| 56 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 05/05/2025 | Prepare list of this week's deadlines and send to attorney for review; review of new filings, add to index and notebook for hearing on Motion to Compel and withdraw;  correspond with Business Center requesting updating of notebooks with new filing. | $ 172.00 | $ 430.00 | 0.40 |

| A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|
| 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 05/... | Conferring with experts on upcoming reports and deadlines | $ ... | $ 1,610.00 | 4.90 |
| 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 05/06/2025 | Review of Pretrial deadlines and send calendar invites to team;  create draft expert designation and forward  to W. Thompson for review. | $ 215.00 | $ 430.00 | 0.50 |
| 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 05/06/2025 | Conferring with four experts on upcoming reports and deadlines; providing comments and suggestions on the same | $ 10,787.00 | $ 1,610.00 | 6.70 |
| 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 05/07/2025 | Review of expert report, CV, list of source documents and expert witness summary; add same to case file and review of emails from mediator;  proof and revise Supplement to Motion to compel;  proof and revise expert opinion of S. Baker and forward to attorney for final review. | $ 301.00 | $ 430.00 | 0.70 |
| 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 05/07/2025 | Analyzed Defendant's ongoing failure to comply with the Court's May 8, 2025, Order compelling discovery and ordering participation in mediation. Conferred with the trial team, including client Hal Lambert, to develop a strategy for the upcoming show cause hearing. Drafted the formal Declaration of Will Thompson, which outlined the Defendant's non-compliance, and compiled extensive exhibits, including critical email correspondence, court transcripts, and related orders, before finalizing and filing the complete package with the Court. | $ 13,041.00 | $ 1,610.00 | 8.10 |
| 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 05/08/2025 | Review of expert materials and prepare checklist of all materials needed to be submitted with reports; confer with attorney regarding hearing and orders;  review of Court's order, calculate deadlines and send calendar invites to team;  forward order to Docketing requesting diary of deadlines;  prepare transcript request form and forward to attorney for review; email to Defendant forwarding court's order. | $ 258.00 | $ 430.00 | 0.60 |
| 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 05/08/2025 | Prep and attending hearing on motion to compel and motion to withdraw; revising expert reports. | $ 17,871.00 | $ 1,610.00 | 11.10 |
| 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 05/09/2025 | Confer with attorney regarding filing of transcript request and status of expert designations; telephone call to Court Reporter requesting expedited copy of transcript; email to Court Reporter forwarding written request for May 8, 2025 hearing transcript; update case contact sheet with Court Reporter's contact information; correspond with Defendant forwarding Plaintiff's First Request for Production;  add correspondence and response to email file; update filed with served expert reports and update discovery log. | $ 344.00 | $ 430.00 | 0.80 |
| 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 05/09/2025 | Finalizing Expert Disclosures: Finalizing Plaintiffs' Initial Expert Designations and Reports for experts Dennis Brady, Stewart Baker, and L. Chiagouris. Serving the designations and full reports on the opposing party via email on May 9, 2025. The service also included the designation of Will Thompson as a potential expert on attorneys' fees, should the issue become ripe. | $ 19,481.00 | $ 1,610.00 | 12.10 |
| 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 05/12/2025 | Update case file with recent correspondence between parties;  correspond with Court Reporter regarding status of expedited transcript;  correspond with attorney regarding deadline for submission of position statement and update calendar invites to team. | $ 258.00 | $ 430.00 | 0.60 |

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 67 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 05/... | ...direct court orders to develop a strategy for seeking judicial redress. Evaluating Defendant's refusal to participate in the court-ordered mediation, which was cancelled after he failed to pay the required fee or provide the mediator with requested information. Addressing additional misconduct, including the Defendant's dissemination of Plaintiffs' confidential discovery materials to journalists and social media commentators. Preparing the comprehensive Declaration of Will Thompson to present these violations to the Court ahead of the show cause hearing. This preparation involved researching the Defendant's litigation conduct in other jurisdictions to establish a pattern of discovery abuse and attaching a similar show cause order issued against him in the Southern District of New York. Compiling and organizing extensive exhibits for the Court to create a clear record of misconduct, including the May 8th hearing transcript, all post-order email correspondence, and evidence of the leaked search terms. | $ | $ 1,610.00 | 4.20 |
| 68 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 05/13/2025 | Receipt of hearing transcript, add to case file and circulate to W. Thompson;  submit invoice to accounting for expedited payment;  forward transcript notice to docketing requesting diary of redaction deadline and send calendar invites to team;  coordinate mailing of check to court reporter. | $   172.00 | $   430.00 | 0.40 |
| 69 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 05/13/2025 | Continuing Analyzing Defendant Charles Johnson's pattern of non-compliance with discovery obligations and direct court orders to develop a strategy for seeking judicial redress. Evaluating Defendant's refusal to participate in the court-ordered mediation, which was cancelled after he failed to pay the required fee or provide the mediator with requested information. Addressing additional misconduct, including the Defendant's dissemination of Plaintiffs' confidential discovery materials to journalists and social media commentators. Preparing the comprehensive Declaration of Will Thompson to present these violations to the Court ahead of the show cause hearing. This preparation involved researching the Defendant's litigation conduct in other jurisdictions to establish a pattern of discovery abuse and attaching a similar show cause order issued against him in the Southern District of New York. Compiling and organizing extensive exhibits for the Court to create a clear record of misconduct, including the May 8th hearing transcript, all post-order email correspondence, and evidence of the leaked search terms. | $   6,118.00 | $ 1,610.00 | 3.80 |
| 70 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 05/14/2025 | Continued analyzing Defendant Charles Johnson's pattern of non-compliance with discovery obligations and direct court orders to develop a strategy for seeking judicial redress. Evaluating Defendant's refusal to participate in the court-ordered mediation, which was cancelled after he failed to pay the required fee or provide the mediator with requested information. Addressing additional misconduct, including the Defendant's dissemination of Plaintiffs' confidential discovery materials to journalists and social media commentators. Preparing the comprehensive Declaration of Will Thompson to present these violations to the Court ahead of the show cause hearing. This preparation involved researching the Defendant's litigation conduct in other jurisdictions to establish a pattern of discovery abuse and attaching a similar show cause order issued against him in the Southern District of New York. Compiling and organizing extensive exhibits for the Court to create a clear record of misconduct, including the May 8th hearing transcript, all post-order email correspondence, and evidence of the leaked search terms. | $   4,508.00 | $ 1,610.00 | 2.80 |

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 71 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 05/15/2025 | ... review of Defendant's search terms and edit same for response to; update case contact sheet with Defendant's email address; update search term letter with additional terms; | $ 430.00 | $ 430.00 | 0.40 |
| 72 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 05/15/2025 | Continuing Analyzing Defendant Charles Johnson's pattern of non-compliance with discovery obligations and direct court orders to develop a strategy for seeking judicial redress. Evaluating Defendant's refusal to participate in the court-ordered mediations and remedies and necessary motion practice to bring into compliance | $ 2,576.00 | $ 1,610.00 | 1.60 |
| 73 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 05/16/2025 | Review of correspondence forwarding search terms to defendant and add to case file; update folder of communications with defendant; correspond with Court Reporter to confirm receipt of payment for transcript. | $ 129.00 | $ 430.00 | 0.30 |
| 74 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 05/16/2025 | Addresing discovery issues pertaining to Johnson's failure to comply with court orders. Surveying vendors to perform potential collection of materials. | $ 3,381.00 | $ 1,610.00 | 2.10 |
| 75 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 05/19/2025 | Analyzing the opposing party's failure to comply with discovery and court orders; preparing a comprehensive declaration for a show cause hearing detailing the pattern of misconduct. This preparation required compiling extensive evidentiary exhibits—including hearing transcripts, relevant court orders, and all party correspondence—to establish a complete record of non-compliance for the court. Conducting legal research on the same. | $ 4,830.00 | $ 1,610.00 | 3.00 |
| 76 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 05/20/2025 | Review of correspondence with Defendant and update case file with same; confer with attorney regarding sending of new filings to pro se defendant. | $ 86.00 | $ 430.00 | 0.20 |
| 77 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 05/21/2025 | Attention to Court's Show Cause Order, forward to Docketing requesting diary of same and send calendar invite to attorney; email to attorney forwarding order to be sent to Defendant. | $ 129.00 | $ 430.00 | 0.30 |
| 78 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 05/22/2025 | Review of correspondence to C. Johnson and update case file with same. | $ 86.00 | $ 430.00 | 0.20 |
| 79 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 05/27/2025 | Review of case file for documents related to Show Cause hearing and forward to attorney for review. | $ 129.00 | $ 430.00 | 0.30 |
| 80 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 05/29/2025 | Preparing for show cause hearing and gathering evidence of non-compliance. | $ 2,415.00 | $ 1,610.00 | 1.50 |
| 81 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 05/30/2025 | Preparing for show cause hearing and conducting legal research on default judgment proceedings and prove ups; conferring with client; reviewing conspiracy materials. | $ 3,381.00 | $ 1,610.00 | 2.10 |
| 82 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 06/02/2025 | Pull documents for Show Cause hearing and forward to attorney for review. | $ 86.00 | $ 430.00 | 0.20 |
| 83 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/02/2025 | Preparing for hearing and outlining submission. | $ 9,338.00 | $ 1,610.00 | 5.80 |
| 84 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 06/03/2025 | Review of case file for requested orders and emails with Mr. Johnson; download files, create zip file and forward to attorney for review and hearing preparations. | $ 258.00 | $ 430.00 | 0.60 |
| 85 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/03/2025 | Preparing for hearing and continuing to draft submission; conferring with trial team regarding potential relief | $ 12,075.00 | $ 1,610.00 | 7.50 |
| 86 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/04/2025 | Finalizing and filing Plaintiffs notice of noncompliance and request for further relief. | $ 17,066.00 | $ 1,610.00 | 10.60 |
| 87 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 06/05/2025 | Receipt of Court's order and add correspondence with Defendant to case file; correspond with Docketing requesting diary of response and reply deadlines; review of court's order and confer with attorney regarding federal holiday; forward Court's order to Docketing requesting diary of new deadlines prior to June 19, 2025 hearing; send calendar invites to team; review of Court's mediation order and forward to docketing requesting diary of new deadlines; send calendar invites to team; email and telephone call to Court Reporter requesting expedited copy of June 5, 2025 hearing transcript. | $ 602.00 | $ 430.00 | 1.40 |

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 88 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/05/2025 | Case strategy, party follow up and out...including ... and out...including ... commands/tools with trial team and vendor research. | $ 16,422.00 | $ 1,610.00 | 10.20 |
| 89 | 447846 | Hal Lambert and Point Bridge Capital | Lawnicki, Matt | 06/06/2025 | Acquire discovery vendor estimates to be submitted to court for upcoming collections. | $ 969.00 | $ 510.00 | 1.90 |
| 90 | 447846 | Hal Lambert and Point Bridge Capital | Lawnicki, Matt | 06/06/2025 | Acquire vendor estimates for discovery collections to be recommended to the court. | $ 1,173.00 | $ 510.00 | 2.30 |
| 91 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 06/06/2025 | Review of case deadlines with attorney, correspond with Docketing regarding deadlines and send calendar invites;   correspond with Litigation Support regarding third party vendor suggestions and processing of data on devices; telephone call to Court Reporter regarding expedited transcript of June 5, 2025 hearing. | $ 258.00 | $ 430.00 | 0.60 |
| 92 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/06/2025 | Hearing follow up, including conferring with staff on third-party vendor platforms, mechansims and protocols to protect privilege, Johnson's social media postings mocking the case thus far; conferring with trial team on strategy to address non-compliance of Johnson and prepare for depositions | $ 12,075.00 | $ 1,610.00 | 7.50 |
| 93 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 06/09/2025 | Receipt of Transcript of Show Cause hearing and add to case file;  submit invoice to accounting for payment and confer with Business Center regarding rush check;   correspond with Court Reporter forwarding copy of check for transcript;   correspond with Business Center to coordinate delivery of check to Reporter; review of court's order resetting show cause hearing, forward to Docketing requesting calendar of new date and update calendar invite to team. | $ 301.00 | $ 430.00 | 0.70 |
| 94 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/09/2025 | Discovery: Conferring with Repario, Innovative Driven, and DISCO regarding collection of Johnson's devices. Sending correspondence to Charles Johnson regarding device collection. Conducting legal research on relief to available when a party repeatedly obstructs discovery. | $ 7,889.00 | $ 1,610.00 | 4.90 |
| 95 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 06/10/2025 | Review of correspondence between attorney and defendant regarding vendor selection and  add to case file; review of case file and pull documents related to June 18, 2025 Show Cause Hearing; create index and begin preparing hearing binder. | $ 301.00 | $ 430.00 | 0.70 |
| 96 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/10/2025 | Discovery: Sending multiple correspondence to Charles Johnson regarding document collection and compliance with Court's June 5 order; holding four conference calls with Innovative Driven regarding collection protocol. Holding 3 conference calls with Repario regarding collection protocol. | $ 7,889.00 | $ 1,610.00 | 4.90 |
| 97 | 447846 | Hal Lambert and Point Bridge Capital | Lawnicki, Matt | 06/11/2025 | Analyze discovery vendor proposals for submission to court. | $ 663.00 | $ 510.00 | 1.30 |
| 98 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/11/2025 | Discovery: Sending multiple correspondence to Charles Johnson regarding document collection and compliance with Court's June 5 order; conferring with 4 e-discovery vendors to seek quotes and capabilities for search term collection, privilege filter, and production; conferring with trial team regarding motion for further relief should Johnson not comply with court order. | $ 9,499.00 | $ 1,610.00 | 5.90 |
| 99 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/12/2025 | Outlining and drafting Notice of Charles Johnson's non-compliance with June 5 order and request for further relief. Conferring with vendors regarding final cost estimates. Sending correspondence to defendant regarding his location and whether he agrees to search term protocol. | $ 12,075.00 | $ 1,610.00 | 7.50 |
| 100 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/13/2025 | Drafting and finalizing Notice of Charles Johnson's non-compliance with June 5 order and request for further relief. Preparing appendix and exhibits. Drafting declaration in support of the notice and motion.  Filing notice and motion. Conferring with the trial team regarding edits to the notice and motion. | $ 11,592.00 | $ 1,610.00 | 7.20 |

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 101 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 06/13/2025 | ...Cross-over evidence, spreadsheet of Defendant legal costs and compile file of same and forward to attorney review; correspond with Docketing requesting diary of hearing information; review of new orders issued by court related to show cause hearing and create file of same; update index with new filings and hearing notebook; create E-Binder and forward to attorney for review; correspond with accounting requesting fees and cost summary; research of examples of motion for fees and costs and forward to attorney for review. | $ 430.00 | $ 430.00 | 1.00 |
| 102 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/16/2025 | DISCOVERY: Holding conference with trial team regarding upcoming discovery hearing. Drafting talking points and outline for show cause hearing. Conferring with third party vendors. | $ 8,855.00 | $ 1,610.00 | 5.50 |
| 103 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/17/2025 | Preparing for upcoming show cause hearing; conducting research on defendant's recent social media posts; conferring with client and trial team; confirming legal research on requested relief. Follow up communications with third-party vendors on avaialbity of coordinating device pickup in Texas. | $ 12,719.00 | $ 1,610.00 | 7.90 |
| 104 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 06/18/2025 | Prepare shell of Request for Admissions and forward to attorney for review;  draft shell for Plaintiff's Motion for Protective Order;   prepare draft interrogatories to Defendant; prepare draft of itemized motion for fees and costs and forward to attorney for review;  confer with attorney regarding hearing outcome and trial setting. | $ 1,204.00 | $ 430.00 | 2.80 |
| 105 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/18/2025 | Discovery: Conducting final preparation for upcoming show cause hearing; conferring with client and trial team regarding upcoming hearing and requests for relief. Attending hearing. Legal research on Rule 37 sanctions and scope of relief. | $ 13,041.00 | $ 1,610.00 | 8.10 |
| 106 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 06/19/2025 | Review of DLA document database for fee motions and language specifying reasonableness of fees and forward to attorney for review. | $ 301.00 | $ 430.00 | 0.70 |
| 107 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/19/2025 | Drafting and revising Plaintiffs' motion for award of attorneys' fees. Conducting legal research to assess how N.D. Tex courts have assessed reasonableness of fees in similar situations; assembling billing records and invoice; assembling appendix and TOC. | $ 13,041.00 | $ 1,610.00 | 8.10 |
| 108 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/20/2025 | Johnson pretrial prep: witness outlne prep, order of evidence, elements, contacting vendors; confeering with witnesses | $ 12,719.00 | $ 1,610.00 | 7.90 |
| 109 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 06/23/2025 | Multiple telephone calls  and emails to Veritext regarding space for war room during trial, including cost and amenities;   create to do list for trial and forward to attorney for review;  prepare drafts of witness list; prepare draft of exhibit list; prepare draft of motion in limine with proposed order;  prepare draft of deposition designations; research of hotels in Fort Worth  for rates and availability; correspond with Docketing requesting removal of all deadlines in Scheduling order. | $ 1,161.00 | $ 430.00 | 2.70 |
| 110 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/23/2025 | Reviewed key pleadings, discovery responses, and prior motion practice to begin outlining core trial themes. Identified factual disputes and evidentiary issues likely to shape trial presentation .Drafted initial trial preparation checklist and internal work plan. Assigned roles for exhibit review, witness prep, and demonstrative development | $ 13,041.00 | $ 1,610.00 | 8.10 |

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 111 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 06/24/2025 | Correspond with counsel regarding documents to be Johnston; correspond with attorney regarding drafts of pretrial filings for review;  coordinate with Business Center requesting water and supply box for trial; correspond with Veritext regarding war room request;  telephone call with attorney regarding pretrial arrangements and exhibits needed;begin review of Second Amended Complaint and begin pulling cited evidence;  email to Knowledge Research requesting assistance  of pulling social media cited in complaint;  review of expert reports and pull evidence cited in reports;  telephone call to Court Deputy regarding use if equipment during trial and permission for cell phone in court;  update case contact sheet;  forward Graphics Team information to attorney; create index and prepare discovery notebook with expert reports;  correspond with Court Reporter requesting expedited transcript of June 18, 2025 show cause hearing; | $ 1,376.00 | $ 430.00 | 3.20 |
| 112 | 447846 | Hal Lambert and Point Bridge Capital | Lowry, Katherine B. | 06/24/2025 | Assembling list of cited URLs for export from SMI Aware. Calling vendor to ask for quote. | $ 892.50 | $ 595.00 | 1.50 |
| 113 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/24/2025 | Began compiling and organizing potential trial exhibits from prior discovery productions. Flagged documents requiring authentication or additional foundation; Held internal strategy session to map out preliminary trial narrative. Discussed burden of proof, jury appeal, and likely defense positions | $ 12,075.00 | $ 1,610.00 | 7.50 |
| 114 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 06/25/2025 | Correspond with Court Reporter regarding status of transcript;  telephone call to Court Deputy to schedule training on equipment for trial; review of Second Amended Complaint and continue puling social media references for potential trial exhibits;   create spreadsheet of all social media cited in the Second Amended Complaint and Experts reports;  research for cases and pleadings cited in Second Amended Complaint and add to potential trial  exhibit folder; correspond with Knowledge Research regarding status of vendor quote for social media; prepare list of missing media and forward to attorney for review and forwarding to client. | $ 3,010.00 | $ 430.00 | 7.00 |
| 115 | 447846 | Hal Lambert and Point Bridge Capital | Lowry, Katherine B. | 06/25/2025 | Pulling cited materials from expert witness reports. Follow up with SMI Aware regarding export quote. | $ 773.50 | $ 595.00 | 1.30 |
| 116 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/25/2025 | Coordinated with graphics consultant to discuss timeline, demonstratives, and visual themes. Provided initial ideas for courtroom visuals tied to central claims; Drafted preliminary witness list and ranked witnesses by strategic importance; Outlined key elements of each claim and began drafting a trial proof chart. Identified gaps in the record that may require judicial notice or stipulations | $ 12,558.00 | $ 1,610.00 | 7.80 |
| 117 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 06/26/2025 | Receipt of hearing transcript, add to case file and process invoice for payment;  correspond with Knowledge research regarding data from vendor;  run Amended Complaint in Harvey for order of proof and forward to attorney for review;  review of hearing transcript  to confirm jury trial;  correspond with Reception requesting war room;  continued work on chart of potential trial exhibits;   review of exhibits and eliminate duplicates;  prepare list of X and Space posts that are missing and forward to attorney for review; research of Lexis for Texas pattern jury charges and update draft of proposed charge; forward same to attorney for review;  email to Court Deputy requesting date to test equipment in court; email to Court Reporter forwarding copy of check and advising of payment;  update case file with same. | $ 2,838.00 | $ 430.00 | 6.60 |
| 118 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/26/2025 | Initiated preparation of proposed voir dire questions and jury charge components. Reviewed similar instructions from recent cases involving civil RICO and defamation; continued exhibit collection and witness outline | $ 11,753.00 | $ 1,610.00 | 7.30 |

Appx. 019

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 119 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 06/26/2025 | Activity regarding trial document potential exhibit list and providing update on arrangements for testing and space availability at trial; confer with attorney regarding use of vendor to locate social media files; create zip file of potential trial exhibits and send to attorney via sharefile; telephone call to Court following up on permission for cell phones in court and scheduling time to testing equipment; review of file for operative pleadings and begin compiling trial notebook and create index of same; | | $ 430.00 | 4.00 |
| 120 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/27/2025 | Created draft timeline of key events for use at trial. Cross-checked with pleadings, documents, and witness testimony to ensure internal consistency; Coordinated with trial tech team regarding courtroom setup, demonstrative display logistics, and exhibit presentation software. Began drafting trial technology checklist; Reviewed jury pool demographics and historical verdict trends in the division. Began drafting voir dire strategy memo tailored to venue characteristics. | $ 10,465.00 | $ 1,610.00 | 6.50 |
| 121 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 06/30/2025 | Update trial notebook and index; telephone call to court regarding permission to use cell phones and laptops during trial and availability of witness rooms; coordinate duplication of all emails between counsel and C. Johnson; coordinate duplication of Trial Notebook; request boxes to set up war room; update to do list; multiple correspondence with Litigation Support regarding establishing of case file for trial presentation, discussing format and specification for exhibits once received; prepare shell of objections to Defendant's trial exhibits; correspond with Business Center requesting duplication of Trial Notebook; | $ 2,451.00 | $ 430.00 | 5.70 |
| 122 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 06/30/2025 | Analyzed recent case law on admissibility of social media and reputational harm evidence. Flagged potential motions in limine based on identified risk areas. Met with expert witness to outline anticipated trial testimony and confirm scope of opinions. Began preparing direct examination outline and discussed key demonstratives to support opinions. | $ 8,694.00 | $ 1,610.00 | 5.40 |
| 123 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 07/01/2025 | Telephone call and email to court regarding permission to bring devices to trial and setting date to test equipment; prepare witness files for experts; set up war room; prepare list of items to be completed by end of day Thursday and email to attorney for review; coordinate duplication of impeachment files and production with Business Center; research of Judge' specific requirements and print for endorsing of trial exhibits and preparation of binders; update witness list and exhibits lists to conform to Judge's requirements; draft written statement of objections and forward to attorney for review; review of links to posts and create trial exhibits with full transcript; correspond with Litigation Support requesting the audio files for the transcripts and posts. | $ 1,806.00 | $ 430.00 | 4.20 |
| 124 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 07/01/2025 | Reviewed and refined outlines for direct and cross-examination. Prepared exhibit list and made selections for demonstratives to be used at trial. Participated in a strategic session with the trial team to refine trial themes and pretrial matters and witness attendance and ordering. | $ 12,719.00 | $ 1,610.00 | 7.90 |

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 125 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 07/02/2025 | ...files and update list of potential trial exhibits with same; correspond with Litigation Support regarding access to additional media files; update list of potential trial exhibits; create ShareFile folder and send link to attorney for uploading of audio files to be used as trial exhibits; update to do list; research in Wayback Machine for old news articles and social media to be used as potential trial exhibits; update potential trial exhibit index and folder with additional articles; research for cases cited in Second Amended Complaint; forward operative pleadings to S. Bing for review; coordinate printing of materials for expert witness files; create index for Pretrial Notebook; confer with attorney regarding additional emails to be located and used as trial exhibits. | $ 2,236.00 | $ 430.00 | 5.20 |
| 126 | 447846 | Hal Lambert and Point Bridge Capital | Sun, Bing | 07/02/2025 | Confer with W. Thompson regarding case status ans strategy (0.30); review case background materials (1.40); conduct research and draft analysis regarding motion in limine concerning litigation funding (3.50). | $ 6,240.00 | $ 1,200.00 | 5.20 |
| 127 | 447846 | Hal Lambert and Point Bridge Capital | Baxter, Barbara | 07/02/2025 | Capture and prepare video files from various web pages in preparation for exhibit list and trial. | $ 408.00 | $ 510.00 | 0.80 |
| 128 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 07/02/2025 | Finalizing outlines for the opening statement and witness examinations. Coordinated trial logistics with support staff, including courtroom tech and exhibit access. Reviewed strategy notes from earlier team meetings and implemented adjustments to materials. | $ 13,524.00 | $ 1,610.00 | 8.40 |
| 129 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 07/03/2025 | Review of case filings for additional trial exhibits and revise list of potential exhibits; review of ShareFile for uploading of media files; compare list of exhibits to actual exhibits to confirm documents still needed for trial; update index and pull filings for pretrial notebook; review of Court's order with attorney and forward to docketing requesting diary of deadlines; research for closing and opening Powerpoints and forward to attorney for review; email to graphics team requesting assistance with Powerpoint slides for opening and closing; email to Court setting date and time for testing of equipment; download audio files from thumb drive and add to exhibit folder; update exhibit list with same; review of new emails from attorney, redact headings and add to exhibit list and exhibit folder; email to C. Ward providing links and instructions to making of audio clips; email to H. Rivera requesting revisions to attorney fee spreadsheet. | $ 2,752.00 | $ 430.00 | 6.40 |
| 130 | 447846 | Hal Lambert and Point Bridge Capital | Sun, Bing | 07/03/2025 | Review case background materials (1.10); confer with W. Thompson regarding case status ans strategy (0.40);conduct research and draft analysis regarding motion in limine concerning reference to journalist profession and First Amendment protection (3.40); conduct research and draft analysis regarding evidence need not establish defamation damages with precision (2.90); conduct research and draft analysis regarding motion in limine concerning pro se litigant status (2.30). | $ 12,120.00 | $ 1,200.00 | 10.10 |
| 131 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 07/03/2025 | Reviewed all pretrial filings and procedural orders. Revising trial notebooks, ensuring alignment with the exhibit list. Confirmed admissibility status of key evidence and revising trial exhibit list. Reviewing pretrial order. | $ 14,329.00 | $ 1,610.00 | 8.90 |
| 132 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 07/03/2025 | Revising final judgment documents; legal research on treble damages submission | $ 9,499.00 | $ 1,610.00 | 5.90 |
| 133 | 447846 | Hal Lambert and Point Bridge Capital | Sun, Bing | 07/04/2025 | Conduct research and draft analysis regarding evidence need not establish defamation damages with precision. | $ 960.00 | $ 1,200.00 | 0.80 |
| 134 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 07/04/2025 | Revising outlines for witness examinations; surveying filings to identify Johnson's prior litigation and defamation claims that he has asserted in the past. | $ 12,236.00 | $ 1,610.00 | 7.60 |

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 135 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 07/0... | damages and conferring with the trial team. Circulating materials to the trial team for discussion and revision; legal research on jury instructions; revising outline for Lambert. | $ | $ 1,610.00 | 11.20 |
| 136 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 07/06/2025 | Revising cross examination of Johnson and redirect outlines for key witnesses. Held call with trial team to discuss demonstratives; surveying Johnson's writings to supplement exhibit list; revising and editing jury instructions; legal research on authority to support jury instructions and charges. | $ 19,803.00 | $ 1,610.00 | 12.30 |
| 137 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 07/07/2025 | Update trial and discovery notebook with new filings and order; telephone call to court regarding exhibit labels; update trial exhibit list;  correspond with attorney regarding access to additional exhibits; correspond with Graphics team requesting exemplars for preparation of closing and opening statements;  update pretrial notebook and begin pulling documents;  research of previous opening PowerPoint slides and forward to attorney for review;  research and prepare draft Voir Dire and forward to attorney for review;  teams call with Graphics team to discuss examples and preparation of PowerPoints for opening and closing statements;  upload all audio files to Sharefile folder and send to Graphics team;  review of clips for opening and add to exhibit list. | $ 1,978.00 | $ 430.00 | 4.60 |
| 138 | 447846 | Hal Lambert and Point Bridge Capital | Fennel, Craig Vincent | 07/07/2025 | Working on slide deck for trial. Editing audio files and creating graphics. | $ 2,660.00 | $ 380.00 | 7.00 |
| 139 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 07/07/2025 | Revising direct examination of Lambert and holding trial team and preparation call with client; reviewed demonstrative sequence with paralegal support and resolved any outstanding issues concerning amended exhibit list. Checked availability of physical and electronic backups; conferring with Stewart Baker regarding health issues revising and editing jury instructions; legal research on authority to support jury instructions and charges. | $ 21,091.00 | $ 1,610.00 | 13.10 |
| 140 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 07/08/2025 | Draft motion for expert to appear remotely with declaration in support and forward to attorney for review;  review of potential trial exhibits and Presentations and add to exhibit list;  correspond with Litigation Support requesting extraction of additional audio files;  correspond with J. Walz regarding assistance with confirming video clips;  confer with Litigation Support moving exhibits files to Sanction case file on presenter laptop;  review of audio files on laptop; create chart of audio clips with cites and transcript references;  run audio files and PowerPoints from Sanction presenter laptop prior to testing at court;  review of exhibits with attorney and finalize trial exhibits;   add new critical reports to exhibit list and compile zip file of exhibits to send to Johnson;  email to J. Holmes regarding hard board for demonstrative;  correspond with attorney regarding additional videos to add to exhibit list;   update exhibit list with same;  forward combined Plaintiffs exhibits to Litigation Support requesting  Bates labeling of same for exchange with Defendant;  create sharefile, upload Plaintiff's Trial exhibits with exhibit list and send to Defendant. | $ 2,838.00 | $ 430.00 | 6.60 |
| 141 | 447846 | Hal Lambert and Point Bridge Capital | Sun, Bing | 07/08/2025 | Review and revise motion to permit remote trial testimony of expert witness and its supporting papers (2.30); conduct research and draft analysis regarding motion in limine concerning reference to political beliefs and political ideology (2.90). | $ 6,240.00 | $ 1,200.00 | 5.20 |
| 142 | 447846 | Hal Lambert and Point Bridge Capital | Walz, Jason Kemp | 07/08/2025 | Verify exhibit audio clips. | $ 115.00 | $ 230.00 | 0.50 |
| 143 | 447846 | Hal Lambert and Point Bridge Capital | Fennel, Craig Vincent | 07/08/2025 | Working on slide deck for trial. Editing audio files and creating graphics. | $ 2,280.00 | $ 380.00 | 6.00 |

Appx. 022

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 144 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 07/08/2025 | ...witness outlines based on the same; held a call with the trial team regarding pretrial tasks and opening; conferring with client regarding direct examination and supporting exhibits on earned media; revising and editing jury instructions; legal research on authority to support jury instructions and charges. | | $ 1,610.00 | 13.40 |
| 145 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 07/09/2025 | Check computer equipment at court; confer with attorney regarding trial exhibits and deadlines; revise exhibit list and remove video files; correspond with Court Coordinator regarding court times and delivery of files; review of critical motion documents and add to electronic trial files; email to Graphics team regarding finalizing of demonstratives; compare revised exhibit list to actual exhibits and confirm all redactions; add additional audio clips to exhibit list; update case contact sheet; coordinate endorsing of trial exhibits; prepare draft shell of pre-admitted exhibits; draft written statement of stipulations, objections and admissibility and forward to attorney to review; assist with additions to demonstratives; review of court's order and send summary of deadlines to attorney for review; confer with attorney regarding filings and exchange of charge with Defendant; | $ 4,601.00 | $ 430.00 | 10.70 |
| 146 | 447846 | Hal Lambert and Point Bridge Capital | Sun, Bing | 07/09/2025 | Review and revise motion to permit remote trial testimony of expert witness and its supporting papers (0.50); confer with W. Thompson regarding case strategies and next steps (0.20). | $ 840.00 | $ 1,200.00 | 0.70 |
| 147 | 447846 | Hal Lambert and Point Bridge Capital | Fennel, Craig Vincent | 07/09/2025 | Working on slide deck for trial. Editing audio files and creating graphics. | $ 2,660.00 | $ 380.00 | 7.00 |
| 148 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 07/09/2025 | Revising witness outlines; revising exhibit list and supplementing list with exhibits; reviewing outstanding tasks to conform with pretrial order; drafting and revising jury instructions and circulating to Johnson. | $ 22,701.00 | $ 1,610.00 | 14.10 |
| 149 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 07/10/2025 | Receipt of correspondence between counsel regarding pretrial motions; review of l. Chiagarious Supplemental Report and add to exhibit list; review of Johnson X Space quotes and check quotes for accuracy; email to Platinum forwarding sheet and requesting Blow up of quotes; update index to Pretrial Notebook with new filings and begin compiling; coordinate copying of all DMS files to thumb drive for trial; add new exhibits to exhibit list and statement of admissibility; correspond with Platinum forwarding slide for preparation of trial enlargement; compare exhibit list to demonstrative slide deck to account for all trial exhibits; meeting with team to finalize demonstratives; confer with attorney to finalize trial exhibits; revise exhibit list and Statement of Admissibility; confer with Dallas Office requesting hard copy of O'Connors Federal Rules of Evidence; review of all audio files and videos to confirm exhibit numbers; correspond with Platinum requesting link to upload files; create zip file of revised trial exhibits and send to attorney for review; forward zip file to Litigation Support for endorsing and loading to Sanction case file; review of revised demonstratives and forward slide desk to C. Ward for review. | $ 4,214.00 | $ 430.00 | 9.80 |
| 150 | 447846 | Hal Lambert and Point Bridge Capital | Sun, Bing | 07/10/2025 | Review and revise motions in limine (2.90); review and revise trial brief (1.60). | $ 5,400.00 | $ 1,200.00 | 4.50 |
| 151 | 447846 | Hal Lambert and Point Bridge Capital | Fennel, Craig Vincent | 07/10/2025 | Working on slide deck for trial. Editing audio files and creating graphics. | $ 3,040.00 | $ 380.00 | 8.00 |
| 152 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 07/10/2025 | Performing pretrial tasks set forth in scheduling order, including submitted joint exhibit list, attempting to meet and confer with Johnson regarding pretrial submissions; discussing whether Johnson would submit objections or revised jury instructions; Revised demonstratives for opening and for use in Lambert direct testimony. | $ 24,311.00 | $ 1,610.00 | 15.10 |

Appx. 023

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 153 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 07/11/2025 | filed exhibit list; correspond with Graphics team requesting zip of all audio files; create folder of new audio clips and forward to Litigation Support to create new combined clips; correspond with attorney regarding status of face to face meeting with defendant to discuss charge; listen to audio files to confirm clips and create zip file of all audio for Court; review of new filings and update Pretrial notebook and index; correspond with Platinum providing instructions for duplication of trial exhibits; upload exhibits to Platinum portal for copying; review of Court's orders and update pretrial notebook; confer with attorney regarding sending of new filings and orders to defendant; multiple emails with Platinum and Litigation Support to coordinate endorsing and duplication of exhibits for Judge; create zip file of media and send to Platinum for loading to thumb drive for court; create share file folder of Plaintiff's Trial exhibits and media and send link to Defendant per Court's order; review of Defendant's opposition to Plaintiff's Motion in Limine, download posts and add to case file; | $ | 430.00 | 9.80 |
| 154 | 447846 | Hal Lambert and Point Bridge Capital | Sun, Bing | 07/11/2025 | Review opponent correspondence. | $ 120.00 | $ 1,200.00 | 0.10 |
| 155 | 447846 | Hal Lambert and Point Bridge Capital | Fennel, Craig Vincent | 07/11/2025 | Working on slide deck for trial. Editing audio files and creating graphics. | $ 380.00 | $ 380.00 | 1.00 |
| 156 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 07/11/2025 | Revising opening; submitting revised exhibit list, submitting jury instructions to the court; conferring with court and expert witness regarding remote submissions; revising Lambert direct; conferring with trial team; revising demonstratives. | $ 24,955.00 | $ 1,610.00 | 15.50 |
| 157 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 07/12/2025 | Confer with attorney regarding revisions to exhibits; correspond with Litigation Support regarding transferring of exhibits to Sanction and working on playing of audio and video clips during presentation of exhibits; compare audio files on thumb drive to exhibit list; review of recordings, listen to audios and add missing audio files to new thumb drive; confer with attorney regarding additional demonstratives; prepare Plaintiff's Amended Trial Exhibit List; Teams call with Litigation Support regarding changes to presentation and loading of trial files and audio files; review of all demonstratives and confirm they are listed correctly on exhibit list; review of H. Lambert direct and begin building trial presentation; send attorney zip file of all audio files; revise exhibit list, Create new ShareFile folder of same and sent to Defendant; work with Litigation Support regarding endorsing of new exhibits and updating of Sanction file; email to Graphics team requesting Sunday assistance; revise proposed charge and forward to attorney for review; send revised direct outline of H. Lambert to attorney for review; revise charge and forward to attorney for review;. | $ 5,590.00 | $ 430.00 | 13.00 |
| 158 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 07/12/2025 | Finalizing trial prep; conferring with client; revising exhibit list and demonstratives; conferring with experts; revising demonstratives; preparing for voir dire. | $ 29,141.00 | $ 1,610.00 | 18.10 |
| 159 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 07/13/2025 | Revise trial exhibit notebooks; update index and pretrial notebooks; create sharefile and send new exhibits and audio files to attorney for review revise outlines and Power Point presentations; pack up files for trial; travel to Fort Worth; work on Sanction presentation for H. Lambert direct; review of presentation with attorney; file proposed charge and first amended exhibit list; | $ 6,149.00 | $ 430.00 | 14.30 |
| 160 | 447846 | Hal Lambert and Point Bridge Capital | Sun, Bing | 07/13/2025 | Conduct research and draft analysis regarding admitting pleading as non-hearsay evidence as admission of party-opponent. | $ 3,480.00 | $ 1,200.00 | 2.90 |

Appx. 024

| | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 161 | 447846 | Hal Lambert and Point Bridge Capital | Fennel, Craig Vincent | 07/13/2025 | Trial prep for trial; prepare for and create graphics. | $ 380.00 | $ 380.00 | 2.00 |
| 162 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 07/13/2025 | FInal trial prep, revising opening; final conference with client regarding direct testimony. | $ 32,361.00 | $ 1,610.00 | 20.10 |
| 163 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 07/14/2025 | Email to Defendant forwarding new trial exhibits, amended exhibit list and proposed charge;  revise direct of client to include audio clips and Powerpoint slides;  rehearse and revise client's direct presentation;  work on presentations for Brady and Stewart; assist attorney at trial;   assist with post trial files. | $ 6,880.00 | $ 430.00 | 16.00 |
| 164 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 07/14/2025 | Trial day. Voir dire, opening, direct examinations; cross of Johnson; jury charge; close and verdict. | $ 25,277.00 | $ 1,610.00 | 15.70 |
| 165 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 07/15/2025 | Calendar deadline to file motion for attorney fees;  draft motion for attorney fees;  draft Joint Amended Exhibit list; review of new Court orders and forward to docketing requesting diary of new deadlines;  review of local rules for deadline to file trial exhibits;  correspond with accounting requesting updated cost spreadsheet of all fees and costs for motion for fees; forward same to attorney for review. | $ 1,376.00 | $ 430.00 | 3.20 |
| 166 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 07/15/2025 | Legal research on entry of final judgment and work regarding final judgment. | $ 10,787.00 | $ 1,610.00 | 6.70 |
| 167 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 07/16/2025 | Review of court rules for timetable to file final trial exhibits; review of article on court case from appellate attorney, forward to attorney and update case contact sheet;  correspond with Monica regarding filing of trial exhibits; scan receipts and submit trial expenses to accounting;  submit invoice from  Platinum to accounting for payment;  correspond with M. Guzman regarding intern et posts identified in record; review for examples of motion for damages. | $ 1,806.00 | $ 430.00 | 4.20 |
| 168 | 447846 | Hal Lambert and Point Bridge Capital | Millhouse, Cooper | 07/16/2025 | Overview call with Will Thompson (.5)<br>Researching, collecting examples of final judgments in rico cases, outlining, and drafting notice of final judgment, calculations of prejudgment interest, treble damages, and costs/fees award requests. (4.5) | $ 5,000.00 | $ 1,000.00 | 5.00 |
| 169 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 07/16/2025 | Legal research on entry of final judgment and work regarding final judgment; collecting fees for attorney fee submission. | $ 11,109.00 | $ 1,610.00 | 6.90 |
| 170 | 447846 | Hal Lambert and Point Bridge Capital | Faulkner, Sherry | 07/17/2025 | Correspond with attorney regarding transmittal of Joint Amended Exhibit list to Defendant; research for motion for Treble damages and begin preparing shell for attorney review. | $ 215.00 | $ 430.00 | 0.50 |
| 171 | 447846 | Hal Lambert and Point Bridge Capital | Millhouse, Cooper | 07/17/2025 | Full Research and Drafting of Proposed final judgment, Motion for Treble Damages and Fees (and accounting-specificity required), and Motion for prejudgment interest.  Correspondence regarding the same with Will Thompson. Completed first draft of each. Research and consideration of other alternative award requests including post-judgment interest. | $ 5,200.00 | $ 1,000.00 | 5.20 |
| 172 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 07/17/2025 | Revising final judgment documents; legal research on treble damages submission. | $ 4,991.00 | $ 1,610.00 | 3.10 |
| 173 | 447846 | Hal Lambert and Point Bridge Capital | Thompson, Will | 07/18/2025 | Continued working on final judgment submission, legal research on prejudgment interest; and post judgment tasks and submissions. | $ 11,431.00 | $ 1,610.00 | 7.10 |
| 174 | | | | | | $ 1,014,377.00 | $ 1,285.65 | 789.00 |

Appx. 025

**quinn emanuel trial lawyers**

865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017

February 18, 2025

Hal Lambert
Point Bridge Capital
One City Place, 300 Throckmorton St.
Fort Worth, TX 76102

Matter #: 12566-00001
Invoice Number: 101-0000184443

<u>C. Johnson</u>

For Professional Services through January 31, 2025 in connection with potential disputes involving Charles C. Johnson.

| | |
|---|---:|
| Fees | $18,753.00 |
| Expenses | $274.00 |
| Net Amount | $19,027.00 |
| Total Due This Invoice | $19,027.00 |

<u>Retainer Summary</u>

Retainer to be Maintained:..........................$100,000.00
Current Retainer Balance: ............................$59,540.50
Retainer Amount Due: ..................................$40,459.50

Total Balance Due Including Retainer...................  $59,486.50

**Confidential – May include attorney-client privileged and work-product information**

Abu Dhabi | Atlanta | Austin | Beijing | Berlin | Boston | Brussels | Chicago | Dallas | Doha | Hamburg | Hong Kong | London
Los Angeles | Mannheim | Miami | Munich | Neuilly La Défense | New York | Paris | Perth | Riyadh | Salt Lake City
San Francisco | Seattle | Shanghai | Silicon Valley | Singapore | Stuttgart | Sydney | Tokyo | Washington DC | Wilmington | Zurich

**quinn emanuel** trial lawyers

February 18, 2025                                          Matter #: 12566-00001
Page 2                                          Invoice Number: 101-0000184443

### Statement Detail

| Date | Timekeeper | Description | Hours |
|------|-----------|-------------|-------|
| 01/21/25 | WT | Finalizing and filing second amended complaint; conferring with trial team about the same. | 5.90 |
| 01/29/25 | WT | Revising requests for production to Johnson; conferring with trial team regarding requests for production and edits. | 1.90 |
| 01/30/25 | WT | Revising requests for production to Johnson; conferring with trial team; supplementing discovery requests. | 1.50 |
| 01/31/25 | WT | Finalizing and serving first set of requests for production. | 2.10 |
| | | Total Hours | 11.40 |

### Fee Summary

| Attorneys | Init. | Title | Hours | Rate | Amount |
|-----------|-------|-------|-------|------|--------|
| Will Thompson | WT | Partner | 11.40 | 1,645.00 | 18,753.00 |

### Expense Summary

| Description | Amount |
|-------------|--------|
| Service of process | 274.00 |
| Total Expenses | $274.00 |

Appx. 027

**quinn emanuel trial lawyers**
quinn emanuel urquhart & sullivan, llp

**Current Invoice Summary**

Matter Name : C. Johnson

| | |
|---|---|
| Matter #: 12566-00001 | Total Fees.........................................................$18,753.00 |
| Bill Date: February 18, 2025 | Expenses..............................................................$274.00 |
| Invoice Number: 101- | Total Due this Invoice.......................................$19,027.00 |
| 0000184443 | **Payment Due By March 22, 2025** |

**Account Summary**

Required Retainer Amount.........................................................$40,459.50
Total Balance Due.................................................................**$59,486.50**

**Please reference invoice number and send check to:**

**Quinn Emanuel Urquhart & Sullivan, LLP**

865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

| Or Wire funds to: | City National Bank |
|---|---|
| | 555 South Flower St., 12th Floor |
| | Los Angeles, CA 90071 |
| Account Info: | Quinn Emanuel Urquhart & Sullivan, LLP |
| Bank Account: | Trust Account #210032339 |
| Bank ABA No.: | 122016066 |
| Swift Code: | CINAUS6L |
| *References:* | *Invoice number and client name / matter number please* |

Tax ID#  95-4004138

Abu Dhabi | Atlanta | Austin | Beijing | Berlin | Boston | Brussels | Chicago | Dallas | Doha | Hamburg | Hong Kong | Houston | London
Los Angeles | Mannheim | Miami | Munich | Neuilly La Défense | New York | Paris | Perth | Riyadh | Salt Lake City
San Francisco | Seattle | Shanghai | Silicon Valley | Singapore | Stuttgart | Sydney | Tokyo | Washington DC | Wilmington | Zurich

Appx. 028

# Exhibit B

# LAW.COM

News   **Law Firms - Large**

## Partner Compensation, Billing Rates Are Trending Higher in Dallas Than Houston

November 14, 2024   By    **Brenda Sapino Jeffreys**

### What You Need to Know

- Average partner compensation in Dallas was higher than in Houston in 2023, according to Major, Lindsey & Africa's 2024 Partner Compensation Survey.

- Authors of the survey said that the results may be affected by a relatively small number of responses in the Texas markets.

- Following a national trend, average partner billing rates improved significantly in Dallas and Houston in 2023, compared with 2021, the survey found.



**Credit: Nuthawut/Adobe Stock**

Partner compensation averaged $1.51 million in Dallas in 2023, up 4.1% compared with 2021, while the average of $1.28 million in compensation in Houston dropped 5.2% compared with 2021.

That compares with a national average of $1.41 million, recruiting firm Major, Lindsey & Africa reports in its 2024 Partner Compensation Survey Report, which surveyed equity and nonequity partners on their 2023 compensation.

A total of 66% of survey participants in Dallas said they were satisfied with their total compensation, while 75% in Houston said they were satisfied. Nationally, 72% of survey respondents in 2024 were satisfied with their compensation.

Karen Andersen, a partner at Major Lindsey who places partners and groups at firms in Southern California and the Pacific Northwest, said a

relatively small number of partners in Dallas and Houston responded to the survey, which may have affected the results.

"My guess is that overall what's going on in both markets at the Am Law 200 firm level is closer to what we are seeing nationally," she said.

Andersen wrote the survey report along with Louis Ramos, a managing director in Major Lindsey's partner practice group in Washington, D.C.

Originations in Dallas and Houston also declined, according to the survey report, and Andersen said the small sample sizes in Dallas and Houston may also be reflected in those findings.

"Looking at the national number is a better way of looking at it. Regression analysis shows that origination is the biggest factor in compensation," she said.

Originations in the 2024 survey for all survey respondents averaged $3.48 million, up 26% when compared with 2022. In Dallas, originations in 2024 were $4.01 million, down 4.8% from 2022, and came in at $3.12 million in Houston, down 2.5%, according to the report.

Following a national trend, however, billing rates improved significantly in both Texas markets, according to the report. Billing rates averaged $1,157 for the Dallas partners who responded to the survey, up 42%, and they averaged $1,147 in Houston, up 28%. The average hourly billing rate for all 2024 survey respondents came in at $1,114, an increase of 36% compared with the 2022 survey.

Andersen and Ramos each said the increased billing rates in the two Texas cities are relatively in line with the industry average.

The information is useful for lawyers, firms and recruiters, Ramos said.

"For us, any insight into what the market is doing is always helpful. It's helpful for all of us at MLA when we are talking to potential candidates who are thinking of making a lateral move, letting them know what the

market is telling us … and also helpful in terms of law firms in giving them some sense of where market compensation is," he said.

The survey of partners at firms in the Am Law 200 was conducted during the summer; results are based on responses from 1,718 participants. The report includes results of individual markets such as Dallas and Houston when they are statistically meaningful.

**Page printed from:** https://www.law.com/texaslawyer/2024/11/14/partner-compensation-billing-rates-are-trending-higher-in-dallas-than-houston-/

_____

**NOT FOR REPRINT**

© 2025 ALM Global, LLC, All Rights Reserved. Request academic re-use from www.copyright.com. All other uses, submit a request to asset-and-logo-licensing@alm.com. For more information visit Asset & Logo Licensing

# Hill v. Estate of Hill

United States District Court for the Northern District of Texas, Dallas Division

December 5, 2022, Decided; December 5, 2022, Filed

Civil Action No. 3:20-CV-3634-L

**Reporter**

2022 U.S. Dist. LEXIS 219331 *; 2022 WL 17475788

ALBERT G. HILL, III and ERIN NANCE HILL, Plaintiffs, v. THE ESTATE OF ALBERT G. HILL JR.; MARGARET KELIHER; TYREE B. MILLER; LYDA HILL; HEATHER HILL WASHBURNE; ELISA HILL SUMMERS; CHESTER J. DONNALLY, JR.; THE ESTATE OF IVAN IRWIN JR.; CAROL E. ERWIN; and THOMAS P. TATHAM, Defendants.

**Prior History:** Hill v. Estate of Hill, 594 F. Supp. 3d 741, 2022 U.S. Dist. LEXIS 53929, 2022 WL 891102 (N.D. Tex., Mar. 25, 2022)

**Counsel:** [*1] For Albert G Hill, III, Erin Nance Hill, Plaintiffs: Brian F Antweil, LEAD ATTORNEY, Rapp & Krock, PC, Houston, TX; William Joseph Skepnek, Skepnek Law Firm, Lawrence, KS.

For Margaret Keliher, Estate of Albert G Hill Jr, Tyree B Miller, Defendants: G Michael Gruber, LEAD ATTORNEY, Brian E Mason, Dorsey & Whitney LLP, Dallas, TX.

For Lyda Hill, Defendant: Thomas M Melsheimer, LEAD ATTORNEY, Grant Kojis Schmidt, Winston & Strawn LLP, Dallas, TX.

For Heather Hill Washburne, Elisa Hill Summers, Co-Trustee of Al G. Hill, Jr. Charitable Lead Annuity Trust, Defendants: Tom M Dees, III, LEAD ATTORNEY, Hallett & Perrin, P.C., Dallas, TX.

For Chester J Donnally, Jr, Estate of Ivan Irwin Jr, Carol E Irwin, Defendants: Michael J Lang, LEAD ATTORNEY, Alexandra Ohlinger, Crawford Wishnew & Lang, Dallas, TX.

**Judges:** Sam A. Lindsay, United States District Judge.

**Opinion by:** Sam A. Lindsay

# Opinion

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are Defendants' Motion for Award of Attorneys' Fees and Costs Pursuant to Federal Rule of Civil Procedure 54(d) and Brief in Support (Doc. 43), filed April 8, 2022; and Defendant Lyda Hill's Motion for Attorneys' Fees and Sanctions with Supporting Brief (Doc. 41), filed April 8, 2022. Having considered the motions, responses, replies, [*2] pleadings, record, and applicable law, the court **grants** Defendants' Motion for Award of Attorneys' Fees and Costs Pursuant to Federal Rule of Civil Procedure 54(d) (Doc. 43); and **grants in part** and **denies in part** Defendant Lyda Hill's Motion for Attorneys' Fees and Sanctions (Doc. 41).

## I. Factual Background and Procedural History

Case 4:24-cv-00988-P    Document 101-1    Filed 07/21/25    Page 35 of 67    PageID 1815

Page 2 of 21
2022 U.S. Dist. LEXIS 219331, *2

Because this case is the subject of a prior memorandum opinion and order, *see Hill v. Estate of Hill*, No. 3:20-CV-3634-L, 2022 U.S. Dist. LEXIS 53929, 2022 WL 891102, at *1 (N.D. Tex. Mar. 25, 2022), *appeal dismissed sub nom. Hill v. Keliher*, No. 22-10408, 2022 U.S. App. LEXIS 30375, 2022 WL 15117035 (5th Cir. June 16, 2022) ("*Estate of Hill*"), the court will recount only the background facts and procedural history that are pertinent to this decision. In addition, the court incorporates by reference the entirety of its decision in *Estate of Hill* as set forth herein verbatim.

This lawsuit, filed by Albert G. Hill, III ("Mr. Hill III") and Erin Nance Hill ("Ms. Erin Hill") (collectively, "Plaintiffs") on December 20, 2020, involved, once again, a dispute relating to two trusts formed by Haroldson Lafayette ("H.L.") Hunt, "the late Texas oil baron reputed to be one of the world's richest men when he died in 1974." *Hill v. Washburne*, 953 F.3d 296, 300 (5th Cir. 2020) (citations omitted). In addition to parsing through the terms of the trusts, the court was required, yet again, to revisit the Global Settlement and Mutual Release Agreement (the "GSA") and the final judgment [*3] (the "Final Judgment") issued on November 8, 2010, by the Honorable Reed O'Connor ("Judge O'Connor") of the United States District Court for the Northern District of Texas (Dallas Division) in the lawsuit styled *Hill v. Hunt et al.*, Civil Action No. 3:07-cv-2020-L (the "2020 Action").[1] As recently summarized by the Fifth Circuit with regard to the 2020 Action:

> In exchange for a nine-figure payment and other benefits, Hill III agreed "not to contest the Last Will and Testament of Al Jr. or file any additional action, lawsuit, or legal proceeding challenging the disposition of his property" (the no-contest clause). The parties further "agree[d] that the remedy of specific performance and/or injunctive relief (whether mandatory or by restraint) shall be available for the breach of any term, condition, covenant, or warranty of" the settlement agreement. The parties consented to the district court's continuing jurisdiction over actions to enforce the settlement agreement.

*Hill v. Washburne*, 953 F.3d 296, 301 (5th Cir. 2020). The Fifth Circuit also recognized in *Hill v. Washburne*, "After 'protracted [and] complicated' litigation, *Hill v. Schilling*, 593 F. App'x 330, 331 (5th Cir. 2014), squabbling over the trusts was supposedly ended by a settlement agreement confected in 2010. Yet, over the next [*4] four years, our court 'weighed in on the settlement' four times. *Id.* This appeal makes it five." *Hill v. Washburne*, 953 F.3d 296, 301 (5th Cir. 2020).

In this latest lawsuit, Plaintiffs asserted claims against the Estate of Albert G. Hill, Jr.; Margaret Keliher ("Ms. Keliher"), individually and as Executor of the Estate of Albert G. Hill, Jr.; Tyree Miller ("Mr. Miller"), individually and as Trustee of The Albert G. Hill, Jr. Family Trust; Chester J. "Don" Donnally, Jr. ("Mr. Donnally), individually and in his capacity as the court-appointed trustee for the MHTE-Albert G. Hill, Jr. Trust and the HLHTE-Albert G. Hill, Jr. Trust; Carol E. Irwin ("Ms. Irwin"), in her capacity as Personal Representative and Independent Executor of the Estate of Ivan Irwin, Jr., Deceased; Thomas P. Tatham ("Mr. Tatham"), individually and in his capacity as an advisory board member for the MHTE-Albert G. Hill, Jr. Trust and the HLHTE-Albert G. Hill, Jr. Trust; Heather Hill Washburne ("Ms. Washburne"), individually and as an advisory board member for the MHTE-Albert G. Hill, Jr. Income Beneficiary/Heather Termination Beneficiary Trust; and Elisa Hill Summers ("Ms. Summers"), individually and as an advisory board member for the MHTE-Albert [*5] G. Hill, Jr. Income Beneficiary/Elisa Termination Beneficiary Trust (sometimes collectively, the "Hill Jr. Defendants"). Plaintiffs also asserted claims against Defendant Lyda Hill ("Ms. Lyda Hill").

In their Complaint, Plaintiffs contended that they and their three children (Albert Galatyn Hill IV, Nance Haroldson Hill, and Caroline Margaret Hill)[2] were contingent or remainder beneficiaries of various trusts created as a result of the GSA and the Final Judgment. They asserted that the Hill Jr. Defendants, following the December 2, 2017 death

---

[1] CM-ECF citations from *Hill v. Hunt et al.*, Civil Action No. 3:07-cv-2020-L (the "2020 Action") are referenced herein as "2020 Action, Doc. __." Also, Judge O'Connor is currently assigned to the Fort Worth Division of the Northern District of Texas.

[2] As Plaintiffs used the full names of their three children, the court will do the same. Moreover, none of the children is a minor.

of Mr. Hill III's father, Albert G. Hill, Jr. ("Mr. Hill Jr."), breached their duties owed to Plaintiffs in the GSA and Final Judgment by terminating and dissolving these trusts in 2016, rather than allowing them to terminate twenty-one years after the deaths of their initial beneficiaries. *See generally* Compl. (Doc. 1). They made similar allegations against Ms. Lyda Hill pertaining to different trusts.[3]

The Hill Jr. Defendants and Ms. Lyda Hill moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), arguing, among other things, that Plaintiffs lacked standing to assert these claims pursuant to the GSA and Final Judgment; that Plaintiffs' claims had [*6] been settled, released, and adjudicated in the Final Judgment; and that Plaintiffs had taken positions contrary to the positions they espoused in the Complaint when it was to their benefit and were, therefore, estopped from bringing their current claims.

The court in *Estate of Hill*, relying on paragraph 28 of the Final Judgment, concluded that Plaintiffs lacked standing to bring their claims:

> The Final Judgment enforced the agreeing parties' waiver of standing provision, whereby each agreeing party, defined to include Hill III, agreed to waive any right to demand information, seek accountings, or assert any claim or cause of action in connection with, any trust for the primary benefit of a descendent of Margaret Hunt Hill of which he or she was not a current beneficiary:

> **Waiver of Standing**

> 28. **IT IS ORDERED that**, pursuant to the Agreement, the Court finds that **during such time as an Agreeing Party is not a current beneficiary of a trust** for the primary benefit of a descendant of Margaret Hunt Hill ("MHH") (an "MHH Trust") and any other descendant of MHH is living, **such Agreeing Party has waived**: (1) his or her **status as an interested person** in such trust, **and (2) all rights that he or** [*7] **she may have** as a future or contingent beneficiary of such trust under the instrument establishing such MHH Trust, under applicable common law, or under applicable state law, **including but not limited to the right to demand information, seek an accounting, or assert any claim or cause of action in connection with any such trust**. . . . IT IS FURTHER ORDERED that, pursuant to the Agreement, the waivers by each Agreeing Party in this paragraph shall not apply to an MHH Trust during any period in which such Agreeing Party **is a current beneficiary** of that MHH Trust, although the waivers in this paragraph shall continue to apply to any actions taken or omitted by any other person or entity during the period that such Agreeing Party **was not a current beneficiary**. For purposes of this paragraph, "current beneficiary" means a person who, at the time a current beneficiary is determined, is then entitled to receive, or is then, in an exercise of discretion by the trustee of such trust, a possible recipient of, income or principal of such trust.

*Estate of Hill*, 2022 U.S. Dist. LEXIS 53929, 2022 WL 891102, at *4 (quoting 2020 Action, Doc. 999 at 35-36, ¶ 28 (emphasis added)).

Further, the court held that Mr. Hill III "is not now, nor will he ever be, a current [*8] beneficiary of the Hill Jr. Trusts, and the Waiver of Standing provision in the GSA and Final Judgment, therefore, bars him from seeking relief in this court with respect to the trusts at issue." *2022 U.S. Dist. LEXIS 53929, [WL]* at *12. For these reasons,

---

[3] In the Complaint, Plaintiffs asserted the following claims arising out of the 2016 termination and dissolution of the Hill Jr. Trusts and the purported termination and dissolution of the Lyda Hill Trusts: Breach of Contract (Count One) (except as to Defendants Messrs. Donnally and Tatham); Declaratory Relief (Count Two) (against all Defendants); Imposition of a Constructive Trust/Conversion (Count III) (against all Defendants); Tortious Interference with Contract (against Messrs. Donnally and Tatham only) (Count IV); Breach of Fiduciary Duties and Fee Disgorgement (against Messrs. Donnally, Irwin, and Tatham) (Count V); Aiding and Abetting Breach of Fiduciary Duties (against Mr. Hill Jr., Lyda Hill, Ms. Washburne, and Ms. Summers) (Count VI); Civil Conspiracy (against all Defendants) (Count VII); Aiding and Abetting (against Mr. Hill Jr., Ms. Keliher, Mr. Miller, Lyda Hill, Ms. Washburne, and Ms. Summers) (Count VIII); Unjust Enrichment (against Mr. Hill Jr., Lyda Hill, Ms. Washburne, and Ms. Summers) (Count IX); Equitable Reformation (against all Defendants) (Count X); and Exemplary Damages (against all Defendants). *See* Pls.' Compl., Doc. 1.

the court concluded that Mr. Hill III "has no standing, or any viable basis, for pursuing the claims in the Complaint." *Id.* Separately, the court concluded that Mr. Hill III lacked standing to assert any claims against Ms. Lyda Hill related to the HHTE because he released these claims in open court as part of the settlement. *2022 U.S. Dist. LEXIS 53929, [WL] at *13.*

Based on its conclusion that Mr. Hill III lacked standing to assert any of the claims in the Complaint and noting that Ms. Erin Hill did not contest the Hill Jr. Defendants' and Ms. Lyda Hill's arguments that she lacked standing, the court granted the Hill Jr. Defendants' and Ms. Lyda Hill's respective motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *Id.* at 11, 13.

In the alternative to dismissing Plaintiffs' claims against the Hill Jr. Defendants and Ms. Lyda Hill for lack of subject matter jurisdiction, the court dismissed their claims pursuant to Federal Rule of Civil Procedure 12(b)(6), concluding that (i) under Texas law, Plaintiffs were estopped from asserting that Mr. Hill Jr. did not have powers [*9] of appointment in the trusts; and (ii) Plaintiffs were judicially estopped from asserting that Ms. Lyda Hill lacked powers of appointment over her trusts. *2022 U.S. Dist. LEXIS 53929, [WL] at *15.* The court concluded that leave to amend pleadings was not warranted and dismissed Plaintiffs' claim with prejudice, explaining:

> First, given the unique procedural history of this matter, which concluded in 2010 when Judge O'Connor issued the Final Judgment, the court can only conclude that Plaintiffs are proceeding in bad faith and allowing further amendment would be unduly prejudicial to Defendants, who have had to respond to these same contentions in multiple fora over a period of several years. In addition, in light of the court's determination that Plaintiffs are estopped from bringing their claims, either under a theory of judicial estoppel or quasi-judicial estoppel, any amendment would be futile.

*2022 U.S. Dist. LEXIS 53929, [WL] at *16.*

On March 25, 2020, the court entered its Judgment, dismissing all claims asserted by Plaintiffs with prejudice and stating that "any request by Defendants for attorney's fees must be filed in accordance with Federal Rule of Civil Procedure 54(d)(2)[.]" Judgment 2 (Doc. 40). On April 8, 2022, pursuant to Rule 54(d), as well as the GSA and Final Judgment, the Hill Jr. Defendants [*10] and Ms. Lyda Hill filed their respective motions for attorney's fees and costs. The Hill Jr. Defendants seek their attorney's fees and costs, and also ask the court to exercise its inherent powers and authority to evaluate Plaintiffs' conduct in filing this action and consider "entering an injunction precluding Plaintiffs, as vexatious litigators, from pursuing any further litigation against Defendants without obtaining leave of this Court." Hill Jr. Defs.' Mot. 13 (Doc 43). In addition to seeking her attorney's fees and costs, Ms. Lyda Hill asks the court to sanction Plaintiffs for abusing the judicial process and sanction Plaintiffs' attorneys pursuant to 28 U.S.C. § 1927 for enabling this conduct and violating their duties to the court. Lyda Hill's Mot. 2 (Doc 41). The motions have been fully briefed.

## II. Legal Standard

In adjudicating an attorney's fees award, the court first calculates a "lodestar" fee by multiplying the hours expended by reasonable hourly rates. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). The party seeking the fees bears the burden of establishing the number of hours expended by presenting adequate time records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The court should use this time as a benchmark and then exclude any time that is excessive, [*11] duplicative, unnecessary, or inadequately documented. *Id.* The hours remaining are those reasonably expended. The applicant bears the burden of establishing a reasonable number of hours expended and proving that billing judgment was exercised. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006) (citation omitted). "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Id.* (citations omitted); *see also League of United*

*Latin Am. Citizens v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997) ("The district court must eliminate excessive or duplicative time.") (citing *Watkins*, 7 F.3d at 457).

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. *See Blum v. Stenson*, 465 U.S. 886, 895-96 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). The relevant legal community is the community in which the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The burden is on the movant to "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates" are reasonable. *Blum*, 465 U.S. at 896 n.11. There is a strong presumption of the reasonableness of the lodestar. *See Saizan*, 448 F.3d at 800.

After calculating the lodestar, the court may either (1) accept it or (2) decrease or enhance it based on the circumstances of the case, taking into account the *Johnson* factors. *See Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996). The *Johnson* factors are [*12] (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989).

Although the court can adjust the lodestar upward or downward after assessing the *Johnson* factors, the party seeking the adjustment bears the burden of establishing that an adjustment is warranted. *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 329 (5th Cir. 1995) (per curiam) (citation omitted). Many of the *Johnson* factors are "presumably fully reflected in the lodestar amount," and such modifications are proper only in certain "'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings[.]" *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986) (citing *Blum*, 465 U.S. at 898-901). District courts "need not specifically discuss the [*13] *Johnson* factors where [they have] applied the *Johnson* framework." *EEOC v. Agro Distribution, LLC*, 555 F.3d 462, 473 (5th Cir. 2009).

## III. Analysis

### A. The Hill Jr. Defendants' Motion for Attorney's Fees and Costs

The Hill Jr. Defendants seek attorney's fees in the total amount of $284,393.06 and costs in the total amount of $3,061.19 pursuant to section III ¶ 5(r) of the GSA, which provides:

(r) Specific Performance: The Parties agree that monetary damages alone may not be adequate recompense for any breach of this Agreement. In the event any Party breaches any of the obligations or responsibilities placed upon such Party in this Agreement, then any other Party may seek any legal or equitable remedy that may be available for such breach, and, if such Party is successful, *then the Party breaching this Agreement agrees to pay all of the other Parties' reasonable attorneys' fees and costs of litigation* in addition to any legal or equitable damages. The Parties agree that the remedy of specific performance and/or injunctive relief (whether mandatory or by restraint) shall be available for the breach of any term, condition, covenant, or warranty of this agreement.

2020 Action, Doc. 879 section III ¶ 5(r) (emphasis added).

Before determining the amount of reasonable attorney's [*14] fees and costs of litigation, the court must address the threshold matter of Plaintiffs' objections.

## 1. Plaintiffs' Objections to the Hill Jr. Defendants' Motion

Plaintiffs do not challenge the number of hours spent by the Hill Jr. Defendants' counsel in defending this action or the reasonableness of the hourly rates charged. Rather, they contend that the Hill Jr. Defendants should be precluded from recovering attorney's fees because they (a) sought and secured dismissal with prejudice and a take-nothing judgment against Plaintiffs' claims under Federal Rule of Civil Procedure 12(b), rather than (b) "prevailing" on "affirmative claims for breach of the GSA." Pls.' Resp. 8 (Doc. 49). In support, Plaintiffs contend that the Hill Jr. Defendants cannot recover attorney's fees because the GSA requires Defendants to be "prevailing plaintiff[s] seeking affirmative claims for breach of the GSA" to recover attorney's fees. *Id.*

In response, the Hill Jr. Defendants maintain that "Plaintiffs' attempt to limit the attorney's fee provision in the GSA to plaintiffs has no basis in the text of the GSA." Hill Jr. Defs.' Reply 2 (Doc. 54). The court agrees. The plain language of the GSA does not condition the Hill Jr. Defendants' recovery [*15] of the attorney's fees and costs they incurred in this civil action on first obtaining "a victory on affirmative claims" for breach of contract. The GSA does not contain the words "prevailing plaintiff," "affirmative claims," or any similar limiting language. Instead, section 5(r) of the GSA expressly makes attorney's fees available to "any" non-breaching parties (here, the Hill Jr. Defendants), who successfully pursue "any legal or equitable remedy that is available" when breaching parties (here, Plaintiffs), violate their "obligations and responsibilities" set forth in the GSA. 2020 Action, Doc. 879 section III ¶ 5(r). As previously explained, *see supra* Sec. I, that is precisely what happened here, leading the court to grant the Hill Jr. Defendants' motion to dismiss. Section 5(r) also explicitly authorizes non-breaching parties to recover their attorney's fees "in addition to any legal or equitable damages," but it does not make recovering damages a prerequisite to recovering attorney's fees. *Id.*

In addition, Plaintiffs' passing reference to materially different language in Texas Civil Practice and Remedies Code § 38.001 does nothing to alter the material terms of the GSA. The Hill Jr. Defendants are not seeking attorney's fees pursuant to section 38.001. Instead, they seek [*16] to recover attorney's fees specifically provided for by contract. *See Structural Metals, Inc. v. S & C Elec. Co.*, 590 F. App'x 298, 304 (5th Cir. 2014) (quoting *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 172 (Tex. 2013)) ("Texas follows the American Rule, which provides that there can be no recovery of attorney's fees unless authorized **by contract** or statute.") (emphasis added); *Epps v. Fowler*, 351 S.W.3d 862, 865 (Tex. 2011) (same). For these reasons, the court **overrules** Plaintiffs' objections to the Hill Jr. Defendants' fee request.

## 2. The Hill Jr. Defendants' Fee Request

As previously stated, the Hill Jr. Defendants request attorney's fees in the total amount of $284,393.06 and costs in the total amount of $3,061.19, summarized as follows[4] .

| Defendants | Fees | Costs | Total |
|---|---|---|---|
| Ms. Washburne and Ms. Summers | $104,176.00 | $1,326.89 | $105,502.89 |

---

[4] The court notes some discrepancies between the fee and cost calculations set forth in the Hill Jr. Defendants' motion and the actual amounts substantiated by the invoices, particularly in the case of the invoices submitted by counsel for Mr. Donnally, Mr. Tatham, and Ms. Irvin. The court relies on the amounts reflected in the invoices attached to the Declaration of Michael J. Lang. *See* Doc. 43-2 at Ex. B and Exs. B-1 through B-7.

| Defendants | Fees | Costs | Total |
|---|---|---|---|
| Mr. Donnally, Ms. Irwin, and Mr. Tatham | $21,517.50 | $601.45 | $22,118.95 |
| Ms. Keliher | $158,699.56 | $1,132.85 | $159,832.41 |
| TOTAL | $284,393.06 | $3,061.19 | $287,454.25 |

The Hill Jr. Defendants provide the court with detailed declarations from their legal counsel analyzing the legal services provided in this civil action. *See* Doc. 43-1 (Ex. A: Decl. of Tom M. Dees, III ("Mr. Dees")—counsel for Ms. Washburne and Ms. Summers); Doc. 43-2 (Ex. B: Decl. of Michael J. Lang ("Mr. Lang")—counsel for Mr. Donnally, Ms. Irwin, and Mr. Tatham); Doc. 43-3 (Ex. C: Decl. of Brian E. Mason [*17] ("Mr. Mason")—counsel for Ms. Keliher); Doc. 43-4 (Ex. D: Decl. of David J. Goodman ("Mr. Goodman")—counsel for Ms. Keliher); and Doc. 43-5 (Ex. E: Decl. of W. Scott Hastings ("Mr. Hastings")—co-counsel for Ms. Keliher). As set out more fully below, the court concludes that these declarations are supported by evidence in the form of adequate time records establishing the number of hours expended by each timekeeper, the hourly rates charged, and the lodestar calculation for all of the legal services provided to the Hill Jr. Defendants in this matter. The evidence also establishes, in the exercise of billing judgment, the reasonableness of the hourly rates charged for these legal services, and evaluates the legal services provided based on the *Johnson* factors.

### a. Ms. Washburne and Ms. Summers' Fee Request for Legal Services Provided by Hallett & Perrin, P.C.

Ms. Washburne and Ms. Summers seek attorney's fees in the amount of $104,176 and costs of $1,326.89 (for a total of $105,502.89) that they incurred with the law firm of Hallett & Perrin, P.C. ("Hallett & Perrin"). They assert that counsel expended a total of 234.70 hours defending this action. These hours were billed through the work of four [*18] attorneys employed by Hallett & Perrin at that time: Mr. Dees; David M. Hammack ("Mr. Hammack"); Josh C. Rovelli ("Mr. Rovelli"); and Molly Cowan ("Ms. Cowan"). *See* Doc. 43-1 at Ex. A ¶ 23. Mr. Dees, in his Affidavit, summarizes the services, hours, and fees for legal services performed for Ms. Washburne and Ms. Summers in this civil action. *Id.* at Ex. A ¶ 5. Mr. Dees asserts that the fees and costs sought by his clients for this time period are "reasonable, necessary, and appropriate" taking into account the nature and complexity of this case. *Id.* at Ex. A ¶ 11. He asserts that the attorney's fees and costs incurred by Ms. Washburne and Ms. Summers in this action "are reasonable and consistent with the attorneys' fees customarily charged in the Northern District of Texas (Dallas Division) . . . for similar legal services." *Id.* at Ex. A ¶ 18. Mr. Dees also provides copies of the invoices for legal services performed for Ms. Washburne and Ms. Summers in this case. *Id.* at Ex. A ¶ 3 and Exs. A-1 through A-7. The hours incurred—for which Ms. Washburne and Ms. Summers seek compensation—are 216 hours for Mr. Dees at an hourly rate of $450 for 2020 and $460 in 2021; 7.60 hours for Mr. Hammack [*19] at an hourly rate of $305; 6.1 hours for Mr. Rovelli at an hourly rate of $290; and 5 hours for Ms. Cowan at an hourly rate of $395. *Id.* at Ex. A ¶ 8. The total amount Ms. Washburne and Ms. Summers seek for these hours is $105,301. *Id.*

The court begins with determining what the reasonable hourly rates are for the attorneys who provided the services included in Ms. Washburne and Ms. Summers' request. As the fee applicants, Ms. Washburne and Ms. Summers bear the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368 (citation omitted). "[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co.*, 382 F.3d at 562 (applying federal law); *Merge Office Interiors, Inc. v. Alfa Adhesives, Inc.*, No. 3:19-CV-00336-M, 2020 U.S. Dist. LEXIS 77747, 2020 WL 2115645, at *2 (N.D. Tex. May 3, 2020) (Lynn, C.J.) ("It is well-established that the Court may use its own expertise and judgment to independently assess the hourly rates charged for attorney's fees.") (citations omitted); *Hoffman v.*

*L&M Arts*, No. 3:10-CV-0953-D, 2015 U.S. Dist. LEXIS 85882, 2015 WL 3999171, at *2 (N.D. Tex. July 1, 2015) (Fitzwater, J.) (same).

Ms. Washburne and Ms. Summers assert that the following hourly [*20] rates are reasonable: $450 for legal services performed by Mr. Dees in 2020 and $460 for legal service performed by Mr. Dees in 2021; $305 for Mr. Hammack; $290 for Mr. Rovelli; and $395 for Ms. Cowan. They provide support through Mr. Dees' Declaration and exhibits to his Declaration, which attest to the qualifications and experience of these individuals. *See* Doc. 43-1 at Ex. A; *id.* at Ex. A-9 (Biographical Statement of Mr. Dees); Ex. A-10 (Biographical Statement of Mr. Hammack); Ex. A-11 (Biographical Statement of Mr. Rovelli); and Ex. A-12 (Biographical Statement of Ms. Cowan). Mr. Dees certifies that the requested rates are commensurate with similar services by lawyers and paralegals of reasonably comparable skill, experience, and reputation in the Dallas area. *Id.* at Ex. A ¶ 18.

Mr. Hill III does not contest that the hourly rates charged by counsel at Hallet & Perrin are reasonable. For the reasons that follow, the court concludes that the hourly rates Ms. Washburne and Ms. Summers request for the legal services of counsel at Hallett & Perrin are reasonable.

Mr. Dees is an attorney and shareholder at Hallet & Perrin and has been licensed to practice law in Texas since 2002. *Id.* at [*21] Ex. A ¶ 2 and Ex. A-9 (Biographical Statement of Mr. Dees). Mr. Hammack, an attorney and associate at Hallett & Perrin, has been licensed to practice law in Texas since 2014. *Id.* at Ex. A-10. Mr. Rovelli, an attorney and associate at Hallett & Perrin, has been licensed to practice law in Texas since 2015. *Id.* at Ex. A-11. Ms. Cowan, an attorney and associate at Hallett & Perrin, has been licensed to practice law in Texas since 1999. *Id.* at Ex. A-12. The court is familiar with the prevailing market rates in the Dallas legal market for attorneys with the skill, experience, and reputation of Ms. Washburne and Ms. Summers' counsel. Based on the court's knowledge of rates charged for legal services by attorneys with the level of skill, experience, and reputation as Ms. Washburne and Ms. Summers' counsel in the Dallas legal community, and its experience in setting attorney's fees in numerous other cases, and based on the certifications in Mr. Dees' Affidavit, the court determines that the hourly rates asserted are reasonable.

Having determined that the hourly rates for Ms. Washburne and Ms. Summers' attorneys are reasonable, the court next considers the time expended. Mr. Dees has provided [*22] the court with detailed time records as evidence. *See* Doc. 43-1 at Ex. A ¶ 3 and Exs. A-1 through A-7 (invoices). He certifies that the hours expended on the case were reasonable and necessary. *Id.* at Ex. A ¶ 11.

As previously stated, Plaintiffs do not object to the hours expended. Further, the Exhibits attached to Mr. Dees' Declaration show several "No Charge" entries indicating time was written off as excessive, redundant, or unnecessary. *See id.* at Ex. A and at Exs. A-1 through A-7. Further, Mr. Dees states that he "exercised billing judgment in good faith" as reflected by the numerous time entries marked as "NO CHARGE" and time entries containing reduced hours billed to the client. *See id.* at Ex. A ¶ 6. Based on its review of the invoices and Mr. Dees' Declaration, the court concludes the hours expended on the case were not excessive, duplicative, unnecessary, or inadequately documented.

The court will use the following hours and rates in calculating the loadstar amount: 216 hours at an hourly rate of $450 for legal services performed by Mr. Dees in 2020 and $460 for legal services performed by Mr. Dees in 2021 for a total of $99,239 in attorney's fees; 47.60 hours at an hourly rate [*23] of $305 for Mr. Hammack for a total of $2,318 in attorney's fees; 6.1 hours at an hourly rate of $290 for Mr. Rovelli for a total of $1,769 in attorney's fees; and 5 hours at an hourly rate of $395 for Ms. Cowan for a total of $1,975 in attorney's fees.

Prior to calculating the lodestar amount, the court notes that Mr. Dees has removed 2.5 hours at an hourly rate of $450 (for a total of $1,125) from Hallett and Perrin Invoice 209558 for purposes of the attorney's fee request because he determined it was a charge from another matter. *See id.* at Ex. A ¶ 8 and notes 11 and 12.

Case 4:24-cv-00988-P    Document 101-1    Filed 07/21/25    Page 42 of 67    PageID 1822

Page 9 of 31
2022 U.S. Dist. LEXIS 219331, *23

After taking into account the reduction of 2.5 hours from Hallett and Perrin Invoice 209558, the court determines that the number of hours spent (234.70), multiplied by the reasonable hourly rate, yields a lodestar of $104,176. The court concludes that each *Johnson* factor permissibly considered is either subsumed within the lodestar calculation or is not sufficiently pertinent to the facts of the case to warrant discussion.

In addition, the court finds that Ms. Washburne and Ms. Summers have introduced sufficient evidence of costs in the amount of $1,326.89, and it concludes that this amount is reasonable. *See id.* at Ex. [*24]  A ¶ 9 and Exs. A-1 through A-7 (invoices). Mr. Hill III does not contest the amount or reasonableness of the costs requested.

For these reasons, based on the lodestar amount and the relevant *Johnson* factors, the court will award Ms. Washburne and Ms. Summers attorney's fees in the amount of $104,176 and costs in the amount of $1,326.89.

### b. Mr. Donnally, Mr. Tatham, and Ms. Irwin's Fee Request for Legal Services Provided by Crawford Wishnew & Lang, PLLC

Messrs. Donnally and Tatham, as well as Ms. Irwin, seek attorney's fees in the amount of $21,517.50 and costs of $601.45 (for a total of $22,118.95) that they incurred with the law firm of Crawford Wishnew & Lang, PLLC ("CWL"). They assert that counsel expended a total of 216 hours defending this action. These hours were billed through the work of Mr. Lang, a shareholder and attorney at CWL. *See* Doc. 43-3 at Ex. B ¶ 2. Mr. Lang, in his Declaration, summarizes the services, hours, and fees for legal services performed for Messrs. Donnally and Tatham, as well as Ms. Irwin, in this civil action. *Id.* at Ex. B ¶ 3. Mr. Lang asserts that the fees and costs sought by his clients for this time period are "reasonable, necessary, and appropriate," taking [*25]  into account the nature and complexity of this case. *Id.* at Ex. B ¶ 11. He asserts that the attorney's fees and costs incurred by Messrs. Donnally and Tatham and Ms. Irwin in this action "are reasonable and consistent with the attorneys' fees customarily charged in the Northern District of Texas (Dallas Division) . . . for similar legal services." *Id.* at Ex. B ¶ 18. Mr. Lang also provides copies of the invoices for legal services performed for Messrs. Donnally and Tatham and Ms. Irwin in this case. *Id.* at Ex. B ¶ 3 and Exs. B-1 through B-7. The hours incurred—for which Messrs. Donnally and Tatham and Ms. Irwin seek compensation—are 45.3 hours for Mr. Lang at an hourly rate of $475. *Id.* at Ex. B ¶ 8. The total amount seek for these hours is $21,517.50. *Id.*

The court begins with determining what the reasonable hourly rate is for Mr. Lang. As the fee applicants, Messrs. Donnally and Tatham and Ms. Irwin bear the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. "Generally, the reasonable hourly rate for a particular community is established through [*26]  affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368 (citation omitted). "[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co.*, 382 F.3d at 562 (applying federal law).

Messrs. Donnally and Tatham and Ms. Irwin assert that $475 for legal services performed by Mr. Lang is reasonable. They provide support through Mr. Lang's Declaration and exhibits to his Declaration, which attest to his qualifications and experience. *See* Doc. 43-2 at Ex. B; *id.* at Ex. B-8 (Biographical Statement of Mr. Lang). Mr. Lang certifies that the requested rate is commensurate with similar services by lawyers and paralegals of reasonably comparable skill, experience, and reputation in the Dallas area. *Id.* at Ex. B ¶ 18.

Mr. Hill III does not contest that the hourly rates charged by counsel at CWL are reasonable. For the reasons that follow, the court concludes that the hourly rates Messrs. Donnally and Tatham and Ms. Irwin request for the legal services of counsel at CWL are reasonable.

Mr. Lang is an attorney and shareholder at CWL and has been licensed to practice law in Texas since 2002. *Id.* at Ex. B ¶ 1 and Ex. B-9 (Biographical Statement of Mr. Lang). The court is familiar with the prevailing market [*27]

rates in the Dallas legal market for attorneys with the skill, experience, and reputation of Mr. Lang. Based on the court's knowledge of rates charged for legal services by attorneys with the level of skill, experience, and reputation as Mr. Lang in the Dallas legal community, and its experience in setting attorney's fees in numerous other cases, and based on the certifications in Mr. Lang's Declaration, the court determines that the hourly rates asserted are reasonable.

Having determined that the hourly rates for Mr. Lang are reasonable, the court next considers the time expended. Mr. Lang has provided the court with detailed time records as evidence. *See* Doc. 43-2 at Ex. B ¶ 2 and Exs. B-1 through B-7 (invoices). He certifies that the hours expended on the case were reasonable and necessary. *Id.* at Ex. B ¶ 12.

As previously stated, Plaintiffs do not object to the hours expended. Further, the Exhibits attached to Mr. Lang's Declaration show several "No Charge" entries indicating time was written off as excessive, redundant, or unnecessary. *See* Doc. 43-2 at Ex. B and at Exs. B-1 through B-7. Further, Mr. Lang states that he "exercised billing judgment in good faith" as reflected by the [*28] numerous time entries marked as "NO CHARGE" and time entries containing reduced hours billed to the client. *See id.* at Ex. B ¶ 6. Based upon its review of the invoices and Mr. Lang's Affidavit, the court concludes that the hours expended on the case were not excessive, duplicative, unnecessary, or inadequately documented.

The court calculates the loadstar amount as follows: 45.3 hours for Mr. Lang at an hourly rate of $475 for a total of $21,517.50 in attorney's fees. The court determines that the number of hours spent (45.3), multiplied by the reasonable hourly rate ($475), yields a lodestar of $21,517.50. The court concludes that each *Johnson* factor permissibly considered is either subsumed within the lodestar calculation or is not sufficiently pertinent to the facts of the case to warrant discussion.

In addition, the court finds that Messrs. Donnally and Tatham and Ms. Irwin have introduced sufficient evidence of costs in the amount of $601.45, and it concludes that this amount is reasonable. *See id.* at Ex. B ¶ 9 and Exs. B-1 through B-7 (invoices). Mr. Hill III does not contest the amount or reasonableness of the costs requested.

For these reasons, based on the lodestar amount and the relevant [*29] *Johnson* factors, the court will award Messrs. Donnally and Tatham and Ms. Irwin attorney's fees in the amount of $21,517.50 and costs in the amount of $601.45.

### c. Ms. Keliher's Fee Request for Legal Services Provided by Dorsey & Whitney, LLP

Ms. Keliher seeks attorney's fees in the amount of $48,476 that she incurred with the law firm of Dorsey & Whitney, LLP ("Dorsey").[5] She asserts that counsel expended a total of 92.40 hours in this action. These hours were billed through the work of five attorneys and one paralegal employed by Dorsey at that time: Mr. Mason; G. Michael Gruber ("Mr. Gruber"); Doug Lang ("Mr. Lang"); Christina Carroll ("Ms. Carroll"); Amir Saboorian ("Mr. Saboorian"); and paralegal Kim Milligan ("Ms. Milligan"). *See* Doc. 43-3 at Ex. C ¶ 28. Mr. Mason, in his Declaration, states he is lead counsel for Ms. Keliher, "in her capacity as personal representative and successor Independent Executor of the Estate of Albert G. Hill, Jr." *Id.* at Ex. C ¶ 2. He summarizes the services, hours, and fees for legal services performed for Ms. Keliher in this civil action. *Id.* at Ex. C ¶ 3. Mr. Mason asserts that the fees and costs sought by his clients for this time period are "fair, reasonable [*30] and necessary, and equitable and just

---

[5] The court notes that in the Hill Jr. Defendants' motion for attorney's fees, Mr. Miller is listed as a movant along with Ms. Keliher in her request for attorney's fees for legal services provided by Dorsey. Mr. Mason's Declaration makes clear, however, that he represented Ms. Keliher "in her capacity as personal representative and successor Independent Executor of the Estate of Albert G. Hill, Jr." Mr. Mason's Decl. at Ex. C ¶ 2. In addition, the evidence pertaining to fees relates solely to work performed for Ms. Keliher. *See* Docs. 43-3 through 43-5. As such, the court concludes that the inclusion of Mr. Miller in the motion was a typographical error.

under the facts and circumstances in this civil action." *Id.* at Ex. C ¶ 11. He further asserts that the attorney's fees and costs incurred by Ms. Keliher in this action "are reasonable and consistent with the attorneys' fees customarily charged in the Northern District of Texas (Dallas Division) . . . for similar legal services." *Id.* at Ex. C ¶ 18. Mr. Mason also provides copies of the invoices for legal services performed for Ms. Keliher in this case. *Id.* at Ex. C ¶ 3 and Exs. C-1 through C-6. The hours incurred—for which Ms. Keliher seeks compensation—are 61.60 hours for Mr. Mason at an hourly rate of $495; 13.90 hours for Mr. Gruber at an hourly rate of $760; 4.70 hours for Mr. Lang at an hourly rate of $695; .50 hours for Ms. Carroll at an hourly rate of $475; 6.90 hours for Mr. Saboorian at an hourly rate of $390; and 4.90 hours for Ms. Milligan at an hourly rate of $250. *Id.* at Ex. C ¶ 8. The total amount Ms. Keliher seeks for these hours is $48,476. *Id.*

The court begins with determining what the reasonable hourly rates are for the attorneys who provided the services included in Ms. Keliher's request. As the fee applicants, they bear the [*31] burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368 (citation omitted). "[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co.*, 382 F.3d at 562 (applying federal law).

Ms. Keliher asserts that the following hourly rates are reasonable: $495 per hour for Mr. Mason; $760 per hour for Mr. Gruber; $695 per hour for Mr. Lang; $475 per hour for Ms. Carroll; $390 per hour for Mr. Saboorian; and $250 per hour for Ms. Milligan. *Id.* at Ex. C ¶ 8. The total amount Ms. Keliher seeks for these hours is $48,476. She provides support through Mr. Mason's Declaration and exhibits to his Declaration, which attest to counsels' and Ms. Milligan's qualifications and experience. *See* Doc. 43-3 at Ex. C; *id.* at Ex. C-8 (Biographical Statement of Mr. Mason); Ex. C-9 (Biographical Statement of Mr. Gruber); Ex. C-10 (Biographical Statement of Mr. Lang); Ex. C-11 (Biographical Statement of Ms. Carroll); Ex. C-12 (Biographical [*32] Statement of Mr. Saboorian); and Ex. C-13 (Biographical Statement of Ms. Milligan). Mr. Mason certifies that the requested rates are commensurate with similar services by lawyers and paralegals of reasonably comparable skill, experience, and reputation in the Dallas area. *Id.* at Ex. C ¶ 18.

Plaintiffs do not contest that the hourly rates charged by counsel at Dorsey are reasonable. For the reasons that follow, the court concludes that the hourly rates Ms. Keliher requests for the legal services of counsel at Dorsey are reasonable.

Mr. Mason, an attorney and shareholder at Dorsey, has been licensed to practice law in Texas since 2012. *Id.* at Ex. C ¶ 1 and Ex. C-8 (Biographical Statement of Mr. Mason). Mr. Gruber, an attorney and shareholder at Dorsey, has been licensed to practice law in Texas since 1981. *Id.* at Ex. C-9. Mr. Lang, an attorney and of counsel at Dorsey, has been licensed to practice law in Texas since 1973. *Id.* at Ex. C-10. Ms. Carroll, an attorney and associate at Dorsey, has been licensed to practice law in Texas since 2014. *Id.* at Ex. C-11. Mr. Saboorian, an attorney and associate at Dorsey, has been licensed to practice law in Texas since 2020. *Id.* at Ex. C-12. Ms. [*33] Milligan, a paralegal at Dorsey, has over seven years of trial experience. *Id.* at Ex. C-13. The court is familiar with the prevailing market rates in the Dallas legal market for attorneys with the skill, experience, and reputation of Ms. Keliher's counsel and paralegals with the skill, experience, and reputation of Ms. Milligan. Based on the court's knowledge of rates charged for legal services by attorneys and paralegals with the level of skill, experience, and reputation as Ms. Keliher's counsel and paralegal in the Dallas legal community, and its experience in setting attorney's fees in numerous other cases, and based on the certifications in Mr. Mason's Declaration, the court determines that the hourly rates asserted are reasonable.

Having determined that the hourly rates for Ms. Keliher's attorneys and paralegal are reasonable, the court next considers the time expended. Mr. Mason has provided the court with detailed time records as evidence. *See* Doc.

43-3 at Ex. C ¶ 3 and Exs. C-1 through C-7 (invoices). He certifies that the hours expended on the case were reasonable and necessary. *Id.* at Ex. C ¶ 11.

As previously stated, Plaintiffs do not object to the hours expended. Further, [*34] the Exhibits attached to Mr. Mason's Declaration show several "No Charge" entries indicating time was written off as excessive, redundant, or unnecessary. *See id.* at Ex. C and at Exs. C-1 through C-7. Further, Mr. Mason states that he "exercised billing judgment in good faith by making adjustment to the amounts billed to the Hill Jr. Estate by excluding and/or reducing hours billed to them in an effort to determine a reasonable and necessary fee for each invoice." *See id.* at Ex. C ¶ 6. Based on its review of the invoices and Mr. Mason's Declaration, the court concludes that the hours expended on the case were not excessive, duplicative, unnecessary, or inadequately documented.

The court will use the following hours and rates in calculating the loadstar amount: 61.60 hours at an hourly rate of $495 for Mr. Mason; 13.90 hours at an hourly rate of $760 per hour for Mr. Gruber; 4.70 hours at an hourly rate of $695 for Mr. Lang; .50 hours at an hourly rate of $475 for Ms. Carroll; 6.90 hours at an hourly rate of $390 for Mr. Saboorian; and 4.90 hours at an hourly rate of $250 for Ms. Milligan. *Id.* at Ex. C ¶ 8. The total amount Ms. Keliher seeks for these hours is $48,476.

The court determines [*35] that the number of hours spent (92.50), multiplied by the reasonable hourly rate, yields a lodestar of $48,476. The court concludes that each *Johnson* factor permissibly considered is either subsumed within the lodestar calculation or is not sufficiently pertinent to the facts of the case to warrant discussion. For these reasons, based on the lodestar amount and the relevant *Johnson* factors, the court will award Ms. Keliher attorney's fees in the amount of $48,476 for legal services performed by counsel and paralegals at Dorsey.

### *d. Ms. Keliher's Fee Request for Legal Services Provided by Bourland, Wall & Wenzel, P.C.*

Ms. Keliher seeks attorney's fees in the amount of $87,438.56 that she incurred with the law firm of Bourland, Wall & Wenzel, P.C. ("Bourland, Wall & Wenzel"). She asserts that counsel expended a total of 830.49 hours in this action. These hours were billed through the work of four attorneys employed by Bourland, Wall & Wenzel at that time: Mr. Goodman; Jeffrey N. Myers ("Mr. Myers"); Eric J. Millner ("Mr. Millner"); and Austin L. Caldera ("Mr. Caldera"). *See* Doc. 43-4 at Ex. D ¶ 9. Mr. Goodman, in his Declaration, summarizes the services, hours, and fees for legal services performed for [*36] Ms. Keliher in this civil action. *Id.* at Ex. D ¶ 3. Mr. Goodman asserts that the fees and costs sought by his clients for this time period are "fair, reasonable and necessary, and equitable and just under the facts and circumstances in this civil action." *Id.* at Ex. D ¶ 10. He further asserts that the attorney's fees and costs incurred by Ms. Keliher in this action "are reasonable and consistent with the attorneys' fees customarily charged in the Northern District of Texas (Dallas Division) for similar legal services." *Id.* at Ex. D ¶ 15. Mr. Goodman also provides copies of the invoices for legal services performed for Ms. Keliher in this case. *Id.* at Ex. D ¶ 8 and Exs. D-1 through D-7. The hours incurred—for which Ms. Keliher seeks compensation—are 131.74 hours for Mr. Goodman at an hourly rate of $400 for his legal services in 2020 and $415 for his legal services in 2021; 17.25 hours for Mr. Myers at an hourly rate of $450 for his legal services in 2020 and $460 for his legal services in 2021; 72.75 hours for Mr. Millner at an hourly rate of $305 for his legal services in 2020 and $285 for his legal services in 2018; and 10.75 hours for Mr. Caldera at an hourly rate of $150, and subsequently [*37] $200, for his legal services in 2020 and $215 for his legal services in 2021. *Id.* at Ex. D ¶ 9. The total amount Ms. Keliher seeks for these hours is $87,438.56. *Id.*

The court begins with determining what the reasonable hourly rates are for the attorneys who provided the services included in Ms. Keliher's request. As the fee applicants, she bears the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368 (citation

2022 U.S. Dist. LEXIS 219331, *37

omitted). "[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co.*, 382 F.3d at 562 (applying federal law).

Ms. Keliher asserts that the following hourly rates are reasonable: $400 for Mr. Goodman in 2020 and $415 in 2021; $450 for Mr. Myers in 2020 and $460 in 2021; $285 for Mr. Millner in 2018 and $305 in 2020; and $150 and $200 in 2020 for Mr. Caldera and $215 in 2021. *Id.* at Ex. D ¶ 9. The total amount Ms. Keliher seeks for these hours is $87,438.56. She provides support through Mr. [*38] Goodman's Declaration and exhibits to his Declaration, which attest to counsels' qualifications and experience. *See* Doc. 43-4 at Ex. D; *id.* at Ex. D-8 (Biographical Statement of Mr. Myers); Ex. D-9 (Biographical Statement of Mr. Goodman); Ex. D-10 (Biographical Statement of Mr. Millner); and Ex. D-11 (Biographical Statement of Mr. Caldera). Mr. Goodman certifies that the requested rates are commensurate with similar services by lawyers of reasonably comparable skill, experience, and reputation in the Dallas area. *Id.* at Ex. D ¶ 15.

Plaintiffs do not contest that the hourly rates charged by counsel at Bourland, Wall & Wenzel are reasonable. For the reasons that follow, the court concludes that the hourly rates Ms. Keliher requests for the legal services of counsel at Bourland, Wall & Wenzel are reasonable.

Mr. Goodman is an attorney and shareholder at Bourland, Wall & Wenzel and has been licensed to practice law in Texas since 1999. *Id.* at Ex. D ¶ 2 and Ex. C-9 (Biographical Statement of Mr. Goodman). Mr. Myers is an attorney and shareholder at Bourland, Wall & Wenzel and has been licensed to practice law in Texas since 1994. *Id.* at Ex. D-8 (Biographical Statement of Mr. Myers). Mr. Millner [*39] is an attorney and of counsel at Bourland, Wall & Wenzel and has been licensed to practice law in Texas since 2003. *Id.* at Ex. D-10 (Biographical Statement of Mr. Millner). Mr. Caldera is an attorney and associate at Bourland, Wall & Wenzel and has been licensed to practice law in Texas since 2020. *Id.* at Ex. D-11 (Biographical Statement of Mr. Caldera). The court is familiar with the prevailing market rates in the Dallas legal market for attorneys with the skill, experience, and reputation of Ms. Keliher's counsel. Based on the court's knowledge of rates charged for legal services by attorneys and paralegals with the level of skill, experience, and reputation as Ms. Keliher's counsel in the Dallas legal community, and its experience in setting attorney's fees in numerous other cases, and based on the certifications in Mr. Goodman's Declaration, the court determines that the hourly rates asserted are reasonable.

Having determined that the hourly rates for Ms. Keliher's attorneys are reasonable, the court next considers the time expended. Mr. Goodman has provided the court with detailed time records as evidence. *See* Doc. 43-4 at Ex. D ¶ 6 and Exs. D-1 through D-7 (invoices). He certifies [*40] that the hours expended on the case were reasonable and necessary. *Id.* at Ex. D ¶ 10.

As previously stated, Plaintiffs do not object to the hours expended. Based on its review of the invoices and Mr. Goodman's Declaration, the court concludes that the hours expended on the case were not excessive, duplicative, unnecessary, or inadequately documented.

The court will use the following hours and rates in calculating the loadstar amount: 131.74 hours at an hourly rate of $400 in 2020 and $415 in 2021 for Mr. Goodman; 17.25 hours at an hourly rate of $450 in 2020 and $460 in 2021 for Mr. Myers; 72.5 hours at an hourly rate of $285 in 2018 and $305 in 2020 for Mr. Millner; and 10.75 hours at an hourly rate of $150, and subsequently $200 in 2020 and $215 in 2021 for Mr. Caldera. *Id.* at Ex. D ¶ 9. The total amount Ms. Keliher seeks for these hours is $87,438.56.

The court determines that the number of hours spent (830.49), multiplied by the reasonable hourly rate, yields a lodestar of $87,438.56. The court concludes that each *Johnson* factor permissibly considered is either subsumed within the lodestar calculation or is not sufficiently pertinent to the facts of the case to warrant discussion. For these reasons, [*41] based on the lodestar amount and the relevant *Johnson* factors, the court will award Ms. Keliher attorney's fees in the amount of $87,438.56 for legal services performed by counsel at Bourland, Wall & Wenzel.

*e. Ms. Keliher's Fee Request for Legal Services Provided by Locke Lord, LLP*

Ms. Keliher seeks attorney's fees in the amount of $22,755 and costs of $1,132.85 (for a total of $23,877.85) that she incurred with the law firm of Locke Lorde, LLP ("Locke Lord"). She asserts that counsel expended a total of 27.75 hours in this action. These hours were billed through the work of Mr. Hastings, a shareholder and attorney at Locke Lord. *See* Doc. 43-5 at Ex. E ¶ 2. Mr. Hastings, in his Declaration, states he is co-counsel to Ms. Keliher in this matter. *Id.* at Ex. E ¶ 2. He summarizes the services, hours, and fees for legal services performed for Ms. Keliher in this civil action. *Id.* at Ex. D ¶ 3. Mr. Hastings asserts that the fees and costs sought by his client for this time period are "reasonable, necessary, and appropriate," taking into account the nature and complexity of this case. *Id.* at Ex. E ¶ 11. He asserts that the attorney's fees and costs incurred by Ms. Keliher in this action "are reasonable [*42] and consistent with the attorneys' fees customarily charged in the Northern District of Texas (Dallas Division) . . . for similar legal services." *Id.* at Ex. E ¶ 18. Mr. Hastings also provides copies of the invoices for legal services performed for Ms. Keliher in this case. *Id.* at Ex. E ¶ 3 and Exs. E-1 through E-4. The hours incurred—for which Ms. Keliher seeks compensation—are 27.75 hours for Mr. Hastings at an hourly rate of $820. *Id.* at Ex. E ¶ 8. The total amount Ms. Keliher seeks for these hours is $22,755. *Id.*

The court begins with determining what the reasonable hourly rate is for Mr. Hastings. As the fee applicant, Ms. Keliher bears the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368 (citation omitted). "[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co.*, 382 F.3d at 562 (applying federal law).

Ms. Keliher asserts that $820 for legal services performed by Mr. Hastings is reasonable. [*43] She provides support through Mr. Hastings' Declaration, which attests to his qualifications and experience. *See* Doc. 43-5 at Ex. E. Mr. Hastings certifies that the requested rate is commensurate with similar services by lawyers of reasonably comparable skill, experience, and reputation in the Dallas area. *Id.* at Ex. E ¶ 18.

Plaintiffs do not contest that the hourly rates charged by counsel at Locke Lord are reasonable. For the reasons that follow, the court concludes that the hourly rates Ms. Keliher requests for the legal services of counsel at Locke Lord are reasonable.

Mr. Hastings is an attorney and shareholder at Locke Lord and has been licensed to practice law since 1997. *Id.* at Ex. E ¶ 1. The court is familiar with the prevailing market rates in the Dallas legal market for attorneys with the skill, experience, and reputation of Mr. Hastings. Based on the court's knowledge of rates charged for legal services by attorneys with the level of skill, experience, and reputation as Mr. Hastings in the Dallas legal community, and its experience in setting attorney's fees in numerous other cases, and based on the certifications in Mr. Hastings' Declaration, the court determines that the [*44] hourly rates asserted are reasonable.

Having determined that the hourly rates for Mr. Hastings are reasonable, the court next considers the time expended. Mr. Hastings has provided the court with detailed time records as evidence. *See id.* at Ex. E ¶ 3 and Exs. E-1 through E-4 (invoices). He certifies that the hours expended on the case were reasonable and necessary. *Id.* at Ex. E ¶ 12.

As previously stated, Plaintiffs do not object to the hours expended. Based on its review of the invoices and Mr. Hastings' Declaration, the court concludes that the hours expended on the case were not excessive, duplicative, unnecessary, or inadequately documented.

The court will calculate the loadstar amount as follows: 27.75 hours for Mr. Hastings at an hourly rate of $820 for a total of $22,755 in attorney's fees. The court determines that the number of hours spent (27.75), multiplied by the

reasonable hourly rate ($820), yields a lodestar of $22,755. The court concludes that each *Johnson* factor permissibly considered is either subsumed within the lodestar calculation or is not sufficiently pertinent to the facts of the case to warrant discussion.

In addition, the court finds that Ms. Keliher has introduced [*45] sufficient evidence of costs in the amount of $1,132.85, and it concludes that this amount is reasonable. *See id.* at Ex. E ¶ 9 and Exs. E-1 through E-4 (invoices)). Mr. Hill III does not contest the amount or reasonableness of the costs requested.

For these reasons, based on the lodestar amount and the relevant *Johnson* factors, the court will award Ms. Keliher attorney's fees in the amount of $22,755 and costs in the amount of $1,132.85.

### f. The Hill Jr. Defendants' Request for Sanctions Against Plaintiffs

Finally, the Hill Jr. Defendants request that the court use its inherent power to sanction Plaintiffs for their undeterred pattern of violating the GSA and Final Judgment, ceaseless litigation for twelve years after this matter was closed pursuant to the Final Judgment, and failure to abide by the court's numerous warnings. For the reasons detailed more fully below, *see infra* Sec. IV, after considering Plaintiffs' conduct in filing this action against the backdrop of the history of this matter, the 2020 Action, and the actions filed by Mr. Hill III in the probate court of Dallas County, Texas, *the court **grants** the Hill Jr. Defendants' request that the court exercise its inherent powers and [*46] authority to sanction Plaintiffs. The court hereby **enjoins** Plaintiffs, as serial litigators, from pursuing any further litigation against the Hill Jr. Defendants without obtaining leave of this court.*

### B. Ms. Lyda Hill's Motion for Attorney's Fees and Costs

Ms. Lyda Hill seeks attorney's fees in the total amount of $36,895 for legal services provided by counsel at Winston & Strawn, LLP ("Winston & Strawn") and $181,400.50 for legal services provided by counsel at Haynes & Boone, LLP ("Haynes & Boone") pursuant to section III ¶ 5(r) of the GSA.[6]

### 1. Ms. Lyda Hill's Fee Request for Legal Services Provided by Winston & Strawn

Ms. Lyda Hill seeks attorney's fees in the amount of $36,895 that she incurred with the law firm of Winston & Strawn. She asserts that counsel expended a total of 39.50 hours in this action. These hours were billed through the work of Grant K. Schmidt ("Mr. Schmidt"), who, at all relevant times was an attorney at Winston & Strawn. *See* Doc. 42 at Ex. A ¶ 4. Mr. Schmidt, in his Declaration, states that he, along with Haynes & Boone, served as co-counsel to Ms. Lyda Hill in this matter. *Id.* He summarizes the services, hours, and fees for legal services performed [*47] for Ms. Lyda Hill in this civil action. *Id.* at Ex. A ¶ 5. Mr. Schmidt asserts that the fees and costs sought by his client for this time period are "reasonable and necessary," taking into account the nature and complexity of this case. *Id.* at Ex. A ¶ 8. He asserts that the attorney's fees and costs incurred by Ms. Lyda Hill in this action "are reasonable and consistent with the attorneys' fees customarily charged in Dallas County and Harris County, Texas for similar legal services." *Id.* at Ex. A ¶ 14. Mr. Schmidt also provides copies of the invoices for legal services performed for Ms. Lyda Hill in this case. *Id.* at Ex. A ¶ 7 and Ex. A-2. The hours incurred—for which Ms. Lyda Hill seeks compensation—are 39.50 hours for Mr. Schmidt at an hourly rate of $860 in January 2021,

---

[6] For the reasons previously stated, *see supra* Sec. III.A.1, the court **overrules** Plaintiffs' objection premised on the argument that section III ¶ 5(r) of the GSA limits the recovery of attorney's fee to Plaintiffs. As previously stated by the court in overruling this same objection made by Plaintiffs to the Hill Jr. Defendants' request for fees, Plaintiffs' construction of this provision has no basis in the text of the GSA.

Case 4:24-cv-00988-P     Document 101-1     Filed 07/21/25     Page 49 of 67     PageID 1829

Page 16 of 21
2022 U.S. Dist. LEXIS 219331, *47

adjusted to an hourly rate of $935 thereafter for services performed on her behalf in this matter. *Id.* at Ex. A ¶ 8. The total amount she seeks for these hours is $36,895. *Id.*

The court begins with determining what the reasonable hourly rate is for Mr. Schmidt. As the fee applicant, Ms. Lyda Hill bears the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar [*48] services by lawyers of reasonably comparable skill, experience and reputation." *Blum,* 465 U.S. at 895 n.11. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett,* 285 F.3d at 368 (citation omitted). "[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co.,* 382 F.3d at 562 (applying federal law).

Ms. Lyda Hill asserts that the hourly rate of $860 in January 2021, adjusted to an hourly rate of $935 thereafter for legal services performed by Mr. Schmidt, is reasonable. She provides support through Mr. Schmidt's Declaration, which attests to his qualifications and experience. *See* Doc. 42 at Ex. A. Mr. Schmidt certifies that the requested rate is commensurate with similar services by lawyers of reasonably comparable skill, experience, and reputation in the Dallas County and Harris County area. *Id.* at Ex. A ¶ 14.

Plaintiffs contest the hourly rates charged by counsel at Winston & Strawn, arguing that the rates are unreasonable because they are more than the rates charged by Plaintiffs' counsel and other defense counsel in this case. For the reasons that follow, the court **overrules** Plaintiffs' objection and concludes that the hourly rates [*49] Ms. Lyda Hill requests for the legal services of counsel at Winston & Strawn are reasonable.

Mr. Schmidt is an attorney and has been licensed to practice law since 2013. *Id.* at Ex. A ¶ 2. At all relevant times, he worked at Winston & Strawn representing Ms. Lyda Hill. As the court recently recognized in considering similar requested hourly rates charged by counsel with similar experience in the 2020 Action, counsel practicing at large firms (such as Winston & Strawn) and their rates are in line with the rates charged at comparable large firms in the area for similar legal services. *See* 2020 Action Doc. 2013 at 10. The court is familiar with the prevailing market rates in the Dallas legal market for attorneys with the skill, experience, and reputation of Mr. Schmidt. Based on the court's knowledge of rates charged for legal services by attorneys with the level of skill, experience, and reputation as Mr. Schmidt in the Dallas legal community, and its experience in setting attorney's fees in numerous other cases, and based on the certifications in Mr. Schmidt's Declaration, the court determines that the hourly rates asserted are reasonable.

Having determined that the hourly rates for Mr. [*50] Schmidt are reasonable, the court next considers the time expended. Mr. Schmidt has provided the court with detailed time records as evidence. *See id.* at Ex. A ¶ 7 and Ex. A-2 (invoice). He certifies that the hours expended on the case were reasonable and necessary. *Id.* at Ex. A ¶ 8.

As previously stated, Plaintiffs do not object to the hours expended. Based on its review of the invoice and Mr. Schmidt's Declaration, the court concludes that the hours expended on the case were not excessive, duplicative, unnecessary, or inadequately documented.

The court will calculate the loadstar amount as follows: 39.50 hours for Mr. Schmidt at an hourly rate of $860 in January 2021, adjusted to an hourly rate of $935 thereafter for legal services performed by Mr. Schmidt, for a total of $36,895 in attorney's fees. The court determines that the number of hours spent (39.50), multiplied by the reasonable hourly rate ($860 in January 2021, adjusted to an hourly rate of $935 thereafter), yields a lodestar of $36,895. The court concludes that each *Johnson* factor permissibly considered is either subsumed within the lodestar calculation or is not sufficiently pertinent to the facts of the case to warrant discussion. [*51]

For these reasons, based on the lodestar amount and the relevant *Johnson* factors, the court will award Ms. Lyda Hill attorney's fees in the amount of $36,895 for legal services provided by counsel at Winston & Strawn.

**2. Ms. Lyda Hill's Fee Request for Legal Services Provided by Haynes & Boone**

Ms. Lyda Hill seeks attorney's fees in the amount of $181,400.50 that she incurred with the law firm of Haynes & Boone. She asserts that counsel and paralegals expended a total of 214.40 hours in this action. These hours were billed through the work of Carrie L. Huff ("Ms. Huff"); Ryan Paulsen ("Mr. Paulsen"); and paralegal Casey McGovern ("Ms. McGovern"). *See* Doc. 42 at Ex. B ¶ 8. Ms. Huff summarizes the services, hours, and fees for legal services performed for Ms. Lyda Hill in this civil action. *Id.* at Ex. B ¶ 7. Ms. Huff asserts that the fees and costs sought by her client for this time period are "reasonable and necessary," taking into account the nature and complexity of this case. *Id.* at Ex. B ¶ 10. She asserts that the attorney's fees and costs incurred by her client in this action "are reasonable and consistent with the attorneys' fees customarily charged in Dallas County and Harris County, Texas [*52] for similar legal services." *Id.* at Ex. B ¶ 14. Ms. Huff also provides copies of the invoices for legal services performed for Ms. Lyda Hill in this case. *Id.* at Ex. B ¶ 7 and Ex. B-1 through B-6. The hours incurred—for which Ms. Lyda Hill seeks compensation—are 157.90 hours for Ms. Huff at an hourly rate of $900; 51.1 hours for Mr. Paulsen at an hourly rate of 725; and 5.4 hours at an hourly rate of $395. *Id.* at Ex. B ¶ 8. The total amount she seeks for these hours is $181,400.50. *Id.*

The court begins with determining what the reasonable hourly rate is for Ms. Huff, Mr. Paulsen, and Ms. McGovern. As the fee applicant, Ms. Lyda Hill bears the burden of demonstrating "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11. "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there." *Tollett*, 285 F.3d at 368 (citation omitted). "[T]rial courts are considered experts as to the reasonableness of attorney's fees[.]" *Primrose Operating Co.*, 382 F.3d at 562 (applying federal law).

She asserts that the following hourly rates are reasonable: $900 for Ms. Huff; $725 for [*53] Mr. Paulsen; and $395 for Ms. McGovern. She provides support through Ms. Huff's Declaration and Exhibits thereto, which attest to their qualifications and experience. *See* Doc. 42 at Ex. B P8 and Ex. B-7 (Biographical Statement of Ms. Huff); Ex. B-8 (Biographical Statement of Mr. Paulsen). Ms. Huff certifies that the requested rates are commensurate with similar services by lawyers and paralegals of reasonably comparable skill, experience, and reputation in the Dallas County and Harris County areas. *Id.* at Ex. B ¶ 14.

Plaintiffs contest the hourly rates charged by counsel at Haynes & Boone, arguing that the rates are unreasonable because they are more than the rates charged by Plaintiffs' counsel and other defense counsel in this case. The court **overrules** Plaintiffs' objection for the same reasons it overruled Plaintiffs' objection to the hourly rates of counsel at Winston & Strawn. *See supra* Sec. III.B.1.

Ms. Huff, an attorney and shareholder at Haynes & Boone, has been licensed to practice law in Texas since 1988. *Id.* at Ex. B ¶ 2 & Ex. B-7 (Biographical Statement of Ms. Huff). Mr. Paulsen is an attorney at Haynes & Boone and has been licensed to practice law in Texas since 2007. *Id. [*54]* at Ex. B ¶ 8 and Ex. B-8 (Biographical Statement of Mr. Paulsen). As the court recently recognized in considering similar requested hourly rates charged by counsel with similar experience in the 2020 Action, counsel practicing at large firms (such as Winston & Strawn and Haynes & Boone) and their rates are in line with the rates charged at comparable large firms in the area for similar legal services. *See* 2020 Action Doc. 2013 at 10. The court is familiar with the prevailing market rates in the Dallas legal market for attorneys with the skill, experience, and reputation of Ms. Huff and Mr. Paulsen and the experience of paralegal Ms. McGovern. Based on the court's knowledge of rates charged for legal services by attorneys and paralegals with the level of skill, experience, and reputation as Ms. Huff, Mr. Paulsen, and Ms. McGovern in the Dallas legal community, and its experience in setting attorney's fees in numerous other cases, and based on the certifications in Ms. Huff's Declaration, the court determines that the hourly rates asserted are reasonable.

Having determined that the hourly rates for Ms. Huff, Mr. Paulsen, and Ms. McGovern are reasonable, the court next considers the time [*55] expended. Ms. Huff has provided the court with detailed time records as evidence. *See id.* at Ex. B ¶ 9 and Exs. B-1 through B-6 (invoices). She certifies that the hours expended on the case were reasonable and necessary. *Id.* at Ex. B ¶ 11.

As previously stated, Plaintiffs do not object to the hours expended. Based on its review of the invoices and Ms. Huff's Declaration, the court concludes that the hours expended on the case were not excessive, duplicative, unnecessary, or inadequately documented.

The court will calculate the loadstar amount as follows: 157.90 hours for Ms. Huff at an hourly rate of $900; 51.1 hours for Mr. Paulsen at an hourly rate of $725; and 5.4 hours for Ms. McGovern at an hourly rate of $395 for a total of $181,400.50 in attorney's fees. The court determines that the number of hours spent (214.40), multiplied by the reasonable hourly rates yields a lodestar of $181,400.50. The court concludes that each *Johnson* factor permissibly considered is either subsumed within the lodestar calculation or is not sufficiently pertinent to the facts of the case to warrant discussion.

For these reasons, based on the lodestar amount and the relevant *Johnson* factors, the court will award Ms. [*56] Lyda Hill attorney's fees in the amount of $181,400.50 for legal services provided by counsel and paralegals at Haynes & Boone.

### 3. Ms. Lyda Hill's Request for Sanctions Against Plaintiffs and Their Counsel

In addition to seeking her attorney's fees and costs, she asks the court to sanction Plaintiffs for abusing the judicial process. Lyda Hill's Mot. 2 (Doc 41). One such sanction she seeks against Plaintiffs is an order requiring them to seek leave of court before filing any additional claims against her. The court has already considered this same request by the Hill Jr. Defendants and granted it. *Similarly here, in light of Plaintiffs' documented abusive litigation practices, see infra Sec. IV, the court* **grants** *her request and hereby* **enjoins** *Plaintiffs from filing any further litigation in this court without first seeking leave.*

Ms. Lyda Hill also seeks to sanction Plaintiffs' counsel in this case pursuant to 28 U.S.C. § 1927. Under section 1927, the court is able to impose sanctions against "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously[.]" Plaintiffs' many attorneys who represented him in this action have filed responses, opposing Lyda Hill's request. *See* Skepner [*57] Law Firm's Resp. to Def. Lyda Hill's Mot. for Attorney's Fees and Sanctions (Doc. 50); Brian Antweil's and Rapp & Krock, P.C.'s Limited Resp. to Def. Lyda Hill's Mot. for Attorney's Fees and Sanctions (Doc. 51); and Lathrop GPM LLP's Resp. in Opposition to Def. Lyda Hill's Mot. for Attorney's Fees and Sanctions (Doc. 58).

Sanctions under 28 U.S.C. § 1927 can only be awarded against counsel. *See Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002). Before awarding sanctions under 28 U.S.C. § 1927, the court must find "that the sanctioned attorney multiplied the proceedings both 'unreasonably' and 'vexatiously.'" *Oblio Telecom, Inc. v. Patel*, No. 3:08-CV-0279-L, 2010 U.S. Dist. LEXIS 1751, 2010 WL 99353, at *2 (N.D. Tex. Jan. 8, 2010) (quoting *Vanderhoff v. Pacheco*, 344 Fed. Appx. 22, 2009 WL 2776607 at *3 (5th Cir. Sept. 2, 2009)). "Sanctions under [section 1927] are punitive in nature and require 'clear and convincing evidence, that *every facet* of the litigation was patently meritless' and 'evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court.'" *Bryant v. Military Dep't of Mississippi*, 597 F.3d 678, 694 (5th Cir. 2010) (citing *Procter & Gamble Co.*, 280 F.3d 519 at 525-26) (emphasis in original). "Clear and convincing evidence is that weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts' of the case." [*58] *Shafer v. Army & Air Force Exch.*

*Serv.*, 376 F.3d 386, 396 (5th Cir. 2004), *opinion clarified*, No. 03-10074, 2004 U.S. App. LEXIS 28846, 2004 WL 2107672 (5th Cir. Sept. 17, 2004) (quoting *In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992)).

The court concludes on the record before it that clear and convincing evidence of bad faith or improper motive on the part of counsel for Plaintiffs is lacking. Accordingly, the court **denies** Ms. Lyda Hill's request for sanctions pursuant to 28 U.S.C. § 1927.

## IV. Conclusion and Final Admonishment

### A. Conclusion

Based on the foregoing, the court **grants** Defendants' Motion for Award of Attorneys' Fees and Costs Pursuant to Federal Rule of Civil Procedure 54(d) (Doc. 43). The court **awards** Ms. Washburne and Ms. Summers attorney's fees in the amount of **$104,176** and costs in the amount of **$1,326.89** for work performed by attorneys at Hallet & Perrin. The court **awards** Mr. Donally, Mr. Tatham, and Ms. Irwin attorney's fees in the amount of **$21,517.50** and costs in the amount of **$601.45** for work performed by attorneys at CWL. The court **awards** Ms. Keliher attorney's fees in the amount of **$48,476** for work performed by attorneys at Dorsey. The court **awards** Ms. Keliher (as Independent Executor of the Estate of Mr. Hill Jr.), attorney's fees in the amount of **$87,468.56** for work performed by attorneys at Bourland, Wall & Wenzel; and attorney's fees in the amount of **$22,755** and costs in the amount of **$1,132.85** for work performed [*59] by attorneys at Locke Lord. Postjudgment interest shall accrue on the total amount of attorney's fees and costs due and owing to the Hill Jr. Defendants (**$287,454.25**) at the applicable federal rate of 4.76% from the date of this Memorandum Opinion and Order until all amounts awarded are paid in full.

Further, the court **grants in part** and **denies in part** Defendant Lyda Hill's Motion for Attorneys' Fees and Sanctions with Supporting Brief (Doc. 41). The court **grants** the motion insofar as her request for attorney's fees and costs, and for injunctive relief against Plaintiffs; and **denies** the motion insofar as she seeks sanctions against Plaintiffs' attorneys pursuant to 28 U.S.C. § 1927. The court **awards** her attorney's fees in the amount of **$36,895** for work performed by attorneys at Winston & Strawn, and **$181,400.50** for work performed by attorneys at Haynes & Boone. Postjudgment interest shall accrue on the total amount of attorney's fees and costs due and owing to Ms. Lyda Hill (**$218,295.50**) at the applicable federal rate of 4.76% from the date of this Memorandum Opinion and Order until all amounts awarded are paid in full.[7]

### B. Final Admonishment

After years of litigation, this case was supposed to have been [*60] brought to a close on November 8, 2010, by the Final Judgment (Doc. 999), implementing the GSA (Doc. 879), as well as a separate judgment in a related attorney's fees dispute severed from the underlying action. Since entry of Final Judgment, Mr. Hill III has inundated the court with unsuccessful motions to alter, amend, or vacate the Final Judgment; to recuse various judges for purported bias; and to stay proceedings, many of which have been filed solely to frustrate the court's implementation of the Final Judgment and GSA. Mr. Hill III and his legal team have also taken numerous unsuccessful appeals to the United States Court of Appeals for the Fifth Circuit resulting in further protraction of this fifteen-year-old case. During the twelve-year period of postjudgment litigation, the court has repeatedly admonished Mr. Hill III, his wife Ms. Erin Hill, and their legal team that it will not

hesitate to impose sanctions if these vexatious and frivolous filings and dilatory tactics continue.

---

[7] As this is an order disposing of motions for attorney's fees, no judgment by separate document is required. Fed. R. Civ. P. 58(a)(3).

Notwithstanding repeated admonishments to Mr. Hill III and Ms. Erin Hill, and Mr. Hill III and Ms. Erin Hill's express statements on prior occasions that they wished to end this litigation, the litigation [*61] continues. At a hearing held on November 16, 2018, Ms. Erin Hill even questioned why the court required her presence, after she stated that she did not wish to be a party to any further litigation. After expressing a purported desire to end this litigation, they have done just the opposite by promising the court, on the one hand, that they wanted to wrap up all litigation, and then later actively and needlessly participating in continued litigation. Such inconsistent and combative positions are nonsensical and are analogous to a person boldly proclaiming to the court that he or she can ride two horses going in opposite directions at the same time and not fall off!

In addition, Mr. Hill III has a well-documented history of ignoring his contractual obligations under the GSA and his obligations under the Final Judgment, which includes stealing money from his own children (Mr. Hill Jr.'s grandchildren). He has shown no hesitation in violating multiple provisions of the GSA and Final Judgment. As just one example, he violated the terms of the GSA and Final Judgment with respect to the contractual limitations on the use of more than $9 million in the Grandchildren's Trusts,[8] ignoring that, [*62] pursuant to the Trust Instrument, until the primary beneficiary reached the age of twenty-five, the income and principal of the Grandchildren's Trusts could only be used for the "health and age of the primary beneficiary . . . ." 2020 Action Doc. 999-1 (Ex. 1 to Final J. ¶ 2.01). As a result of Mr. Hill III's and Ms. Erin Hill's violations of the Trust Instrument, extensive and costly litigation ensued, consuming scarce judicial resources, and the court ultimately issued a permanent injunction enjoining Mr. Hill III and Ms. Erin Hill from using the money in the Grandchildren's Trusts (trusts held for the benefit of their children) to support the couple's lavish lifestyle.[9]

In addition to stealing money from the Grandchildren's Trusts, Mr. Hill III has repeatedly violated the GSA and Final Judgment by challenging the disposition of his deceased father's property. The court previously determined that an injunction against Mr. Hill III was required "to deter and prevent future litigation of previously decided issues by a vexatious litigant" after he contested Hill Jr.'s Will in direct violation of the GSA and the FJ. 2020 Action Doc. 1919 (Order at 12).

Recognizing the significant [*63] impact of Hill III's vexatious and serial filings on the court's already strained judicial resources, the court previously put Mr. Hill III and his counsel on notice of the possible imposition of sanctions for continued use of dilatory litigation tactics and submission of frivolous and vexatious filings. *See, e.g., Hill v. Schilling*, 2014 U.S. Dist. LEXIS 53155, 2014 WL 1516193, at *5-6 (N.D. Tex. Apr. 17, 2014); Order at 5, 3-07-CV-2020-L, 2014 U.S. Dist. LEXIS 53155(Apr. 17, 2014) (Doc. 1477). On November 25, 2014, the Fifth Circuit also weighed in, taking the "opportunity to remind Hill III of the warning that the district court recently issued to the parties in this case—the district court 'will impose sanctions' for any motion that is 'baseless, frivolous, or without merit . . .' Hill III is well-advised 'not to test the court's patience in this regard.'" *Hill v. Schilling*, 593 F. App'x 330, 335 (5th Cir. 2014) (quoting *Hill*, 2014 U.S. Dist. LEXIS 53155, 2014 WL 1516193 at *6).

---

[8] As part of the settlement of Mr. Hill III's disputed claims with Mr. Hill Jr., the Final Judgment required Mr. Hill Jr. to make four annual installment payments of $7.5 million each into the court's registry and required Mr. Hill III to establish separate irrevocable trusts for Mr. Hill Jr.'s grandchildren and to irrevocably assign his rights to receive the Installment Payments to these three trusts (the "Grandchildren's Trusts"). 2020 Action Doc. 999 (Final J. ¶¶ 19, 22).

[9] After issuing a temporary restraining order (Doc. 1745) and preliminary injunction (Doc. 1785), the court permanently enjoined Mr. Hill III and Ms. Erin Hill from taking any action to use or access any funds from the Grandchildren's Trusts, directly or indirectly, for any reason, including but not limited to: using or attempting to use funds from the Grandchildren's Trusts to reimburse Mr. Hill III for any expenses or paying any expense for Mr. Hill III that are for the maintenance or support of the Grandchildren; using or attempting to use funds from the Grandchildren's Trusts to reimburse Mr/ Hill III for any expenses or paying any expense for Mr. Hill III that are for the maintenance or support of the Property; using or attempting to use funds from the Grandchildren's Trusts to reimburse Mr. Hill III for any expenses or paying any expense for Mr. Hill III that are not clearly for the Grandchildren's health or education; and using any of the nearly $9 million dollars that Mr. Hill III requested and have been distributed from the Grandchildren's Trusts for any purpose, including but not limited to any reimbursement of any purported expenses for maintenance or support of the Grandchildren or the maintenance or support of the Property. 2020 Action Doc. 1867 (May 23, 2018 Mem. Op. & Order 19).

Indeed, the court held Mr. Hill III in civil contempt on December 10, 2018, after concluding there was clear and convincing evidence that he disobeyed a court order by attempting, on November 9, 2017, to remove First Tennessee Bank as trustee of the Grandchildren's Trusts, and to replace it with another bank. *See* 2020 Action Doc. 1920 at 19. As a sanction, the court ordered him to pay his opponents' legal fees and costs. *Id.*

If Mr. Hill III or Ms. Erin Hill seeks to file any other [*64] litigation before the undersigned, each must provide an affidavit or declaration to the court that he or she has provided a copy of this Memorandum Opinion and Order to any attorney who represents him or her in any such litigation. Further, any attorney who undertakes such representation must also file an affidavit or declaration with the court that he or she has been provided a copy of this Memorandum Opinion and Order and read it in its entirety. The court finds this requirement necessary because, apparently, neither Mr. Hill III nor Ms. Erin Hill provides attorneys who represent them in new litigation with the full history of this **and related** litigation. Further, it is incumbent on attorneys who undertake representation to "get the full story" before deciding to represent the Hills. If this directive is violated by Mr. Hill III, Ms. Erin Hill, or any attorney engaged in the representation of either of them in further litigation, the court will impose sanctions, against the Hills or the attorney at fault, that may include contempt of court, monetary penalties, injunctive relief, or other reasonable sanctions in the court's arsenal, which include Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, the court's inherent authority [*65] to impose sanctions, and any other authority under applicable law. Also, in the event this directive is violated, the court will seek authorization from the Fifth Circuit to hire additional resources and staff to deal with what it perceives or determines to be a violation of the order. This court simply cannot allow Mr. Hill III and Ms. Erin Hill to continue to consume a grossly inordinate amount of this court's scarce judicial resources to the detriment of other litigants appearing before it.[10] If the court determines that monetary sanctions are warranted, they will be quite substantial because sanctions previously imposed have been ineffective and not deterred the Hills' wayward behavior and conduct.

The court **directs** the clerk of court to **docket** this Memorandum Opinion and Order in this action and also in **Civil Action No. 3:07-CV-2020-L**.

**It is so ordered** this 5th day of December, 2022.

/s/ Sam A. Lindsay

Sam A. Lindsay

United States District Judge

---

End of Document

---

[10] On November 22, 2022, the court issued a 53-page Memorandum Opinion and Order in the 2020 Action (Doc. 2023), and the current Memorandum Opinion and Order is 42 pages long. Both required a painstaking review of numerous, voluminous documents; resolution of extensive evidentiary objections; extremely detailed legal research; and numerous, extended discussions between the court and its law clerk.

# Indus. Print Techs., LLC v. Cenveo, Inc.

United States District Court for the Northern District of Texas, Dallas Division

June 12, 2020, Decided; June 12, 2020, Filed

Case No. 3:15-md-02614-M; Case No. 3:15-cv-00165-M; Case No. 3:15-cv-01100-M; Case No. 3:15-cv-01104-M; Case No. 3:15-cv-01195-M

**Reporter**
2020 U.S. Dist. LEXIS 156538 *

INDUSTRIAL PRINT TECHNOLOGIES, LLC, Plaintiff, v. CENVEO, INC. AND HEWLETT-PACKARD COMPANY, O'NEIL DATA SYSTEMS, INC. AND HEWLETT-PACKARD COMPANY, O'NEIL DATA SYSTEMS, INC. AND HEWLETT-PACKARD COMPANY, FORT DEARBORN COMPANY AND HEWLETT-PACKARD COMPANY, Defendants.

**Subsequent History:** Adopted by, in part, Modified by, in part, Objection overruled by, in part, Objection sustained by, in part, Costs and fees proceeding at Indus. Print Techs., LLC v. Cenveo, Inc., 2020 U.S. Dist. LEXIS 155577, 2020 WL 13443897 (N.D. Tex., Aug. 26, 2020)

**Prior History:** In re Indus. Print Techs., LLC, 98 F. Supp. 3d 1378, 2015 U.S. Dist. LEXIS 45546 (J.P.M.L., Apr. 7, 2015)

**Counsel:** [*1] For Special Master (3:15-cv-00165-M): Scott Edward Woloson, LEAD ATTORNEY, Law Office of Scott Woloson PC, Houston, TX.

For Industrial Print Technologies LLC, a Texas Corporation, Plaintiff (3:15-cv-00165-M): Barry J Bumgardner, LEAD ATTORNEY, Nelson Bumgardner Albritton, PC, Fort Worth, TX; David Allen Gosse, PRO HAC VICE, Fitch Even Tabin & Flannery LLP - Chicago, Chicago, IL; Nicole L Little, PRO HAC VICE, Fitch Even Tabin & Flannery LLP, Chicago, IL; Thomas Christopher Cecil, Nelson Bumgardner PC, Fort Worth, TX; Timothy P Maloney, Fitch Even Tabin & Flannery, Chicago, IL.

For Cenveo Inc, a Colorado Corporation, Defendant (3:15-cv-00165-M): T Ray Guy, LEAD ATTORNEY, Frost Brown & Todd, Dallas, TX; Andrew Perito, Weil Gotshal & Manges LLP, Redwood Shores, CA; Audrey Maness, Weil, Gotshal & Manges LLP, Houston, TX; Edward R Reines, Weil Gotshal & Manges LLP, Redwood Shores, CA; Michael Rueckheim, Winston & Strawn LLP, Menlo Park, CA.

For Cenveo Inc, a Colorado Corporation, Counter Claimant (3:15-cv-00165-M): T Ray Guy, LEAD ATTORNEY, Frost Brown & Todd, Dallas, TX; Andrew Perito, Weil Gotshal & Manges LLP, Redwood Shores, CA; Edward R Reines, Weil Gotshal & Manges LLP, Redwood Shores, [*2] CA.

For Industrial Print Technologies LLC, a Texas Corporation, Industrial Print Technologies LLC, a Texas Corporation, Counter Defendants (3:15-cv-00165-M): Barry J Bumgardner, LEAD ATTORNEY, Nelson Bumgardner Albritton, PC, Fort Worth, TX; David Allen Gosse, PRO HAC VICE, Fitch Even Tabin & Flannery LLP - Chicago, Chicago, IL; Nicole L Little, PRO HAC VICE, Fitch Even Tabin & Flannery LLP, Chicago, IL; Thomas Christopher Cecil, Nelson Bumgardner PC, Fort Worth, TX; Timothy P Maloney, Fitch Even Tabin & Flannery, Chicago, IL.

For Special Master, Special Master (3:15-cv-01100-M): Scott Edward Woloson, LEAD ATTORNEY, Law Office of Scott Woloson PC, Houston, TX.

For Industrial Print Technologies LLC, Plaintiff, Counter Defendant (3:15-cv-01100-M): Jack Wesley Hill, LEAD ATTORNEY, Claire Henry, Ward Smith & Hill PLLC, Longview, TX; David Allen Gosse, Timothy P Maloney,

Fitch Even Tabin & Flannery LLP - Chicago, Chicago, IL; Nicole L Little, Fitch Even Tabin & Flannery LLP, Chicago, IL; Thomas John Ward, Jr, Ward, Smith & Hill, PLLC, Longview, TX.

For Industrial Print Technologies LLC, Consolidated from case 2: 14-cv-892, Consol Plaintiff (3:15-cv-01100-M): Jack Wesley Hill, LEAD ATTORNEY, [*3]  Claire Henry, Ward Smith & Hill PLLC, Longview, TX; David Allen Gosse, Timothy P Maloney, Fitch Even Tabin & Flannery LLP - Chicago, Chicago, IL; Nicole L Little, Fitch Even Tabin & Flannery LLP, Chicago, IL.

For O'Neil Data Systems Inc, Defendant (3:15-cv-01100-M): Edward R Reines, LEAD ATTORNEY, Andrew Perito, Weil Gotshal & Manges LLP, Redwood Shores, CA; Audrey Maness, Weil, Gotshal & Manges LLP, Houston, TX; Melissa Richards Smith, Gillam & Smith LLP, Marshall, TX; Michael Rueckheim, Winston & Strawn LLP, Menlo Park, CA.

For Hewlett Packard Company, Defendant (3:15-cv-01100-M): Edward R Reines, LEAD ATTORNEY, Andrew Perito, Weil Gotshal & Manges LLP, Redwood Shores, CA; Audrey Maness, Weil, Gotshal & Manges LLP, Houston, TX; M Brett Johnson, Winston & Strawn LLP, Dallas, TX; Melissa Richards Smith, Gillam & Smith LLP, Marshall, TX; Michael Rueckheim, Winston & Strawn LLP, Menlo Park, CA.

For O'Neil Data Systems Inc, Consolidated from case 2: 14-cv-892, Hewlett Packard Company, Consolidated from case 2: 14-cv-892, Consol Defendants (3:15-cv-01100-M): Edward R Reines, LEAD ATTORNEY, Andrew Perito, Weil Gotshal & Manges LLP, Redwood Shores, CA; Audrey Maness, Weil, Gotshal & Manges [*4]  LLP, Houston, TX; Melissa Richards Smith, Gillam & Smith LLP, Marshall, TX.

For Quad/Graphics, Inc., Consolidated Civil Action 2: 15cv25, Consol Defendant (3:15-cv-01100-M): Edward R Reines, LEAD ATTORNEY, Andrew Perito, Weil Gotshal & Manges LLP, Redwood Shores, CA; Audrey Maness, Weil, Gotshal & Manges LLP, Houston, TX; Jeffrey Costakos, Foley & Lardner LLP, Milwaukee, WI; Kevin Joseph Malaney, Foley & Lardner - Milwaukee, Milwaukee, WI; Melissa Richards Smith, Gillam & Smith LLP, Marshall, TX.

For O'Neil Data Systems Inc, Consolidated from case 2:14-cv-892, Consol Counter Claimant (3:15-cv-01100-M): Edward R Reines, LEAD ATTORNEY, Andrew Perito, Weil Gotshal & Manges LLP, Redwood Shores, CA.

For Industrial Print Technologies LLC, Consolidated from case 2:14-cv-892, Consol Counter Defendant (3:15-cv-01100-M): Jack Wesley Hill, LEAD ATTORNEY, Claire Henry, Ward Smith & Hill PLLC, Longview, TX; David Allen Gosse, Timothy P Maloney, Fitch Even Tabin & Flannery LLP - Chicago, Chicago, IL; Nicole L Little, Fitch Even Tabin & Flannery LLP, Chicago, IL.

For ADR Provider, Mediator (3:15-cv-01100-M): Hesha Abrams, LEAD ATTORNEY, Abrams Mediation & Arbitration Inc, Dallas, TX.

For Hewlett Packard [*5]  Company, Consol Counter Claimant (3:15-cv-01100-M): Edward R Reines, LEAD ATTORNEY, Andrew Perito, Weil Gotshal & Manges LLP, Redwood Shores, CA; Audrey Maness, Weil, Gotshal & Manges LLP, Houston, TX; M Brett Johnson, Winston & Strawn LLP, Dallas, TX.

For O'Neil Data Systems Inc, Counter Claimant (3:15-cv-01100-M): Edward R Reines, LEAD ATTORNEY, Andrew Perito, Weil Gotshal & Manges LLP, Redwood Shores, CA; Audrey Maness, Weil, Gotshal & Manges LLP, Houston, TX.

For Quad/Graphics, Inc., Consolidated Civil Action 2: 15cv25, Counter Claimant (3:15-cv-01100-M): Edward R Reines, LEAD ATTORNEY, Andrew Perito, Weil Gotshal & Manges LLP, Redwood Shores, CA; Audrey Maness, Weil, Gotshal & Manges LLP, Houston, TX; Jeffrey Costakos, Foley & Lardner LLP, Milwaukee, WI; Kevin Joseph Malaney, Foley & Lardner - Milwaukee, Milwaukee, WI.

For Special Master (3:15-cv-00165-M): Scott Edward Woloson, LEAD ATTORNEY, Law Office of Scott Woloson PC, Houston, TX.

2020 U.S. Dist. LEXIS 156538, *5

For Industrial Print Technologies LLC, a Texas Corporation, Plaintiff (3:15-cv-00165-M): Barry J Bumgardner, LEAD ATTORNEY, Nelson Bumgardner Albritton, PC, Fort Worth, TX; David Allen Gosse, PRO HAC VICE, Fitch Even Tabin & Flannery LLP - Chicago, [*6] Chicago, IL; Nicole L Little, PRO HAC VICE, Fitch Even Tabin & Flannery LLP, Chicago, IL; Thomas Christopher Cecil, Nelson Bumgardner PC, Fort Worth, TX; Timothy P Maloney, Fitch Even Tabin & Flannery, Chicago, IL.

For Cenveo Inc, a Colorado Corporation, Defendant (3:15-cv-00165-M): T Ray Guy, LEAD ATTORNEY, Frost Brown & Todd, Dallas, TX; Andrew Perito, Edward R Reines, Weil Gotshal & Manges LLP, Redwood Shores, CA; Audrey Maness, Weil, Gotshal & Manges LLP, Houston, TX; Michael Rueckheim, Winston & Strawn LLP, Menlo Park, CA.

For Cenveo Inc, a Colorado Corporation, Counter Claimant (3:15-cv-00165-M): T Ray Guy, LEAD ATTORNEY, Frost Brown & Todd, Dallas, TX; Andrew Perito, Edward R Reines, Weil Gotshal & Manges LLP, Redwood Shores, CA.

For Industrial Print Technologies LLC, a Texas Corporation, Industrial Print Technologies LLC, a Texas Corporation, Counter Defendants (3:15-cv-00165-M): Barry J Bumgardner, LEAD ATTORNEY, Nelson Bumgardner Albritton, PC, Fort Worth, TX; David Allen Gosse, PRO HAC VICE, Fitch Even Tabin & Flannery LLP - Chicago, Chicago, IL; Nicole L Little, PRO HAC VICE, Fitch Even Tabin & Flannery LLP, Chicago, IL; Thomas Christopher Cecil, Nelson Bumgardner PC, Fort [*7]  Worth, TX; Timothy P Maloney, Fitch Even Tabin & Flannery, Chicago, IL.

For Special Master, Special Master: Scott Edward Woloson, LEAD ATTORNEY, Law Office of Scott Woloson PC, Houston, TX.

For Industrial Print Technologies LLC, a Texas Corporation, Plaintiff (3:15-cv-01195-M): Timothy P Maloney, LEAD ATTORNEY, Fitch Even Tabin & Flannery LLP - Chicago, Chicago, IL; David Allen Gosse, Fitch Even Tabin & Flannery LLP - Chicago, Chicago, IL; Nicole L Little, Fitch Even Tabin & Flannery LLP, Chicago, IL; Bar Status: Not Admitted.

For Fort Dearborn Company, a Delaware Corporation, Defendant (3:15-cv-01195-M): Audrey Maness, LEAD ATTORNEY, Weil, Gotshal & Manges LLP, Houston, TX; Andrew Perito, Weil Gotshal & Manges LLP, Redwood Shores, CA; Edward R Reines, Weil Gotshal & Manges LLP, Redwood Shores, CA; Michael Rueckheim, Winston & Strawn LLP, Menlo Park, CA; Bar Status: Admitted/In Good Standing.

For Industrial Print Technologies LLC, a Texas Corporation, Counter Defendant (3:15-cv-01195-M): Timothy P Maloney, LEAD ATTORNEY, Fitch Even Tabin & Flannery LLP - Chicago, Chicago, IL; David Allen Gosse, Fitch Even Tabin & Flannery LLP - Chicago, Chicago, IL; Nicole L Little, Fitch Even Tabin & [*8]  Flannery LLP, Chicago, IL.

For Special Master: Scott Edward Woloson, LEAD ATTORNEY, Law Office of Scott Woloson PC, Houston, TX.

For Plaintiffs' Lead Counsel, Plaintiff: Thomas Christopher Cecil, LEAD ATTORNEY, Nelson Bumgardner PC, Fort Worth, TX; Barry J Bumgardner, Nelson Bumgardner Albritton, PC, Fort Worth, TX; Claire Henry, Jack Wesley Hill, Thomas John Ward, Jr, Ward Smith & Hill PLLC, Longview, TX; David Allen Gosse, Nicole L Little, Timothy P Maloney, Fitch Even Tabin & Flannery LLP - Chicago, Chicago, IL; Steven Brannon Latimer, Nelson Bumgardner Casto PC, Fort Worth, TX.

For Defendants' Lead Counsel, Defendant: T Ray Guy, LEAD ATTORNEY, Frost Brown & Todd, Dallas, TX; Amanda Kathryn Branch, Edward R Reines, Robert Magee, Weil Gotshal & Manges LLP, Redwood Shores, CA; Jackob Ben-Ezra, Fish & Richardson P.C., Houston, TX; Jeffrey Costakos, Kevin Joseph Malaney, Foley & Lardner LLP, Milwaukee, WI; Melissa Richards Smith, Gillam & Smith LLP, Marshall, TX; Richard L. Horwitz, Potter Anderson & Corroon LLP, Wilmington, DE.

For Vision Graphics, Inc., Xpress Docs Partners Ltd., Shawmut Communications Group, Franklin Press, Inc., Movants: Edward R Reines, Weil Gotshal & Manges LLP, Redwood [*9] Shores, CA.

For ADR Provider, Mediator: Hesha Abrams, LEAD ATTORNEY, Abrams Mediation & Arbitration Inc, Dallas, TX.

**Judges:** REBECCA RUTHERFORD, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** REBECCA RUTHERFORD

## Opinion

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

The District Court previously determined that Defendants Cenveo, Inc. (Cenveo) and O'Neil Data Systems, Inc. (O'Neil) (together, "Movants") are entitled to recover attorneys' fees from Plaintiff Industrial Print Technologies, LLC (IPT) under 35 U.S.C. § 285. *See* Ord. 8 (ECF No. 449). Specifically, the Court awarded fees based on its finding that IPT was on notice, beginning February 26, 2016 with respect to Cenveo and beginning March 1, 2016 with respect to O'Neil, that Movants did not perform any variable data print (VDP) jobs within the scope of the accused VDP Patents. *Id.* 7-8. However, IPT continued to litigate its claims against Movants and sought discovery on non-infringing practices until November 4, 2016. *Id.* 8. The Court determined that IPT's "failure to timely reevaluate its litigation position in light of evidence that O'Neil and Cenveo did not practice the patented methods, makes these cases exceptional for the purposes of fee-shifting under [*10] 35 U.S.C. § 285," and therefore awarded Movants their "fees . . . incurred in litigating these cases from May 1, 2016, a reasonable time after each [Movant] provided definitive notice of non-infringement to Plaintiff, until the time the parties stipulated to dismiss the cases with prejudice, November 4, 2016." *Id.* The Court directed Movants to submit a declaration of counsel, providing evidence of their legal fees during this period, including the hours spent, rates charged, and experience of the professionals who incurred them, and advised that "[o]nce this is done, a final judgment awarding attorney's fees will be issued." *Id.*

Pursuant to the Court's instructions, Movants submitted evidence that they incurred $404,016.78 in attorney's fees from May 1, 2016 until November 4, 2016. *See* Edward Reines Decl. 8 (ECF No. 464); Jackob Ben-Ezra Decl. 7 (ECF No. 465). Movants also submitted evidence that they incurred $70,616.05 in bringing the motion for attorneys' fees and preparing the declarations required by the Court. Reines Decl. 9-10; Ben-Ezra Decl. 8. Movants thus seek a total of $474,632.83 in attorneys' fees from IPT. IPT filed objections (ECF No. 470) to Movants' evidence and proposed that the [*11] Court reduce Movants' award to $41,895.88. Movants responded to IPT's objections (ECF No. 471). The Court then referred the matter to the undersigned for findings and a recommendation as to the amount of fees Movants should be awarded.

Courts apply a two-step process to determine the appropriate sum of attorneys' fees to award. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323-24 (5th Cir. 1995) (per curiam) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). First, courts determine the lodestar, which is the reasonable number of hours expended on the litigation multiplied by the reasonable hourly rates for the participating lawyers. *Kellstrom*, 50 F.3d at 324. Then, courts in the Fifth Circuit decide whether to accept the lodestar or adjust it, considering the

factors enumerated in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[1] *Id.* at 329. *See also Maxwell v. Angel-Etts of Ca., Inc.*, 53 Fed. Appx. 561, 569 (Fed. Cir. 2002) (approving of "hybrid lodestar approach" under 35 U.S.C. § 285 where district court first determines the lodestar, then increases or decreases it "based on a variety of factors"); *SAP Am., Inc. v. Investpic, LLC*, 2018 U.S. Dist. LEXIS 204805, 2018 WL 6329690, at *6 (N.D. Tex. December 4, 2018) (Kinkeade, J.) (awarding attorneys' fees under 35 U.S.C. § 285 after first determining the lodestar, then adjusting the sum under the *Johnson* factors), *aff'd*, 779 Fed. Appx. 744 (Fed. Cir. 2019). While a court is required to explain its reasons for any adjustments to the number of hours spent or to the lodestar, it is not required to do a line-by-line analysis. *See Maxwell*, 53 Fed. Appx. at 569. A court may make across-the-board cuts, so long [*12] as it sets forth a concise reason for the cuts. *Id.*

The undersigned has independently reviewed Movants' evidence, including declarations, supporting invoices, and billing records submitted by Edward Reines of Weil, Gotshal, & Manges LLP (Weil) and Jackob Ben-Ezra of Fish & Richardson (Fish), as well as IPT's objections to the evidence. The evidence shows that Weil and Fish represented all the defendants in this MDL patent case, including Movants, during the relevant period. Hewlett-Packard Company (HP) paid the fees incurred by all the defendants. The legal team at Weil comprised one senior partner, two senior associates, one junior associate, and four paralegals who generally bill at hourly rates of $1,165.00-$1,210.00 for senior partners, $600.00-$725.00 for junior associates, and $225.00-$375.00 for paralegals based on experience level. The Fish team included two principals and one of counsel attorney who generally bill their time at hourly rates ranging from $885.00-$990.00 for principals to $525.00-$645.00 for non-principals. However, Weil and Fish negotiated confidential discounted rates with Movants for their work on this case and exercised a certain degree of billing [*13] judgment with respect to the fee request presented to the Court.

To account for the fees incurred for work performed for the benefit of all the defendants, the law firms apportioned their fees. Specifically, Reines explained:

> [T]here were seven cases included in this MDL action, with the sync patent asserted in one case and the VDP patents asserted in six cases. Fohr the purposes of apportioning fees, the two O'Neil cases asserting the VDP patents are treated as one consolidated case. The cases belatedly dismissed with prejudice involved two defendant groups, Cenveo and O'Neil. As such, a 2/6ths apportionment has been applied to calculate the common fees attributable to the two cases (Cenveo and the consolidated O'Neil VDP cases) for which fees were awarded.

Reines Decl. 5-6, ¶ 14. Fish followed the same approach. Ben-Ezra Decl. 4-5, ¶ 12. Additionally, Reines stated that Weil omitted from its request (1) "all billing entries related solely to defendants other than Cenveo and O'Neil," (2) "all fees related to what may be considered administrative work," and (3) "all fees generated by litigation support services personnel, IT personnel, and all other non-attorney and non-paralegal supporting [*14] staff." Reines Decl. 7, ¶ 16. Ben-Ezra made the same representations with respect to Fish's fees. Ben-Ezra Decl. 6, ¶ 14. Finally, where it was impossible to separate work attributable to Cenveo and O'Neil from work related to other aspects of the case, Weil reduced the fee charged by 50%. Reines Decl. 7, ¶ 16.

After these adjustments, Weil seeks to recover $271,918.38 for 1,646.6 hours of work attributable to Cenveo and O'Neil during the relevant period, and Fish seeks $132,098.40, for 598.5 hours of work. Weil further seeks to recover $41,716.27 for 144.1 hours of work performed by four attorneys and two paralegals in bringing the motion for fees, and $17,776.68 for 37.9 hours of work performed by three attorneys and one paralegal in preparing the

---

[1] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the legal issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8) the monetary amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the professional relationship with the client; and (12) awards in similar cases. *See Johnson*, 488 F.2d at 717-19.

supporting declaration required by the Court. Fish seeks an additional $11,123.10 for 17.8 hours of work performed by two attorneys in preparing its declaration.

IPT objects that Movants' fee request improperly includes $70,616.00 in fees incurred in bringing the motion for attorneys' fees and preparing the declarations required by the Court after the motion was granted. The undersigned agrees that Movants' inclusion of this amount disregards [*15] the Court's Order. Movants had requested the Court include in any award "the fees incurred in bringing [the] motion." Mot. Br. 25 (ECF No. 189-1). But the Court's Order only authorized fees incurred in litigating IPT's claims against Cenveo and O'Neil from May 1, 2016 until November 4, 2016 and "otherwise denied" the motion for attorneys' fees. Ord. 8. Therefore, IPT's first objection should be SUSTAINED to the extent it disputes fees associated with bringing the motion for attorneys' fees and preparing the necessary declarations.

IPT also objects that Movants' fee request improperly includes fees for work performed on behalf of HP or Fort Dearborn in connection with their dismissed causes of action or for work performed in the "common case" against HP or the other defendants. Indeed, IPT contends most of the work performed during the relevant period would have been performed for HP even if IPT had dismissed Movants before May 1, 2016. IPT contends that it is responsible for no more than $154,564.74 in fees which can be solely attributable to work done for Cenveo and O'Neil. The undersigned disagrees.

IPT asserted overlapping infringement allegations against HP and several of its customers. [*16] These defendants elected to pursue a common defense and sought, and obtained, consolidation in an MDL action. Weil and Fish billed most of the fees incurred to all the defendants collectively. But the Court ordered IPT to pay only Movants' fees incurred from May 1, 2016 until November 4, 2016. Ord. 8. The declarations submitted by Weil and Fish explain how the law firms made an entry-by-entry analyses of the fees charged to all the defendants during the relevant time period and eliminated various categories of fees that were not recoverable under the Court's Order, including all billing entries related solely to defendants other than Cenveo and O'Neil. Reines Decl. 5-6, ¶ 16; Ben-Ezra Decl. 4-5, ¶ 14. Weil also reduced the fee charged by 50% where it was impossible to separate work attributable to Cenveo and O'Neil from work related to other aspects of the case. Reines Decl. 7, ¶ 16. After this first level of review and reduction, Weil and Fish applied a two-sixths apportionment to the common fees.

Movants' counsel's apportionment approach is consistent with the Court's Order awarding Movants' fees incurred in litigating the patent cases brought by IPT. Indeed, a similar approach has [*17] been followed by other courts. *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, 2018 U.S. Dist. LEXIS 96305, 2018 WL 2724019, at *1 (N.D. Cal. June 6, 2018) (accepting accused infringer's showing that about 25% of its total fees was based on work solely related to the patent for which § 285 fees were awarded, where the accused infringer's lawyers had not separately billed for each asserted patent), *aff'd*, 756 Fed. Appx. 997 (Fed. Cir. 2019); *Zaman v. Kelly Servs.*, 2017 U.S. Dist. LEXIS 82406, 2017 WL 2335601, at *7 (N.D. Cal. May 30, 2017) (holding that when a "court cannot determine precisely which hours were spent pursuing [frivolous] claims as opposed to [non-frivolous] claims," the "court may exercise its discretion to award a percentage of the fees requested, provided that its choice of a percentage is guided by reason"). And this method of apportionment achieves the "essential goal in shifting fees": that is, to "do rough justice"; perfection is not required. *Fox v. Vice*, 563 U.S. 826, 838, 131 S. Ct. 2205, 180 L. Ed. 2d 45 (2011) ("The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."). Movants' evidence supports a finding that the Court cannot determine precisely which hours were spent pursuing Movants' claims as opposed to claims against other defendants and that Movants' counsel's apportionment approach [*18] is guided by reason. Accordingly, IPT's objection to Movants' counsel's fee apportionment should be OVERRULED.

IPT next challenges the rates charged by Defendants' attorneys. The evidence submitted in support of Movants' fee request establishes that Weil's standard billing rates during the relevant period ranged from $1,165.00-$1,210.00 for

2020 U.S. Dist. LEXIS 156538, *18

senior partners to $600.00-$725.00 for junior associates, and between $225.00-$375.00 for paralegals based on experience level, and Fish's standard rates during the relevant period ranged from $885.00-$990.00 for senior of-counsel to $525.00-$645.00 for mid-level associates. Reines Decl. 2, ¶ 4; Ben-Ezra Decl. 2, ¶ 4. However, the law firms charged Movants confidential, discounted rates. Reines Decl. 2, ¶ 4; Ben-Ezra Decl. 2, ¶ 4. IPT argues that Weil and Fish improperly seek to justify these fees by comparing them to fees charged by Silicon Valley law firms. IPT contends the appropriate legal market is Dallas, not the Silicon Valley. The Court agrees that Dallas is the appropriate legal market but finds both the standard rates and the confidential, negotiated rates charged by Weil and Fish to be reasonable.

The hourly rate is determined "according [*19] to the prevailing market rates in the relevant community." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011). "[T]he relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits." *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). Rates are reasonable when they "are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984). "It is well-established that the Court may use its own expertise and judgment to independently assess the hourly rates charged for attorney's services." *SortiumUSA, LLC v. Hunger*, 2015 U.S. Dist. LEXIS 4411, 2015 WL 179025, at *5 (N.D. Tex. Jan. 14, 2015) (Lynn, J.) (citing *Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976)); *see also Merge Office Interiors, Inc. v. Alfa Adhesives, Inc.*, 2020 U.S. Dist. LEXIS 77747, 2020 WL 2115645, at *2 (N.D. Tex. May 3, 2020) (Lynn, J.) (determining reasonableness of hourly rate "[b]ased on the Court's knowledge of rates charged for legal services by attorneys with the level of skill, competence, and ability of Plaintiff's counsel and paralegal in the Dallas legal community, and its experience in setting attorney's fees in other cases").

Movants assert that Weil's standard rates were "commensurate with the prevailing market rates charged by Weil's peer firms in the Silicon Valley . . . and nationwide for similar services," Reines Decl. 6, ¶ 15, but other evidence supports a finding that the rates charged are reasonable for the Dallas legal market [*20] as well. The 2017 American Intellectual Property Law Association (AIPLA) Report of the Economic Survey, which sets forth the average hourly billing rates in 2016 for intellectual property attorneys, shows that third quartile rates in Texas in 2016 for partners were $819.00 and that 90th percentile rates were $900.00. Am. Intellectual Prop. Law Ass'n, 2017 Report of the Econ. Survey, at I-27. The AIPLA Report also shows that third quartile rates for associates in Texas were $565.00, and that 90th percentile rates were $682.00. *Id.* at I-29. Other courts in this district have referred to the AIPLA Report to determine the reasonable rate for an attorneys' fees award. *See, e.g., Ford Global Techs., LLC v. New World Int'l, Inc.*, 2019 U.S. Dist. LEXIS 60714, 2019 WL 1531759, at *2 (N.D. Tex. Apr. 9, 2019); *Investpic, LLC*, 2018 U.S. Dist. LEXIS 204805, 2018 WL 6329690, at *5; *Richmond v. SW Closeouts, Inc.*, 2016 U.S. Dist. LEXIS 108293, 2016 WL 4368305, at *4 (N.D. Tex. Aug. 16, 2016). *See also Mathis v. Spears*, 857 F.2d 749, 755-56 (Fed. Cir. 1988) ("As the law makes clear, the district court properly considered the [AIPLA] surveys."). *See also Broad. Music, Inc. v. Outlaw Country Soc. Club, Inc.*, 2019 U.S. Dist. LEXIS 227025, 2019 WL 7882557, at *1-2 (E.D. Tex. June 13, 2019) (awarding fees "between the 75th percentile and 90th percentile" where attorney "'represent[ed] a variety of clients in intellectual property litigation throughout the United States' and practiced for more than two decades"); *but see Investpic, LLC*, 2018 U.S. Dist. LEXIS 204805, 2018 WL 6329690, at *5 (declining to award fees in the 90th percentile where evidence "show[ed] that the[ ] lawyers have the experience with litigation of intellectual properties case" but the [*21] record "[l]acke[ed] more support for these rates").

Here, the evidence demonstrates that Mr. Reines has the skill, experience, and reputation in the intellectual property law community to place him in the top echelon of such lawyers in the country. He is a senior partner at Weil, a highly respected international law firm. Reines Decl. 2-3, ¶ 6. Over the past 12 years, he has been recognized by The Daily Journal as one of the "Top Intellectual Property Litigators" in California; he has appeared in the IP Law & Business magazine as one of the "Top 50 Under 45" American IP lawyers; and he has been recognized by IP Law & Business as one of the "Top 75 IP Litigators" nationally. *Id.* The evidence further establishes that the

associate attorneys at Weil and Fish, another highly regarded intellectual property law firm, who worked on the case possess exemplary skills and significant experience. *Id.* 3-4, ¶¶ 7-9. Except for the standard rate charged for Mr. Reines's time, the standard rates charged by Weil and Fish in this case are in line with those prevailing in the community for similar services by lawyers of comparable skill, experience, and reputation. *See* [*22] *Raniere v. Microsoft Corp.*, 3:15-cv-0540-M, ECF No. 187 at 3-4, 6, n.2 (N.D. Tex. 2016) (Lynn, J.) (finding published hourly rates between $525.00 and $1,100.00, as well as confidential negotiated rates, reasonable as of March 2016). *See also Michaels Stores Procurement Co. v. DMR Constr., Inc.*, 2019 U.S. Dist. LEXIS 15372, 2019 WL 399074, at *2 (N.D. Tex. Jan. 31, 2019) (Boyle, J.) (acknowledging that rates on the higher end of the spectrum may be reasonable given the circumstances of the representation and the attorney's experience). But Movants seek to recover based on the confidential, discounted rates charged by the law firms, not the standard rate. And the discounted rate for all the lawyers is reasonable for the Dallas legal market. IPT's objection to the hourly rate charged by Movants' counsel should be OVERRULED.

The undersigned reaches a different conclusion with respect to the rates charged by Weil's paralegals. The undersigned finds that a reasonable fee for work performed by highly proficient paralegals in Dallas is $225.00 per hour. *See Michaels Stores*, 2019 U.S. Dist. LEXIS 15372, 2019 WL 399074, at *2 (finding $225.00 per hour a reasonable fee for paralegals); Paralegal Division Compensation Survey from the State Bar of Texas Department of Research and Analysis (2014) (finding that the median hourly rate for a paralegal was $121.00). Accordingly, IPT's objection to the hourly rate charged by Movants' paralegals [*23] should be SUSTAINED. The rate charged by Weil's paralegals should be reduced to a maximum of $225.00 per hour, which results in a reduction of $1,149.18[2] overall.

IPT also objects to the number of hours Weil and Fish expended on this litigation during the relevant time period. Specifically, IPT argues that the law firms "block-billed." Block-billing is a time-keeping method where an attorney records the total daily time spent working on a case, rather than itemizing the time expended on specific tasks, which prevents a court from accurately determining the time spent on any particular task. *See Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, 2011 U.S. Dist. LEXIS 13672, 2011 WL 487754, at *10 n.18 (N.D. Tex. Feb.11, 2011) (Fitzwater, J.). IPT contends that Movants' fee request should be reduced for this improper billing practice. The undersigned disagrees. The allegedly objectionable time entries do not prevent meaningful review. Contrary to IPT's characterization, the billing entry IPT identifies as an example of block-billing does not reflect improper billing. *See* Objs. 18-19 (ECF No. 469-1) (pointing out billing by attorney Audrey Maness on October 5, 2016 as an example block-billing). Rather, it explains how the senior associate assigned to the case spent almost an entire workday (6.9 billable hours). [*24] The entry describes with particularity the specific tasks Ms. Maness undertook for which Weil seeks to recover. Although it does not state the time spent on each individual task, this entry and the other entries identified by IPT are sufficient for the Court to determine that each attorney billed a reasonable amount of time, on an individual basis, for the tasks recorded. Even if Weil engaged in block-billing, the declaration Weil submitted in support of the fee award explains that the law firm took a conservative approach to entries that describe more than one task and applied a 50% reduction to such entries. Reines Decl. 7-8, ¶ 16. IPT's objection to alleged block-billing by Movants' counsel should be OVERRULED.

Finally, IPT objects that Movants' counsel failed to exercise billing judgment because the declarations submitted in support of the fee award fail to identify any time that was written off as unproductive, excessive, or redundant. Even though a line-by-line analysis is not required, *see Maxwell*, 53 Fed. Appx. at 569, the undersigned independently

---

[2] During the relevant time period, it appears that only paralegals William Talbott's and Sean Mills's adjusted rates exceeded $225.00. *See* Reines Decl. 8, ¶ 18. Mr. Talbott billed 97.6 hours at a rate of $259.20, and Mr. Mills billed 4.2 hours at a rate of $251.10. *Id.* Together, their apportioned billing total from May 1, 2016 to November 4, 2016 equaled $8,784.18. Discounting each of their rates to $225.00, the undersigned calculates Mr. Talbott's adjusted total to be $7,320.00 (97.6 hours X $225.00 per hour) and Mr. Mills's to be $315.00 (4.2 hours X $225.00 per hour). After apportioning each paralegal's adjusted total by two-sixths, the undersigned comes to $2,440.00 for Mr. Talbott and $105.00 for Mr. Mills. This results in a reduction of $1,149.18 from $8,784.18.

reviewed IPT's chart containing objections to each of Movants' billing entries. The undersigned does not agree with IPT's characterization that Movants' counsel [*25] failed to exercise billing judgment or billed for unproductive, excessive, or redundant time. IPT's objection based on an alleged lack of billing judgment should be OVERRULED.

After making the recommended adjustments, multiplying the reasonable number of hours expended by each legal professional on the litigation by the reasonable hourly rate charged by Movants' counsel results in a lodestar of $402,867.60 ($270,769.20 for Weil, and $132,098.40 for Fish).

Considering all of the *Johnson* factors—especially (1) the time and labor required, (2) the novelty and difficulty of the legal issues, and (3) the skill required to perform the legal service properly—the undersigned finds that no further adjustment to the lodestar is necessary. Weil and Fish represented Movants with a high degree of skill and professionalism, and their efforts yielded a favorable result for Cenveo and O'Neil.

**Recommendation**

The Court should enter a final judgment awarding $270,769.20 in attorneys' fees to Weil and $132,098.40 in attorney's fees to Fish.

**SIGNED** June 12, 2020.

/s/ Rebecca Rutherford

REBECCA RUTHERFORD

UNITED STATES MAGISTRATE JUDGE

---

**End of Document**

# Michaels Stores Procurement Co. v. DMR Constr., Inc.

United States District Court for the Northern District of Texas, Dallas Division

January 31, 2019, Decided; January 31, 2019, Filed

CIVIL ACTION NO. 3:18-CV-1436-B

**Reporter**

2019 U.S. Dist. LEXIS 15372 *; 2019 WL 399074

MICHAELS STORES PROCUREMENT CO., INC., Plaintiff, v. DMR CONSTRUCTION, INC., Defendant.

**Prior History:** Michaels Stores Procurement Co. v. Dmr Constr., Inc., 2018 U.S. Dist. LEXIS 182067 (N.D. Tex., Oct. 23, 2018)

**Counsel:** [*1] Michaels Stores Procurement Co Inc, Plaintiff: Michael K Hurst, LEAD ATTORNEY, A Shonn Brown, Russell G. Herman, Lynn Pinker Cox & Hurst LLP, Dallas, TX.

**Judges:** JANE J. BOYLE, UNITED STATES DISTRICT JUDGE.

**Opinion by:** JANE J. BOYLE

## Opinion

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Michaels Stores Procurement Co., Inc.'s request for attorney's fees and costs (Doc. 13), filed on November 16, 2018, against Defendant DMR Construction, Inc. For the following reasons the Court **GRANTS** Plaintiff's request.

**I**.

**BACKGROUND**

This case arises from a construction agreement between Plaintiff and Defendant. Plaintiff Michaels Stores Procurement Co., Inc. filed this case on June 5, 2018, alleging that Defendant DMR Construction, Inc.'s non-performance of the terms of their agreement constituted a breach of contract. Doc. 1, Compl., ¶ 24. After Defendant failed to file any responses, this Court entered an Order of Default Judgment against Defendant on October 23, 2018. Doc. 12, Mem. Op. Order. The Court granted Plaintiff's request for damages in the amount of $448,036.95 plus post-judgment interest. *Id.* at 10-11. And because Plaintiff did not include evidence of attorney's fees or costs incurred in its Motion for Default Judgment, [*2] this Court allowed Plaintiff to supplement the record to provide such evidence. *Id.* at 9-11.

Plaintiff seeks $24,265.00 in attorney's fees and $759.90 in costs. Doc. 13, Pl.'s Notice of Suppl. Evid., 2. In support of this request, Plaintiff submits the declaration of its attorney, A. Shonn Brown, the billing records of its law firm, Lynn Pinker Cox & Hurst, L.L.P., and its Bill of Costs. Doc. 14, Pl.'s. App., 1-6, 9, 22-23. The Court now reviews this supplemental evidence.

## II.

## ANALYSIS

*A. Attorney's fees*

A prevailing party in a civil action may recover attorney's fees from a corporation in a claim for a written contract. Tex. Civ. Prac. & Rem. Code § 38.001(8); s*ee also* Fed. R. Civ. P. 54(d)(2). While § 38.001 (8) uses the term "may", "the Texas Supreme Court has declared that attorneys' fees under section 38.001 are not discretionary." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 603 n.3 (5th Cir. 2000) (citing *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998)). This is true even in the default judgment context. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1488 (5th Cir. 1990) (upholding an award of attorney's fees granted as part of a default judgment).

The Fifth Circuit has described the basic procedure and standard for determining attorney's fees as follows:

> The determination of a fees award is a two-step process. First the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the [*3] community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974).

*Smith v. Acevedo*, 478 Fed. App'x 116, 124 (5th Cir. 2012)(quoting *Jimenez v. Wood Cty*, 621 F.3d 372, 379-80 (5th Cir. 2010)). The *Johnson* factors are: (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) undesirability of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717-19. Accordingly, the Court will look to the presented evidence and apply the lodestar method and make adjustments, if necessary, with respect to the *Johnson* factors.

The first step in the lodestar analysis requires the Court to determine the reasonable number of hours expended by Plaintiff's attorneys on the lawsuit, as well as the reasonable hourly rate for the attorneys involved. [*4] *Smith*, 478 Fed. App'x at 124. The party requesting fees has the burden of establishing a reasonable hourly rate. *Kryptek Outdoor Grp., LLC v. Salt Armour, Inc*., 2016 U.S. Dist. LEXIS 188588, 2016 WL 7757267, at *5 (E.D. Tex. Mar. 28, 2016)(citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)). "The reasonable hourly rate is the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *BMO Harris Bank, N.A. v. RidgeAire, Inc*., 2014 U.S. Dist. LEXIS 196584, 2014 WL 12612803, at *1 (E.D. Tex. June 4, 2014) quoting *Blum*, 465 U.S. at 896 n.11.).

Here, Plaintiff's attorney, Brown, has provided a time sheet indicating the amount of work performed in the case. Doc. 14, Pl.'s App., 10-21. Attorney Brown performed 4.1 hours of work at a rate of $575.00 per hour and 11.6 hours of work at a rate of $525.00 per hour; Attorney Michael K. Hurst performed 1.9 hours of work at a rate of $675.00 per hour and 2.9 hours of work at a rate of $600.00 per hour; Attorney Russell Herman performed 29.9 hours of work at a rate of $375.00 per hour; Paralegal Beverly Congdon performed 6.5 hours of work at a rate of $225.00 per hour; and Paralegal Tonia Ashworth performed 1.7 hours of work at a rate of $225.00 per hour. *Id.*

After reviewing Attorney Brown's declaration as well as the supporting invoices, the Court finds that the time expended by the attorneys and their paralegals was reasonable. Nothing indicates that any individual was billing for "excessive, duplicative, or inadequately [*5] documented" time. *See Smith*, 478 Fed. App'x at 124. Consequently, the Court accepts these hours as part of its lodestar calculation.

With respect to the hourly rates, the Court also finds the amounts were reasonable. Attorney Brown avers that her rate, as well as the rates of other attorneys and paralegals on this case, is in line with the range of fees customarily charged in the Dallas, Texas, area by lawyers with similar experience and expertise. Doc. 14, Pl.'s App. 3. While some of the rates are on the higher end of those typically seen in the Dallas, Texas, area, they are reasonable given the attorneys' and paralegals' experience. *See Tech Pharmacy Servs., LLC v. Alixa Rx LLC*, 298 F. Supp. 3d 892, 906 (E.D. Tex. 2017) (also acknowledging that rates on the higher end of the spectrum may be reasonable given the circumstances of the representation). Thus, in light of her declaration, as well as the Court's own knowledge of rates charged for legal services by attorneys in the area with similar levels of skill, experience, and competence, the Court is comfortable using the hourly rates provided.

Accordingly, the Court finds the attorney's fees to be: (1) $8,447.50 for Attorney Brown (4.1 hours x $575.00 + 11.6 hours x $525.00); (2) $3,022.50 for Attorney Hurst (1.9 hours x $675.00 + 2.9 hours x [*6] $600.00); (3) $10,950.00 for Attorney Herman (29.2 hours x $375.00); (4) $1462.50 for Paralegal Congdon (6.5 hours x $225.00); and (5) $382.50 for Paralegal Ashworth (1.7 hours x $225.00). Considering the twelve *Johnson* factors described above, the Court does not find it necessary to make any adjustment to these figures. Accordingly, Plaintiff's request for attorney's fees is granted in the amount of $24,265.00.

*B. Costs*

A prevailing party in a civil action is entitled to recover its costs unless a federal statute, the federal rules, or the court provides otherwise. *See* Fed. R. Civ. P. 54(d)(1). Taxable court costs include: (1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of the deposition transcript; (3) witness fees and related expenses; (4) printing costs; and (5) fees for copies of papers necessarily obtained for use in the case. 28 U.S.C. § 1920. Here, Plaintiff seeks $759.90 in costs, namely the filing fee ($400.00), the service of process fees ($359.50), and its printing fees ($0.40). Doc. 14, Pl.'s App. 22-23. These are both reasonable and taxable under the law. *See Blake Box v. Dallas Mexican Consulate Gen.*, 2014 U.S. Dist. LEXIS 111751, 2014 WL 3952932, at *6 (N.D. Tex. Aug. 8, 2014), *aff'd sub nom. Box v. Dallas Mexican Consulate Gen.*, 623 F. App'x 649 (5th Cir. 2015). Therefore, the Court grants Plaintiff's request for costs in the amount of $759.90.

**IV**.


**CONCLUSION**

For the [*7] above-stated reasons, the Court **GRANTS** Plaintiff's request for attorney's fees and costs. Specifically, the Court **GRANTS** Plaintiff's request for attorney's fees in the amount of $24,265.00, and Plaintiff's request for costs in the amount of $759.90.

**SO ORDERED**.

**SIGNED: January 31, 2019**.

/s/ JANE J. BOYLE

JANE J. BOYLE

UNITED STATES DISTRICT JUDGE

---

**End of Document**