**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| Point Bridge Capital, LLC, | § | |
| Hal Lambert | § | |
| | § | Case No. 4:24-cv-0988-P |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | |
| Charles Johnson, | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFFS' MOTION FOR "SHOW CAUSE" HEARING TO HOLD
<u>DEFENDANT CHARLES JOHNSON IN CIVIL CONTEMPT</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................. 1

FACTUAL BACKGROUND ........................................................................... 3

    I.    Johnson violates the Court's asset-protection order by attempting to sell over $1 million in stock in a company called Othram. ................................... 3

        A.    The Court's order bars Johnson from dissipating his assets. ..................... 3

        B.    Johnson tries to cash out over $1 million in Othram stock using a secret Wyoming LLC—and continues even after the Court denied his motion to stay. ........................................................... 4

        C.    Despite the Court denial of his motion to stay, Johnson continues his attempts to sell his Othram shares and tries to persuade Othram to disregard the order. ....................................... 5

    II.    Johnson personally threatens Hal Lambert and Plaintiffs' counsel— and welcomes incarceration because it gives him time "to write and read and work out." ........................................................................... 6

        A.    Johnson claims to welcome incarceration ................................... 7

        B.    Johnson threatens Plaintiff Hal Lambert, Plaintiffs' counsel— within hours—his ally asserts a frivolous defamation allegation against counsel. ........................................................................ 9

    III.    Johnson continues to use false claims of government affiliation to flout his obligations. ...................................................................... 11

        A.    Johnson claims "advice from the Feds" to avoid discovery..................... 11

        B.    Johnson uses his false claims of government authority to withhold funds from his prior counsel in this case.................................. 12

ARGUMENT .................................................................................................. 13

    I.    The Court should hold Johnson in civil contempt................................. 13

A.    Clear and convincing evidence establishes each element of civil contempt. ................................................................................... 13

B.    The Court should incarcerate Johnson because monetary sanctions will not compel his compliance. .................................................. 14

II.    A future "show cause" hearing will be necessary to address Johnson's non-compliance with post-judgment discovery, but that issue is not yet ripe. ................................................................................................ 16

CONCLUSION ............................................................................................................. 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allstate Settlement Corp. v. Doucette,*
No. 15-1130, 2016 WL 3346531 (S.D. Tex. June 16, 2016)...................................................15

*Am. Airlines, Inc. v. Allied Pilots Ass'n,*
228 F.3d 574 (5th Cir. 2000) .......................................................................................2, 13, 15

*Cooper v. Dallas Police Ass'n,*
No. 3:05-cv-1778-N, 2013 WL 1787564 (N.D. Tex. Apr. 5, 2013)........................................14

*In re Dinnan,*
625 F.2d 1146 (5th Cir. 1980) (per curiam)............................................................................15

*FDIC v. LeGrand,*
43 F.3d 163 (5th Cir. 1995) .....................................................................................................15

*Hutto v. Finney,*
437 U.S. 678 (1978).................................................................................................................15

*Int'l Union, United Mine Workers of Am. v. Bagwell,*
512 U.S. 821 (1994).................................................................................................................16

*Sec. & Exch. Comm'n v. First Fin. Grp. of Tex., Inc.,*
659 F.2d 660 (5th Cir. 1981) ...................................................................................................13

*Test Masters Educ. Servs., Inc. v. Singh,*
428 F.3d 559 (5th Cir. 2005) ...................................................................................................14

**Statutes**

18 U.S.C. § 402..............................................................................................................................16

**Other Authorities**

Charles C. Johnson, *Having a Clearview About Israeli Spyware,*
*Jeffrey Epstein's Murder, the Compromised FBI and the*
*Attempted Assassination of President Donald J,*
https://charlesjohnson.substack.com/p/having-a-clearview-about-israeli .............................10

Raphael Satter, *How Cybercriminals Are Using Wyoming Shell Companies for*
*Global Hacks*, Reuters (Dec. 13, 2023) ...................................................................................5

"Show Cause" Hearing to Hold Defendant Charles Johnson in Civil Contempt ..........................1

Wyo. News (Nov. 29, 2024), https://tinyurl.com/mtxm2hu6 ........................................................5

Plaintiffs Point Bridge Capital, LLC and Hal Lambert ("Plaintiffs") respectfully submit this Motion for "Show Cause" Hearing to Hold Defendant Charles Johnson in Civil Contempt and be subject to appropriate sanctions for violating the Court's July 29, 2025 order barring him from "[s]elling, transferring, or otherwise disposing of any . . . stocks, private investments, or other assets identified in Trial Exhibit 64." (ECF No. 103 at 1-2).

## INTRODUCTION

This motion is necessary because Charles Johnson is openly defying the Court. After trial, the Court entered an unambiguous asset-preservation order barring him from selling key holdings—including shares in a private genetic startup, Othram Inc. Johnson is now racing to unload those shares for over $1 million and trying to stash the proceeds in a secret Wyoming shell company. He knows the order bars such a sale; he simply does not care.

When Plaintiffs began inquiring into his Othram shares, Johnson pressed Othram's counsel to move cash quickly, asking, "Can we please transfer funds this week? I need this transaction completed ASAP . . . ." He also directed Othram to "pay the money by the end of the day." When Othram's lawyers noted the Court's asset-preservation order appeared to bar the sale, Johnson said "the court order does't [sic] apply as it is under appeal." Yet, Johnson then sought an emergency stay of the judgment, which this Court quickly denied. Undeterred, he continued—and continues—trying to offload the shares anyway.

Johnson has willfully violated the Court's asset-preservation order. Plaintiffs sent Johnson the order multiple times and repeatedly told him it covered his Othram shares. When Plaintiffs directly asked Johnson if he tried to sell the Othram shares, Johnson avoided the question. He did not deny trying to sell. Instead, he reverted to his old playbook of threats, retaliation, and

1

manufactured leverage—directed at both Plaintiffs and the undersigned counsel. Among other things, he stated:

- "I'm getting advice from the Feds not to talk to you unless it's absolutely necessary," to justify his stonewalling.

- "I'd advise you to proceed very carefully before you get yourself or your own career into further trouble." Johnson has repeatedly threatened lawsuits and ethics complaints against Plaintiffs' counsel.

- Within hours of one of these threats, his online ally, Arthur Bloom, falsely alleged that Mr. Thompson referred to Bloom as a "vile anti-semite" and threatened litigation. Johnson was the source of the false allegation.

- Johnson tried to manufacture leverage against Hal Lambert, writing, "You should tell Hal he should settle with me before the Feds get him. It'll look better at [his] sentencing."

- When Plaintiffs' counsel asked whether he would testify if the Court compelled his deposition, he replied, "You can try but yeah, it's not going to happen."

These statements are just the tip of the iceberg. Plaintiffs have only been able to subpoena limited email communications between Johnson and Othram's lawyers. But Johnson appears to have conducted most of his discussions via Signal—an encrypted app that can auto-delete messages after a fixed interval. That deletion function seems to have been used.

Civil contempt exists to coerce compliance and to protect the Court's authority. A party seeking civil contempt must "establish[] by clear and convincing evidence: 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000). Here, the record meets that standard several times over. The asset-preservation order clearly bars Johnson from selling the Othram shares. Johnson had notice of the order and ignored it.

Incarceration is necessary because monetary pressure has failed. A $71 million judgment did nothing to deter Johnson. Additional fines will fare no better. He has treated the Court's order

as a hurdle to evade, not a mandate to obey. He ignored post-judgment interrogatories, refused to appear for deposition, stonewalled discovery, and resorted to intimidation. When the Court denied his stay motion, Johnson ignored the Court's order and continued efforts to cash out his Othram shares.

Only coercive incarceration remains. Plaintiffs respectfully request that the Court order Johnson jailed until he purges his contempt. That purge should include: (1) immediate rescission of the Othram stock transfer; (2) written notice to Othram and any counterparty that the shares cannot be sold; and (3) full disclosure of all other assets and accounts, to prevent further hidden liquidation. Attorneys' fees and costs can follow in due course.

## FACTUAL BACKGROUND

I.    **Johnson violates the Court's asset-protection order by attempting to sell over $1 million in stock in a company called Othram.**

A.    **The Court's order bars Johnson from dissipating his assets.**

At trial, Plaintiffs introduced Exhibit 64—an email from Johnson titled "My portfolio"— in which he claimed ownership of more than $100 million in assets, including cryptocurrency and stock in privately held companies. (Ex. M. at Appx. 113-14). One of those companies was Othram Inc., a Texas-based forensic genetic genealogy lab that works with law enforcement to identify human remains and solve cold cases. Johnson described himself as a cofounder and suggested the company alone was worth $100 million. (Ex. M at Appx. 113).

This gives the lie to Johnson's earlier representation to the Court that he had "limited financial means" and could not afford to hire local counsel. (ECF No. 10 at 2). Othram is just one of several companies in which Johnson claims multi-million-dollar stakes, in addition to substantial cryptocurrency holdings. While his asset claims are unverified, the fact that he quickly

secured a buyer for over $1 million in just one private holding speaks volumes about his potential resources and the urgency of preventing him from dissipating and concealing them.

After trial, and in connection with the entry of final judgment, the Court issued an order barring Johnson from dissipating any of the assets or interests listed in Exhibit 64, or from taking any steps that would frustrate Plaintiffs' ability to collect. (ECF No. 103 at 1-2).

Immediately after trial, Johnson made clear he had no intention of complying. He publicly declared his refusal to participate in post-judgment discovery and began taking steps to obstruct enforcement. Plaintiffs promptly sent him the asset-preservation order, warning that his "recent public statements and conduct show[ed]" he was "violating, or preparing to violate, Judge Pittman's July 29, 2025 asset-preservation order." (ECF 106 at 5). Two days later, Plaintiffs submitted a filing notifying the Court of Johnson's statements. (ECF No. 106 at 1).

**B.    Johnson tries to cash out over $1 million in Othram stock using a secret Wyoming LLC—and continues even after the Court denied his motion to stay.**

The following timeline reflects Johnson's willful and ongoing violations of the Court's asset-preservation order. It shows his efforts to cash out his Othram shares and take the proceeds through a secret Wyoming LLC, his misrepresentations to third parties about the enforceability of the judgment, and his use of covert tactics to frustrate Plaintiffs' ability to collect.

➢ **September 15, 2025:** Johnson executes a "Stock Transfer Agreement" on behalf of three trusts holding Othram shares. On information and belief, the Othram shares are being purchased for more than $1 million. (Ex. I at Appx. 059-77).

➢ **September 23, 2025:** Johnson writes Othram's lawyers and urgently asks to complete the transaction: "Can we please transfer funds this week? I need this transaction completed ASAP so that I can go to work." (Ex. F at 036).

➢ **September 26, 2025**: Johnson falsely tells Othram's CEO and its lawyers that "the court order does't [sic] apply as it is under appeal. Please pay the money by the end of the day." (Ex. F at Appx. 033). He also provides wire instructions for a Wells Fargo account held by a newly formed Wyoming entity called JXZ LLC. (Ex. F at Appx. 035). The company is registered to a small building in Sheridan, Wyoming—an address widely reported as a hub

for anonymous shell companies used to obscure financial transactions and avoid oversight.[1] The timing and structure of the entity raise additional red flags: neither Johnson nor any of the relevant trusts appear to have any legitimate connection to Wyoming, nor is there any known business rationale for routing the transaction through that state.

➤ **September 26, 2025**: Othram's lawyers tell Johnson, "We have recently received the attached Judgement and Order [referring to ECF Nos. 104 & 105]. In light of these, we would need clearance from the respective court to proceed with the transfer as currently proposed." (Ex. F at Appx. 033]

➤ **September 26, 2025:** Johnson responds with two false statements: *First*, that the "Fifth Circuit automatically stays enforcement of a Judgement." (Ex. F at Appx. 029). *Second*— and more evidence of direct evasion of the asset-preservation order—"Even if the order is applied, which it doesn't, it doesn't affect my ex wife and daughter's trusts which are separate and distinct from mine." (Ex. F at Appx. 033). However, the Court's asset-preservation order explicitly mentions "trusts" and certainly Johnson cannot use what appear to be sham trusts that he set up for his ex-wife and child to avoid the judgment. Johnson also again attached wiring instructions to the Wyoming LLC. (Ex. F at Appx. 032).

➤ **September 30, 2025:** Johnson files an Emergency Motion to Stay Judgment Without Bond. (ECF No. 113). The Court summarily denies the motion the following day. (ECF No. 114).

    **C.**    **Despite the Court's denial of his motion to stay, Johnson continues his attempts to sell his Othram shares and tries to persuade Othram to disregard the order.**

➤ **October 6, 2025**: Johnson  continues trying to sell his Othram shares—this time by introducing Othram's lawyers to an attorney named Tor Ekeland. (Ex. F at 029). Johnson has intermittently portrayed Ekeland as his counsel in this litigation, but has repeatedly refused to confirm whether Ekeland in fact represents him.

➤ **October 7, 2025:** Plaintiffs formally serve Othram with a subpoena for documents relating to Johnson's efforts to sell his Othram shares. (Ex. A at Appx. 008). Johnson is copied on the subpoena.

---

[1] Johnson's Wyoming LLC listed its address as 30 N. Gould St., Sheridan, WY 82801—an address repeatedly linked to shell entities with questionable activity. Commentators have noted that businesses registered at this location have been "implicated … in high-profile hacking activity" and, as one anti-money laundering expert put it, "It's the virtual Wild, Wild West." Raphael Satter, *How Cybercriminals Are Using Wyoming Shell Companies for Global Hacks*, Reuters (Dec. 13, 2023), https://rb.gy/nm1htp (shortened URL); *see also 30 N. Gould St. businesses blur lines of what it means to be a Sheridan business*, Wyo. News (Nov. 29, 2024), https://tinyurl.com/mtxm2hu6 (shortened URL).

➢ **October 7, 2025:** Johnson responds by—falsely—telling Othram's CEO that the subpoena "is harassing as the matter is before the Fifth Circuit. You're under no obligation to respond, David, and I would let the court process play out." (Ex. A at Appx. 008).

## II.    Johnson personally threatens Hal Lambert and Plaintiffs' counsel—and welcomes incarceration because it gives him time "to write and read and work out."

Throughout September 2025, Plaintiffs served Johnson with post-judgment interrogatories, requested his deposition, and asked directly whether he was attempting to sell Othram shares in violation of the Court's order. The following timeline reflects (a) his refusal to comply with post-judgment discovery, (b) his efforts to obscure asset transfers, and (c) his escalating retaliatory conduct. Johnson's conduct below leaves no doubt about his mindset—he is not misunderstanding the Court's authority, but is rather daring that Plaintiffs or the Court will not do anything. He refused to participate in discovery, openly welcomed incarceration, and threatened Plaintiffs and their counsel.

### A.    Johnson claims to welcome incarceration

**September 4, 2025:** After Plaintiffs requested deposition dates, Johnson responded with open defiance: "Not going to be going to any deposition. But I love that for you." (Ex. D at Appx. 023). When asked whether he "would . . . still not show up" if "the court compelled [his] deposition," Johnson made clear that jail did not concern him—and in fact, he welcomed it:

---

**From:** Charles Johnson <charlescjohnson88@gmail.com>
**Sent:** Thursday, September 4, 2025 3:00 PM
**To:** Thompson, Will <will.thompson1@us.dlapiper.com>
**Subject:** Re: Point Bridge Capital v. Johnson---Post-judgment discovery---Deposition Dates for Johnson

⚠ EXTERNAL MESSAGE

Remember, Mr. Thompson, I wanted to go to jail during this trial, and I still do.

You should probably preserve your records, though.

Champerty is an issue even in Texas!

On Thu, Sep 4, 2025 at 17:57 Charles Johnson <charlescjohnson88@gmail.com> wrote:

You can try but yeah, it's not going to happen.

I don't mean to be rude to you but you're likely going to want to chill a bit before it's overturned.

On Thu, Sep 4, 2025 at 17:56 Thompson, Will <will.thompson1@us.dlapiper.com> wrote:

Just to be clear, you are going to resist any deposition absent a court order. If the court compelled your deposition, would you still not show up? Thx for the quick response, Charles.

---

(Ex. D at Appx. 022).

**September 4, 2025:** Johnson goes further, stating that incarceration would be a personal benefit because it would give him time to "write and read and work out."

> Would you like to see a photo of me in a federal prison?
>
> On Thu, Sep 4, 2025 at 18:12 Charles Johnson <charlescjohnson88@gmail.com> wrote:
> They arrested the wrong Charles Johnson and kept me in county lockup for a long weekend. I believe it was expunged.
>
> I have visited federal prison on several occasions, including the Super Max. Not worried about it. Frankly I could use the time to write and read and work out.

(Ex. D at Appx. 021).

Johnson's professed willingness to be incarcerated shows he fully understands the seriousness of his conduct and that he is knowingly disobeying the Court. His bravado—that confinement would be a welcome opportunity to "write and read and work out"—may well reflect a belief that the Court will once again show him leniency, as it did after prior violations of its orders.

**B.    Johnson threatens Plaintiff Hal Lambert, Plaintiffs' counsel—within hours—his ally asserts a frivolous defamation allegation against counsel.**

*1.    Johnson Threatens Plaintiff Hal Lambert with Criminal Prosecution*

**September 4, 2025:** Johnson escalates his threats, this time targeting Lambert personally. He writes that Lambert "should settle with me before the Feds get him. It'll look better at sentencing." Johnson also issued additional threats directed at Plaintiffs' counsel.

---

From: Charles Johnson <charlescjohnson88@gmail.com>
Sent: Thursday, September 4, 2025 3:07 PM
To: Thompson, Will <will.thompson1@us.dlapiper.com>
Subject: Re: Point Bridge Capital v. Johnson---Post-judgment discovery---Deposition Dates for Johnson

⚠️ EXTERNAL MESSAGE

Remember, Mr. Thompson, it would be neither my first time in jail (mistaken identity thing) nor at the Fifth Circuit (as you know).

Alas I'm probably going to be encouraged to sue to find the litigation financing behind this whole shindig and I don't really want to do that.

You should tell Hal he should settle with me before the Feds get him. It'll look better at sentencing.

(Ex. D at Appx. 021).

*2.    Johnson threatens Plaintiffs' counsel, and hours later Johnson's ally makes a false defamation claim.*

**September 23, 2025 (4:00 PM)**: Johnson threatens Plaintiffs' counsel with personal and professional trouble when Plaintiffs continue seeking post-judgment discovery from Johnson.

It's a challenging thing here because you are just following orders, I suppose so I'd advise you to proceed very carefully before you get yourself or your own career into further trouble.

(Ex. L at Appx. At 109).

**September 23, 2025 (7:08 PM):** Just three hours after Johnson's threat to Lambert, his close ally, Jordan Arthur Bloom, emailed Plaintiffs' counsel alleging defamation—based on the false claim that counsel had called him a "vile anti-Semite" in court. (Ex. E at Appx. 027). Plaintiffs' counsel never said this. The accusation stemmed from a post by Johnson, in which Johnson *falsely* claimed that counsel had referred to Bloom as an antisemite. *See* Charles C. Johnson, *Having a Clearview About Israeli Spyware, Jeffrey Epstein's Murder, the Compromised FBI and the Attempted Assassination of President Donald J.*, Substack (Oct. 5, 2023), https://charlesjohnson.substack.com/p/having-a-clearview-about-israeli ("Will Thompson, the lawyer that works for Hal Lambert, referred to Bloom as a 'vile anti-Semite' in open court in Fort Worth, Texas.").

This kind of coordinated retaliation—carried out through public attacks and proxy threats—is consistent with Johnson's broader effort to intimidate Plaintiffs and others

| From: | Arthur Bloom <arthuriana89@gmail.com> |
|---|---|
| Sent: | Tuesday, September 23, 2025 7:08 PM |
| To: | Thompson, Will |
| Subject: | Demand for retraction |

⚠ EXTERNAL MESSAGE

Dear Mr. Thompson,
I am told you called me a "vile anti-semite" in court during proceedings involving Charles Johnson. Is this correct? If so this has the potential to prejudice people against my journalism, and I consider it defamatory. Do you consider this statement your pure opinion or a fact? Statements like this are only absolutely privileged in the context of court proceedings as long as they are pertinent to the questions at issue, and it's difficult to see how this one would be. I would like you to retract your statement publicly. If you're willing to do so, there's no need for this to go any further.
Yours truly,
Arthur Bloom

(Ex. E at Appx. 027).

10

III.    **Johnson continues to use false claims of government affiliation to flout his obligations.**

      A.    **Johnson claims "advice from the Feds" to avoid discovery.**

**September 23, 2025:** To justify his refusal to respond to interrogatories and sit for deposition, Johnson cited "advice from the Feds" as the basis why he is refusing to reveal that he is actively trying to sell his shares in Othram in violation of the court's asset-preservation order.

**From:** Charles Johnson <charlescjohnson88@gmail.com>
**Sent:** Tuesday, September 23, 2025 4:00 PM
**To:** Thompson, Will <will.thompson1@us.dlapiper.com>
**Cc:** Faulkner, Sherry <Sherry.Faulkner@us.dlapiper.com>
**Subject:** Re: Point Bridge---have you attempted to sell any assets?



⚠ EXTERNAL MESSAGE

Hey Will,

3

It's before the Fifth Circuit. If you need me to get a stay I can.

I don't mean to be rude to you but I'm getting advice from the Feds not to talk to you unless it's absolutely necessary.

It's a challenging thing here because you are just following orders, I suppose so I'd advise you to proceed very carefully before you get yourself or your own career into further trouble.

All the best,

(Ex. L at Appx. 109).

**B.      Johnson uses his false claims of government authority to withhold funds from his prior counsel in this case.**

Johnson has also been using his claims of federal authority to not pay his debts to his former attorney Bernard Kleinman, who withdrew from the matter on December 14, 2024, (ECF No. 22), and represented Johnson in the S.D.N.Y litigation until August 14, 2025. *See* 1:23-cv-02441-KPF (S.D.N.Y.), ECF No. 107.

On October 1, 2025, Arthur Bloom (Johnson's ally) retweeted a post from political commentator Richard Hanania, who had previously discussed this case in detail on a podcast. (*See generally* Ex. K at Appx. 99-104). The post contained screenshots of Signal messages between Charles Johnson and his former attorney, Kleinman, from September 13 to 15, 2025. The posts were subsequently deleted, but Plaintiff's counsel screenshotted it prior its removal.

The screenshots stated Johnson continues not to pay his former attorney, Kleinman, and has been invoking the same false claims that he is working with the Department of Homeland Security that he has presented in this case.

In the Signal exchange, Johnson told Kleinman that he doesn't pay his rent, phone bill, or utilities, claiming instead: "They are all paid for me by the government connections you say are imaginary." (Ex. K at Appx. 100). He insisted a check for Kleinman's $20,000 fee had already been "printed out at Homeland in DC," but that he would not authorize Kleinman to retrieve it until he apologized. Kleinman, in response, called Johnson "a deadbeat," accused him of making "specious excuses," and said Johnson was "no better than the guy who sticks up a liquor store." (Ex. K at Appx. 99-102). He concluded: "Your government connections are all imaginary, and only exist in your mind." (Ex. K at Appx. 100).

This episode is relevant to the present contempt motion for two reasons. First, Johnson's refusal to pay a known legal debt under the pretense that DHS controls his finances mirrors the

same conduct Plaintiffs now face in trying to collect on a federal judgment. It underscores why monetary sanctions will not work. Johnson asserts that he cannot pay because he is not the one holding the checkbook. Second, the excuse he offers to Kleinman—government control over his funds—is the same fabrication he has used to sidestep his obligations under the Court's asset-preservation order. If he will not pay his own lawyer, it strains credulity to think he will voluntarily comply with any subsequent orders in this case.

Indeed, Johnson is shamelessly threatening Plaintiffs' counsel and his former attorney using the same illegal tactics and falsehoods for which he was liable for—namely "a fraud and extortion scheme under which he, and his co-conspirator, 'falsely present[ed] themselves as intelligence agents or assets of U.S. government agencies.'" (ECF No. 73 at 1 (quoting ECF No. 33 at 1)). That Johnson would persist in this extortive conduct even after a $71 million judgment against him only reinforces the Court's prescient observation from a hearing in June 2025: "until this individual . . . is brought up on charges, Federal or state criminal charges, this type of behavior is not going to change." (ECF No. 75 at 16).

## ARGUMENT

## I.     The Court should hold Johnson in civil contempt

### A.     Clear and convincing evidence establishes each element of civil contempt.

A party commits contempt when "he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Sec. & Exch. Comm'n v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981). The Fifth Circuit has held that the party seeking an order of contempt must "establish[] by clear and convincing evidence: 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." *Am.*

13

*Airlines, Inc.*, 228 F.3d at 581; *Cooper v. Dallas Police Ass'n*, No. 3:05-cv-1778-N, 2013 WL 1787564, at *4 (N.D. Tex. Apr. 5, 2013).

Here, the first two elements—the existence of a court order that prohibited certain conduct—are indisputable. The asset-preservation order explicitly barred Johnson from selling or disposing of any of the assets listed in Plaintiffs' Trial Exhibit 64, in which Othram was explicitly mentioned. (ECF No. 103 at 1-2; Appx. M at Appx. 113). Moreover, Johnson plainly knew about the order. Among other things:

- Plaintiffs repeatedly provided him with the order, screenshotted the relevant language, and explicitly mentioned the bar on selling Othram stock;

- Othram's attorneys said that they would not proceed with the stock transfer because of the order; and

- Johnson filed an emergency motion to stay enforcement of the judgment, hoping to proceed with the sale, and he continued to misrepresent the Court's order to Othram after it was denied.

The emails and correspondence discussed above leave no doubt that Johnson attempted to sell his Othram shares and route the proceeds into a secret Wyoming LLC—an entity likely explicitly created to conceal the transaction and place the funds beyond Plaintiffs' reach. One could hardly imagine a more direct, willful violation of the Court's asset-preservation order. Johnson's contempt is even more egregious given how many times he was put on notice—both formally and informally—of his obligation not to sell the Othram stock.

### B.    The Court should incarcerate Johnson because monetary sanctions will not compel his compliance.

"Upon a finding of contempt, the district court has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005) (citing *Am. Airlines, Inc.*, 228 F.3d at 585). "Judicial sanctions in civil contempt proceedings, may in a proper case, be employed for either or both of two

purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Am. Airlines*, 228 F.3d at 585 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)).

"A fixed term of imprisonment, with the proviso that the contemnor will be released if he complies with the court order, is a proper penalty for civil contempt and the imposition of such a penalty does not make the proceeding criminal." *In re Dinnan*, 625 F.2d 1146, 1149 (5th Cir. 1980) (per curiam).  A district court may order the civil contemnors imprisoned until they comply with the order or condition imposed by the court. *FDIC v. LeGrand*, 43 F.3d 163, 168 (5th Cir. 1995); *see also Hutto v. Finney*, 437 U.S. 678, 690, (1978) ("Civil contempt proceedings may yield a conditional jail term[.]"). "Unlike criminal contempt where imprisonment and a fine cannot be combined, a finding of civil contempt permits the coercive combination of both fine and imprisonment." *In re Dinnan*, 625 F.2d at 1150 (internal citation omitted).

Johnson's conduct throughout this litigation shows that he has no regard for the Court's asset-preservation order—or any other orders the Court has entered. Earlier, the Court struck his pleadings. That sanction was consistent with the principle that "[i]n selecting the appropriate contempt sanction, 'a court is obliged to use the least possible power adequate to the end proposed.'" *Allstate Settlement Corp. v. Doucette*, No. 15-1130, 2016 WL 3346531, at *3 (S.D. Tex. June 16, 2016) (quoting *Spallone v. United States*,  493 U.S. 265, 276 (1990)).

Here, however, no lesser sanction than incarceration will suffice. Johnson is already facing a $71 million judgment, and additional monetary sanctions will have no coercive effect. Moreover, Johnson's actions cannot be evaluated in a vacuum. He has threatened Plaintiffs' counsel, targeted Mr. Lambert personally, misled Othram and its attorneys, and attempted to carry out a secret asset transfer using a Wyoming LLC. He has also stated—openly and without remorse—that he is "[n]ot

worried about" incarceration for contempt because he "could use the time to write and read and work out." (Ex. D at Appx. 021) This is not inadvertent noncompliance. Johnson knows exactly what he is doing—and what the consequences are.

Johnson can purge himself of his contempt by withdrawing his request to sell the Othram shares and identifying any other assets that are covered under the asset-preservation order. Thus, Johnson "carries the keys of his prison in his own pocket." *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994).

Finally, while Plaintiffs acknowledge they lack standing to pursue criminal contempt under 18 U.S.C. § 402, the totality of Johnson's conduct might ultimately warrant such a proceeding—despite the unfortunate burden it would place on judicial resources.

## II.    A future "show cause" hearing will be necessary to address Johnson's non-compliance with post-judgment discovery, but that issue is not yet ripe.

Plaintiffs respectfully note that additional motion practice—including a future motion to show cause—will likely be necessary to compel Johnson's compliance with post-judgment discovery. To date, Johnson has refused to answer interrogatories seeking basic information about his assets and banking relationships. As described above, he has stated that he will ignore any discovery order—even if that means incarceration.

That said, Plaintiffs are not presently seeking a contempt finding based on these discovery violations. The issue is not yet ripe, as there is currently no existing order compelling Johnson to respond. Plaintiffs are therefore filing a separate motion to compel his responses to their post-judgment discovery. Should the Court grant that motion and Johnson continue to ignore his obligations, Plaintiffs anticipate returning with a renewed request for coercive sanctions.

**CONCLUSION**

Johnson has flouted this Court's asset-preservation order, attempted to secretly liquidate over $1 million in stock, and shown open contempt for the Court's authority. Monetary sanctions have failed. Only coercive incarceration will compel compliance. Plaintiffs respectfully request that the Court order Johnson to show cause why he should not be held in civil contempt and, after hearing, remand him to custody until he purges his contempt and complies with the Court's order.

Dated: October 28, 2025                                    Respectfully Submitted,

                                                          /s/ *Will Thompson*
                                                          Will Thompson
                                                          DLA PIPER LLP (US)
                                                          Will Thompson
                                                          State Bar No. 24094981
                                                          will.thompson1@us.dlapiper.com
                                                          1900 N. Pearl Street
                                                          Dallas, Texas 75201
                                                          Telephone: (406) 546-5587

                                                          COUNSEL FOR PLAINTIFFS


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 28, 2025, a true and correct copy was served via the Court's electronic filing system and emailed to the defendant.

                                                          /s/ *Will Thompson*
                                                          Will Thompson


**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that multiple times throughout September 2025 he contacted Johnson about Johnson's attempts to sell assets, Othram stock in particular, in violation of the Court's asset-preservation order. This correspondence included provided Johnson with the Court's order and informing Johnson that the order prohibited the sale of the Othram stock. In

response, Johnson threatened the undersigned's law license and threatened lawsuits. Based on the totality of the circumstances, the undersigned submits that a formal meet and confer with Johnson about this motion for show cause would have been futile.

/s/ *Will Thompson*
Will Thompson

18