IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **Point Bridge Capital, LLC,** | § | |
| **Hal Lambert** | § | |
| | § | |
| *Plaintiffs*, | § | |
| v. | § | Case No. 4:24-cv-00988-P |
| | § | |
| **Charles Johnson,** | § | |
| *Defendant.* | § | |

### PLAINTIFF'S MOTION FOR APPOINTMENT OF A RECEIVER

Plaintiffs Point Bridge Capital, LLC and Hal Lambert ("Plaintiffs") respectfully move the Court to appoint a receiver over the non-exempt assets of Defendant Charles Johnson ("Johnson") to aid in the enforcement of the Court's Final Judgment. In support, Plaintiffs state as follows.

### INTRODUCTION

On July 29, 2025, this Court entered a Final Judgment in favor of Plaintiffs and against Johnson in the amount of $72,033,130, following a jury verdict on Plaintiffs' civil RICO and defamation claims. Johnson has not posted a supersedeas bond. Both this Court and the Fifth Circuit have denied his requests for a stay of enforcement, including his motion for reconsideration. As the Court recognized at the November 10, 2025 show-cause hearing, Plaintiffs are entitled to execute on Johnson's assets to satisfy the judgment.

Johnson has responded by concealing assets, ignoring court orders, and daring Plaintiffs and the Court to stop him. Suspecting that Johnson would try to move his assets to avoid the judgment, Plaintiffs requested that the Court enter an asset-protection order barring dissipation or encumbrance of his property, which the Court granted. Despite that order, Johnson attempted to cash out $1 million in shares of Othram, Inc. through a secret Wyoming LLC. He continued those

efforts even after the Court denied his motion to stay. He has refused to answer postjudgment discovery, has tried to mislead third parties, and has attempted to chill third-party compliance with lawful subpoenas. And at the November 10 show-cause hearing, Johnson effectively told the Court that he would rather go to jail than obey its orders.

Because the ordinary tools of judgment enforcement have been tried and have failed, a tailored federal receivership is the next appropriate step. Under Federal Rules of Civil Procedure 66 and 69 and the Court's inherent equitable power, federal courts—including courts in this Circuit—regularly appoint receivers to preserve and marshal a judgment debtor's assets where, as here, legal remedies are inadequate and there is a real risk that property will be hidden or dissipated. Receivership is proper when there is a clear need to protect a party's interest in property and no lesser tool can do so. That is exactly the situation here.

Plaintiffs therefore ask the Court to appoint Robert L. Webster—a former Assistant United States Attorney and Chief of the Criminal Division with vast white-collar experience—as receiver over Johnson's non-exempt property, with the powers set out in the proposed order.

## ARGUMENT

District courts "ha[ve] the power to appoint a receiver to take possession of the judgment debtor's property" under Federal Rule of Civil Procedure 66. *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 241 (5th Cir. 1997). Receivership "can be utilized when a judgment creditor seeks . . . 'to have the debtor's property preserved from dissipation until his claim can be satisfied.'" *Netsphere, Inc. v. Baron*, 703 F.3d 296, 306 (5th Cir. 2012) (quoting *Santibanez*, 105 F.3d at 241). The "proceedings supplementary to and in aid of judgment or execution . . . must accord with the procedure of the state where the court is located." FED. R. CIV. P. 69(a)(1).

I.  **Plaintiffs are entitled to the appointment of a receiver under federal law.**

When determining whether to appoint a receiver, courts in the Northern District of Texas balance the six factors articulated in *Santibanez v. Wier McMahon & Co.*, 105 F.3d 234 (5th Cir. 1997):

(1) the validity of the claim of the party seeking a receiver;

(2) the probability that fraudulent conduct has occurred or will occur to frustrate that claim;

(3) imminent danger that property will be concealed, lost, or diminished in value;

(4) inadequacy of legal remedies;

(5) lack of a less drastic equitable remedy; and

(6) the likelihood that appointing a receiver will do more harm than good.

*World Fuel Services Corp. v. Moorehead*, 229 F. Supp. 2d 584, 596 (N.D. Tex. 2002); *see also Netsphere*, 703 F.3d at 305 (citing *Santibanez*, 105 F.3d at 241-42) (stating that receivership is justified where "there is a clear necessity to protect a party's interest in property, legal and less drastic equitable remedies are inadequate, and the benefits of receivership outweigh the burdens on the affected parties.").

Under these factors, the appointment of a receiver is warranted where a judgment creditor has a valid claim and there is "a likelihood that fraudulent conduct has occurred or will occur and an imminent danger that [the judgment debtor's] nonexempt property will be concealed, lost, or diminished in value." *State Farm Mut. Auto. Ins. Co. v. Wilkins*, No. 99-cv-2822, 2008 WL 2961344, at *6 (S.D. Tex. July 28, 2008); *see also Ettorre v. Russo's Westheimer, Inc.*, 677 F. Supp. 3d 644, 649 (S.D. Tex. 2023) ("The appointment of a receiver to take possession of any non-exempt property, sell it, and pay the proceeds to the judgment creditor is appropriate in light of what appears to be fraudulent conduct."); *Moorehead*, 229 F. Supp. 2d at 589 (the possibility of

3

fraudulent conduct alone is sufficient to appoint a receiver). Where fraudulent conduct is suspected, generally, "[l]egal remedies are inadequate to protect" the judgment creditor's interests, "there is no less drastic remedy that would be effective; and there is no reason to believe that appointing a receiver will do more harm than good." *Wilkins*, 2008 WL 2961344, at *6.

Here, each of the *Santibanez* factors weighs in favor of appointing a receiver.

> ➢ **Factor 1: Plaintiffs hold a valid, enforceable, and unsatisfied judgment**

The first *Santibanez* factor—the validity of the claim of the party seeking a receiver—is easily satisfied here. There is no dispute that Plaintiffs hold a valid judgment. After Johnson defaulted on liability as a sanction for discovery abuse, a jury found him liable on Plaintiffs' civil RICO and defamation claims, and the Court entered Final Judgment in the amount of $72,033,130. ECF No. 104. Johnson has not posted a supersedeas bond. Both this Court and the Fifth Circuit have denied his requests for a stay, including his motion for reconsideration. There is no stay in place. The judgment is final, enforceable, and unsatisfied. Accordingly, this first factor squarely favors appointment of a receiver.

> ➢ **Factor 2: Johnson's conduct demonstrates a probability of fraudulent or evasive behavior**

The second *Santibanez* factor considers the probability that fraudulent or evasive conduct has occurred or will occur in a way that frustrates collection. Evidence of a probability or risk of such conduct suffices. *See Moorehead*, 229 F. Supp. 2d at 595–96.

Here, the record shows that Johnson attempted to monetize more than $1 million in Othram, Inc. stock through a secret Wyoming LLC, notwithstanding the Court's asset-protection order. *See* ECF No. 115. He did not disclose the LLC or the planned transfer to Plaintiffs or to the Court. The attempt came after the Plaintiffs provided Johnson with the Court's order barring him from selling or dissipating his Othram stock.

Johnson likewise has refused to provide meaningful asset disclosure, despite being served with postjudgment discovery. He has thus far refused to provide his tax returns, bank records, or the type of information that would allow Plaintiffs or the Court to verify his representations about his finances. Moreover, Johnson has publicly and in court signaled that he does not intend to comply with postjudgment discovery and has suggested he would prefer contempt or incarceration to providing a transparent review of his assets and financial information.

Taken together, these facts more than satisfy the concern that fraudulent or evasive conduct has occurred and will continue absent the appointment of a receiver.

> **Factor 3: There is imminent danger Johnson's property will be concealed, lost, or diminished in value.**

The third factor asks whether there is imminent danger that property subject to the judgment will be concealed, dissipated, or diminished in value. That danger is obvious on this record. Johnson has already attempted to liquidate more than $1 million in Othram stock and then launder it through a secret Wyoming LLC, in violation of this Court's asset-protection order. That transaction failed only because Othram and its counsel refused to proceed. Johnson has refused to provide basic financial information and continues to control entities, trusts, and digital-asset accounts that can transfer value with a few keystrokes and minimal trace.

Leaving Johnson in control of these structures while he defies discovery and enforcement obligations presents an ongoing and imminent risk that assets will be concealed or diverted. A receiver is necessary to stabilize the situation, identify Johnson's assets, notify financial institutions and platforms, and prevent unauthorized transfers while enforcement proceeds in an orderly, court-supervised way.

> **Factor 4: Legal remedies and less drastic equitable remedies have failed.**

The fourth and fifth *Santibanez* factors—whether legal remedies are adequate and whether a less drastic equitable remedy is available—also weigh in favor of appointing a receiver. Plaintiffs have already pursued every tool available short of receivership. They sought a detailed asset-protection order and orders compelling Johnson to comply with discovery and multiple show-cause motions. *See, e.g.*, ECF Nos. 52, 57, 60, 67, 68, 73, 118, 119. Nothing has caused Johnson to comply.

Standard legal tools—writs of execution and garnishment—depend on the very information Johnson is withholding and are ill-suited to reaching illiquid private-company equity and digital assets held through opaque entities and platforms. Coercive sanctions alone are unlikely to change his calculus because Johnson has already suggested that he will choose noncompliance, and whatever contempt consequences follow, over providing information on his assets.

In these circumstances, legal remedies are inadequate, and there is no realistic, less drastic equitable tool that will secure cooperation or protect assets. A receiver is the next and necessary step.

> **Factors 5 & 6: The "good" that results from a receivership far outweighs the "harm" to Johnson.**

The final factor asks "the likelihood that appointing a receiver will do more harm than good." *Moorehead*, 229 F. Supp. 2d at 596. Here, the benefits of a receivership substantially outweigh any burdens. The proposed receivership is narrowly tailored. It addresses Johnson's non-exempt property and interests and only to the extent necessary to aid execution of the judgment. The receiver's powers are defined in the proposed order and are subject to ongoing Court supervision, including regular reporting and Court approval for significant liquidations or structural actions.

By contrast, if no receiver is appointed, Plaintiffs face the very real prospect that assets will continue to be hidden, encumbered, or dissipated while Johnson refuses to comply with discovery and continues to exploit opaque structures and digital assets. That outcome would defeat the judgment and reward the misconduct that led to default on liability and the asset-protection order. A carefully structured receivership—as Plaintiffs propose—overseen by this Court, will plainly do more good than harm.

### II.   Texas law further supports the appointment of a receiver.

Because the Judgment is being enforced, at least in part, in Texas, Rule 69 also allows the Court to employ Texas's turnover statute and the Texas Uniform Fraudulent Transfer Act, or TUFTA, as supplementary procedures. Under the Texas Turnover Statute, a court may "appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds to the judgment creditor to the extent required to satisfy the judgment." TEX. CIV. PRAC. & REM. CODE § 31.002(b)(3). The trial court is not "required to identify the property subject to the receiver's authority." *Yancey v. SLJ Co., LLC*, No. 05-21-00404-CV, 2022 WL 17485031, at *4 (Tex. App.— Dallas Dec. 7, 2022, no pet.). Instead, the receiver is authorized to take possession of nonexempt property. *Id.*

Under TUFTA, a creditor "may obtain . . . appointment of a receiver to take charge of the asset transferred or of other property of the transferee." Tex. Bus. Com. Code § 24.008(3)(B). TUFTA "provides a substantive right to unsecured creditors to seek the appointment of a receiver" even before obtaining a judgment. *Biliouris v. Sundance Res., Inc.*, 559 F. Supp. 2d 733, 738 (N.D. Tex. 2008). "These statutes were enacted to provide swift, effective, and uniform remedies against those seeking to `hinder, delay, or defraud creditors.'" *Id.* (quoting TUFTA).

These provisions confirm that appointment of a receiver over a judgment debtor's non-exempt assets is a familiar and appropriate tool in Texas where, as here, the debtor has engaged in evasive conduct and employs complex asset structures that frustrate ordinary execution. The relief Plaintiffs seek under Rules 66 and 69 is therefore not only authorized by federal law, but fully consistent with the Texas judgment-enforcement framework that Rule 69 incorporates.

### III.   Robert L. Webster—former Assistant United States Attorney and former Chief of the Criminal Division—is qualified and should be appointed as receiver.

Mr. Webster is a former Assistant United States Attorney and Chief of the Criminal Division for the Northern District of Texas. (Declaration of Robert Webster ("Webster Decl."), ¶2, Appx. 004). He has practiced law for approximately forty years, including more than two decades as a federal prosecutor and trial attorney with the Department of Justice and nearly two decades in private practice, where he has focused on federal criminal defense and complex white-collar matters. *Id.* In those roles, he has developed extensive experience with white-collar investigations, complex financial structures, and asset tracing. *Id.* He is not counsel for any party to this case, is not related to any party, and has no personal financial interest in the outcome of this litigation beyond court-approved compensation for his services as receiver. (Webster Decl., ¶3, Appx. 004).

Mr. Webster's background aligns with the Court's observation at the November 10, 2025 hearing that any receiver in this case should have federal prosecutorial and white-collar experience. He is well-positioned to operate, manage, and administer Johnson's non-exempt property.

In addition, Mr. Webster will have available, as needed, the assistance of Christy Lee Drake, a former Assistant United States Attorney for the Northern District of Texas—Amarillo Division from 1991 to 2014. (Webster Decl., ¶6, Appx. 005-6). Ms. Drake likewise has decades of experience handling complex federal matters, including white-collar prosecutions and

investigations. *Id.* Her involvement will increase the Receiver's capacity to administer the estate efficiently, including by handling investigative and administrative tasks under Mr. Webster's direction, while allowing the Court to benefit from the combined experience of two longtime federal prosecutors.

## CONCLUSION

Plaintiffs respectfully request that the Court appoint Robert Webster as receiver and authorize all actions, powers, and duties of Mr. Webster as more fully detailed in the attached Proposed Order Appointing Receiver.[1] Pursuant to that proposed order, Mr. Webster shall execute a receiver's oath and Plaintiffs request that no bond be required.

Dated: November 14, 2025

Respectfully submitted,

/s/ *Will Thompson*
Will Thompson
DLA PIPER LLP (US)
Will Thompson
State Bar No. 24094981
will.thompson1@us.dlapiper.com
1900 N. Pearl Street
Dallas, Texas 75201
Telephone: (406) 546-5587

COUNSEL FOR PLAINTIFFS

---

[1] Other Courts in the Northern District of Texas have entered orders appointing receivers with a similar scope of powers and duties. *See, e.g.*, *Antero Res. Corp. v. Kawcak*, 4:23-cv-01167, ECF No. 86 (N.D. Tex Sept. 12, 2025).

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 14, 2025, a true and correct copy was served via the Court's electronic filing system.

/s/ *Will Thompson*
Will Thompson

**CERTIFICATE OF CONFERENCE**

I certify that on November 13, 2025, I conferred with Defendant Charles Johnson regarding the relief requested in this Motion. Specifically, I asked Mr. Johnson multiple times whether he would agree to the appointment of a receiver and whether he would agree to Robert Webster specifically. Mr. Johnson refused to answer my questions and instead responded by threatening to file lawsuits against me and my firm..

/s/ *Will Thompson*
Will Thompson