IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION

| | | |
|---|---|---|
| POINT BRIDGE CAPITAL, LLC ET AL | ) ) | CASE NO. 4:24-CV-00988-P |
| | ) | FORT WORTH, TEXAS |
| vs. | ) | |
| | ) | NOVEMBER 10, 2025 |
| CHARLES JOHNSON | ) | 12:03 P.M. |

VOLUME 1
TRANSCRIPT OF SHOW CAUSE
BEFORE THE HONORABLE MARK T. PITTMAN
UNITED STATES DISTRICT COURT JUDGE

**A P P E A R A N C E S:**

FOR THE PLAINTIFF:          WILLIAM BENNETT THOMPSON
                            DLA PIPER, LLP US
                            1900 N. PEARL STREET
                            Suite 2200
                            Dallas, Texas  75201
                            Telephone:  214.743.4500


PRO SE DEFENDANT:           CHARLES JOHNSON
                            1624 Fieldthorn Drive
                            Reston, Virginia  20194
                            Telephone:  617.429.4718


COURT REPORTER:             MONICA WILLENBURG GUZMAN, CSR, RPR
                            501 W. 10th Street, Room 310
                            Fort Worth, Texas  76102
                            Telephone:  817.850.6681
                            E-Mail:  mguzman.csr@yahoo.com


Proceedings reported by mechanical stenography, transcript produced by computer.

**<u>INDEX</u>**

|                             | PAGE | VOL. |
|-----------------------------|------|------|
| Appearances ................................3 | | 1 |
| Comments by the Court ......................3 | | 1 |
| By Mr. Thompson ............................6 | | 1 |
| By Mr. Johnson ............................13 | | 1 |
| Comments by the Court .....................17 | | 1 |
| Proceedings Adjourned .....................31 | | 1 |
| Reporter's Certificate ....................32 | | 1 |

**P R O C E E D I N G S**

*(November 10, 2025, 12:03 p.m.)*

*THE COURT:* This is Point Bridge Capital, LLC and Hal Lambert vs. Charles Johnson, this is Case Number 4:24-CV-988-P.

Who do I have for plaintiffs?

*MR. THOMPSON:* Well, Your Honor, Will Thompson for the plaintiffs; and with me is Mr. Lambert.

*THE COURT:* Go ahead.

*DEFENDANT JOHNSON:* Mr. Johnson for himself.

*THE COURT:* Okay. Thank you, Mr. Johnson.

Now, we're here today on a show cause hearing. I've had a chance to read it, it's been filed by the plaintiffs. And there have been two supplements related to that motion, which the Court has granted.

Mr. Johnson, you have submitted a few of your emails to the Court's order folder.

*DEFENDANT JOHNSON:* Yes.

*THE COURT:* That is meant for proposed orders only. Any communications with the Court need to come in the form of a formal motion filed as part of the docket. So, it's not appropriate to try and communicate to the Court through the general email box.

And we went through this colloquy several times during our trial and during some of the pretrial proceedings.

I know that you're proceeding pro se and representing yourself, and I am willing to be as liberal with you as I can. But you don't get out of not having to follow the rules. So, anything that you would like to communicate with me and the Court needs to be filed as a matter of record in the form of an appropriate motion.

Again, I will encourage you, whether it's in front of me, whether it's in front of the Fifth Circuit, I would encourage you to try to find some attorney to represent you.

I believe it was Benjamin Franklin that said something -- and I'm sure I'm messing this up, so excuse me if I misstate the quote or misattribute it to Benjamin Franklin. But it's something to the effect that only a fool -- that a man who represents himself in court has a fool for a client.

And I've been a judge now on three different courts, I've been an attorney for 26 years, I would not ever represent myself. We do here, in Tarrant County, have -- at our Tarrant County Bar Association, there are -- have big books and big lists of attorneys who are willing to represent folks, many cases pro bono, which means free of charge. I don't know if you've looked into that, but I would highly encourage you to do so. Many law schools in addition have various clinics in which they take on cases and clients pro bono.

But I thought that this might be a problem and we might be back. When the jury returned the $70 million verdict

against you, I knew that this was not going to be the last time that I would see you.

Now, under the law, unless and until that verdict and judgment is superseded and/or stayed by the appellate court, you owe $70 million to the plaintiffs.  And they can collect immediately until you stay it or supersede it.

There's a thing called a supersedeas bond, which you don't have to pay the entire $70 million, but you can pay a bond to stave off the collection of the judgment.  Now, to my knowledge, that has not taken place in this case, nor has there been any stay issued by the Fifth Circuit.

So, the Court is left in a situation where you have a $70 million judgment against you, and under the rules that we are governed by and under the law, the plaintiffs can take appropriate action to try to collect their judgment immediately.  And we have rules that provide for post-judgment discovery to try and discover what type of assets that you have out there, Mr. Johnson, and where those are, where they're located, can they be collected under the law, have you been moving them around to various other places that you weren't supposed to.

So, given your behavior in the prior lawsuit, I'm, frankly, not surprised that we're back here today.  But much like our proceedings in the lawsuit, I don't have a lot of patience, given how busy we are here in Fort Worth, to deal

with this.  The legal obligation is clear, whether you're pro se or whether you're represented by the most expensive law firm in the country, you have an outstanding judgment that has not been stayed nor superseded, they're entitled to get information to try to collect on their judgment.

Now, if I'm missing something I'm sure you'll tell me.  But why don't I do this, I'll turn it over to Mr. Thompson, and you can tell me if I'm missing anything, and then we'll hear from Mr. Johnson, and then I'll try to give us a good path going forward.  And hopefully we can take a break, so I can prepare for my trial that's coming up immediately after this hearing.

*MR. THOMPSON:*  Thank you, Your Honor.  I'll be really brief.

Just -- just to set the stage for the procedural posture.

*THE COURT:*  And I'll just say, I don't have time for conspiracy theories involving the Mormon Church, Elon Musk, or members of the Israeli Government or FBI secret agents.

*(Defendant laughing)*

*THE COURT:*  And you can laugh and giggle all you want, but that's the way it is.  These are serious matters. You can do your conspiracies all you want, don't waste my time with them here.  So, we need to make a legal argument when we come up, not stuff that you'd put on your Substack or Twitter

account.

And you're already in trouble with the Judge in New York, and you've been in trouble with me.  That's why I'm encouraging you get an attorney, because this doesn't get any better.

Go ahead.

MR. THOMPSON:  Two quick points, Your Honor.

Number one, as we brought out in Trial Exhibit 64, we believe Mr. Johnson has substantial assets in the tens of millions of dollars.  Turns out he does have at least a million dollars in the stock called Othram.  We believe that he would try to put those assets beyond the reach of the plaintiffs.

So, prior to judgment, we specifically moved for an order barring Mr. Johnson from dissipating or transferring or moving any assets; that's Docket Entry 103.  It's pretty clear, we think, based on the record that we brought out in the show cause motion, that Mr. Johnson actively is trying to move those Othram assets or cash them out, and then place them in a secret Wyoming LLC that has, I don't think, any purpose other than to try to evade the judgment.  So, that's --

THE COURT:  That's sort of the -- if that's true, isn't that the definition of wire fraud?

MR. THOMPSON:  Yes, Your Honor.

And the purpose --

*THE COURT:*  Which is a Federal offense.

*MR. THOMPSON:*  So, from a procedural perspective, we have Mr. Johnson, I think, unequivocally violating that specific order.

Also, we have Mr. Johnson, as he's done through this entire case, refusing, you know, repeatedly saying he's not going to participate in any discovery.  We've given him every opportunity to.  We've said we don't want to put him in jail. We have his noncompliance with post-judgment discovery, as Your Honor pointed out we are entitled to take.

Right now that is not ripe from a contempt perspective, and that's why the plaintiffs filed Docket Entry 119, which is a motion to compel Mr. Johnson to answer interrogatories, sit for a deposition, and also produce --

*THE COURT:*  What have been some of the efforts, at least describe them.  I've read all of your briefing, but describe some of your efforts to try to get Mr. Johnson to participate, as he's required to do so, in the discovery process.

So, we had all of this to be dealt with during the case in chief, and here we go again.  It's deja vu all over again, to quote Yogi Berra.

*MR. THOMPSON:*  Yeah, it's the same story, Your Honor.

Plaintiffs repeatedly reached out to Mr. Johnson via

email.  We served him with interrogatories, the interrogatories were straightforward, there was just two of them.  It just said, Identify your bank accounts, and your banking information, and also your crypto holdings, which Mr. Johnson has subsequently posted about.  You know, suggesting he bought crypto bitcoin when it was 3,000, now it's over 100,000; suggesting, you know, he's making all this money off of it.

And we requested that he sit for deposition multiple times.  Mr. Johnson said, under no circumstances would he do that, he laughed at it.  I think he said, You can try, good luck with that.  I said, Mr. Johnson, I don't want to see you in jail, that's not our intent here.  He says, I have no problem, I spent time in supermaxes, I'm not -- it will give me time, I think, to work out and write my novel.

And we gave him weeks, in fact, to comply before --

THE COURT:  I'm not sure if Johnson County Jail, where we hold our folks in contempt, would allow you to write your novel.

What do you think, Officer?  Do you think you can -- it would be a good idea to be spending your time writing a novel while you're in Johnson County Jail?

SECURITY OFFICER:  They wouldn't permit it.

THE COURT:  Yeah.  Probably would not be permissible, I would think.  Probably not a pleasant place to

go.

MR. THOMPSON: And final thing, Your Honor, just to note, I don't like inserting myself into this, but Mr. Johnson has made -- first off, he's repeated his defamatory attacks against Mr. Lambert, continuing the same -- you know, the same conduct that resulted in the jury entering the massive judgment or verdict against him.

He's repeatedly threatened bar complaints against myself, personal lawsuits against myself. And in sort of thinly veiled threats saying I need to -- if I don't do the right thing, bad things will happen to myself and my career.

He made one of those threats in September. Three hours later I had an email from a man named Arthur Bloom, who posts positively -- or I'd call a comrade of Mr. Johnson. And Mr. Bloom, this guy's name, said that in this courtroom I called -- Mr. Johnson repeated it in a Substack, and I believe on a podcast or something, saying I called this internet Substack poster a vile anti-Semite. That's just categorically untrue, I looked it up, you know, in the transcript.

But it just shows the extent that Mr. Johnson is not only just not doing sort of basic, generic, the no -- noncompliance with post-judgment discovery and his obligations --

THE COURT: He's continuing to defame folks.

MR. THOMPSON: He's continuing to defame folks and

he just keeps ratcheting up the -- his conduct.  And just yesterday, Mr. Johnson -- you know, he treats this as a joke. He said that, you know -- first off --

THE COURT:  Can I stop you?

MR. THOMPSON:  Sure.

THE COURT:  Have you thought about making one more effort to try to get some of this discovery?  I think the only way you're ever going to be able to collect on this, is you have to seek the appointment of a receiver over his assets. And I've been down this road before.  And have you looked into doing that?

And I would suggest, if you do consider doing that, you need to find or at least recommend a receiver who has some white-collar-type experience that's used to this sort of thing.

I am concerned, A, I don't feel comfortable sua sponte appointing a receiver.  But B, at the end of the day you need to try to collect your judgment.

Now, sticks and stones may break my bones, but words will never hurt me.  The real thing is, is trying to collect on your judgment.  So, tell me what efforts, other than -- if -- past his prologue, my guess is you're going to have a hard time getting any answers to any type of discovery.

So, what are you thinking?

MR. THOMPSON:  Well, first off, Your Honor, I agree

with the sticks and stones part; I've got thick skin.

So, as to the specific collection, I think step one is trying to get a handle on what assets he actually has. He's, you know, done his best to conceal it. These Othram shares, I directly messaged Mr. Johnson, and in very stark terms I said, Mr. Johnson, are you trying to sell your Othram shares? And he refused to answer. I asked him probably --

THE COURT: And do you understand the beauty of a receiver would be they would be able to look into that, and if there was a fraudulent transfer, they would turn around and sue that purchaser?

MR. THOMPSON: Yes, Your Honor.

THE COURT: My only concern, are there enough assets out there that would justify appointing a receiver. So, that's why I asked have you-all considered doing that. Unless and until you take his ability to hide these assets and get a real working knowledge of what his finances are, this is going to continue.

I don't want to look like Judge McBryde up there in that portrait and still be dealing with this.

MR. THOMPSON: Yes, sir.

THE COURT: It's the same reason I struck his pleadings and went to the trial. These type of shenanigans, I just -- I don't have the time for this, we're just too busy.

MR. THOMPSON: I understand, Your Honor.

*THE COURT:*  Because, as I said, I've got to break you here in a few minutes to go to trial.

But that's what I want you to think about.  I'd like to hear from Mr. Johnson.

*DEFENDANT JOHNSON:*  Thank you, Your Honor.

*THE COURT:*  He does have a right to speak.  Be sure you speak at the microphone.

*DEFENDANT JOHNSON:*  Of course.

*THE COURT:*  -- no, at the podium.  You need to come over to the podium.  Please, at the podium.

*DEFENDANT JOHNSON:*  Yeah, of course.

*THE COURT:*  So, you've been accused of not participating in the post-judgment discovery.  You've been accused of continuing to engage in the same type of conduct that got a $70 million jury verdict against you.

You obviously can have a First Amendment right to speak, I don't want to take that away from you.  But you don't necessarily have the right to defame folks.

*DEFENDANT JOHNSON:*  Well --

*THE COURT:*  And if you recall, the jury did come back and find that's what you were doing.  Sounds like, based on what I'm hearing and the evidence that's been submitted, you're continuing to do that.

Is that smart?

*DEFENDANT JOHNSON:*  Well, Your Honor --

*THE COURT:* Like it or not --

*DEFENDANT JOHNSON:* -- I filed a motion --

*THE COURT:* -- you don't have an order from the Fifth Circuit reversing me. And if you're going to tell me about the motions you filed up there at the Fifth Circuit, those haven't been ruled on.

*DEFENDANT JOHNSON:* They have not.

And by the way, I have no intention whatsoever of sitting for discovery or harassment. What we've seen throughout this process has been an effort by Mr. Lambert's backers to come after me and my assets, to harass people I do business with.

*THE COURT:* Well --

*DEFENDANT JOHNSON:* Pretty obvious.

*THE COURT:* -- you have a $70 million verdict against you.

*DEFENDANT JOHNSON:* I do. Actually, I think it's 71, Your Honor --

*THE COURT:* They --

*DEFENDANT JOHNSON:* -- to be precise.

*THE COURT:* They have a right to try to collect it. So, what you may consider to be harassing behavior, sounds like, to me, it's just lawyers doing what they're supposed to do.

*DEFENDANT JOHNSON:* I have no objection whatsoever.

But as I said before, I also have no objection to eventually going to Johnson County Jail and highlighting the abuses here. In fact, I would welcome it.

*THE COURT:* Deputy Perrill.

*THE MARSHAL:* Yes, sir.

*THE COURT:* This gentlemen seems to have a hard time understanding just what it's like to go to Johnson County. We heard earlier he thinks it might be a good place to go work on his book.

How long have you been a United States Marshal?

*THE MARSHAL:* Eighteen years, sir.

*THE COURT:* What's it like being held in contempt and staying in Johnson County until you purge yourself of that contempt? Is it someplace you go to relax and write a book?

*THE MARSHAL:* No, sir. Johnson is a place you don't want to go or in the custody of the United States Marshals. They control everything you do, every move you make, everything has to be asked. There's no freedom.

*THE COURT:* Would it be anything any rational person would look forward to doing?

*THE MARSHAL:* No, sir, Your Honor.

*THE COURT:* Not much fun.

You get told when to have lunch -- probably when to go to the bathroom; is that correct?

*THE MARSHAL:* Yes, sir.

THE COURT: So, I've got these two gentlemen here that are willing to take you in and hold you in contempt until you purge yourself of it. But you can't just avoid the judgments, you can't just not comply with the rules.

DEFENDANT JOHNSON: Well, I prefer waiting until the Fifth Circuit has exhausted all of my options for an appeal.

I have filed several things with the Fifth Circuit, they're quite good briefs. I didn't ask for a delay, I got it in on time, November 3rd. Mr. Thompson did ask for a delay with considerably more resources than I have.

I would argue that what's going on here is an abuse of process. And that really the one who should be sanctioned here is Mr. Thompson, not me.

THE COURT: Well, let me ask you something. You had a mechanism in place to stay the post-judgment proceedings, and that was to pay for a supersedeas bond or to ask the Fifth Circuit to stay.

Now, your briefs down there at the Fifth Circuit, it may very well be two to three years before we hear back on what their decision is, and whether they decide to reverse the jury in this case. But until then, until you've superseded the judgment, under the rules Mr. Lambert is entitled to post-judgment discovery and entitled to come and collect his judgment.

So, what have you done to try to look into staying

the execution of the --

DEFENDANT JOHNSON:  Well, I filed --

THE COURT:  -- judgment?

DEFENDANT JOHNSON:  Well, I filed a motion and stay of judgment, which I'm happy to give to Your Honor.  I think -- for some reason I don't have access to being able to efile, but I do have a copy of it, if you would like.

THE COURT:  I think I read it on the Supreme -- not Supreme Court, Lordy mercy.  On the Fifth Circuit website as I was preparing for this case.  My understanding is the Court hasn't ruled on that.

DEFENDANT JOHNSON:  That's correct.  And they haven't ruled on my appellant's brief either.

THE COURT:  Mr. Thompson, have you-all responded to the motion to stay?

MR. THOMPSON:  No, Your Honor.  We first saw -- the pending motion to stay just got docketed late Friday.

THE COURT:  Okay.

MR. THOMPSON:  Late -- a couple of days ago.

THE COURT:  So, this is what I'm thinking.  I'm thinking you need to show up for your deposition and bring all your finances, all your information about where all your holdings are, in my jury room down here at 8:30 next Monday. I don't know what that date is.

Aiden -- or Captain Yamada, do we know what date

next Monday is?

I think you need to do that.  And I think you need to stay until Mr. Thompson gets the answers that he wants.  Then I think it might be something that Mr. Thompson needs to consider, whether a receiver ought to be appointed so we don't have to deal with this.

And if the Fifth Circuit reverses, we will do what the Fifth Circuit says.  But short of sending you away today so you could come out and then post on your Substack, and as I said making you a martyr, I'm not sure that I have any other option, other than to try this and see what happens.

But if we find out between now and then that you've done anything to hide or dissipate these --

*DEFENDANT JOHNSON:*  Your Honor, I -- I was not hiding --

*THE COURT:*  Please don't --

*DEFENDANT JOHNSON:*  -- my assets.

*THE COURT:*  -- interrupt.

I said if we find out anything on that, you're going to be in a lot of trouble, because you can't do that.  You can't go and hide assets.

You have a $71 million judgment, it has not been superseded.  You're required under the law to participate in post-judgment discovery, you have not done so.  You have a history of not complying, you have a history of being

threatened with a contempt.

My marshals have a lot of other things that they need to worry about.  We have currently some very contentious prosecutions that are going on.  We recently had a shooting down at an ICE facility down south of town, and several of those folks, I'm sure, are probably still being looked for.

And I would rather have the United States Marshals Service going and finding fugitives and folks that are violently engaging in violations of criminal law, quite frankly, than having to deal with you and your shenanigans. We just don't have time for this.

*DEFENDANT JOHNSON:*  I agree, Your Honor.

But I was preserving my assets, because Mr. Lambert has his own judgments that he's facing.

*THE COURT:*  Well, if you're talking about the case up in New York, it sounds like, to me, you're probably going to get nailed up there, too.

*DEFENDANT JOHNSON:*  No, Your Honor.  I was talking about the cases in the European Union.

*THE COURT:*  Well, I don't know anything about European law.  I'm only licensed in Texas, I'm just a poor dumb Texas Aggie.  And I can just tell you, I can just rule on what's in front of me.

But that would be how I would proceed.  And I'd like to hear from Mr. Thompson.  So, you need to be back here on

Monday to take your deposition.

And then I would like to see the possibility of filing a receivership motion, and then we don't have to deal with this.  We can just sort out who owes what.

What do you think?  What's subject to the judgment, what's not.

*MR. THOMPSON:*  Your Honor, no objections to that plan.

As to that specific stock that Mr. Johnson tried to sell for a million dollars, the buyer or the counter-party is aware of the Court's order, so is not going through with that.

*THE COURT:*  Yeah.

*MR. THOMPSON:*  So, I think --

*THE COURT:*  But do you see the beauty of a receiver?

*MR. THOMPSON:*  I hear the Court loud and clear on receiver.  That's -- that's certainly the next ratchet up that we were preparing.

*THE COURT:*  But I think that needs to be done sooner rather than later.  I don't want to be here after the new year dealing with this.

*MR. THOMPSON:*  I understand.

*THE COURT:*  This is -- this is one roadblock after another.  And we're -- we're too busy for this.  I need to get the ball rolling.  And I want you to try to take the discovery that you think you need.  And, you know, best case scenario,

Mr. Johnson actually participates.

But the fact of the matter is, your client has a $71 million judgment, and we need to do what we can to preserve the assets, and go after any of those assets that may have been dissipated.  And the receiver would have the ability, as an appointed officer of the Court, to do so.

The only thing that I would tell you, if you'd please make a recommendation of one or two possible receivers. I think someone with some significant white collar prosecution experience.  There's several former U.S. Attorneys that are out there right now in this world doing white collar investigations and the like that would be appropriate to look into this in the Dallas/Fort Worth area.

And I'll take a look at who you recommend, if you do decide to do that and I find that it's appropriate.  But I don't want to be fighting these discovery motions from now until the end of time.

It's better -- you know, it would be a totally different situation, obviously, if we had a proper superseded judgment here, but we don't.  So, your client has an outstanding judgment, he's entitled to this discovery, let's get it rocking and rolling.

MR. THOMPSON:  Message -- Your Honor, message received.

THE COURT:  Okay.  Then I will be crafting an

appropriate motion *(sic)*.

And if I was not in trial, I would probably be ordering the deposition to take place sooner.  But I'm in trial until Friday and I need my jury room.  Next week it will be free.

So, are you available, Mr. Thompson, on Monday?  Are you and your client available for the deposition in the jury room?

*MR. THOMPSON:*  I don't think my client's available, but we'll make any date work when we can get Mr. Johnson.

*THE COURT:*  All right.  And we'll have the Judge that'll be here, and we'll also have our deputies that are here to hold anyone in contempt or decide any motions if we need to.

And quite frankly, Mr. Johnson, you're going to be ordered to be here whether it's convenient or not.  There have been too many actions -- I've had to strike your pleadings in this case, I don't have the patience for this.  So, you need to be back here in the courthouse, 8:30 on Monday.  And we'll have some court security people escort you to my jury room.

And you-all can stay until all the information that the attorney needs is gathered to what he feels is -- he needs to learn about your assets, collect the judgment.  And if you're honest with him, and it turns out that either -- you don't have assets, then this is all for naught.

*DEFENDANT JOHNSON:* Your Honor --

*THE COURT:* But you have to tell the truth. And you're under oath taking a deposition. And if you lie in a deposition, you can be held in contempt of court, and you can be charged with perjury, just like you were giving a statement here in the courtroom. So, you need to be aware of that.

*DEFENDANT JOHNSON:* Sure.

*THE COURT:* So, I would be extra, extra special certain I told the whole truth and nothing but the truth.

I want to, again, encourage you to try and find some sort of legal representation, somebody that's licensed here in the State of Texas, someone that's here locally. Or some of your many contacts that you've told us about, I bet that there's one attorney that you can at least call and say, I am really afraid that I can't proceed the way that I need to, I need somebody there that can give me some legal advice.

Given the current situation that you're in, you might want to consider somebody who has some criminal defense experience. But I would not want to come in and give my deposition under oath without an attorney if I had a $70 million judgment hanging over my head and I wasn't participating on what I was. But that's just me. It's up to you to make your own decision. But I've been doing this for quite a while.

All right. We'll enter an order later today.

*DEFENDANT JOHNSON:* Your Honor --

*THE COURT:* Yes.

*DEFENDANT JOHNSON:* -- if I may.

*THE COURT:* You need to stand when you address the Court.

*DEFENDANT JOHNSON:* Sorry.

My -- my ex-wife and daughter have a separate trust. And some of these assets that were going to be moved to Wyoming was to preserve the assets, not to sell them. And so, this is important, because --

*THE COURT:* Can I stop you?

That's perfectly fine. And if those aren't subject to something that can be collectible by the judgment, they're not entitled to it.

*DEFENDANT JOHNSON:* May we have an order to that effect? Because Mr. Thompson has been harassing the attorney.

*THE COURT:* Well, maybe because you haven't disclosed what it is. So if you have -- you need to disclose all of the assets, not only that you have, but maybe related to entities.

And Mr. McCoy -- I'm sorry, it's just one of those days. Mr. Thompson is just like me, we have to follow the law, we took an oath to do so. We have provisions that say what is and is not collectable. So, if it's an asset that is noncollectable under a judgment or maybe it's protected from

bankruptcy law, it's not anything that he can collect on.  But you have to identify those before that decision can be made.

DEFENDANT JOHNSON:  Your Honor --

THE COURT:  You have to be honest --

DEFENDANT JOHNSON:  I have been perfectly honest with the Othram stock.

But if I may, Your Honor, I made it very clear that the assets that I was selling involved the trust of an eight-year-old girl.

THE COURT:  Well, probably not a good idea to go and sell stuff.

DEFENDANT JOHNSON:  I was not selling anything.  I was preserving assets, because Mr. Lambert is, himself, facing a rather large judgment.

THE COURT:  Well, I don't know what he's facing, he's --

DEFENDANT JOHNSON:  If I'm in a situation --

THE COURT:  -- he's not before me.  I can only make a judgment on cases and controversies before me.  And right now you're looking at a $71 million judgment that you haven't superseded and you're not providing the information that you need to.

So, when you come on Monday, I want you to tell the good, the bad, and the ugly.  And then if it's something that, for instance, belongs to your daughter, not you individually,

I can tell you that if Mr. Lambert and Mr. Thompson try to collect that from you that I would say no --

*DEFENDANT JOHNSON:*  I appreciate that.

*THE COURT:*  -- that that's not collectible.

*DEFENDANT JOHNSON:*  I appreciate that, Your Honor.

But if I may, what's happened in this particular case, as concerns the Othram stock, is particularly relevant. Because what happens is that simply disclosing all of my assets can imperil the operations of those businesses.

So, for example --

*THE COURT:*  Look, I'm not in the mood to buy that. You need to disclose every single thing that -- any assets that you have.

I've got to get busy with my trial.  But this -- if you're going to say -- give me this whole song and dance about how it's top secret or whatever --

*DEFENDANT JOHNSON:*  No.  I mean, we literally have a situation where the lawyer -- DLA Piper represents Tesla, Tesla is owned by Elon Musk, Gigafund is on the board, Gigafund is a Musk entity.  So, we have a situation of interlocking interests and conflicts of interest.

The only reason I moved my assets over to a Wyoming trust -- which, by the way, is not a criminal offense.  My grandmother was born in Wyoming.  I'm wearing a cowboy tie.  I like Wyoming quite a bit, I use it for a lot of my affairs.

The only reason I would do that is to preserve an asset.

And so, we have a situation here where I'm being harassed to coming back and forth to Texas.  Now, I don't mind, I've been very generous, I've allowed the plaintiff to -- to allow to -- to do it from teleconferencing.

I've been very generous with Mr. Thompson and his mother -- where his mother was ill.  I came down -- when my mother had a broken arm, and came down here.

So, I have an issue here, and this does seem like a harassing pattern.

THE COURT:  Well, you --

DEFENDANT JOHNSON:  And I think we need to be honest about that.  You, yourself, have argued recently in the open AIX lawsuit that there's a forum shopping issue going on here, and that's what's happening here with Your Honor.

Now, I've written a letter to Your Honor, and I'm happy to give it to opposing counsel as well, I have no issues with that.

THE COURT:  Well, you can't write letters to me or emails to me.  That's ex parte communication.  I don't know what --

DEFENDANT JOHNSON:  No, I can share it with him as well, right, is my understanding.

THE COURT:  Well, you're not going to can share, you are going to share it.  I'm not sure what you're talking

about.

I don't have time for this. You're going to show up Monday, you're going to disclose all of your assets. And if you don't, I'm going to hold you in contempt of court, okay?

Here's something you ought to think about. If you think that these folks are harassing you, you might even consider agreeing to a receiver. A receiver is a court-appointed --

*DEFENDANT JOHNSON:* I have no objection to that. We can do that right now, Your Honor. And I have no objection to all of my assets being --

*THE COURT:* Do you understand that a receiver has control of all of your assets?

*DEFENDANT JOHNSON:* I have no objection to that. And I have no objection to all of my assets going to a Federal trust as well. No objection whatsoever.

*THE COURT:* Okay. Well, I have a little bit of hesitancy sua sponte doing it.

I think you need to get an idea on Monday what's out there, then make the appropriate motion. If it's agreed to, it's agreed to. But I think try to pick an independent former Federal prosecutor with some white collar experience that is not going to break the bank when it comes to being paid to do it. But I want to make sure that there's enough out there to justify a receiver. Because receivers should not have to work

for the Court for free.

*DEFENDANT JOHNSON:*  Your Honor, if I may.

Could we have a motion, too, on this case, that the assets -- the Othram assets that belong to my ex-wife and daughter go to them?

*THE COURT:*  If you file whatever motion you like, I would take a look at it.

But as for now, I've got 14 jurors that are waiting, I see my defense counsels are out there waiting to get set up. I don't have any more patience for this.

*DEFENDANT JOHNSON:*  No objection.

*THE COURT:*  All right.  We'll enter an appropriate order today.  But you're going to show up 8:30 Monday.

Do you understand?

*DEFENDANT JOHNSON:*  I do, Your Honor.

*THE COURT:*  Okay.  I won't be happy if you don't show up.

Any questions for me?

*MR. THOMPSON:*  Your Honor, I'm sorry.

Mr. Johnson has some bloggers here, I just want to emphatically state that we never harassed him, everything was sought via subpoena.  And Mr. Lambert is not facing any outstanding --

*DEFENDANT JOHNSON:*  That's not true.

*THE COURT:*  I hope --

*DEFENDANT JOHNSON:* He's facing an outstanding judgment in --

*THE COURT:* Listen, please be quiet.

I don't have patience for this. And I don't care what the bloggers say or whatever. There has to be other more important things to report on. We've got so much going on in the country today, I can't believe you'd waste time on this.

The fact of the matter is, we had 12 citizens here that entered a $71 million judgment against you. These are random people that came here, randomly selected from across the Fort Worth Division, I believe we have had a couple that came all the way out from West Texas to come up here and hear this case. The evidence was overwhelming, they entered their judgment. You haven't superseded it. You have to participate as they try to collect. Regardless of what it says on a blog, that's the law as it has been forever.

And I'm sorry if you don't like it. Again, I encourage you, please, please, please consider finding an attorney. Even if it's someone that has a law license that would represent you for free is better than nothing. Because I think you have a tendency to go chasing rabbits down rabbit trails and not focusing on what you have to do under the law, and it's only going to get you into more trouble.

And as I said, we're way too busy. And I've got my lawyers out here that are ready to get started. I've got some

good folks out here that weren't forced to be here, they're doing it out of their civic duty to come and serve on my jury, and I don't want to keep them waiting, okay?

All right.  The case will be -- the Court will stand in recess.

*(Proceedings Adjourned)*

REPORTER'S CERTIFICATE

I, Monica Willenburg Guzman, CSR, RPR, certify that the foregoing is a true and correct transcript from the record of proceedings in the foregoing entitled matter.

I further certify that the transcript fees format comply with those prescribed by the Court and the Judicial Conference of the United States.

Signed this 16th day of November, 2025.


/s/Monica Willenburg Guzman
Monica Willenburg Guzman, CSR, RPR
Texas CSR No. 3386
NCRA No. 32278
Official Court Reporter
The Northern District of Texas
Fort Worth Division


CSR Expires:        7/31/2027

Business Address:   501 W. 10th Street, Room 310
                    Fort Worth, Texas  76102

Telephone:          817.850.6681

E-Mail Address:     mguzman.csr@yahoo.com

DEFENDANT JOHNSON: [43]
**MR. THOMPSON: [22]**  3/7 6/13 7/7 7/24 8/2 8/23 10/2 10/25 11/5 11/25 12/12 12/21 12/25 17/16 17/19 20/7 20/13 20/15 20/21 21/23 22/9 29/19
**SECURITY OFFICER: [1]**  9/23
**THE COURT: [72]**
**THE MARSHAL: [5]**  15/5 15/11 15/15 15/21 15/25

**$**

**$70 [7]**  4/25 5/5 5/8 5/13 13/15 14/15 23/21
**$71 [4]**  18/22 21/2 25/20 30/9

**/**

**/s/Monica [1]**  32/11

**1**

**10 [2]**  1/6 3/2
**100,000 [1]**  9/7
**103 [1]**  7/16
**10th [2]**  1/19 32/17
**119 [1]**  8/13
**12 [1]**  30/8
**12:03 [2]**  1/6 3/2
**14 [1]**  29/8
**1624 [1]**  1/16
**16th [1]**  32/9
**1900 [1]**  1/13

**2**

**20194 [1]**  1/17
**2025 [3]**  1/6 3/2 32/9
**2027 [1]**  32/16
**214.743.4500 [1]**  1/14
**2200 [1]**  1/13
**26 [1]**  4/16

**3**

**3,000 [1]**  9/6
**310 [2]**  1/19 32/17
**32278 [1]**  32/12
**3386 [1]**  32/12
**3rd [1]**  16/9

**4**

**4:24-CV-00988-P [1]**  1/4
**4:24-CV-988-P [1]**  3/5

**5**

**501 [2]**  1/19 32/17

**6**

**617.429.4718 [1]**  1/17
**64 [1]**  7/8

**7**

**7/31/2027 [1]**  32/16
**71 [1]**  14/18
**75201 [1]**  1/14
**76102 [2]**  1/20 32/17

**8**

**817.850.6681 [2]**  1/20 32/18
**8:30 [3]**  17/23 22/19 29/13

**A**

**ability [2]**  12/16 21/5
**able [3]**  11/8 12/9 17/6
**about [15]**  9/5 11/6 13/3 14/5 17/22 19/3 19/15 19/19 19/20 22/23 23/13 26/15 27/13 28/1 28/5
**abuse [1]**  16/11
**abuses [1]**  15/2
**access [1]**  17/6
**account [1]**  7/1
**accounts [1]**  9/3
**accused [2]**  13/12 13/14
**across [1]**  30/10
**action [1]**  5/15
**actions [1]**  22/17
**actively [1]**  7/18
**actually [3]**  12/3 14/17 21/1
**addition [1]**  4/22
**address [3]**  24/4 32/17 32/19
**Adjourned [1]**  31/6
**advice [1]**  23/16
**affairs [1]**  26/25
**afraid [1]**  23/15
**after [5]**  6/12 14/11 20/19 20/22 21/4
**again [5]**  4/7 8/21 8/22 23/10 30/17
**against [9]**  5/1 5/13 10/5 10/7 10/8 10/9 13/15 14/16 30/9
**agents [1]**  6/19
**Aggie [1]**  19/22
**ago [1]**  17/19
**agree [2]**  11/25 19/12
**agreed [2]**  28/20 28/21
**agreeing [1]**  28/7
**ahead [2]**  3/9 7/6
**Aiden [1]**  17/25
**AIX [1]**  27/14
**AL [1]**  1/4
**all [26]**  6/21 6/23 8/16 8/20 8/21 9/7 12/15 16/6 17/14 17/21 17/22 17/22 22/11 22/21 22/21 22/25 23/25 24/19 26/8 28/3 28/11 28/13 28/15 29/12 30/12 31/4
**allow [2]**  9/18 27/5
**allowed [1]**  27/4
**already [1]**  7/2
**also [5]**  8/5 8/14 9/4 15/1 22/12
**am [3]**  4/2 11/16 23/14
**Amendment [1]**  13/16
**another [1]**  20/23
**answer [2]**  8/13 12/7
**answers [2]**  11/23 18/3
**anti [1]**  10/18
**anti-Semite [1]**  10/18
**any [17]**  3/20 5/11 7/4 7/16 7/20 8/7 11/23 11/23 15/19 18/10 21/4 22/10 22/13 26/12 29/10 29/18 29/22
**anyone [1]**  22/13
**anything [8]**  4/4 6/8 15/19 18/13 18/19 19/20 25/1 25/12
**appeal [1]**  16/6
**appellant's [1]**  17/13
**appellate [1]**  5/4
**appointed [3]**  18/5 21/6 28/8
**appointing [2]**  11/17 12/14
**appointment [1]**  11/9
**appreciate [2]**  26/3 26/5
**appropriate [8]**  3/22 4/6 5/15 21/12

**are [26]**  4/18 4/19 5/14 5/18 5/25 6/22 8/10 11/24 12/6 12/16 12/18 17/2 17/23 19/4 19/6 19/8 21/10 22/6 22/6 22/12 27/25 28/6 29/8 29/9 30/9 30/25
**area [1]**  21/13
**aren't [1]**  24/12
**argue [1]**  16/11
**argued [1]**  27/13
**argument [1]**  6/24
**arm [1]**  27/8
**around [2]**  5/20 12/10
**Arthur [1]**  10/13
**ask [4]**  16/8 16/9 16/14 16/16
**asked [3]**  12/7 12/15 15/18
**asset [2]**  24/24 27/1
**assets [31]**  5/17 7/9 7/12 7/16 7/19 11/9 12/3 12/13 12/16 14/11 18/17 18/21 19/13 21/4 21/4 22/23 22/25 24/8 24/9 24/19 25/8 25/13 26/9 26/12 26/22 28/3 28/11 28/13 28/15 29/4 29/4
**Association [1]**  4/18
**attacks [1]**  10/4
**attorney [8]**  4/9 4/16 7/4 22/22 23/14 23/20 24/16 30/19
**attorneys [2]**  4/19 21/10
**available [3]**  22/6 22/7 22/9
**avoid [1]**  16/3
**aware [2]**  20/11 23/6
**away [2]**  13/17 18/8

**B**

**back [7]**  4/25 5/23 13/21 16/19 19/25 22/19 27/3
**backers [1]**  14/11
**bad [2]**  10/11 25/24
**ball [1]**  20/24
**bank [2]**  9/3 28/23
**banking [1]**  9/4
**bankruptcy [1]**  25/1
**bar [2]**  4/18 10/8
**barring [1]**  7/15
**based [2]**  7/17 13/21
**basic [1]**  10/21
**bathroom [1]**  15/24
**be [54]**
**beauty [2]**  12/8 20/14
**because [11]**  7/4 13/1 18/20 19/13 24/10 24/16 24/17 25/13 26/8 28/25 30/20
**been [25]**  3/13 3/14 4/15 4/16 5/11 5/20 6/4 7/3 8/15 11/10 13/12 13/13 13/22 14/6 14/10 15/10 18/22 21/5 22/17 23/23 24/16 25/5 27/4 27/6 30/16
**before [8]**  1/9 9/16 11/10 15/1 16/19 25/2 25/18 25/19
**behavior [2]**  5/22 14/22
**being [7]**  15/12 17/6 18/25 19/6 27/2 28/11 28/23
**believe [6]**  4/10 7/9 7/11 10/16 30/7 30/11
**belong [1]**  29/4
**belongs [1]**  25/25
**Benjamin [2]**  4/10 4/12
**BENNETT [1]**  1/12

**B**

Berra [1] 8/22
best [2] 12/4 20/25
bet [1] 23/13
better [3] 7/5 21/18 30/20
between [1] 18/12
beyond [1] 7/12
big [2] 4/18 4/18
bit [2] 26/25 28/17
bitcoin [1] 9/6
blog [1] 30/15
bloggers [2] 29/20 30/5
Bloom [2] 10/13 10/15
board [1] 26/19
bond [3] 5/7 5/9 16/16
bones [1] 11/19
bono [2] 4/20 4/23
book [2] 15/9 15/14
books [1] 4/18
born [1] 26/24
bought [1] 9/6
box [1] 3/23
break [4] 6/10 11/19 13/1 28/23
BRIDGE [2] 1/4 3/3
brief [2] 6/14 17/13
briefing [1] 8/16
briefs [2] 16/8 16/18
bring [1] 17/21
broken [1] 27/8
brought [2] 7/8 7/17
business [2] 14/12 32/17
businesses [1] 26/9
busy [5] 5/25 12/24 20/23 26/14 30/24
buy [1] 26/11
buyer [1] 20/10

**C**

call [2] 10/14 23/14
called [4] 5/7 7/11 10/16 10/17
came [4] 27/7 27/8 30/10 30/12
can [34]
can't [7] 16/3 16/4 18/20 18/21 23/15
 27/19 30/7
CAPITAL [2] 1/4 3/3
Captain [1] 17/25
care [1] 30/4
career [1] 10/11
case [14] 1/4 3/4 5/10 8/6 8/21 16/21
 17/10 19/15 20/25 22/18 26/7 29/3
 30/13 31/4
cases [4] 4/20 4/23 19/19 25/19
cash [1] 7/19
categorically [1] 10/18
cause [3] 1/8 3/12 7/18
certain [1] 23/9
certainly [1] 20/16
CERTIFICATE [1] 32/1
certify [2] 32/3 32/6
chance [1] 3/13
charge [1] 4/20
charged [1] 23/5
CHARLES [3] 1/6 1/16 3/4
chasing [1] 30/21
chief [1] 8/21
Church [1] 6/18
Circuit [11] 4/8 5/11 14/4 14/5 16/6
 16/7 16/17 16/18 17/9 18/7 18/8

circumstances [1] 9/10
citizens [1] 30/8
civic [1] 31/2
clear [4] 6/1 7/17 20/15 25/7
client [4] 4/14 21/2 21/20 22/7
client's [1] 22/9
clients [1] 4/23
clinics [1] 4/22
collar [4] 11/14 21/9 21/11 28/22
collect [12] 5/6 5/15 6/5 11/8 11/18
 11/20 14/21 16/23 22/23 25/1 26/2
 30/15
collectable [1] 24/24
collected [1] 5/19
collectible [2] 24/13 26/4
collection [2] 5/9 12/2
colloquy [1] 3/24
come [11] 3/20 6/25 13/9 13/20 14/11
 16/23 18/9 23/19 25/23 30/12 31/2
comes [1] 28/23
comfortable [1] 11/16
coming [2] 6/11 27/3
communicate [2] 3/22 4/4
communication [1] 27/20
communications [1] 3/20
compel [1] 8/13
complaints [1] 10/8
comply [3] 9/16 16/4 32/7
complying [1] 18/25
computer [1] 1/23
comrade [1] 10/14
conceal [1] 12/4
concern [1] 12/13
concerned [1] 11/16
concerns [1] 26/7
conduct [3] 10/6 11/1 13/14
Conference [1] 32/8
conflicts [1] 26/21
consider [6] 11/12 14/22 18/5 23/18
 28/7 30/18
considerably [1] 16/10
considered [1] 12/15
conspiracies [1] 6/23
conspiracy [1] 6/18
contacts [1] 23/13
contempt [9] 8/11 9/18 15/12 15/14
 16/2 19/1 22/13 23/4 28/4
contentious [1] 19/3
continue [1] 12/18
continuing [5] 10/5 10/24 10/25 13/14
 13/23
control [2] 15/17 28/13
controversies [1] 25/19
convenient [1] 22/16
copy [1] 17/7
correct [3] 15/24 17/12 32/4
could [2] 18/9 29/3
counsel [1] 27/17
counsels [1] 29/9
counter [1] 20/10
counter-party [1] 20/10
country [2] 6/3 30/7
County [7] 4/17 4/18 9/17 9/22 15/2
 15/7 15/13
couple [2] 17/19 30/11
course [2] 13/8 13/11
court [23] 1/1 1/9 1/19 3/15 3/20 3/22

4/5 4/14 5/5 5/12 17/9 17/10 20/15
21/6 22/20 23/4 24/5 28/4 28/8 29/1
31/4 32/7 32/13
Court's [2] 3/17 20/11
court-appointed [1] 28/8
courthouse [1] 22/19
courtroom [2] 10/15 23/6
courts [1] 4/15
cowboy [1] 26/24
crafting [1] 21/25
criminal [3] 19/9 23/18 26/23
crypto [2] 9/4 9/6
CSR [5] 1/19 32/3 32/11 32/12 32/16
current [1] 23/17
currently [1] 19/3
custody [1] 15/16
CV [2] 1/4 3/5

**D**

Dallas [2] 1/14 21/13
Dallas/Fort [1] 21/13
dance [1] 26/15
date [3] 17/24 17/25 22/10
daughter [3] 24/7 25/25 29/5
day [2] 11/17 32/9
days [2] 17/19 24/22
deal [4] 5/25 18/6 19/10 20/3
dealing [2] 12/20 20/20
dealt [1] 8/20
decide [3] 16/20 21/15 22/13
decision [3] 16/20 23/23 25/2
defamatory [1] 10/4
defame [3] 10/24 10/25 13/18
DEFENDANT [2] 1/16 6/20
defense [2] 23/18 29/9
definition [1] 7/23
deja [1] 8/21
delay [2] 16/8 16/9
deposition [9] 8/14 9/9 17/21 20/1
 22/3 22/7 23/3 23/4 23/20
deputies [1] 22/12
Deputy [1] 15/4
describe [2] 8/16 8/17
did [2] 13/20 16/9
didn't [1] 16/8
different [2] 4/15 21/19
directly [1] 12/5
disclose [3] 24/18 26/12 28/3
disclosed [1] 24/18
disclosing [1] 26/8
discover [1] 5/17
discovery [14] 5/17 8/7 8/9 8/18 10/22
 11/7 11/23 13/13 14/9 16/23 18/24
 20/24 21/16 21/21
dissipate [1] 18/13
dissipated [1] 21/5
dissipating [1] 7/15
DISTRICT [4] 1/1 1/2 1/9 32/13
DIVISION [3] 1/3 30/11 32/14
DLA [2] 1/12 26/18
do [37]
docket [3] 3/21 7/16 8/12
docketed [1] 17/17
does [3] 7/10 13/6 27/9
doesn't [1] 7/4
doing [11] 10/21 11/11 11/12 12/15
 13/21 14/23 15/20 21/11 23/23 28/18

**D**

doing [1] 31/2
dollars [3] 7/10 7/11 20/10
don't [43]
done [6] 8/5 12/4 16/25 18/13 18/24 20/18
down [8] 11/10 16/18 17/23 19/5 19/5 27/7 27/8 30/21
Drive [1] 1/16
dumb [1] 19/22
during [3] 3/25 3/25 8/20
duty [1] 31/2

**E**

E-Mail [2] 1/21 32/19
earlier [1] 15/8
effect [2] 4/13 24/16
effort [2] 11/7 14/10
efforts [3] 8/15 8/17 11/21
efile [1] 17/6
eight [1] 25/9
eight-year-old [1] 25/9
Eighteen [1] 15/11
either [2] 17/13 22/24
Elon [2] 6/18 26/19
email [3] 3/23 9/1 10/13
emails [2] 3/16 27/20
emphatically [1] 29/21
encourage [5] 4/7 4/9 4/21 23/10 30/18
encouraging [1] 7/4
end [2] 11/17 21/17
engage [1] 13/14
engaging [1] 19/9
enough [2] 12/13 28/24
enter [2] 23/25 29/12
entered [2] 30/9 30/13
entering [1] 10/6
entire [2] 5/8 8/6
entities [1] 24/20
entitled [7] 6/4 8/10 16/22 16/23 21/21 24/14 32/5
entity [1] 26/20
Entry [2] 7/16 8/12
escort [1] 22/20
ET [1] 1/4
European [2] 19/19 19/21
evade [1] 7/21
even [2] 28/6 30/19
eventually [1] 15/1
ever [2] 4/16 11/8
every [3] 8/7 15/17 26/12
everything [3] 15/17 15/18 29/21
evidence [2] 13/22 30/13
ex [3] 24/7 27/20 29/4
ex-wife [2] 24/7 29/4
example [1] 26/10
excuse [1] 4/11
execution [1] 17/1
exhausted [1] 16/6
Exhibit [1] 7/8
expensive [1] 6/2
experience [4] 11/14 21/10 23/19 28/22
Expires [1] 32/16
extent [1] 10/20
extra [2] 23/8 23/8

**F**

facility [1] 19/5
facing [5] 19/14 25/13 25/15 29/22 30/1
fact [4] 9/16 15/3 21/2 30/8
FBI [1] 6/19
Federal [3] 8/1 28/15 28/22
feel [1] 11/16
feels [1] 22/22
fees [1] 32/6
few [2] 3/16 13/2
Fieldthorn [1] 1/16
Fifth [11] 4/8 5/11 14/4 14/5 16/6 16/7 16/16 16/18 17/9 18/7 18/8
fighting [1] 21/16
file [1] 29/6
filed [9] 3/13 3/21 4/5 8/12 14/2 14/5 16/7 17/2 17/4
filed a [1] 17/4
filing [1] 20/3
final [1] 10/2
finances [2] 12/17 17/22
find [7] 4/9 11/13 13/21 18/12 18/19 21/15 23/10
finding [2] 19/8 30/18
fine [1] 24/12
firm [1] 6/3
first [5] 10/4 11/3 11/25 13/16 17/16
focusing [1] 30/22
folder [1] 3/17
folks [9] 4/19 9/18 10/24 10/25 13/18 19/6 19/8 28/6 31/1
follow [2] 4/3 24/22
fool [2] 4/13 4/14
forced [1] 31/1
foregoing [2] 32/4 32/5
forever [1] 30/16
form [2] 3/20 4/5
formal [1] 3/21
format [1] 32/6
former [2] 21/10 28/21
FORT [8] 1/3 1/5 1/20 5/25 21/13 30/11 32/14 32/17
forth [1] 27/3
forum [1] 27/14
forward [2] 6/10 15/20
Franklin [2] 4/10 4/12
frankly [3] 5/23 19/10 22/15
fraud [1] 7/23
fraudulent [1] 12/10
free [4] 4/20 22/5 29/1 30/20
freedom [1] 15/18
Friday [2] 17/17 22/4
front [3] 4/7 4/8 19/23
fugitives [1] 19/8
fun [1] 15/22
further [1] 32/6

**G**

gathered [1] 22/22
gave [1] 9/16
general [1] 3/23
generic [1] 10/21
generous [2] 27/4 27/6
gentlemen [2] 15/6 16/1
get [18] 4/3 6/4 7/4 7/4 8/17 11/7 12/3 12/16 15/23 19/17 20/23 21/22 22/10

26/14 28/19 29/9 30/23 30/25
gets [1] 18/3
getting [1] 11/23
Gigafund [2] 26/19 26/20
giggle [1] 6/21
girl [1] 25/9
give [7] 6/9 9/14 17/5 23/16 23/19 26/15 27/17
given [4] 5/22 5/25 8/7 23/17
giving [1] 23/5
go [15] 3/9 7/6 8/21 10/1 13/2 15/7 15/8 15/14 15/16 15/24 18/21 21/4 25/10 29/5 30/21
going [28] 5/1 6/10 8/7 11/8 11/22 12/17 14/4 15/2 16/11 18/19 19/4 19/8 19/16 20/11 22/15 24/8 26/15 27/14 27/24 27/25 28/2 28/3 28/4 28/15 28/23 29/13 30/6 30/23
good [8] 6/10 9/11 9/21 15/8 16/8 25/10 25/24 31/1
got [11] 12/1 13/1 13/15 16/1 16/8 17/17 26/14 29/8 30/6 30/24 30/25
governed [1] 5/14
Government [1] 6/19
grandmother [1] 26/24
granted [1] 3/15
guess [1] 11/22
guy's [1] 10/15
GUZMAN [4] 1/19 32/3 32/11 32/11

**H**

had [11] 3/13 8/20 10/13 16/14 19/4 21/19 22/17 23/20 27/8 30/8 30/11
Hal [1] 3/4
handle [1] 12/3
hanging [1] 23/21
happen [1] 10/11
happened [1] 26/6
happening [1] 27/15
happens [2] 18/11 26/8
happy [3] 17/5 27/17 29/16
harass [1] 14/11
harassed [2] 27/3 29/21
harassing [4] 14/22 24/16 27/10 28/6
harassment [1] 14/9
hard [2] 11/23 15/6
has [25] 3/15 4/14 5/10 5/10 6/3 7/9 7/20 9/5 10/4 11/13 12/3 14/10 15/18 16/6 18/22 19/14 21/2 21/20 23/18 24/16 28/12 29/20 30/5 30/16 30/19
hasn't [1] 17/11
have [95]
haven't [5] 14/6 17/13 24/17 25/20 30/14
having [2] 4/3 19/10
he [20] 7/10 7/12 9/6 9/9 9/10 9/11 9/11 9/13 10/12 11/1 11/2 11/3 12/3 12/7 13/6 15/8 18/3 22/22 22/22 25/1
he's [15] 8/5 8/6 8/18 9/7 10/4 10/8 10/24 10/25 12/4 19/14 21/21 25/15 25/16 25/18 30/1
head [1] 23/21
hear [6] 6/9 13/4 16/19 19/25 20/15 30/12
heard [1] 15/8
hearing [3] 3/12 6/12 13/22
held [2] 15/12 23/4

**H**

here [35]
Here's [1] 28/5
hesitancy [1] 28/18
hide [3] 12/16 18/13 18/21
hiding [1] 18/15
highlighting [1] 15/2
highly [1] 4/21
him [9] 8/7 8/8 9/1 9/16 10/7 12/7
 22/24 27/22 29/21
himself [3] 3/10 4/14 25/13
his [15] 8/9 10/4 10/22 11/1 11/9
 11/22 12/4 12/16 12/17 12/22 15/9
 16/23 19/14 27/6 27/7
history [2] 18/25 18/25
hold [4] 9/18 16/2 22/13 28/4
holdings [2] 9/4 17/23
honest [4] 22/24 25/4 25/5 27/12
Honor [32] 3/7 6/13 7/7 7/24 8/10 8/24
 10/2 11/25 12/12 12/25 13/5 13/25
 14/18 15/21 17/5 17/16 18/14 19/12
 19/18 20/7 21/23 23/1 24/1 25/3 25/7
 26/5 27/15 27/16 28/10 29/2 29/15
 29/19
HONORABLE [1] 1/9
hope [1] 29/25
hopefully [1] 6/10
hours [1] 10/13
how [4] 5/25 15/10 19/24 26/16
hurt [1] 11/20

**I**

I'd [3] 10/14 13/3 19/24
I'll [5] 6/7 6/9 6/13 6/17 21/14
I'm [28] 4/11 4/11 5/22 6/6 6/6 6/8 7/3
 9/14 9/17 13/22 17/5 17/20 17/20
 18/10 19/6 19/21 19/21 22/3 24/21
 25/17 26/11 26/24 27/2 27/16 27/25
 28/4 29/19 30/17
I've [18] 3/12 4/15 4/16 8/16 11/10
 12/1 13/1 16/1 22/17 23/23 26/14 27/4
 27/4 27/6 27/16 29/8 30/24 30/25
ICE [1] 19/5
idea [3] 9/21 25/10 28/19
identify [2] 9/3 25/2
ill [1] 27/7
immediately [3] 5/6 5/16 6/11
imperil [1] 26/9
important [2] 24/10 30/6
independent [1] 28/21
INDEX [1] 1/25
individually [1] 25/25
information [5] 6/5 9/4 17/22 22/21
 25/21
inserting [1] 10/3
instance [1] 25/25
intent [1] 9/13
intention [1] 14/8
interest [1] 26/21
interests [1] 26/21
interlocking [1] 26/21
internet [1] 10/17
interrogatories [3] 8/14 9/1 9/2
interrupt [1] 18/18
investigations [1] 21/12
involved [1] 25/8
involving [1] 6/18

**is [60]**

isn't [1] 7/23
Israeli [1] 6/19
issue [2] 27/9 27/14
issued [1] 5/11
issues [1] 27/17
it [54]
it's [27] 3/13 3/21 4/7 4/8 4/13 7/16
 8/21 8/23 9/7 12/22 14/17 14/23 15/7
 21/15 21/18 22/16 23/22 24/21 24/24
 24/25 25/1 25/24 26/16 28/20 28/21
 30/19 30/23

**J**

jail [5] 8/8 9/13 9/17 9/22 15/2
JOHNSON [38]
joke [1] 11/2
judge [5] 1/9 4/15 7/2 12/19 22/11
judgment [37]
judgments [2] 16/4 19/14
Judicial [1] 32/7
jurors [1] 29/8
jury [10] 4/25 10/6 13/15 13/20 16/21
 17/23 22/4 22/7 22/20 31/2
just [28] 6/15 6/15 6/17 9/2 9/3 10/2
 10/18 10/20 10/21 11/1 11/1 12/24
 12/24 14/23 15/7 16/3 16/4 17/17
 19/11 19/21 19/22 19/22 20/4 23/5
 23/22 24/21 24/22 29/20
justify [2] 12/14 28/25

**K**

keep [1] 31/3
keeps [1] 11/1
knew [1] 5/1
know [17] 4/1 4/20 8/6 9/5 9/7 10/5
 10/19 11/2 11/3 12/4 17/24 17/25
 19/20 20/25 21/18 25/15 27/20
knowledge [2] 5/10 12/17

**L**

Lambert [8] 3/4 3/8 10/5 16/22 19/13
 25/13 26/1 29/22
Lambert's [1] 14/10
large [1] 25/14
last [1] 5/1
late [2] 17/17 17/19
later [3] 10/13 20/19 23/25
laugh [1] 6/21
laughed [1] 9/11
laughing [1] 6/20
law [13] 4/22 5/3 5/14 5/19 6/2 18/23
 19/9 19/21 24/23 25/1 30/16 30/19
 30/22
lawsuit [3] 5/22 5/24 27/14
lawsuits [1] 10/9
lawyer [1] 26/18
lawyers [2] 14/23 30/25
learn [1] 22/23
least [4] 7/10 8/16 11/13 23/14
left [1] 5/12
legal [4] 6/1 6/24 23/11 23/16
let [1] 16/14
let's [1] 21/21
letter [1] 27/16
letters [1] 27/19
liberal [1] 4/2

**license [1]** 30/19
**licensed [2]** 19/21 23/11
lie [1] 23/5
like [21] 4/4 5/24 10/3 12/19 13/3
 13/21 14/1 14/23 15/7 15/12 17/7
 19/16 19/24 20/2 21/12 23/5 24/22
 26/25 27/9 29/6 30/17
Listen [1] 30/3
lists [1] 4/19
literally [1] 26/17
little [1] 28/17
LLC [3] 1/4 3/3 7/20
LLP [1] 1/12
locally [1] 23/12
located [1] 5/19
long [1] 15/10
look [8] 12/9 12/19 15/20 16/25 21/12
 21/14 26/11 29/7
looked [4] 4/21 10/19 11/10 19/6
looking [1] 25/20
Lordy [1] 17/9
lot [4] 5/24 18/20 19/2 26/25
loud [1] 20/15
luck [1] 9/12
lunch [1] 15/23

**M**

made [4] 10/4 10/12 25/2 25/7
Mail [2] 1/21 32/19
make [8] 6/24 15/17 21/8 22/10 23/23
 25/18 28/20 28/24
making [3] 9/7 11/6 18/10
man [2] 4/14 10/13
many [4] 4/19 4/22 22/17 23/13
MARK [1] 1/9
Marshal [1] 15/10
marshals [3] 15/16 19/2 19/7
martyr [1] 18/10
massive [1] 10/6
matter [4] 4/5 21/2 30/8 32/5
matters [1] 6/22
may [9] 11/19 14/22 16/19 21/4 24/3
 24/15 25/7 26/6 29/2
maybe [3] 24/17 24/19 24/25
McBryde [1] 12/19
McCoy [1] 24/21
me [27] 3/8 4/4 4/8 4/11 6/7 6/8 7/3
 9/15 11/20 11/21 14/4 14/4 14/11
 14/23 16/13 16/14 19/16 19/23 23/16
 23/22 24/22 25/18 25/19 26/15 27/19
 27/20 29/18
mean [1] 26/17
means [1] 4/20
meant [1] 3/19
mechanical [1] 1/23
mechanism [1] 16/15
members [1] 6/19
mercy [1] 17/9
message [2] 21/23 21/23
messaged [1] 12/5
messing [1] 4/11
mguzman.csr [2] 1/21 32/19
microphone [1] 13/7
might [6] 4/24 4/25 15/8 18/4 23/18
 28/6
million [13] 4/25 5/5 5/8 5/13 7/11
 13/15 14/15 18/22 20/10 21/3 23/21

**M**

million [2] 25/20 30/9
millions [1] 7/10
mind [1] 27/4
minutes [1] 13/2
misattribute [1] 4/12
missing [2] 6/6 6/8
misstate [1] 4/12
Monday [9] 17/23 18/1 20/1 22/6 22/19 25/23 28/3 28/19 29/13
money [1] 9/8
MONICA [4] 1/19 32/3 32/11 32/11
mood [1] 26/11
more [5] 11/6 16/10 29/10 30/5 30/23
Mormon [1] 6/18
most [1] 6/2
mother [3] 27/7 27/7 27/8
motion [14] 3/14 3/21 4/6 7/18 8/13 14/2 17/4 17/15 17/17 20/3 22/1 28/20 29/3 29/6
motions [3] 14/5 21/16 22/13
move [2] 7/19 15/17
moved [3] 7/14 24/8 26/22
moving [2] 5/20 7/16
Mr [51]
much [3] 5/23 15/22 30/6
multiple [1] 9/9
Musk [3] 6/18 26/19 26/20
my [36]
myself [5] 4/17 10/3 10/9 10/9 10/11

**N**

nailed [1] 19/17
name [1] 10/15
named [1] 10/13
naught [1] 22/25
NCRA [1] 32/12
necessarily [1] 13/18
need [26] 3/20 6/24 10/10 11/13 11/18 13/9 17/21 18/2 18/2 19/3 19/25 20/23 20/25 21/3 22/4 22/14 22/18 23/6 23/15 23/16 24/4 24/18 25/22 26/12 27/12 28/19
needs [5] 4/5 18/4 20/18 22/22 22/22
never [2] 11/20 29/21
new [3] 7/2 19/16 20/19
next [4] 17/23 18/1 20/16 22/4
no [26] 1/4 9/10 9/13 10/21 13/9 14/8 14/25 15/1 15/15 15/18 15/21 17/16 19/18 20/7 26/2 26/17 27/17 27/22 28/9 28/10 28/14 28/15 28/16 29/11 32/12 32/12
noncollectable [1] 24/25
noncompliance [2] 8/9 10/22
NORTHERN [2] 1/2 32/13
not [54]
note [1] 10/3
nothing [2] 23/9 30/20
novel [3] 9/15 9/19 9/22
NOVEMBER [4] 1/6 3/2 16/9 32/9
now [17] 3/12 4/15 5/3 5/9 6/6 8/11 9/6 11/19 16/18 18/12 21/11 21/16 25/20 27/3 27/16 28/10 29/8
Number [2] 3/4 7/8

**O**

oath [3] 23/3 23/20 24/23

objection [8] 14/25 15/1 28/9 28/10 28/14 28/15 28/16 29/11
objections [1] 20/7
obligation [1] 6/1
obligations [1] 10/23
obvious [1] 14/14
obviously [2] 13/16 21/19
off [5] 5/9 9/8 10/4 11/3 11/25
offense [2] 8/1 26/23
officer [2] 9/20 21/6
Official [1] 32/13
okay [7] 3/11 17/18 21/25 28/4 28/17 29/16 31/3
old [1] 25/9
one [9] 7/8 10/12 11/6 12/2 16/12 20/22 21/8 23/14 24/21
only [12] 3/19 4/13 10/21 11/7 12/13 19/21 21/7 24/19 25/18 26/22 27/1 30/23
open [1] 27/13
operations [1] 26/9
opportunity [1] 8/8
opposing [1] 27/17
option [1] 18/11
options [1] 16/6
order [8] 3/17 7/15 8/4 14/3 20/11 23/25 24/15 29/13
ordered [1] 22/16
ordering [1] 22/3
orders [1] 3/19
other [7] 5/20 7/21 11/21 18/10 18/11 19/2 30/5
Othram [7] 7/11 7/19 12/4 12/6 25/6 26/7 29/4
ought [2] 18/5 28/5
our [6] 3/25 4/17 5/24 9/13 9/18 22/12
out [23] 4/3 5/18 7/8 7/10 7/17 7/19 8/10 8/25 9/15 12/14 18/9 18/12 18/19 20/4 21/11 22/24 28/19 28/24 29/9 30/12 30/25 31/1 31/2
outstanding [4] 6/3 21/21 29/23 30/1
overwhelming [1] 30/13
owe [1] 5/5
owes [1] 20/4
own [2] 19/14 23/23
owned [1] 26/19

**P**

p.m [2] 1/6 3/2
PAGE [1] 2/2
paid [1] 28/23
part [2] 3/21 12/1
parte [1] 27/20
participate [4] 8/7 8/18 18/23 30/14
participates [1] 21/1
participating [2] 13/13 23/22
particular [1] 26/6
particularly [1] 26/7
party [1] 20/10
past [1] 11/22
path [1] 6/10
patience [4] 5/25 22/18 29/10 30/4
pattern [1] 27/10
pay [3] 5/8 5/8 16/16
PEARL [1] 1/13
pending [1] 17/17
people [3] 14/11 22/20 30/10

perfectly [2] 24/12 25/5
perjury [1] 23/5
permissible [1] 9/25
permit [1] 9/23
Perrill [1] 15/4
person [1] 15/19
personal [1] 10/9
perspective [2] 8/2 8/12
pick [1] 28/21
PIPER [2] 1/12 26/18
PITTMAN [1] 1/9
place [7] 5/10 7/19 9/25 15/8 15/15 16/15 22/3
places [1] 5/20
plaintiff [2] 1/12 27/4
plaintiffs [8] 3/6 3/8 3/13 5/5 5/14 7/13 8/12 8/25
plan [1] 20/8
pleadings [2] 12/23 22/17
pleasant [1] 9/25
please [7] 13/10 18/16 21/8 30/3 30/18 30/18 30/18
podcast [1] 10/17
podium [3] 13/9 13/10 13/10
POINT [2] 1/4 3/3
pointed [1] 8/10
points [1] 7/7
poor [1] 19/21
portrait [1] 12/20
positively [1] 10/14
possibility [1] 20/2
possible [1] 21/8
post [8] 5/16 8/9 10/22 13/13 16/15 16/23 18/9 18/24
post-judgment [7] 5/16 8/9 10/22 13/13 16/15 16/23 18/24
posted [1] 9/5
poster [1] 10/18
posts [1] 10/14
posture [1] 6/16
precise [1] 14/20
prefer [1] 16/5
prepare [1] 6/11
preparing [2] 17/10 20/17
prescribed [1] 32/7
preserve [3] 21/3 24/9 27/1
preserving [2] 19/13 25/13
pretrial [1] 3/25
pretty [2] 7/16 14/14
prior [2] 5/22 7/14
pro [5] 1/16 4/1 4/20 4/23 6/2
probably [8] 9/24 9/25 12/7 15/23 19/6 19/16 22/2 25/10
problem [2] 4/24 9/14
procedural [2] 6/15 8/2
proceed [2] 19/24 23/15
proceeding [1] 4/1
proceedings [6] 1/23 3/25 5/24 16/15 31/6 32/5
process [3] 8/19 14/10 16/12
produce [1] 8/14
produced [1] 1/23
prologue [1] 11/22
proper [1] 21/19
proposed [1] 3/19
prosecution [1] 21/9
prosecutions [1] 19/4

**P**

prosecutor [1] 29/22
protected [1] 24/25
provide [1] 5/16
providing [1] 25/21
provisions [1] 24/23
purchaser [1] 12/11
purge [2] 15/13 16/3
purpose [2] 7/20 7/25
put [3] 6/25 7/12 8/8

**Q**

questions [1] 29/18
quick [1] 7/7
quiet [1] 30/3
quite [5] 16/8 19/9 22/15 23/24 26/25
quote [2] 4/12 8/22

**R**

rabbit [1] 30/21
rabbits [1] 30/21
random [1] 30/10
randomly [1] 30/10
ratchet [1] 20/16
ratcheting [1] 11/1
rather [3] 19/7 20/19 25/14
rational [1] 15/19
reach [1] 7/12
reached [1] 8/25
read [3] 3/13 8/16 17/8
ready [1] 30/25
real [2] 11/20 12/17
really [3] 6/14 16/12 23/15
reason [4] 12/22 17/6 26/22 27/1
recall [1] 13/20
received [1] 21/24
receiver [13] 11/9 11/13 11/17 12/9
 12/14 18/5 20/14 20/16 21/5 28/7 28/7
 28/12 28/25
receivers [2] 21/8 28/25
receivership [1] 20/3
recently [2] 19/4 27/13
recess [1] 31/5
recommend [2] 11/13 21/14
recommendation [1] 21/8
record [3] 4/5 7/17 32/5
refused [1] 12/7
refusing [1] 8/6
Regardless [1] 30/15
related [2] 3/14 24/19
relax [1] 15/14
relevant [1] 26/7
repeated [2] 10/4 10/16
repeatedly [3] 8/6 8/25 10/8
report [1] 30/6
reported [1] 1/23
REPORTER [2] 1/19 32/13
REPORTER'S [1] 31/7
represent [4] 4/9 4/16 4/19 30/20
representation [1] 23/11
represented [1] 6/2
representing [1] 4/1
represents [2] 4/14 26/18
requested [1] 9/9
required [2] 8/18 18/23
resources [1] 16/10
responded [1] 17/14

Reston [1] 1/17
resulted [1] 10/6
returned [1] 4/25
reverse [1] 16/20
reverses [1] 18/7
reversing [1] 14/4
right [14] 8/11 10/11 13/6 13/16 13/18
 14/21 21/11 22/11 23/25 25/19 27/23
 28/10 29/12 31/4
ripe [1] 8/11
road [1] 11/10
roadblock [1] 20/22
rocking [1] 21/22
rolling [2] 20/24 21/22
room [6] 1/19 17/23 22/4 22/8 22/20
 32/17
RPR [3] 1/19 32/3 32/11
rule [1] 19/22
ruled [3] 14/6 17/11 17/13
rules [5] 4/3 5/13 5/16 16/4 16/22

**S**

said [14] 4/10 8/8 9/3 9/10 9/11 9/12
 10/15 11/3 12/6 13/1 15/1 18/10 18/19
 30/24
same [5] 8/23 10/5 10/5 12/22 13/14
sanctioned [1] 16/12
saw [1] 17/16
say [6] 6/17 23/14 24/23 26/2 26/15
 30/5
saying [3] 8/6 10/10 10/17
says [3] 9/13 18/8 30/15
scenario [1] 20/25
schools [1] 4/22
se [3] 1/16 4/1 6/2
secret [3] 6/19 7/20 26/16
security [1] 22/20
see [6] 5/2 9/12 18/11 20/2 20/14 29/9
seek [1] 11/9
seem [1] 27/9
seems [1] 15/6
seen [1] 14/9
selected [1] 30/10
sell [4] 12/6 20/10 24/9 25/11
selling [2] 25/8 25/12
Semite [1] 10/18
sending [1] 18/8
separate [1] 24/7
September [1] 10/12
serious [1] 6/22
serve [1] 31/2
served [1] 9/1
Service [1] 19/8
set [2] 6/15 29/9
several [4] 3/24 16/7 19/5 21/10
share [3] 27/22 27/24 27/25
shares [2] 12/5 12/7
shenanigans [2] 12/23 19/10
shooting [1] 19/4
shopping [1] 27/14
short [1] 18/8
should [2] 16/12 28/25
show [7] 1/8 3/12 7/18 17/21 28/2
 29/13 29/17
shows [1] 10/20
sic [1] 22/1
Signed [1] 32/9

significant [1] 21/9
simply [1] 26/8
single [1] 26/12
sir [6] 12/21 15/5 15/11 15/15 15/21
 15/25
sit [2] 8/14 9/9
sitting [1] 14/9
situation [7] 5/12 21/19 23/17 25/17
 26/18 26/20 27/2
skin [1] 12/1
smart [1] 13/24
some [18] 3/25 4/9 8/15 8/17 11/7
 11/13 17/6 19/3 21/9 22/20 23/10
 23/12 23/16 23/18 24/8 28/22 29/20
 30/25
somebody [3] 23/11 23/16 23/18
someone [3] 21/9 23/12 30/19
someplace [1] 15/14
something [9] 4/11 4/13 6/6 10/17
 16/14 18/4 24/13 25/24 28/5
song [1] 26/15
sooner [2] 20/18 22/3
sorry [4] 24/6 24/21 29/19 30/17
sort [6] 7/22 10/9 10/21 11/14 20/4
 23/11
sought [1] 29/22
sounds [3] 13/21 14/22 19/16
south [1] 19/5
speak [3] 13/6 13/7 13/17
special [1] 23/8
specific [3] 8/4 12/2 20/9
specifically [1] 7/14
spending [1] 9/21
spent [1] 9/14
sponte [2] 11/17 28/18
stage [1] 6/15
stand [2] 24/4 31/4
stark [1] 12/5
started [1] 30/25
state [2] 23/12 29/21
statement [1] 23/5
STATES [6] 1/1 1/9 15/10 15/16 19/7
 32/8
stave [1] 5/9
stay [9] 5/6 5/11 16/15 16/17 17/4
 17/15 17/17 18/3 22/21
stayed [2] 5/4 6/4
staying [2] 15/13 16/25
stenography [1] 1/23
step [1] 12/2
sticks [2] 11/19 12/1
still [2] 12/20 19/6
stock [4] 7/11 20/9 25/6 26/7
stones [2] 11/19 12/1
stop [2] 11/4 24/11
story [1] 8/23
straightforward [1] 9/2
STREET [3] 1/13 1/19 32/17
strike [1] 22/17
struck [1] 12/22
stuff [2] 6/25 25/11
sua [2] 11/16 28/18
subject [2] 20/5 24/12
submitted [2] 3/16 13/22
subpoena [1] 29/22
subsequently [1] 9/5
Substack [4] 6/25 10/16 10/18 18/9

## S

**substantial [1]** 7/8
**sue [1]** 12/11
**suggest [1]** 11/12
**suggesting [2]** 9/6 9/7
**Suite [1]** 1/13
**supermaxes [1]** 9/14
**supersede [1]** 5/6
**supersedeas [2]** 5/7 16/16
**superseded [7]** 5/4 6/4 16/21 18/23 21/19 25/21 30/14
**supplements [1]** 3/14
**supposed [2]** 5/21 14/23
**Supreme [2]** 17/8 17/9
**sure [10]** 4/11 6/6 9/17 11/5 13/6 18/10 19/6 23/7 27/25 28/24
**surprised [1]** 5/23

## T

**take [12]** 4/23 5/14 6/10 8/10 12/16 13/17 16/2 20/1 20/24 21/14 22/3 29/7
**taken [1]** 5/10
**taking [1]** 23/3
**talking [3]** 19/15 19/18 27/25
**Tarrant [2]** 4/17 4/17
**teleconferencing [1]** 27/5
**Telephone [4]** 1/14 1/17 1/20 32/18
**tell [9]** 6/7 6/8 11/21 14/4 19/22 21/7 23/2 25/23 26/1
**tendency [1]** 30/21
**tens [1]** 7/9
**terms [1]** 12/6
**Tesla [2]** 26/18 26/19
**TEXAS [12]** 1/2 1/5 1/14 1/20 19/21 19/22 23/12 27/3 30/12 32/12 32/13 32/17
**than [7]** 7/21 11/21 16/10 18/11 19/10 20/19 30/20
**Thank [3]** 3/11 6/13 13/5
**that [136]**
**that'll [1]** 22/12
**that's [27]** 6/11 6/22 7/3 7/16 7/21 7/22 7/22 8/12 9/13 10/18 11/14 12/15 13/3 13/21 13/22 17/12 20/16 20/16 23/11 23/12 23/22 24/12 26/4 27/15 27/20 29/24 30/16
**their [5]** 5/15 6/5 16/20 30/13 31/2
**them [9]** 5/20 6/24 7/19 7/19 8/16 9/3 24/9 29/5 31/3
**then [13]** 6/9 6/9 7/19 16/21 18/4 18/9 18/12 20/2 20/3 21/25 22/25 25/24 28/20
**theories [1]** 6/18
**there [19]** 3/14 4/18 5/11 5/18 9/2 12/10 12/13 12/14 12/19 14/5 16/18 19/17 21/11 22/16 23/16 28/20 28/24 29/9 30/5
**there's [6]** 5/7 15/18 21/10 23/14 27/14 28/24
**these [10]** 6/22 12/4 12/16 12/23 16/1 18/13 21/16 24/8 28/6 30/9
**they [15]** 4/23 5/5 5/19 9/23 12/9 12/10 14/7 14/19 14/21 15/17 16/20 17/12 19/2 30/13 30/15
**they're [6]** 5/19 6/4 14/23 16/8 24/13 31/1
**thick [1]** 12/1

**thing [7]** 5/7 10/2 10/11 11/15 11/20 21/7 26/12
**things [4]** 10/11 16/7 19/2 30/6
**think [29]** 7/17 7/20 8/3 9/11 9/15 9/20 9/20 9/25 11/7 12/2 13/3 14/17 17/5 17/8 18/2 18/2 18/4 20/5 20/13 20/18 20/25 21/9 22/9 27/12 28/5 28/6 28/19 28/21 30/21
**thinking [3]** 11/24 17/20 17/21
**thinks [1]** 15/8
**thinly [1]** 10/10
**this [58]**
**THOMPSON [14]** 1/12 3/7 6/8 16/9 16/13 17/14 18/3 18/4 19/25 22/6 24/16 24/22 26/1 27/6
**those [12]** 5/18 7/12 7/19 10/12 14/6 19/6 21/4 24/12 24/21 25/2 26/9 32/7
**thought [2]** 4/24 11/6
**threatened [2]** 10/8 19/1
**threats [2]** 10/10 10/12
**three [3]** 4/15 10/12 16/19
**through [4]** 3/22 3/24 8/5 20/11
**throughout [1]** 14/10
**tie [1]** 26/24
**time [14]** 5/2 6/17 6/23 9/14 9/15 9/21 11/23 12/24 15/6 16/9 19/11 21/17 28/2 30/7
**times [2]** 3/24 9/10
**today [6]** 3/12 5/23 18/8 23/25 29/13 30/7
**told [3]** 15/23 23/9 23/13
**too [6]** 12/24 19/17 20/23 22/17 29/3 30/24
**took [1]** 24/23
**top [1]** 26/16
**totally [1]** 21/18
**town [1]** 19/5
**trails [1]** 30/22
**transcript [5]** 1/8 1/23 10/19 32/4 32/6
**transfer [1]** 12/10
**transferring [1]** 7/15
**treats [1]** 11/2
**trial [8]** 3/25 6/11 7/8 12/23 13/2 22/2 22/4 26/14
**tried [1]** 20/9
**trouble [4]** 7/2 7/3 18/20 30/23
**true [3]** 7/22 29/24 32/4
**trust [4]** 24/7 25/8 26/23 28/16
**truth [3]** 23/2 23/9 23/9
**try [20]** 3/22 4/9 5/15 5/17 6/5 6/9 7/12 7/21 8/17 9/11 11/7 11/18 14/21 16/25 18/11 20/24 23/10 26/1 28/21 30/15
**trying [4]** 7/18 11/20 12/3 12/6
**turn [2]** 6/7 12/10
**turns [2]** 7/10 22/24
**Twitter [1]** 6/25
**two [6]** 3/14 7/7 9/2 16/1 16/19 21/8
**type [5]** 5/17 11/14 11/23 12/23 13/14

## U

**U.S [1]** 21/10
**ugly [1]** 25/24
**under [11]** 5/3 5/13 5/14 5/19 9/10 16/22 18/23 23/3 23/20 24/25 30/22
**understand [5]** 12/8 12/25 20/21 28/12 29/14
**understanding [3]** 15/7 17/10 27/23

**unequivocally [1]** 8/3
**Union [1]** 19/19
**UNITED [6]** 1/1 1/9 15/10 15/16 19/7 32/8
**unless [2]** 5/3 12/15
**until [12]** 5/3 5/6 12/16 15/13 16/2 16/5 16/21 16/21 18/3 21/17 22/4 22/21
**untrue [1]** 10/19
**up [17]** 4/11 6/11 6/25 10/19 11/1 12/19 14/5 17/21 19/16 19/17 20/16 23/22 28/2 29/9 29/13 29/17 30/12
**us [3]** 1/12 6/9 23/13
**use [1]** 26/25
**used [1]** 11/14

## V

**various [2]** 4/22 5/20
**veiled [1]** 10/10
**verdict [5]** 4/25 5/3 10/7 13/15 14/15
**very [6]** 12/5 16/19 19/3 25/7 27/4 27/6
**via [2]** 8/25 29/22
**vile [1]** 10/18
**violating [1]** 8/3
**violations [1]** 19/9
**violently [1]** 19/9
**Virginia [1]** 1/17
**VOL [1]** 2/2
**VOLUME [1]** 1/8
**vs [2]** 1/5 3/4
**vu [1]** 8/21

## W

**waiting [4]** 16/5 29/8 29/9 31/3
**want [18]** 6/22 6/23 8/8 9/12 12/19 13/3 13/17 15/16 20/19 20/24 21/16 23/10 23/18 23/19 25/23 28/24 29/20 31/3
**wants [1]** 18/3
**was [20]** 4/10 5/1 9/2 9/6 12/10 16/16 17/10 18/14 19/13 19/18 22/2 23/22 24/9 25/8 25/12 25/13 26/24 27/7 29/21 30/13
**wasn't [1]** 23/21
**waste [2]** 6/23 30/7
**way [7]** 6/22 11/8 14/8 23/15 26/23 30/12 30/24
**we [59]**
**we'll [7]** 6/9 22/10 22/11 22/12 22/19 23/25 29/12
**we're [6]** 3/12 5/23 12/24 20/23 20/23 30/24
**we've [4]** 8/7 8/8 14/9 30/6
**wearing [1]** 26/24
**website [1]** 17/9
**week [1]** 22/4
**weeks [1]** 9/16
**welcome [1]** 15/3
**well [22]** 3/7 11/25 13/19 13/25 14/13 16/5 16/14 16/19 17/2 17/4 19/15 19/20 24/17 25/10 25/15 27/11 27/17 27/19 27/23 27/24 28/16 28/17
**went [2]** 3/24 12/23
**were [5]** 9/2 13/21 20/17 23/5 24/8
**weren't [2]** 5/21 31/1
**West [1]** 30/12

**W**

**what [35]**

**what's [8]**  15/12 16/11 19/23 20/5 20/6 26/6 27/15 28/19
**whatever [3]**  26/16 29/6 30/5
**whatsoever [3]**  14/8 14/25 28/16
**when [10]**  4/25 6/24 9/6 15/23 15/23 22/10 24/4 25/23 27/7 28/23
**where [8]**  5/12 5/18 5/18 9/18 17/22 26/18 27/2 27/7
**whether [7]**  4/7 4/8 6/1 6/2 16/20 18/5 22/16
**which [9]**  3/15 4/20 4/23 5/7 8/1 8/13 9/4 17/5 26/23
**while [2]**  9/22 23/24
**white [4]**  11/14 21/9 21/11 28/22
**white-collar-type [1]**  11/14
**who [9]**  3/6 4/14 4/19 10/13 11/13 16/12 20/4 21/14 23/18
**whole [2]**  23/9 26/15
**why [4]**  6/7 7/3 8/12 12/15
**wife [2]**  24/7 29/4
**will [10]**  3/7 4/7 9/14 10/11 11/20 18/7 21/25 22/4 31/4 31/4
**WILLENBURG [4]**  1/19 32/3 32/11 32/11
**WILLIAM [1]**  1/12
**willing [3]**  4/2 4/19 16/2
**wire [1]**  7/23
**without [1]**  23/20
**won't [1]**  29/16
**words [1]**  11/19
**work [4]**  9/15 15/8 22/10 28/25
**working [1]**  12/17
**world [1]**  21/11
**worry [1]**  19/3
**WORTH [8]**  1/3 1/5 1/20 5/25 21/13 30/11 32/14 32/17
**would [36]**
**wouldn't [1]**  9/23
**write [4]**  9/15 9/18 15/14 27/19
**writing [1]**  9/21
**written [1]**  27/16
**Wyoming [5]**  7/20 24/9 26/22 26/24 26/25

**Y**

**yahoo.com [2]**  1/21 32/19
**Yamada [1]**  17/25
**Yeah [4]**  8/23 9/24 13/11 20/12
**year [2]**  20/19 25/9
**years [3]**  4/16 15/11 16/19
**Yes [7]**  3/18 7/24 12/12 12/21 15/5 15/25 24/2
**yesterday [1]**  11/2
**Yogi [1]**  8/22
**York [2]**  7/3 19/16
**you [171]**
**you'd [3]**  6/25 21/7 30/7
**you'll [1]**  6/6
**you're [25]**  4/1 6/1 6/2 7/2 9/22 11/8 11/22 13/23 14/4 18/19 18/23 19/15 19/16 22/15 22/24 23/3 23/17 25/20 25/21 26/15 27/24 27/25 28/2 28/3 29/13
**you've [7]**  4/21 7/3 13/12 13/13 16/21 18/12 23/13

**you-all [3]**  12/15 17/14 22/21
**your [64]**
**yourself [4]**  4/2 15/13 16/3 27/13