IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| POINT BRIDGE CAPITAL, LLC, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | Case No. 4:24-cv-00988-P |
| | § | |
| CHARLES JOHNSON, | § | |
| | § | |
| Defendant. | § | |

## RECEIVERS' INITIAL STATUS REPORT

TO THE HONORABLE MARK T. PITTMAN:

As directed by the Court's November 21, 2025 Order, ECF No. 144, Adam Farrell and Jeffrey Ansley of Vedder Price P.C., in their capacities as Court appointed receivers ("Receiver(s)") for the Receivership Estate of defendant Charles Johnson (the "Defendant" or "Johnson"), submit the following Initial Status Report for the period ending December 11, 2025.

### I.  BACKGROUND

On November 21, 2025, the Court issued an Order appointing Jeffrey Ansley and Adam Farrell to serve as Receivers in this case. ECF No. 144. Based on the record of this case, the Court determined that "a receiver is necessary and appropriate in aid of execution of the Judgment to identify, secure, preserve, and realize non-exempt assets in which [the Defendant] has a legal or beneficial interest." *Id*. at 2. The Defendant did not object to the Court's determination that a receivership was appropriate or to the appointment of the Receivers.

The Court directed the Receivers to, among other actions, file an initial report within 20 days of appointment describing "assets and accounts identified; steps taken to secure and preserve them; any material irregularities, unexplained transfers, or issues affecting the integrity of the

Receivership Estate, including any potential criminal conduct or wrongdoing; and any other information that Receiver deems is necessary to bring to the Court's attention to enforce the Judgment." *Id*. at 6.

Separately, on November 20, 2025, the Court held the Defendant in civil contempt following an evidentiary hearing and after taking testimony from Johnson. ECF No. 142. The Court ordered the United States Marshal to arrest the Defendant and place him in the custody of the Johnson County Jail until such a time as he purged himself of his contempt for his repeated failure to engage in post-judgment discovery in good faith. *Id*. at 3.

On December 5, 2025, after receiving public correspondence containing allegations regarding the Defendant's alleged custody conditions and his claimed attempts to purge his contempt, the Court ordered the Receivers to file a brief preliminary report advising the Court of their position on whether Johnson has purged himself of his contempt. ECF No. 149. That same day, the Receivers filed their Preliminary Report detailing their observations concerning the Defendant's cooperation. ECF No. 150.

## II.  SUMMARY OF RECEIVERSHIP ACTIVITIES TO DATE

### A. Receivers' Actions to Identify, Secure, and Preserve Defendant's Assets[1]

Since the commencement of the receivership, the Receivers have taken steps to identify assets and accounts subject to the Receivership Estate, including banks and other financial institutions; trusts and LLCs; and venture investments with potential contract rights, equity, membership, partnership, special-purpose vehicles or beneficial interest in various organizations. As described further below, the Receivers have coordinated with Plaintiffs' counsel, interviewed

---

[1] The following is not intended to be an exhaustive list of each activity performed by the Receivers. Rather, the below summary provides an overview of the preliminary actions taken following the Court's November 21, 2025 appointment.

Defendant at the Johnson County Jail, spoken with third parties with personal knowledge of Defendant, generated public database reports, reviewed Defendant's public statements, as well as other investigatory actions.

### 1. Receivers' Coordination with Plaintiffs' Counsel

To conserve the resources of the Receivership Estate, the Receivers coordinated with Plaintiffs' counsel, Will Thompson, to identify assets and accounts known to the Plaintiffs through their independent investigation and limited post-judgment discovery received from the Defendant. To date, those actions have been fruitful in producing investigative leads which, as described further below, the Receivers are pursuing through various means.

### 2. Receivers' Interview of Defendant

As detailed in the Receivers' Preliminary Report (ECF No. 150), which is incorporated herein by reference, Receiver Adam Farrell, along with co-counsel Andrew Robbins[2], conducted an in-person interview of the Defendant at the Johnson County Jail in Cleburne, Texas on December 3, 2025. Over approximately two and a half hours, Receiver Farrell and Mr. Robbins questioned the Defendant regarding, *inter alia,* his assets, including real and personal property; bank, brokerage, custodial, and digital-asset accounts; contract rights, receivables, royalties, and income streams; equity, membership, partnership or beneficial interest in any corporation, LLC, partnership, trust, or special-purpose vehicle; and various claims or causes of action.

The Defendant appeared cooperative during the interview by answering questions and providing certain information regarding the nature and location of his assets. This information included, for example, identifying certain trusts, financial institutions, and equity or other direct or indirect ownership interest in various non-public business entities. However, Johnson repeatedly

---

[2] Mr. Robbins is an attorney at Vedder Price P.C. and is assisting the Receivers in the performance of their duties.

denied owning, whether directly or indirectly, certain categories of assets, including any digital assets or cryptocurrency, real property, and other assets. In certain instances, Defendant's categorical denials of ownership appeared inconsistent or otherwise contrary to information obtained by the Receivers, including prior statements made by Defendant.[3] As outlined further below, the Receivers are taking additional investigative actions to verify Johnson's various claims regarding the nature and extent of his assets. This task is complicated by the fact that the bulk of the information Defendant provided to the Receivers was general and lacked the specific details needed to facilitate an efficient identification of key assets.[4] In certain instances, however, Johnson provided the names of individuals that he claimed could assist the Receivers in obtaining the necessary information.

While the Defendant appeared generally cooperative, there were several instances where he claimed the inability to answer certain questions without access to his computer and, further, that he would be more helpful if released from his current custody. There were also certain instances where, like at the November 25, 2025 contempt hearing, Defendant refused to answer the Receiver's and counsel's questions regarding assets because his alleged "handler" would not permit him to do so. Finally, Johnson contended that it will be very difficult for the Receivers to track down assets. Defendant emphasized that he believed that the judgment would be overturned on appeal before the Receivers would be able to successfully seize his assets.

As noted above and further described below, Receivers are taking steps to verify Defendant's representations regarding assets. Such steps include conducting interviews of relevant

---

[3] For example, a video was posted to Defendant's X account and Substack in which he claimed to have a safety deposit box with a hard drive with Bitcoin. Such statements contradict Defendant's categorical denial of owning cryptocurrency.

[4] Receivers recognize that Defendant's ability to provide specific details was limited due to his custodial status and lack of access to personal and financial records.

individuals, issuing letters and/or document subpoenas, as well as taking other appropriate investigatory actions.

### 3. Receivers' Issuance of Notice and Preservation Letters

Based on the Receivers' identification of potential assets and accounts subject to the Receivership Estate, the Receivers are taking steps to preserve and collect relevant records and information within the possession and control of third parties. This includes, for example, issuing nine letters to identified financial institutions to preserve, collect, and provide copies of, or access to, documents and records related to the Receivership Estate. The Receivers intend to issue letters and/or document subpoenas to additional third parties during the upcoming reporting period.

### 4. Other Actions

The Receivers have taken initial steps to establish a receivership bank account pursuant to the Court's order. ECF No. 144 at 4. The Receivers are also working with Plaintiffs' counsel to engage an investigator and identify a digital asset specialist to assist in tracking down assets. At this time, the Receivers have not retained counsel.

### B. Issues Affecting the Integrity of the Receivership Estate

In addition to the reporting obligations detailed above, the November 21, 2025 Order directs the Receivers to report "any material irregularities, unexplained transfers, or issues affecting the integrity of the Receivership Estate, including any potential criminal conduct or wrongdoing." ECF No. 144 at 6. Based on the Receivers' limited review of the record to date, Defendant's attempted transfer of the Othram, Inc. assets, and subsequent testimony under oath, indicates conduct that may constitute wire fraud under 18 U.S.C. § 1343, money laundering under 18 U.S.C. § 1956, and perjury under 18 U.S.C. §§ 1621 and 1623. The Receivers do not and cannot assert any final legal conclusion as to Defendant's conduct at this time. The Receivers

submit, however, that the present record warrants further investigation consistent with the Court's Order. *Id.*

### 1. Defendant's Actions May Constitute Wire Fraud

Despite the Court's July 29, 2025 order barring Defendant from "[s]elling, transferring, or otherwise disposing of any . . . stocks, private investments, or other assets identified in Trial Exhibit 64" (ECF No. 103 at 1-2), Defendant appeared to defy that order through his unsuccessful attempted sale of Othram shares and efforts to route the proceeds into a Wyoming LLC ("JXZ LLC"). *See* Plaintiffs' October 28, 2025 Motion for Order to Show Cause, ECF No. 115 (arguing that such sale had no legitimate business purpose). At the November 10, 2025 hearing, Plaintiffs argued that Defendant "actively is trying to move those Othram assets or cash them out, and then place them in a secret Wyoming LLC that has no purpose other than to try to evade the judgment." ECF No. 133, 7:14-21. In response, the Court stated, "[I]f that's true, isn't that the definition of wire fraud . . . . Which is a Federal offense." *Id.* at 7:22-8:1.

### 2. Defendant's Actions May Constitute Money Laundering

The same actions by Defendant could also constitute money laundering under 18 U.S.C. § 1956. If Defendant undertook the alleged Othram transaction for the purpose of defrauding creditors (*i.e.*, the Plaintiffs in this case) through materially false representations and the use of wire transmissions, any resulting proceeds may constitute proceeds of a specified unlawful activity.

### 3. Defendant's Testimony May Constitute Perjury

Defendant's statements concerning the formation and control of JXZ LLC used to receive the Othram proceeds could also constitute criminal conduct under 18 U.S.C. §§ 1621 and 1623 which prohibit knowingly making false, material statements under oath in federal proceedings. *Id.* Defendant testified at his deposition that he lacked knowledge regarding the individual who

created JXZ LLC and opened the associated bank account. In his deposition, Defendant testified that "I had zero involvement in the creation of . . . the LLC. Yeah, zero involvement. I -- yeah, I wasn't involved with it." Defendant Dep. at 218:18-20. When asked "who set it up," Defendant replied, "It was set up by one of the many people that helped me in the federal government. It's not me." *Id.* at 218:22–23. The Receivers understand that these sworn statements are inconsistent with records and other (non-sworn) statements made by Defendant to the Court. Defendant's testimony on this issue could be material to the extent it bears on who controlled the destination for the Othram proceeds and whether the entity was used to conceal assets from judgment.

Consistent with the Court's Order, the Receivers intend to take further actions to investigate Defendant's actions and testimony regarding this attempted transaction. The Receivers will report to the Court its relevant findings and conclusions regarding Defendant's conduct.

### III. PROPOSED PLAN

As set forth above, the Receivers have taken preliminary steps to identify, secure, and recover assets and accounts subject to the Receivership Estate. Additionally, the Receivers have identified certain actions and conduct by Defendants that may constitute criminal conduct. During the next reporting period, the Receivers intend to build upon these efforts to fulfill their receivership obligations to the Court. Among other actions, the Receivers intend to continue their efforts to corroborate the information provided by Defendant, including issuing subpoenas, sending notice and preservation letters, interviewing witnesses, and other appropriate investigatory actions.

The Receivers recommend that the receivership continue, as they are in the early stages of identifying, securing and collecting Defendant's assets, as well as investigating actions that may constitute criminal conduct.

Dated: December 11, 2025

Respectfully submitted,

*/s/ Jeff Ansley*
Jeffrey J. Ansley
State Bar No. 00790235
jansley@vedderprice.com
Adam D. Farrell
State Bar No. 24140298
afarrell@vedderprice.com

**VEDDER | PRICE P.C.**
300 Crescent Court, Suite 400
Dallas, Texas 75201
469.895.4790 (Ansley)

**RECEIVERS FOR DEFENDANT CHARLES JOHNSON AND THE RECEIVERSHIP ESTATE**