IN THE UNITED STATES DISTRICT COURT

                  FOR THE NORTHERN DISTRICT OF TEXAS

                          FORT WORTH DIVISION

POINT BRIDGE CAPITAL, LLC      )      CASE NO. 4:24-CV-00988-P
ET AL                          )
                               )
                               )      FORT WORTH, TEXAS
vs.                            )
                               )      NOVEMBER 20, 2025
CHARLES JOHNSON                )      1:40 P.M.


                              VOLUME 1
                   TRANSCRIPT OF MOTIONS HEARING
                BEFORE THE HONORABLE MARK T. PITTMAN
                 UNITED STATES DISTRICT COURT JUDGE


**A P P E A R A N C E S**:

FOR THE PLAINTIFF:      WILLIAM BENNETT THOMPSON
                        DLA Piper, LLP US
                        1900 N. Pearl Street
                        Suite 2200
                        Dallas, Texas  75201
                        Telephone:  214.743.4500



PRO SE DEFENDANT:       CHARLES JOHNSON
                        1624 Fieldthorn Drive
                        Reston, Virginia 20194
                        Telephone:  617.429.4718


STAND-BY COUNSEL:       DEVON JUDY SANDERS
                        ASSISTANT FEDERAL PUBLIC DEFENDER
                        NORTHERN DISTRICT OF TEXAS
                        819 Taylor Street, Room 9A10
                        Fort Worth, Texas  76102
                        Telephone:  817.978.2753

RECEIVERS:                    JEFFREY J. ANSLEY
                              ADAM D. FARRELL
                              Vedder Price
                              300 Crescent Court
                              Suite 400
                              Dallas, Texas  75201
                              Telephone:  469.895.4790


COURT REPORTER:               MONICA WILLENBURG GUZMAN, CSR, RPR
                              501 W. 10th Street, Room 310
                              Fort Worth, Texas  76102
                              Telephone:  817.850.6681
                              E-Mail:  mguzman.csr@yahoo.com



Proceedings reported by mechanical stenography, transcript produced by computer.

**<u>INDEX</u>**

                                              PAGE   VOL.

Appearances ................................4      1

Motion to Appoint Receiver .................7      1

Motion to Show Cause – Property Taken ......14     1

Miranda Rights Given .......................17     1

Court's Ruling .............................22     1

Motion to Show Cause – Discovery ...........22     1

Questioning by the Court ...................31     1

Court's Ruling .............................52     1

Proceedings Adjourned ......................58     1

Reporter's Certificate .....................59     1

Word Index .................................60     1

**P R O C E E D I N G S**

*(November 20, 2025, 1:40 p.m.)*

THE COURT:  This is Case Number 4:24-CV-988-P, Point Bridge Capital, LLC, et al vs. Charles Johnson.

Who do I have for plaintiffs?

MR. THOMPSON:  Will Thompson for the plaintiffs, Your Honor.

THE COURT:  Okay.  Mr. Johnson?

DEFENDANT JOHNSON:  Charles Johnson representing himself, with Ms. Sanders assisting.

MS. SANDERS:  I just want to note for the record, Your Honor, I've been appointed for the limited purpose of this hearing.  I do not have Mr. Johnson's permission to speak on his behalf.

THE COURT:  You do not or you do?

MS. SANDERS:  I do not.

THE COURT:  Okay.  Let me -- Ms. Sanders, let the record reflect that I have asked Ms. Sanders -- thank you for being here.  I know that this is the last thing you probably wanted to deal with today, especially because you were with me all morning in a criminal docket.

But let the record reflect, I made a request that Ms. Sanders, a very competent Federal Public Defender, show up here today out of abundance of caution, due to some of the past actions that we've seen from Mr. Johnson.

One of the things that we're going to take up later is going to be contempt.  And I want you here as standby counsel for now.  The first matter I'm going to take up is a purely civil -- it's a receivership motion.  And when I get to the portion that might possibly involve him needing advice on his Constitutional rights, then we'll take that up, okay?

*MS. SANDERS:*  Understood.  Thank you, Your Honor.

*THE COURT:*  But, again, thank you for being here today.  Again, this is done simply as an abundance of caution.

And Mr. Johnson, thank you for being here today.

*DEFENDANT JOHNSON:*  You're welcome, Your Honor.

*THE COURT:*  All right.  We have several matters to take up today.  And you've heard me express this the last couple of times you've been here, Mr. Johnson, there isn't a lot of time for shenanigans.

We do have a very busy docket, I've had a very busy morning.  You have an outstanding $71 million judgment, as I said at the previous hearing, that has not been stayed, has not been superseded.

You were involved in every type of avoidance when it came to the underlying case, you would not answer questions, you would not cooperate.  You went through, at least, two attorneys I can think of.  I've admonished you several times that you need to think about trying to find an attorney.  I've threatened you with contempt at various times.

I ordered you to appear at the courthouse and answer post-judgment discovery and to give your deposition. I am at the end of my rope. I don't have any more patience, and I do not think it would be in your best interest to do what you've done previously with me; and that is, to not answer questions, not cooperate. It's just not going to end well.

I've done everything that I can possibly do to ensure that, not only do you have all the due process that you're entitled under our Constitution and our common law system, but also even more so. Indeed, I've even asked a public defender to be here today.

So, it's probably not going to be in your best interest to do anything other than answer my questions and participate. We don't have time to listen to stories. I'm trying to get to the bottom of this.

I cannot make it any clearer than I made at the last hearing, that you have a $71 million judgment, the plaintiffs are entitled to collect on that judgment, and they're entitled to post-judgment discovery to determine what assets you have.

Thus far, you have been absolutely, 100% uncooperative. As a result of that, the plaintiffs have filed a motion for a receivership. Now, a receiver is appointed by the Court to, basically, take control of your assets and your estate, and determine what's out there and what is subject to the judgment that the plaintiffs have.

The motion that has been filed by the plaintiffs appears very meritorious to the Court.  Indeed, you said at the last hearing that we had about, I believe it was a little over a week ago, that you would not object to the appointment of a receiver.  And I have done my best to try and identify some attorneys and some law firms that I know have the ability to serve as receiver in this case that I believe are best suited to do so.

If we would like to hear argument on the receiver, I'd be happy to hear it.  But I think it might be best for me to ask you, Mr. Johnson, Are you going to object?  Because you did not file a response to the motion to appoint a receiver filed by the plaintiffs.  Are you objecting to the appointment of a receiver of your estate?

*DEFENDANT JOHNSON:*  No objections, Your Honor.

*THE COURT:*  Okay.  You need to be sure you stand when you address the Court.

*DEFENDANT JOHNSON:*  Oh, sorry, yes.

No objections, Your Honor.  I don't think it will be totally necessary, but they're *(sic)* happy to comb through all of my assets.

*THE COURT:*  Okay.  No need to engage in a colloquy with the Court.

*DEFENDANT JOHNSON:*  No objection.

*THE COURT:*  No objection.

Mr. Thompson, before I make my ruling on the unopposed motion, is there anything you'd like to say with regards to the appointment of the receiver?

*MR. THOMPSON:* No, Your Honor. We'll just stand on -- on our motion for receiver and the supplement that we filed. We think a receiver is necessary, even more so following the deposition. We have no objection to the tentative recommendations that Your Honor cited for the receiver, and we're happy to go forward.

*THE COURT:* Okay. Well, I'd like to take this like the old Johnny Cash song, One Piece at a Time; let's do it one piece at a time, and we'll gradually get to the end, okay?

So, hearing no objection, and having reviewed the carefully filed and constructed motion for receiver filed by the plaintiffs, the Court's determined that it is appropriate in this case, that all of the legal requirements for the appointment of a receiver have been met in this case, it's not been objected to by Mr. Johnson.

Now, Mr. Johnson, the Court, after much study and consideration, has determined the appropriate folks to appoint as a receivership in this case, both to protect you and to protect the plaintiffs -- and again, you should take comfort in the fact that I have a lot of respect and admiration for Mr. Robert Webster, who was suggested by the plaintiffs. But out of abundance of caution, quite frankly, given your

proclivity to engage in conspiracies and to feed conspiracy theories, I went an entire different direction and decided not to appoint Mr. Webster. Although, I've known Attorney Webster for almost 20 years, and I can assure you no one is better suited to serve as a receiver, and certainly look out for your interests, as well as the Court's and the plaintiffs'.

But partially, at least, in consideration from some of your concerns, I've decided that the receiver that I will appoint in this case is the law firm of Vedder Price. I've asked the two attorneys over there that will be conducting and be appointed as receiver in this case to please appear at the hearing today. I see that they're out there.

Mr. Ansley, would you please step forward, along with Mr. Farrell.

*(Attorneys approach the bench)*

THE COURT: Why don't both of you two make an appearance on the record, just so it's clear.

MR. ANSLEY: Yes, Your Honor.

THE COURT: I don't believe I'll need to hear anything else from you. But make your appearance, and if I need anything, or we need you later, it's good that you're here.

Thank you, Mr. Ansley.

MR. ANSLEY: Jeff Ansley with Vedder Price.

MR. FARRELL: Good afternoon, Judge. Adam Farrell

with Vedder Price.

THE COURT: All right. Thank you, gentlemen. If you'll have a seat at counsel table.

So, in choosing the law firm of Vedder Price, and Mr. Ansley and Mr. Farrell, to serve as your receiver, again, I did this trying to find the most capable folks to serve as receiver while still maintaining your interest.

Mr. Ansley is a longtime prosecutor, criminal defense attorney, as well as commercial litigation attorney here in the Dallas/Fort Worth area. He's not only served at a large law firm here in Fort Worth for a number of years, but he also has experience both at the Security and Exchange Commission, the U.S. Attorney's Office, and he is a longtime, well-respected criminal defense attorney in the white-collar space. So, I thought he would be perfect for this. Unlike, perhaps, maybe Mr. Webster, he also has a staff that can look into the assets in this case and pursue correct claims.

I believe, Mr. Ansley, that I saw a release recently, I believe you-all have hired an additional former Assistant U.S. Attorney that dealt with questions involving the affirmative civil enforcement division; is that correct?

MR. ANSLEY: That's correct, Your Honor. We hired Andrew Robbins from the U.S. Attorney's Office in Dallas.

THE COURT: I'm obviously not going to direct the receiver as how to staff your cases. But having been at the

U.S. Attorney's Office several years ago, I can tell you, as you well know, too, Mr. Ansley, that attorney would certainly have the ability to be able to look at assets and determine what's recoverable from a judgment and what's not.

MR. ANSLEY:  *(Nods head)*

THE COURT:  So, I was glad -- that was another thing that played into my reason to appoint you-all.  Thank you.

Mr. Farrell is well-known here in Fort Worth.  He was a law clerk for the Honorable Reed O'Connor, the Honorable Terry Means, and he also did some work for me.  I know him to be honest and forthright.

He's also a retired Air Force captain, where he was a prosecutor, and has experience in both prosecution and defense work, as well as advising the highest levels of command in the Pacific Ocean Command for the Air Force on various strategic decisions.

Is that a good way to put it, Mr. Farrell?

MR. FARRELL:  Yes, Your Honor.

THE COURT:  And he's, I believe, been at Vedder Price for several months.  So I thought that he would be a good person to deal with this, too.  Like Mr. Ansley, I personally know him to be honest and forthright.

And I can assure you, Mr. Johnson, that both of these individuals are there not only to determine what assets you have and what is appropriate, but they're also not going

to be conceding that any assets that would not be subject to the judgment; if they are exempt, they won't be going after them.  So they are very well versed in this kind of thing.

But, unfortunately, when you have a judgment -- I warned you about this several months ago, when you represented yourself in trial.  When you have a judgment against you and you don't stay the judgment or supersede the judgment, it is collectible; and that's where we are.  And you have not been cooperative, and I am left with no other choice but to do this.  And again, I'll note that you haven't objected to it.

So, effective here on out, after this hearing today, I will be signing the proposed order for a receiver that Mr. Thompson submitted, giving all those powers listed therein to the two receivers.  It might be a good idea for you to visit with them at some point today.

Mr. Thompson, do you have any questions for me?

MR. THOMPSON:  No, Your Honor.

THE COURT:  Okay.

MR. THOMPSON:  On the receiver aspect of it.

THE COURT:  And probably a good idea for you to visit with the receivers as well.

But these two gentlemen and their law firm stand effectively into the shoes of the Court.  They are effectively appointed as my officers to go out and determine what assets you have and what is recoverable, because you've refused to

cooperate.  And to the extent that you don't cooperate with them, I'm sure that they will let me know.

Do my receivers have any questions for me?

MR. ANSLEY:  No, Your Honor.

THE COURT:  All right.  Thank you, gentlemen.

DEFENDANT JOHNSON:  May I ask a question, Your Honor?

THE COURT:  Yes, sir.

DEFENDANT JOHNSON:  So, I have a fiancee that is pregnant that has like difficulties, and if it's possible with the receivers, I'd prefer not to be coming down to Fort Worth and Dallas, if we can do it over the phone.  Is that possible?

I'm happy to send them all my assets.  I have no objection to them, and, frankly, kind of happy that you chose them.

THE COURT:  I'll let you visit with them.

DEFENDANT JOHNSON:  Okay.  Thank you.

THE COURT:  As I said, they effectively stand in my shoes.  I've known both of these individuals over here for -- at least Mr. Ansley, for probably almost 30 years.  I can assure you, if you cooperate with him, he'll cooperate with you, okay?

DEFENDANT JOHNSON:  Okay.

THE COURT:  All right.  Now let's take up our remaining issues.

In addition to having a hearing today with regards to plaintiffs' motion for a receiver, the Court has also ordered defendant to appear today and show cause why he apparently failed to comply in good faith with the order that I entered that he had to comply with post-judgment discovery.

And that not only deals with the failure to answer interrogatories, written discovery information regarding his assets, but also his failure to answer questions at the deposition that was noticed to take place at the courthouse on Monday.

Counsel for plaintiff has submitted a rough draft of the deposition, and I've had a chance to review it.  And the only thing that I can say to describe your behavior in the deposition, Mr. Johnson, is that you were either unresponsive, or obstructive throughout the deposition, and it was largely a complete waste of time.  And the transcript speaks for itself.

It was also brought to my attention, and this is part of the order causing you to appear today, that certain items showed up missing from Judge O'Connor's jury room; and that would be all of the water the taxpayers had paid for for our jurors, and then also there was mug that was taken.

Why don't we do, as I said, the Johnny Cash method, and take up the alleged theft of Government property first. And before I do that, as I said, out of abundance of caution, before I consider your response to the allegation that you

stole Government property from the jury room, I think it might be ideal for me to formally appoint Ms. Devon Sanders, one of our best Federal Public Defenders here in Fort Worth.  And I will appoint her as standby counsel in this case.  And she is there if you have any questions about your Constitutional rights.

*DEFENDANT JOHNSON:*  No, Your Honor.  I can clear it up, rather quickly, if you'd like.

*THE COURT:*  Would you like to visit with her?

*DEFENDANT JOHNSON:*  No, I don't.

*THE COURT:*  So you don't choose to use her services?

*DEFENDANT JOHNSON:*  Correct.  I'm happy to have her present next to me, but I don't need her services.

*THE COURT:*  Okay.

*DEFENDANT JOHNSON:*  If I may very quickly?

*THE COURT:*  No, you may not.

*DEFENDANT JOHNSON:*  Okay.

*THE COURT:*  I'm still talking to you.

Ms. Sanders, have you had a chance to at least maybe visit with him about his rights under the Fifth Amendment, or should I give him his Miranda warnings at this time?  It sounds like he's declined to have you represent him, so I hate to put you in a spot.  I would like for you to remain as just standby counsel.

*MS. SANDERS:*  Absolutely, Your Honor.

I have communicated with Mr. Johnson.  But I agree, out of an abundance of caution, if you could give him those warnings, I think that might be best for everyone involved.

THE COURT:  I think so, too.

DEFENDANT JOHNSON:  Just to be clear, I checked my Miranda rights this morning, and I'm happy to waive them.  I'm happy to speak on my own behalf.

(Discussion between defendant and counsel)

DEFENDANT JOHNSON:  Yes, Your Honor.

So --

THE COURT:  Wait.  Be careful.  I'm really, really -- this is it for you, buddy.  I'm trying to be patient, but I've been dealing with this for at least nine months, okay?

DEFENDANT JOHNSON:  Yes, Your Honor.

THE COURT:  I want to make sure -- Ms. Sanders, thank you for, again, being here and trying to admonish Mr. Johnson, although he's not your client.  Sounds like he doesn't want your advice.  It's one thing to say that to the Court-appointed attorney, its another to me.

I am going, at this time, to read you your rights under the famous United States vs. Miranda case regarding your rights -- I'm sorry, Miranda vs. Arizona case, regarding your rights under the Constitution when it comes to self-incrimination.

I would ask that you please listen carefully.  You

said that you understand these rights?

*DEFENDANT JOHNSON:* I do, Your Honor.

*THE COURT:* Okay. Well, let me read them to you, and I'll ask you a follow-up question.

Mr. Johnson, you have the right to remain silent. Anything you say can and will be used against you in a court of law.

You have the right to speak to an attorney, and have an attorney present during questioning. If you cannot afford a lawyer, one will be provided for you at Government expense.

Do you understand those rights as I've read them to you?

*DEFENDANT JOHNSON:* I do and I waive them.

*THE COURT:* And you understand that if you so desire, I will take a break and let you visit with Ms. Sanders and we'll appoint her to act as your attorney?

*DEFENDANT JOHNSON:* I do, Your Honor. And she's not necessary at this time.

*THE COURT:* Okay. Please answer questions yes or no and that goes for the remainder of the hearing.

*DEFENDANT JOHNSON:* Yes.

*THE COURT:* I want you to go over to the podium.

*DEFENDANT JOHNSON:* Okay.

*THE COURT:* Why don't you grab the mug there.

As I said, let's take up the issue of the property

that was allegedly removed from the jury room.

Did you remove the items as I've described them?

*DEFENDANT JOHNSON:*  I did, Your Honor.

*THE COURT:*  Okay.  It's your opportunity to show cause.  Why did you do that?

*DEFENDANT JOHNSON:*  Several reasons.

One, I asked previously if anything that was in the kitchenette was mine to take; and I was informed that, yes, I could.  I then asked about the mug, but there is no sink in the kitchen.  And so I went back and took the mug back to my hotel room, bought some dish soap -- and gave four water bottles that I had taken previous -- or that I had taken, and gave two of them to some homeless people outside of my courtroom -- or outside of the Courtyard Marriott, where I was staying.  I then gave two more to other homeless people in the area.

Since this trial has begun --

*THE COURT:*  So you removed Government property, and you took the water bottles and gave them to homeless folks.  And you took a mug and took it back and washed it?

*DEFENDANT JOHNSON:*  Correct.

And I brought some tea with me, because there's no tea options -- not a lot of healthy options in the courthouse.

So, I was there for six hours.  I think I --

*THE COURT:*  This was not meant as a spa trip.  This

was meant for you to actually answer truthfully the questions.

*DEFENDANT JOHNSON:* Yes.

*THE COURT:* And you're saying somebody in the Court staff told you that you could use Government property, and you could take the water bottles and give them away and you could take the mug back to your hotel?

*DEFENDANT JOHNSON:* They never said that I could take it back to my hotel. But they did say -- I did ask if everything that was in that room was mine to use.

*THE COURT:* Okay.

*DEFENDANT JOHNSON:* I'm perfectly willing to go down to county lockup over a mug, which has been returned.

*THE COURT:* Let me --

*DEFENDANT JOHNSON:* The same with the water bottles, I'm perfectly willing to sit before a jury --

*THE COURT:* You have a tendency not to know when to be quiet, okay?

*DEFENDANT JOHNSON:* Yes.

*THE COURT:* I'm trying to be as polite as possible.

*DEFENDANT JOHNSON:* Actually, I didn't steal a Bible, it was returned to me by one of the --

*THE COURT:* Again --

*DEFENDANT JOHNSON:* -- homeless people I gave it to.

*THE COURT:* -- please be quiet unless there's a question outstanding. You can have a seat.

*DEFENDANT JOHNSON:*  Thank you.

*THE COURT:*  Mr. Thompson, do you care to respond to this?  You would have been there.

*MR. THOMPSON:*  Yes, I do.

I disagree with Mr. Johnson's statements.  As to the water bottles, I don't recall anyone saying anything.

I did have a recollection about the mug, because I was in the discussions.  It was four people there, myself, the court reporter, the videographer, and Mr. Johnson.  The deposition had concluded, or at least I called time on it when he, it was clear, wasn't going to answer the questions.

He said, I'd like a souvenir for my time here.  And he brought the mug that he had with him, he says -- I said -- he says, Can I take it?  I said, I don't think so, it's not yours.  I specifically said, It's not your mug.  And I said, why would you want it?  I said, I don't know why you want to take it because it's a Tarrant County Bar Association mug.

And I distinctly recall, and I wrote this down, Mr. Johnson saying, Well, I suppose it is better to ask for forgiveness than to ask for permission, or maybe it's easier to ask for forgiveness than it is permission, and then walked out.  And then made another quip, because Mr. Johnson at the deposition had said, repeatedly, that he might be called in for a show cause hearing, but he wouldn't -- there would be no -- he could always leave.  He mentioned having -- the worst

thing that would come about it is he'd have to eat some food he shouldn't have to. But he says, I guess this will be my mug shot; and he kind of held that up.

THE COURT: It's a pretty clever pun.

MR. THOMPSON: And, Your Honor, I didn't print it out, but I read Mr. Johnson's social media Substack, and he posted a picture with the mug, and said, This is my mug shot, and just, you know -- but that's all I have to say.

I disagree with Mr. Johnson's characterization. Neither myself, nor the court reporter, nor the Court staff, ever granted him any type of permission; and instead we said it was not his mug.

THE COURT: Thank you.

I hate to do this to the Court Security Officer. But does Mr. Johnson's story about a court staff person telling him that he could make use of the kitchenette sound credible to you, given that either you or one of your officers down there you supervise are the one that led him up to the kitchenette and the jury room?

SECURITY OFFICER: No, sir. It is not.

I, myself, escorted Mr. Johnson to Judge O'Connor's jury room on the third floor. I advised Mr. Johnson where the men's room was, adjacent to the jury room, and indicated rooms where he would be deposed, and advised him to remain in that area until the conclusion of the deposition.

*THE COURT:*  Thank you, Officer.

Mr. Johnson, having heard the response to the show cause order, having heard from Mr. Thompson and the Court Security Officer as to their version of what happened, and, quite frankly, having worked in this building for the past six and a half years, and knowing that even the Judge can't take water from the jury room, I am deeply disturbed by the fact that you undertook these actions.

This was not meant for you to come up here and make a joke of this.  And it seems like that's all you have been able to do.  I think that the least severe sanction that I can think of to correct the behavior, and that would be, frankly, I can't think of another word for it, but stealing Government property, would be a $1,000 fine, due and payable immediately at the conclusion of this hearing down in the Clerk's Office, for removing those items without permission.

So that's Johnny Cash's first piece of the Cadillac. Let's go to the second piece.  You've also been ordered to show cause, and this is the second time, as to why you did not make a good-faith effort to comply with the post-judgment written discovery.

Based on the current filings before the Court, you still have not answered, for example, the interrogatories. We're not taking the deposition up at this time, as I said, this is the second piece of the Cadillac that we're trying to

put together here.  I only care about the -- what is it, Mr. Thompson, do we have two outstanding orders or one at this point that he comply with post-judgment discovery?  I have the original order, and then the second one from the last hearing; is that correct?

MR. THOMPSON:  That's my understanding, Your Honor.

THE COURT:  Okay.  So why don't you frame it for us, and then we'll allow Mr. Johnson to respond.  But is the Court's statement correct, that there has been absolutely no compliance with the Court's two orders and admonishments, and we do not have answers to that written discovery?

MR. THOMPSON:  Yes, Your Honor.

A little color on that.  As to the order, plaintiffs, last week -- or the week before, had moved to compel Johnson to enter -- excuse me, answer two interrogatories as to his assets and also his cryptocurrency holdings.  Your Honor granted that after the November 10th hearing.  Those were never answered.

Mr. Johnson, at the deposition, didn't bring those interrogatory answers.  Those were due on the previous Saturday.  Your Honor ordered them five days from November 10th.  We didn't receive anything, he did not bring them to the deposition.

What he said was, he gave that -- he gave them to his dad to mail.  And I just checked, five minutes before our

hearing, at 2:00 today, and my office had not received any mail related to these interrogatories.  Mr. Johnson also provided no proof that he had mailed them.  So that's the answer on the interrogatories.

I guess the only corollary to that is --

*THE COURT:*  And he swore under oath -- I'm assuming you swore him in at the deposition -- to this story?  Was this story on the record?

*MR. THOMPSON:*  This story was under oath.  He was sworn in by the court reporter.

*THE COURT:*  And that's evidenced by the rough transcript that you filed with the Court; is that correct?

*MR. THOMPSON:*  Correct, Your Honor.  We requested the rush transcript on that, it was long.

But multiple times I noted to Mr. Johnson that -- at the very beginning, outset of the deposition, I said that the oath that he swore in that deposition was the same as if he was before Judge Pittman in the courtroom; and Mr. Johnson said that he understood that.

Mr. Johnson has like -- said that he would answer minimal questions about his assets.  The word that he repeatedly used was, I think, "Minimal compliance."  And I discuss that more in Docket Entry 131, our supplement -- or excuse me, Docket Entry 136, plaintiffs' supplement to support a motion to appoint a receiver.

I asked Mr. Johnson what minimum compliance was; he said, Well, it's the absolute minimum.  So I said, You're not going to tell me about all your assets; and he said something along the lines of that's correct.

THE COURT:  And again, so our record is clear, we're just talking about the written discovery.  I'll get to the deposition.

MR. THOMPSON:  Sure.  Absolutely.  So, that's the answer on the interrogatories.

Your Honor's order on plaintiffs' motion to compel post-judgment discovery also compelled Mr. Johnson to bring certain documents to the deposition, to show up to the deposition with those documents.  Included within the plaintiffs' request Mr. Johnson was ordered to produce were tax returns; he produced nothing.  Again, citing to some unnamed government authority that he was operating under.

That is the best summary of Mr. Johnson's compliance with Your Honor's orders on the production of interrogatories and outstanding document requests.

THE COURT:  Okay.

All right.  Mr. Johnson, it's been laid out by both the Court and Mr. Thompson.  Please approach the stand, and let's have your opportunity to show cause.  And again --

DEFENDANT JOHNSON:  Sure.

THE COURT:  -- I don't need a long colloquy.

*DEFENDANT JOHNSON:* Very -- very quickly.

*THE COURT:* Stop.

*DEFENDANT JOHNSON:* Sorry.

*THE COURT:* We're only dealing with the written discovery, and that includes the documents you were supposed to bring to your deposition, that includes the orders that you were subject to to answer the post-judgment discovery.

I've read the deposition transcript. As I said, you were unresponsive and obstructive to each and every question dealing with the written discovery. Mr. Thompson has said you didn't bring any requested documents, the ordered documents, rather, to the deposition. And this is part of the reason necessitating the appointment of a receiver.

So, it's your chance, tell me why you should not be sanctioned and/or held in contempt.

*DEFENDANT JOHNSON:* Very simply, Your Honor. You said at the last hearing that we came together that you would stop the abuse and harassment that would take place in the discovery where there were questions that were asked that had nothing to do with my post-judgment assets. And there were, quite a number of questions. My relationship with the FBI, my relationship with somebody who's currently facing criminal charges, there were quite a number of questions. It went on for six hours, which is probably why I wanted the water.

And so, yes, there is an abuse of process that's

been going on, the abuse of process started when I --

THE COURT: Did you bring any documents with you?

DEFENDANT JOHNSON: I did not, Your Honor.

THE COURT: Did you answer interrogatories?

DEFENDANT JOHNSON: I did answer the interrogatories when he asked them in the room, yes. And I did answer them, and I did --

THE COURT: We'll get to the deposition in a moment.

DEFENDANT JOHNSON: Yeah.

THE COURT: Okay. That is absolutely noncompliant. So you've violated two of my orders. And I'm left with no other choice but to hold you in contempt for failure to comply with the ordered post-judgment discovery and providing those documents, you were ordered to do so.

So we're going to put that aside. You can have another seat.

DEFENDANT JOHNSON: Okay. Thank you.

THE COURT: Johnny Cash is going to try to put the bumper on his Cadillac. We're going to talk about the deposition and what went on at the court-ordered deposition.

And Mr. Thompson, I don't think I need you for this, but I am going to need Mr. Johnson. Out of abundance of caution, you were specifically ordered to comply with the written discovery and bringing the various documents; you've told me today you didn't do it. The best thing I can get out

of you as an excuse, is that you have some sort of FBI/CIA handlers or something that's forbidding you to do that.

Here in the United States, even if that's true, the judiciary is a coequal branch of government with the executive branch or the legislative branch, and I have authority to order you to do this and to produce this. You haven't done it.

I have taken several hours out of my day. As you know when you were here last time, I just got out of a week-and-a-half-long trial. This morning was spent sentencing various criminal defendants. But I have managed to take home your deposition transcript and exhaustively read it; taking time away from my family.

I cannot say anything else, other than regarding matters that you were ordered to respond to, you were consistently unresponsive, obstructive during that deposition. So at this time, I am asking you to come take a seat on our witness stand. Out of abundance of caution, before I announce my final decision and what will happen to you for being held in contempt, I would like to give you one last opportunity to comply with the Court's orders concerning the disclosure of your assets.

So come up to the witness stand.

*(Defendant approaches the stand)*

*THE COURT:* Before you take a seat, sir, raise your

right hand.

(Witness sworn)

THE COURT:  Have a seat.

All right.  Be sure you speak into the microphone, so Monica can hear.

Now, as I said, I've spent several hours reviewing the deposition transcript, as well as the matters before the Court today.  I have taken a very close look at the deposition transcript.

I want to note for the record at this time that your answers to several of the financial questions were evasive, at best.  You repeatedly refused to provide information on the basis of your alleged government contracts -- contacts, and you frequently interrupted Mr. Thompson and diverted to unrelated narratives and nonsense.

Today, you're asking questions that I am -- I am asking you questions and I am not the attorney.  I'm telling you, you had better give me clear, direct and complete responses to my questions.

So what I have done, Mr. Thompson, I went and reviewed your deposition transcript, I don't know how any counsel of any experience could have gotten through this.  What a difficult task for you.  I can't imagine being any more frustrated, so I commend you for your patience.

I have picked out what I think are the most

pertinent questions that were unanswered at the deposition, and I'm about to go through those. But I want to let you know, because Mr. Johnson was so obstructive, that I did my best to try to draft the questions in the same way that you stated them, but just, quite honestly, it was hard for you to get any questions out. So I have drafted the questions as best I can with an eye towards that.

MS. SANDERS: Your Honor, may I briefly approach the witness?

THE COURT: The witness has said he doesn't want to consult you.

MS. SANDERS: Just for a brief minute.

THE COURT: Out of abundance of caution, I'll let you. But I'll note, that so far Mr. Johnson has refused to take your advice or allow you to represent him. So I'll do it one time, okay?

MS. SANDERS: Thank you.

(Discussion between defendant and counsel)

THE COURT: Ms. Sanders, I don't want to ask you what you advised Mr. Johnson, but, again, my understanding is he's refusing to allow you to act as his attorney; is that correct?

MS. SANDERS: Yes your Honor.

THE COURT: Okay. All right. Thank you, though, again, for being here.

Let me ask you a few questions, answer them fully and responsively.  And I'll preface this again by saying, if you don't know the answer, or you're not allowed to disclose pursuant to your alleged government contacts, that's not going to cut it.  Do you understand that?

DEFENDANT JOHNSON:  I do, Your Honor.

THE COURT:  Okay.  Listen very closely.

In your deposition you stated multiple times that you intended to be only, "Minimally compliant," and would not -- and would provide, "not complete information" -- again, I'm quoting directly from your deposition transcript "in response to the Court's discovery orders."

The Court requires full compliance and complete responses regarding your financial information.  Are you now prepared to provide a complete, detailed and accurate account and information about your finances?

DEFENDANT JOHNSON:  I am to the -- to those gentlemen there.  Is that who I'm supposed to interact with?

THE COURT:  You're here today to answer this.

DEFENDANT JOHNSON:  Yes.  I am prepared.

THE COURT:  Okay.  All right.  Thank you.

Have you transferred, moved, or otherwise disposed of any assets for the purpose of placing them beyond the reach of Point Bridge Capital or Mr. Hal Lambert, the plaintiffs in this case?

*DEFENDANT JOHNSON:* No.  I have not, Your Honor.

*THE COURT:* Okay.

Have many -- how many government trusts do you own and how many are you a beneficiary of?  So how many trusts do you currently own and how many are you the beneficiary of?

*DEFENDANT JOHNSON:* On the government trust side, I don't know the answer.

*THE COURT:* Well, do you have a guess for us?  More than two?

*DEFENDANT JOHNSON:* They were set up for me by other people, so I don't know the answer to that question.

*THE COURT:* Well, I'm asking you to tell me how many you think there might be.  One, two, three, four?

*DEFENDANT JOHNSON:* Maybe one, maybe two.

*THE COURT:* Maybe one, maybe two?

*DEFENDANT JOHNSON:* I don't know.

*THE COURT:* Maybe ten?

*DEFENDANT JOHNSON:* I don't know.

*THE COURT:* Less than ten?

*DEFENDANT JOHNSON:* Well, every time something is done, typically there's a -- there's a asset -- or there's an account that's set up for them.  So I wouldn't know the answer to that question.  I'm not -- I'm not in charge of that.

*THE COURT:* And these are trusts that are held in your benefit?

*DEFENDANT JOHNSON:* I don't think so, Your Honor. I think they're held for the benefit of things that are done for the government.

*THE COURT:* Explain that.

*DEFENDANT JOHNSON:* So my understanding is that when there's work that's done on behalf of the U.S. Government, there are trusts that are oftentimes created for individuals who act as custodians, or they use that money for the operation or for what's going on. So I don't think that that money is mine per se.

*THE COURT:* Are you talking about for clandestine activities?

*DEFENDANT JOHNSON:* Not necessarily clandestine, but for all kinds of manners. Yeah, I don't know the answer to the question, that's why I couldn't answer it the other day.

*THE COURT:* Can you identify those trusts for us?

*DEFENDANT JOHNSON:* I cannot, Your Honor. I don't know them.

*THE COURT:* But you do know that you have them?

*DEFENDANT JOHNSON:* I do know that somebody who worked -- that I worked with told me that he had set them up on my behalf and on behalf of my ex-wife and daughter.

*THE COURT:* Who told you this?

*DEFENDANT JOHNSON:* I will not say.

*THE COURT:* You're refusing to answer the question;

is that correct?

DEFENDANT JOHNSON:  I am, Your Honor.

THE COURT:  Okay.  Moving on.

How many trusts do you know of that you are the beneficiary of?  And that might include something that maybe your parents, or grandparents, or other family members might have set up for you.

DEFENDANT JOHNSON:  I think I'm the beneficiary of one that my father set up, but I don't know.

THE COURT:  How do you not know whether you're the beneficiary of a trust?

DEFENDANT JOHNSON:  Typically, we are WASPs, we don't really talk about that sort of thing.  We usually find out when people die.

THE COURT:  That's not been my experience in 50 years, but -- so you don't know whether you have -- you're a beneficiary of a trust or not?

DEFENDANT JOHNSON:  Correct.  I have my own trust.

THE COURT:  Okay.  Tell us --

DEFENDANT JOHNSON:  Which is --

THE COURT:  -- tell us about your own trust.

DEFENDANT JOHNSON:  Which is Xavier Capital Trust, and it has two assets in it.

THE COURT:  Tell us the assets.

DEFENDANT JOHNSON:  They are the Clearview AI stock

and they're the Othram stock.

THE COURT:  And were these trusts -- you set these trusts up?

DEFENDANT JOHNSON:  They were set up by an attorney in California that was introduced to me.

THE COURT:  Well, you understand what I mean.

DEFENDANT JOHNSON:  What do you mean?

THE COURT:  You went to the attorney and asked the attorney, Please set up a trust for my benefit and these are the assets I want placed in the trust?

DEFENDANT JOHNSON:  Correct, Your Honor.  And that was in 2019, which is beyond the scope -- or beyond the questions -- time limit that Mr. Thompson asked about.

THE COURT:  You understand with the appointment of a receiver all of this has to be disclosed, and whether it's subject to the $70 million judgment or not, is not a question for you to determine, rather it's a question for me to determine?

DEFENDANT JOHNSON:  I agree, Your Honor.  I'm happy to comply with the two gentlemen that you just put in charge of the receivership.

THE COURT:  Let me continue.  Any other trust that you can think of?

DEFENDANT JOHNSON:  No, Your Honor.

And Mr. Thompson asked me about a trust that was

called the Task Force Trust, and that involved the assets that are in question here, which is --

THE COURT:  I'm asking big questions, because I want you to give detailed answers.

DEFENDANT JOHNSON:  Yes.  I'm giving you as detailed an answer as I can.

THE COURT:  All right.  The Task Force Trust, what is that?

DEFENDANT JOHNSON:  The Task Force Trust was set up by myself and brother and father.  And it was set up with the intent of putting half of my interest in this special purpose vehicle in a company called Umbra, which is a synthetic aperture radar technology system.  And so, Mr. Lambert cheated me out of that interest, so ultimately I didn't end up putting it into --

THE COURT:  I don't care whether --

DEFENDANT JOHNSON:  -- the Task Force Trust.

THE COURT:  -- it was cheated or whatever --

DEFENDANT JOHNSON:  So there's no assets in the trust.

THE COURT:  -- I need to know what you own --

DEFENDANT JOHNSON:  Yes.

THE COURT:  -- and you haven't been telling us.

DEFENDANT JOHNSON:  Just so you know --

THE COURT:  You're even refusing to ask (sic)

questions.

*DEFENDANT JOHNSON:* Okay. And then -- so, yeah, those are it for me.

And then my ex-wife and daughter have a trust, but those assets haven't been touched since 2019. And again, those -- I think this would be the Clearview and Othram stock, or they could also include some of the Umbra stock as well.

*THE COURT:* Okay. Let me continue.

What's your best estimate of the total amount of money you have received from the United States Government or any foreign government?

*DEFENDANT JOHNSON:* I don't know. Maybe somewhere around a few million.

*THE COURT:* You've received $3 million from the United States Government?

*DEFENDANT JOHNSON:* Not totally sure, Your Honor.

*THE COURT:* That's just a ballpark or was that a --

*DEFENDANT JOHNSON:* I don't know. Because typically the way it's done is sometimes you're given a contract through an intermediary. So I just don't know the answer to that question, I couldn't answer it truthfully.

*THE COURT:* Do you want to discuss any of the work you've done for the United States Government?

*DEFENDANT JOHNSON:* No, Your Honor. I like doing the work. I intend to continue doing it, if I can.

*THE COURT:* So you're refusing to answer the question, The type of work you've made $3 million, allegedly, from the United States; is that correct?

*DEFENDANT JOHNSON:* Correct, Your Honor.

*THE COURT:* Have you ever received any money from any foreign governments?

*DEFENDANT JOHNSON:* Not to my knowledge, Your Honor.

*THE COURT:* What does that mean, not to my knowledge?

*DEFENDANT JOHNSON:* There have been times in which I've been asked to take money from individuals that have connections with foreign governments, but the U.S. Government has been okay with it.  I've gotten a form, called an OIA, when that was done, which is an otherwise illegal activity form.  And that was some work I did when I was a confidential informant for the FBI.

And, again, I would prefer not to discuss any of those things, because it affects my ability to work and --

*THE COURT:* Well, I don't care what you prefer and not prefer, you're under oath, answer the questions.  And if you don't want to answer them, that's fine; there are consequences for that.  But I'm just -- I don't have time for the stories.

So the answer is, I'm not going to disclose or I am going to --

*DEFENDANT JOHNSON:* Not going to disclose.

*THE COURT:* Okay.  Has any United States Government or -- let's keep this as broad as possible.  Has any government anywhere, or any government agency, ever established a bank account for you or provided you prepaid cards in connection with any alleged informant work?

*DEFENDANT JOHNSON:* Yes.

*THE COURT:* Okay.  Describe those to us at this time.

*DEFENDANT JOHNSON:* Well, they're no longer operational.  But I have been provided with credit card -- or with credit cards with access to bank accounts, yes.

*THE COURT:* By who?

*DEFENDANT JOHNSON:* By -- one was my handler in the FBI, and the other is a handler in a government -- another government agency.

*THE COURT:* Who is your handler at the FBI?

*DEFENDANT JOHNSON:* He was Johnathan Boomer.  He's since out, so I can talk about it.  But some of those cases we worked on are still ongoing.

*(Court Reporter interrupts)*

*DEFENDANT JOHNSON:* Yes.  J-O-H-N-A-T-H-A-N.

*THE COURT:* What other government agencies are you working with.

*DEFENDANT JOHNSON:* I decline to answer the

question.

*THE COURT:* Okay. That's all I want to know.

Have you provided, with Mr. Thompson, a comprehensive list of all the portfolio companies or entities in which you hold any financial interest whatsoever? Yes or no?

*DEFENDANT JOHNSON:* No.

*THE COURT:* Okay. You were provided -- you were required by Court order to produce monthly statements from your Woodforest bank account, among other financial statements, pursuant to the request for production number three, which you were ordered to answer.

At your deposition, per the transcript, you stated that you would not comply with that request.

Are you prepared to comply with that request now?

*DEFENDANT JOHNSON:* I am, Your Honor.

*THE COURT:* Do you have those documents with you?

*DEFENDANT JOHNSON:* I do not, Your Honor.

*THE COURT:* Okay.

*DEFENDANT JOHNSON:* I don't handle any of my banking. I'd have to go call somebody to handle it for me, but I don't have a phone.

*THE COURT:* So you were supposed to bring those, you didn't bring them --

*DEFENDANT JOHNSON:* I didn't bring them.

THE COURT: -- and you don't have them?

DEFENDANT JOHNSON: That's right.

THE COURT: Okay. This is the last question that I have; and, then, Mr. Thompson, if you'd like to do some follow-up, I'll turn it over to you. But I did the best I could from the questions that you were allowed to get, okay?

During your deposition you were asked to identify all of your bank accounts in your name; and you stated you did not know. I find that to be absolutely uncredible, zero credibility. I just do not believe that you don't know your bank accounts.

Are you prepared today to identify and disclose all -- disclose bank accounts in your name?

DEFENDANT JOHNSON: I am, Your Honor.

THE COURT: All right. List them off.

DEFENDANT JOHNSON: I have three bank accounts at Woodforest bank, combined total assets of them are under -- maybe 3,000 to $4,000 currently, and that's it. That's all I've got.

THE COURT: You don't have any other bank accounts?

DEFENDANT JOHNSON: No, Your Honor.

THE COURT: What about investment accounts?

DEFENDANT JOHNSON: I don't have any of those either.

THE COURT: Any other that might not be in the name

of a -- not your name individually, but maybe an LLC, or another entity that you have an interest in that you can write checks or have access to cash out of the accounts?

*DEFENDANT JOHNSON:* No, Your Honor.

*THE COURT:* And no others, other than this one?

*DEFENDANT JOHNSON:* No others.

*THE COURT:* And that's a checking account?

*DEFENDANT JOHNSON:* That's a checking account, yeah. From Woodforest bank, which is in The Woodlands, Texas.

*THE COURT:* Do you have any safe deposit boxes down there?

*DEFENDANT JOHNSON:* No, Your Honor.

*THE COURT:* Do you have any cryptocurrency?

*DEFENDANT JOHNSON:* No, Your Honor.

*THE COURT:* You understand you're under oath?

*DEFENDANT JOHNSON:* I do understand I'm --

*THE COURT:* Lying under oath is a crime.

*DEFENDANT JOHNSON:* I have no cryptocurrency.

*THE COURT:* If I find that you've perjured yourself, I'm referring you to the U.S. Attorney's Office for charges.

*DEFENDANT JOHNSON:* By all means.

*THE COURT:* Be careful what you ask for.

Mr. Thompson, do you have any further questions for Mr. Johnson that he previously failed to answer that you'd like to place on the record at this time?

*MR. THOMPSON:* I do, Your Honor.  I'll keep it very short and very brief.

Mr. Johnson, the Wyoming, LLC, JXC, LLC; do you know what I'm talking about?

*DEFENDANT JOHNSON:* I do.  I don't think that's the exact account, but yes.

*MR. THOMPSON:* The Wyoming, LLC, that was set to take the proceeds of the sale of the Othram stock --

*DEFENDANT JOHNSON:* Correct.

*MR. THOMPSON:* -- are you aware of that?

*DEFENDANT JOHNSON:* I am aware of that, yes.

*MR. THOMPSON:* Did you set that up?

*DEFENDANT JOHNSON:* I did not.

*MR. THOMPSON:* Did a government handler set that up?

*DEFENDANT JOHNSON:* Yes.

*MR. THOMPSON:* What is the name of that government handler?

*DEFENDANT JOHNSON:* I refuse to answer the question.

*MR. THOMPSON:* Do you know the person's name?

*DEFENDANT JOHNSON:* Yes.

*MR. THOMPSON:* You had no role in setting up that government --

*DEFENDANT JOHNSON:* Zero role whatsoever.

*MR. THOMPSON:* Do you realize that you previously testified that the reason that there's a Wyoming, LLC, set up

to take the proceeds of the Othram sale, was because your family or your grandmother had a connection with Wyoming?

*DEFENDANT JOHNSON:* Yes. My handler is well aware of my Wyoming connections.

*THE COURT:* In fact, I believe you testified at the last hearing that the reason why you were in Wyoming was due to a family connection, and some assets up there that had nothing to do with this case.

Am I misstating what you said at the last --

*DEFENDANT JOHNSON:* You are, Your Honor.

*THE COURT:* I am not?

*DEFENDANT JOHNSON:* You are misstating it.

*THE COURT:* Okay.

*DEFENDANT JOHNSON:* So, I have a Wyoming connection. My grandmother is from there. She helped -- dealt with accounts for Navy intelligence. And so Wyoming is a very -- it's a state that intersects with a lot of U.S. interests, shall we say.

And so, I've never been to Sheridan, I've never been to that bank account. I don't have any accounts that are in -- I think it was like a -- what was the name of the bank that's in there? There was like a list or something of the bank.

*MR. THOMPSON:* Wells Fargo.

*DEFENDANT JOHNSON:* Yeah, Wells Fargo. I don't have

a Wells Fargo account.  I think I was banned from Wells Fargo in 2019.

*THE COURT:*  Why were you banned from Wells Fargo in 2019?

*DEFENDANT JOHNSON:*  At the time I owned lots of cryptocurrency, Your Honor.

*THE COURT:*  What happened to all the crypto?

*DEFENDANT JOHNSON:*  I was -- I just got rid of all of it, because then-President Donald Trump gave a Tweet where he said that he didn't like cryptocurrency.  And I was under the impression that there were people who were looking at me in the U.S. Government around various things, and they asked me to get -- just -- just disabuse myself of a lot of my assets, get rid of a lot of those assets.

*THE COURT:*  Go ahead, Mr. Thompson.  I have a follow-up.

*MR. THOMPSON:*  I was just going to keep this just for the record.

Mr. Johnson, identify all of the exchanges, hard wallets, or at places where your cryptocurrency was ever stored since you possessed it.

*DEFENDANT JOHNSON:*  I don't know those.  But I don't have any cryptocurrency.  I haven't had any since at least 2018/2019 time frame.

*MR. THOMPSON:*  Not my question, sir.

*DEFENDANT JOHNSON:* I don't have any -- I don't have any hard wallets, I don't have any paper wallets. I don't touch the stuff. I don't like the stuff. I think its used by a lot of criminals to do a lot of dangerous --

*THE COURT:* Rather than giving us a colloquy, if you don't have any, say no.

*DEFENDANT JOHNSON:* I have none, zero, zilch.

*THE COURT:* Mr. Thompson, go ahead.

*MR. THOMPSON:* My question, Mr. Johnson, is, Identify the exchanges, how many hard wallets you had, where you stored your cryptocurrency when you did possess it.

*DEFENDANT JOHNSON:* I don't know.

*THE COURT:* You have no idea where you stored your cryptocurrency?

*DEFENDANT JOHNSON:* I think I had a Coinbase account maybe at one point, but I haven't used it.

*THE COURT:* Did you ever have any hard cryptocurrency that you had placed in -- underneath your bed in a shoebox, or safe deposit box?

*DEFENDANT JOHNSON:* No. No, I did not. I do not.

*THE COURT:* You never had any hard cryptocurrency?

*DEFENDANT JOHNSON:* I don't know. Maybe, I could have, but I don't recall it off the top of my head. I had a lot of money at the time, but I don't anymore.

*THE COURT:* Do you understand that if you're in my

spot and you're listening to this, that it is very hard for me to believe -- and I preface this by saying, I've been doing this for 12 years on three different courts, I've seen a lot of people testify, I've heard a lot of testimony.  I found that -- find it to be completely not believable that you don't know whether you had any hard cryptocurrency.

*DEFENDANT JOHNSON:*  I don't understand the question your Honor is asking me.  I don't have any, didn't have any.

*THE COURT:*  You never had any hard cryptocurrency?

*DEFENDANT JOHNSON:*  I had some on a laptop, but that was a long time ago.

*THE COURT:*  Would you like to do any follow-up?  I'm just concerned you're never going to get any answers.

*MR. THOMPSON:*  I have one more question.

*THE COURT:*  Yeah.

*MR. THOMPSON:*  Because I just want to make it clear for follow-up.

Mr. Johnson, the sale of the Othram stock, the purpose of that sale was to prevent Hal Lambert and the plaintiffs in this action for executing on it, correct?

*DEFENDANT JOHNSON:*  No.  It was not.

*THE COURT:*  It wasn't to prevent -- well, go ahead.

*MR. THOMPSON:*  That's not what you said in your deposition, Mr. Johnson.

Mr. Johnson, in your deposition you said the purpose

of the transaction was, in part, to keep the sale proceeds of the Othram stock from, in part, Mr. Hal Lambert and plaintiffs, prevent them --

DEFENDANT JOHNSON: I never said that. And there's video evidence that I didn't say it.

THE COURT: I'm reading the portion of your transcript, let's just -- let me ask you about that.

You were asked a question: Your position is that Hill (sic) and the plaintiffs are not entitled to the proceeds of the Othram stock, or the stock itself?

Answer: That's correct.

Question, by the attorney, Mr. Thompson: And the purpose of this transaction using the JXC Wyoming, LLC, and the Wells Fargo bank account was to prevent Hill (sic) and the plaintiffs from executing on that stock and those proceeds before the matter -- before the matter in the Court case concluded or before the operation concluded?

Answer, by Mr. Johnson: That's a fair way of putting it. But it was -- it's about asset preservation.

Sounds like you admitted you were moving items around and hiding them --

DEFENDANT JOHNSON: No, Your Honor.

THE COURT: -- and transferring them to avoid the judgment. I was using your words, not mine.

DEFENDANT JOHNSON: Yeah. So, asset preservation

means -- my understanding is that that Wyoming, LLC bank account belongs, and has connections, to the U.S. Government. So, putting it into an account where it can be preserved by a U.S. Government trustee, that's effectively what Your Honor has done by appointing those receivers.  So, I have no objection in giving those gentlemen that -- that stock.

I do object to giving my ex-wife and daughter's stock.  And I was hoping to take out the whole chunk of the Othram stock because that -- those belong to my --

THE COURT:  Well, I asked you in my second question, Have you transferred, moved, or otherwise disposed of any asset for the purpose of placing them beyond the reach of the plaintiffs?

You admitted to that in your deposition, it sounds like you're admitting it to me here in the courtroom.

DEFENDANT JOHNSON:  I haven't moved any of it, the sale never went through.

THE COURT:  Shh, be quiet.

MR. THOMPSON:  Your Honor, just to clarify, the transaction has not gone through, because the buyer was -- became aware of the asset preservation order.  The more precise, probably, question is, Has he attempted to transfer any of those assets?

THE COURT:  Well, what's the answer to that?

Because attempting is also in violation of the

order.

DEFENDANT JOHNSON: That's correct, Your Honor.

THE COURT: Okay. Any more questions?

MR. THOMPSON: Just one, Your Honor.

Mr. Johnson, what is the operation that must conclude -- before you said that -- why the assets need to be preserved, you said they need to be preserved before an operation is completed?

DEFENDANT JOHNSON: Right. That's correct. I did say that.

MR. THOMPSON: What is the operation?

DEFENDANT JOHNSON: I won't discuss that.

MR. THOMPSON: What government agency is conducting the operation?

DEFENDANT JOHNSON: I won't discuss that.

MR. THOMPSON: Do you have any communications concerning this operation?

DEFENDANT JOHNSON: I won't discuss that.

MR. THOMPSON: Nothing further, Your Honor.

THE COURT: Before you step down, I want to say this with all -- and I'm not being facetious, I'm not making accusations. This is just really -- Mr. Johnson, I'm concerned about you. Because I'm, frankly, left with no other choice, other than to hold you in contempt. So when I ask you this, please don't think I'm being accusatory.

Have you ever been diagnosed with a mental illness?

DEFENDANT JOHNSON: No, Your Honor. I have not.

THE COURT: Are you currently seeing any mental healthcare professionals?

DEFENDANT JOHNSON: No. Not that I know of.

THE COURT: Are you on any type of psychiatric --

DEFENDANT JOHNSON: No.

THE COURT: -- type medications at the moment?

DEFENDANT JOHNSON: No. In fact, I sat for a psychological evaluation maybe three months ago, and was found to be doing pretty well.

THE COURT: And was that voluntary?

DEFENDANT JOHNSON: It was voluntary, yes. It was to start another company.

THE COURT: Do you -- do you feel like that you're mentally competent, in the sense you understand why you're here and the consequences?

DEFENDANT JOHNSON: I'm very happy to be here.

THE COURT: And you understand that I'm about to hold you in contempt?

DEFENDANT JOHNSON: I do understand that. I wish Your Honor would not do that, because he's appointed some receivers that I could work with very comfortably.

THE COURT: Well, the problem is you're still not answering questions like you're supposed to.

So, let me ask you to please step down. And I'm going to ask you to go over to the podium, okay?

*DEFENDANT JOHNSON:* Okay.

*THE COURT:* At this time, the Court, having covered all the three bases that I pointed out for Mr. Johnson to show cause, has failed -- has made a determination, after reviewing the record, hearing Mr. Johnson's testimony, hearing Mr. Thompson, listening to these responses, that I'm left with no choice, when I consider the least severe sanction to correct the unlawful conduct, other than to order the following.

So as I said, Johnny Cash's Cadillac had three different pieces in this case. The first thing we took up was whether Mr. Johnson should be held in contempt for effectively stealing government property. That would be the mug that you took, as well as the waters, from our jury room.

In order to correct that behavior, I am imposing the least severe sanction that I believe can correct this conduct, and that is to impose a $1,000 fine to be due and payable immediately after this hearing. The U.S. Marshal is going to take you down to the third floor Clerk's Office, and you're going to pay that today.

The other two pieces involve your failure to comply with the Court's orders with regards to, number one, the post-judgment discovery, and that includes the written

discovery you were required to respond to and the items that you were required to bring on Monday, which you didn't do.

Again, taking my oath seriously, and considering the least severe sanction to correct the property *(sic)*, I am going to be holding you in contempt.

Also, the third part was the failure of you to answer the questions that were asked of you at the deposition. Out of abundance of caution, I have not only asked the competent public defender to be here to provide you with legal advice, I've read your Miranda rights, and I've even put you on the stand to try to get you to answer these questions one more time, and you have not done so. Indeed, you continue to be obstructive and try to avoid answering them.

Therefore, having no other choice, and considering the least severe sanction necessary to correct the unlawful conduct, I am going to make some rulings. But I am going to order the United States Marshal to arrest you and place you into custody for being in contempt of court, until such time as you purge yourself of the contempt by complying with the Court's orders.

Mr. Johnson, throughout this case, has shown a repeated history of failing to comply in good faith with post-judgment discovery, despite numerous opportunities given him to cure his unlawful conduct, including at today's hearing, he has shown no willingness to comply with the

Court's orders.

Defendant's unlawful conduct is well-documented. Indeed, on October the 28th of 2025, plaintiffs filed a motion asking the Court to make Mr. Johnson appear and show cause to hold him in civil contempt for violating the Court's asset protection order and personally threatening plaintiff and plaintiffs' counsel, among other allegations. That same day, the Court denied Mr. Johnson's motion to stay enforcement of the judgment, and I granted plaintiffs' motion to hold a show cause hearing.

On November the 6th, plaintiffs filed a motion to compel defendant, Charles Johnson, to respond to post-judgment interrogatories and sit for his deposition and produce documents. And I, accordingly, scheduled a hearing on that motion.

After holding a hearing on November the 10th, when I was in the middle of a trial, I granted plaintiffs' motion to compel, and ordered defendant to answer plaintiffs' post-judgment interrogatories within five days, produce the documents that he was required and asked to produce, and sit for his deposition here at the courthouse on Monday, November 17th of 2020.

Subsequent to that hearing, plaintiffs then filed a motion for appointment of receiver; which I have considered today and granted. I also allowed Mr. Johnson to respond to

that motion, no written response was filed, in disobedience of the Court's order.

Thus, I conducted the hearing today. At the hearing today, Mr. Johnson has said he did not object to the appointment of a receiver. But I'll also note, that before today's hearing, plaintiff did file a supplement to its original motion to appoint a receiver, further documenting Mr. Johnson's noncompliance with my orders; that is at ECF Number 136.

The Court finds that while Mr. Johnson was physically present for his deposition here in the courthouse, the defendant failed to respond to the questions asked in good faith, and repeatedly gave evasive answers while asserting that his plan was to give minimal information as possible.

The Court staff additionally reported that defendant stole mugs and water bottles belonging to the Court, resulting in the $1,000 sanction.

In response to defendant's noncompliance, I again ordered the defendant to show cause for his failure to respond in good faith to the questions asked in the deposition, and his failure to produce documents and serve his interrogatory responses, and his theft of Court property.

I then gave, yet again, Mr. Johnson another chance to comply with those orders at the hearing held today, and I've asked him several questions, and I've also allowed

Mr. Thompson to ask him several questions to those asked during the deposition. And again, he's failed to respond in good faith.

Therefore, I find Mr. Johnson to be in contempt of court. And considering the least severe sanction possible to correct the unlawful conduct, the Court orders the United States Marshal to arrest defendant at this time and place him into custody in the Johnson County Jail as to such time as he purges himself of his contempt.

I would ask, gentlemen, on your way down, if you please drop by the Clerk's Office so he can pay his $1,000 fine.

My receivers, I don't know how long the Marshals need to process him in, but I know you'll want to visit with him about his assets. Whether you want to do that today, given the late hour, or whether you want to go down to Johnson County, I leave it up to you. Thank you for your service, both of you. And also, Mr. Thompson, I appreciate your patience. Ms. Sanders, thank you.

Anything else for the Court before Mr. Johnson is taken in?

*MS. SANDERS:* Briefly, Your Honor.

When it comes to the issue of answering questions at the deposition, how would Mr. Johnson purge -- I mean, is there going to be another deposition scheduled? Should he

provide notice that he's ready to sit for a deposition?

THE COURT:  I think that Mr. Johnson will contact someone and tell them when he's ready to answer the questions, both at the deposition and the interrogatory and produce the documents.  If he's ready to do that, and he purges himself, he can get out of jail.

MS. SANDERS:  So providing notice?

THE COURT:  Yeah.

DEFENDANT JOHNSON:  Your Honor, if I may?

THE COURT:  But again -- please stop.

He's refused your services, Ms. Sanders.  So as far as I'm concerned, there's no obligation for you ethically to continue.  It's up to him.

All right.  We'll stand off the record.

THE MARSHAL:  Your Honor, Deputy Sanford.  Can we determine if he can pay that fee now or just take him to the third floor, because that changes our risk assessment.

THE COURT:  Okay.  Thank you, Deputy.

Do you have a credit card?

DEFENDANT JOHNSON:  I don't with the -- not money for $1,000, I don't have it.

THE COURT:  Okay.  We'll take you in immediately, and you'll also be held in contempt until you can purge yourself of the $1,000 fine.

DEFENDANT JOHNSON:  I can do both of that, if I can

access a computer.

THE COURT:  You're going to be taken in at this time, and we'll see what you can do.  It might be a good idea to -- I know you're entitled to a phone call, you'll be told what that process is, but you need to take efforts to purge yourself of this contempt.

DEFENDANT JOHNSON:  And do I purge myself when I send the material to the receivers, or do I send it -- when I send it to Mr. Thompson?

THE COURT:  I'm not here to give you legal advice.

DEFENDANT JOHNSON:  Okay.

THE COURT:  You should have complied with my orders.  It's been nine months of this.

Thank you, deputies.

Okay.  Thank you all.  Stand in recess.

(Proceedings Adjourned)

<u>REPORTER'S CERTIFICATE</u>

I, Monica Willenburg Guzman, CSR, RPR, certify that the foregoing is a true and correct transcript from the record of proceedings in the foregoing entitled matter.

I further certify that the transcript fees format comply with those prescribed by the Court and the Judicial Conference of the United States.

Signed this 12th day of December, 2025.


/s/Monica Willenburg Guzman
Monica Willenburg Guzman, CSR, RPR
Texas CSR No. 3386
NCRA No. 32278
Official Court Reporter
The Northern District of Texas
Fort Worth Division


CSR Expires:        7/31/2027

Business Address:   501 W. 10th Street, Room 310
                    Fort Worth, Texas  76102

Telephone:          817.850.6681

E-Mail Address:     mguzman.csr@yahoo.com

**DEFENDANT JOHNSON: [1]** 55/
**MR. ANSLEY: [5]** 9/18 9/24 10/22 11/5 13/4
**MR. FARRELL: [2]** 9/25 11/18
**MR. THOMPSON: [33]** 4/6 8/4 12/17 12/19 20/4 21/5 23/6 23/12 24/9 24/13 25/8 43/1 43/7 43/10 43/12 43/14 43/16 43/19 43/21 43/24 44/24 45/17 45/25 46/9 47/14 47/16 47/23 49/19 50/4 50/11 50/13 50/16 50/19
**MS. SANDERS: [10]** 4/11 4/16 5/7 15/25 30/8 30/12 30/17 30/23 56/22 57/7
**SECURITY OFFICER: [1]** 21/20
**THE COURT: [174]**
**THE MARSHAL: [1]** 57/15

**$**

**$1,000 [6]** 22/14 52/19 55/17 56/11 57/21 57/24
**$3 [2]** 37/14 38/2
**$4,000 [1]** 41/18
**$70 [1]** 35/16
**$71 [2]** 5/17 6/17

**/**

**/s/Monica [1]** 59/11

**1**

**100 [1]** 6/20
**10th [5]** 2/7 23/17 23/22 54/16 59/17
**12 [1]** 47/3
**12th [1]** 59/9
**131 [1]** 24/23
**136 [2]** 24/24 55/9
**1624 [1]** 1/18
**17th [1]** 54/22
**1900 [1]** 1/14
**1:40 [2]** 1/7 4/2

**2**

**20 [3]** 1/6 4/2 9/4
**2018/2019 [1]** 45/24
**2019 [5]** 35/12 37/5 45/2 45/4 45/24
**20194 [1]** 1/19
**2020 [1]** 54/22
**2025 [4]** 1/6 4/2 54/3 59/9
**2027 [1]** 59/16
**214.743.4500 [1]** 1/15
**2200 [1]** 1/14
**28th [1]** 54/3
**2:00 [1]** 24/1

**3**

**3,000 [1]** 41/18
**30 [1]** 13/20
**300 [1]** 2/3
**310 [2]** 2/7 59/17
**32278 [1]** 59/12
**3386 [1]** 59/12

**4**

**400 [1]** 2/4
**469.895.4790 [1]** 2/5
**4:24-CV-00988-P [1]** 1/4
**4:24-CV-988-P [1]** 4/3

**5**

**50 [1]** 34/15
**501 [2]** 2/7 59/17

**6**

**617.429.4718 [1]** 1/19
**6th [1]** 54/11

**7**

**7/31/2027 [1]** 59/16
**75201 [2]** 1/15 2/4
**76102 [3]** 1/23 2/8 59/17

**8**

**817.850.6681 [2]** 2/8 59/18
**817.978.2753 [1]** 1/23
**819 [1]** 1/22

**9**

**9A10 [1]** 1/22

**A**

**ability [3]** 7/6 11/3 38/18
**able [2]** 11/3 22/11
**about [29]** 5/24 7/3 12/5 15/5 15/20 18/9 20/7 21/1 21/15 23/1 24/21 25/3 25/6 27/19 30/2 31/16 33/11 34/13 34/21 35/13 35/25 39/19 41/22 43/4 48/7 48/19 50/23 51/19 56/15
**absolute [1]** 25/2
**absolutely [6]** 6/20 15/25 23/9 25/8 27/10 41/9
**abundance [9]** 4/24 5/9 8/25 14/24 16/2 27/22 28/18 30/13 53/8
**abuse [3]** 26/18 26/25 27/1
**access [3]** 39/12 42/3 58/1
**accordingly [1]** 54/14
**account [13]** 31/15 32/22 39/5 40/10 42/7 42/8 43/6 44/20 45/1 46/15 48/14 49/2 49/3
**accounts [10]** 39/12 41/8 41/11 41/13 41/16 41/20 41/22 42/3 44/16 44/20
**accurate [1]** 31/15
**accusations [1]** 50/22
**accusatory [1]** 50/25
**act [3]** 17/16 30/21 33/8
**action [1]** 47/20
**actions [2]** 4/25 22/8
**activities [1]** 33/12
**activity [1]** 38/14
**actually [2]** 19/1 19/20
**ADAM [2]** 2/2 9/25
**addition [1]** 14/1
**additional [1]** 10/19
**additionally [1]** 55/15
**address [3]** 7/17 59/17 59/19
**adjacent [1]** 21/23
**Adjourned [1]** 58/16
**admiration [1]** 8/23
**admitted [2]** 48/20 49/14
**admitting [1]** 49/15
**admonish [1]** 16/16
**admonished [1]** 5/23
**admonishments [1]** 23/10
**advice [5]** 5/5 16/18 30/15 53/10 58/10
**advised [3]** 21/22 21/24 30/20

**advising [1]** 11/14
**affects [1]** 38/18
**affirmative [1]** 10/24
**afford [1]** 17/9
**after [7]** 8/19 12/2 12/11 23/17 52/6 52/20 54/16
**afternoon [1]** 9/25
**again [21]** 5/8 5/9 8/22 10/5 12/10 16/16 19/22 25/5 25/15 25/23 30/20 30/25 31/2 31/10 37/5 38/17 53/3 55/18 55/23 56/2 57/10
**against [2]** 12/6 17/6
**agencies [1]** 39/23
**agency [3]** 39/4 39/16 50/13
**ago [5]** 7/4 11/1 12/5 47/11 51/10
**agree [2]** 16/1 35/19
**ahead [3]** 45/15 46/8 47/22
**AI [1]** 34/25
**Air [2]** 11/12 11/15
**al [2]** 1/4 4/4
**all [37]** 4/21 5/12 6/8 7/20 8/16 10/2 10/19 11/7 12/13 13/5 13/13 13/24 14/20 21/8 22/10 25/3 25/21 29/4 30/24 31/21 33/14 35/15 36/7 40/2 40/4 41/8 41/13 41/15 41/18 42/21 45/7 45/8 45/19 50/21 52/5 57/14 58/15
**allegation [1]** 14/25
**allegations [1]** 54/7
**alleged [4]** 14/23 29/13 31/4 39/6
**allegedly [2]** 18/1 38/2
**allow [3]** 23/8 30/15 30/21
**allowed [4]** 31/3 41/6 54/25 55/25
**almost [2]** 9/4 13/20
**along [2]** 9/13 25/4
**also [22]** 6/10 10/12 10/16 11/10 11/12 11/25 14/2 14/8 14/17 14/21 22/18 23/16 24/2 25/11 37/7 49/25 53/6 54/25 55/5 55/25 56/18 57/23
**although [2]** 9/3 16/17
**always [1]** 20/25
**am [22]** 6/2 12/9 16/20 22/7 27/22 28/17 29/16 29/16 29/17 31/17 31/20 34/2 38/24 40/16 41/14 43/11 44/9 44/11 52/17 53/4 53/16 53/16
**Amendment [1]** 15/20
**among [2]** 40/10 54/7
**amount [1]** 37/9
**Andrew [1]** 10/23
**announce [1]** 28/18
**another [10]** 11/6 16/19 20/22 22/13 27/16 39/15 42/2 51/14 55/23 56/25
**ANSLEY [10]** 2/2 9/13 9/23 9/24 10/5 10/8 10/18 11/2 11/21 13/20
**answer [44]** 5/21 6/1 6/5 6/13 14/6 14/8 17/19 19/1 20/11 23/15 24/4 24/20 25/9 26/7 27/4 27/5 27/6 31/1 31/3 31/19 32/7 32/11 32/22 33/14 33/15 33/25 36/6 37/20 37/21 38/1 38/20 38/21 38/24 39/25 40/12 42/24 43/18 48/11 48/18 49/24 53/7 53/11 54/18 57/3
**answered [2]** 22/23 23/18
**answering [3]** 51/25 53/13 56/23
**answers [6]** 23/11 23/20 29/11 36/4 47/13 55/13
**any [55]** 6/3 6/16 12/1 12/16 13/3 15/5

## A

**any [49]** 21/10 24/3 26/11 27/2 29/21 29/22 29/23 30/6 31/23 35/22 37/11 37/22 38/5 38/6 38/17 39/2 39/3 39/4 39/6 40/5 40/20 41/20 41/23 41/25 42/10 42/13 42/23 44/20 45/23 45/23 46/1 46/2 46/2 46/6 46/17 46/21 47/6 47/8 47/8 47/9 47/12 47/13 49/11 49/16 49/23 50/3 50/16 51/3 51/6
**anymore [1]** 46/24
**anyone [1]** 20/6
**anything [10]** 6/13 8/2 9/20 9/21 17/6 18/7 20/6 23/22 28/14 56/20
**anywhere [1]** 39/4
**aperture [1]** 36/13
**apparently [1]** 14/4
**appear [5]** 6/1 9/11 14/3 14/18 54/4
**appearance [2]** 9/17 9/20
**appears [1]** 7/2
**appoint [10]** 7/12 8/20 9/3 9/9 11/7 15/2 15/4 17/16 24/25 55/7
**appointed [6]** 4/12 6/22 9/11 12/24 16/19 51/22
**appointing [1]** 49/5
**appointment [8]** 7/4 7/13 8/3 8/17 26/13 35/14 54/24 55/5
**appreciate [1]** 56/18
**approach [3]** 9/15 25/22 30/8
**approaches [1]** 28/24
**appropriate [3]** 8/15 8/20 11/25
**are [39]** 6/18 7/7 7/11 7/13 11/24 12/2 12/3 12/8 12/23 21/18 29/25 31/14 32/4 32/5 32/24 32/24 33/2 33/7 33/7 33/11 34/4 34/12 34/25 35/9 36/2 37/3 38/21 39/20 39/23 40/15 41/12 41/17 43/10 44/10 44/12 44/20 48/9 51/3 51/6
**area [3]** 10/10 18/16 21/25
**argument [1]** 7/9
**Arizona [1]** 16/22
**around [3]** 37/13 45/12 48/21
**arrest [2]** 53/17 56/7
**aside [1]** 27/15
**ask [18]** 7/11 13/6 16/25 17/4 19/8 20/19 20/20 20/21 30/19 31/1 36/25 42/22 48/7 50/24 52/1 52/2 56/1 56/10
**asked [23]** 4/18 6/10 9/10 18/7 18/9 25/1 26/19 27/6 35/8 35/13 35/25 38/11 41/7 45/12 48/8 49/10 53/7 53/8 54/20 55/12 55/20 55/25 56/1
**asking [7]** 28/17 29/16 29/17 32/12 36/3 47/8 54/4
**aspect [1]** 12/19
**asserting [1]** 55/13
**assessment [1]** 57/17
**asset [6]** 32/21 48/19 48/25 49/12 49/21 54/5
**assets [29]** 6/19 6/23 7/21 10/17 11/3 11/24 12/1 12/24 13/13 14/8 23/16 24/21 25/3 26/20 28/22 31/23 34/23 34/24 35/10 36/1 36/19 37/5 41/17 44/7 45/14 45/14 49/23 50/6 56/15
**ASSISTANT [2]** 1/21 10/20
**assisting [1]** 4/10
**Association [1]** 20/17
**assuming [1]** 24/6
**assure [3]** 9/4 11/23 13/21

## B

**back [5]** 18/10 18/10 18/20 19/6 19/8
**ballpark [1]** 37/17
**bank [15]** 39/5 39/12 40/10 41/8 41/11 41/13 41/16 41/17 41/20 42/9 44/20 44/21 44/23 48/14 49/1
**banking [1]** 40/21
**banned [2]** 45/1 45/3
**Bar [1]** 20/17
**Based [1]** 22/22
**bases [1]** 52/5
**basically [1]** 6/23
**basis [1]** 29/13
**be [66]**
**became [1]** 49/21
**because [20]** 4/20 7/11 12/25 18/22 20/7 20/17 20/22 30/3 36/3 37/18 38/18 44/1 45/9 47/16 49/9 49/20 49/25 50/23 51/22 57/17
**bed [1]** 46/18
**been [31]** 4/12 5/14 5/18 5/19 6/20 7/1 8/17 8/18 10/25 11/19 12/8 16/13 19/12 20/3 22/10 22/18 23/9 25/21 27/1 34/15 36/23 37/5 38/10 38/11 38/13 39/11 44/19 44/19 47/2 51/1 58/13
**before [20]** 1/9 8/1 14/24 14/25 19/15 22/22 23/14 23/25 24/18 28/18 28/25 29/7 48/16 48/16 48/17 50/6 50/7 50/20 55/5 56/20
**beginning [1]** 24/16
**begun [1]** 18/17
**behalf [5]** 4/14 16/7 33/6 33/22 33/22
**behavior [3]** 14/13 22/12 52/17
**being [10]** 4/19 5/8 5/10 16/16 28/19 29/23 30/25 50/21 50/25 53/18
**believable [1]** 47/5
**believe [10]** 7/3 7/7 9/19 10/18 10/19 11/19 41/10 44/5 47/2 52/18
**belong [1]** 49/9
**belonging [1]** 55/16
**belongs [1]** 49/2
**bench [1]** 9/15
**beneficiary [6]** 32/4 32/5 34/5 34/8 34/11 34/17
**benefit [3]** 32/25 33/2 35/9
**BENNETT [1]** 1/13
**best [14]** 6/4 6/12 7/5 7/7 7/10 15/3 16/3 25/17 27/25 29/12 30/4 30/7 37/9 41/5
**better [3]** 9/4 20/19 29/18
**between [2]** 16/8 30/18
**beyond [4]** 31/23 35/12 35/12 49/12

## A (attempted)

**attempted [1]** 49/22
**attempting [1]** 49/25
**attention [1]** 14/17
**attorney [17]** 5/24 9/3 10/9 10/9 10/14 10/20 11/2 16/19 17/8 17/9 17/16 29/17 30/21 35/4 35/8 35/9 48/12
**Attorney's [4]** 10/13 10/23 11/1 42/20
**attorneys [4]** 5/23 7/6 9/10 9/15
**authority [2]** 25/16 28/5
**avoid [2]** 48/23 53/13
**avoidance [1]** 5/20
**aware [4]** 43/10 43/11 44/3 49/21
**away [2]** 19/5 28/13

## B (Bible)

**Bible [1]** 19/21
**big [1]** 36/3
**Boomer [1]** 39/18
**both [10]** 8/21 9/16 10/12 11/13 11/23 13/19 25/21 56/18 57/4 57/25
**bottles [6]** 18/12 18/19 19/5 19/14 20/6 55/16
**bottom [1]** 6/15
**bought [1]** 18/11
**box [1]** 46/19
**boxes [1]** 42/10
**branch [3]** 28/4 28/5 28/5
**break [1]** 17/15
**BRIDGE [3]** 1/4 4/4 31/24
**brief [2]** 30/12 43/2
**briefly [2]** 30/8 56/22
**bring [10]** 23/19 23/22 25/11 26/6 26/11 27/2 40/23 40/24 40/25 53/2
**bringing [1]** 27/24
**broad [1]** 39/3
**brother [1]** 36/10
**brought [3]** 14/17 18/22 20/13
**buddy [1]** 16/12
**building [1]** 22/5
**bumper [1]** 27/19
**Business [1]** 59/17
**busy [2]** 5/16 5/16
**buyer [1]** 49/20

## C

**Cadillac [4]** 22/17 22/25 27/19 52/12
**California [1]** 35/5
**call [2]** 40/21 58/4
**called [5]** 20/10 20/23 36/1 36/12 38/13
**came [2]** 5/21 26/17
**can [34]** 5/23 6/7 9/4 10/16 11/1 11/23 13/12 13/20 14/13 15/7 17/6 19/25 20/14 22/11 27/15 27/25 29/5 30/7 33/16 35/23 36/6 37/25 39/19 42/2 49/3 52/18 56/11 57/6 57/15 57/16 57/23 57/25 57/25 58/3
**can't [3]** 22/6 22/13 29/23
**cannot [4]** 6/16 17/9 28/14 33/17
**capable [1]** 10/6
**CAPITAL [4]** 1/4 4/4 31/24 34/22
**captain [1]** 11/12
**card [2]** 39/11 57/19
**cards [2]** 39/6 39/12
**care [4]** 20/2 23/1 36/16 38/19
**careful [2]** 16/11 42/22
**carefully [2]** 8/14 16/25
**case [18]** 1/4 4/3 5/21 7/7 8/16 8/17 8/21 9/9 9/11 10/17 15/4 16/21 16/22 31/25 44/8 48/16 52/13 53/21
**cases [2]** 10/25 39/19
**cash [4]** 8/11 14/22 27/18 42/3
**Cash's [2]** 22/17 52/12
**cause [10]** 14/3 18/5 20/24 22/3 22/19 25/23 52/6 54/4 54/10 55/19
**causing [1]** 14/18
**caution [9]** 4/24 5/9 8/25 14/24 16/2 27/23 28/18 30/13 53/8
**certain [2]** 14/18 25/12
**certainly [2]** 9/5 11/2
**CERTIFICATE [1]** 59/1
**certify [2]** 59/3 59/6

**C**

chance [4] 14/20 15/19 26/14 55/23
changes [1] 57/17
characterization [1] 21/9
charge [2] 32/23 35/20
charges [2] 26/23 42/20
CHARLES [5] 1/7 1/18 4/4 4/9 54/12
cheated [2] 36/13 36/18
checked [2] 16/5 23/25
checking [2] 42/7 42/8
checks [1] 42/3
choice [5] 12/9 27/12 50/24 52/9 53/14
choose [1] 15/11
choosing [1] 10/4
chose [1] 13/14
chunk [1] 49/8
CIA [1] 28/1
cited [1] 8/8
citing [1] 25/15
civil [3] 5/4 10/21 54/5
claims [1] 10/17
clandestine [2] 33/11 33/13
clarify [1] 49/19
clear [7] 9/17 15/7 16/5 20/11 25/5 29/18 47/16
clearer [1] 6/16
Clearview [2] 34/25 37/6
clerk [1] 11/9
Clerk's [3] 22/15 52/21 56/11
clever [1] 21/4
client [1] 16/17
close [1] 29/8
closely [1] 31/7
coequal [1] 28/4
Coinbase [1] 46/15
collar [1] 10/14
collect [1] 6/18
collectible [1] 12/8
colloquy [3] 7/22 25/25 46/5
color [1] 23/13
comb [1] 7/20
combined [1] 41/17
come [4] 21/1 22/9 28/17 28/23
comes [2] 16/23 56/23
comfort [1] 8/22
comfortably [1] 51/23
coming [1] 13/11
command [2] 11/15 11/15
commend [1] 29/24
commercial [1] 10/9
Commission [1] 10/13
common [1] 6/9
communicated [1] 16/1
communications [1] 50/16
companies [1] 40/4
company [2] 36/12 51/14
compel [4] 23/15 25/10 54/12 54/18
compelled [1] 25/11
competent [3] 4/23 51/16 53/9
complete [5] 14/16 29/18 31/10 31/13 31/15
completed [1] 50/8
completely [1] 47/5
compliance [5] 23/10 24/22 25/1 25/17 31/13
compliant [1] 31/9

complied [1] 58/12
comply [15] 14/4 14/5 22/20 23/3 27/12 27/23 28/21 35/20 40/14 40/15 52/23 53/22 53/25 55/24 59/7
complying [1] 53/19
comprehensive [1] 40/4
computer [2] 2/12 58/1
conceding [1] 12/1
concerned [3] 47/13 50/23 57/12
concerning [2] 28/21 50/17
concerns [1] 9/8
conclude [1] 50/6
concluded [3] 20/10 48/17 48/17
conclusion [2] 21/25 22/15
conduct [6] 52/10 52/18 53/16 53/24 54/2 56/6
conducted [1] 55/3
conducting [2] 9/10 50/13
Conference [1] 59/8
confidential [1] 38/15
connection [4] 39/6 44/2 44/7 44/14
connections [3] 38/12 44/4 49/2
consequences [2] 38/22 51/17
consider [2] 14/25 52/9
consideration [2] 8/20 9/7
considered [1] 54/24
considering [3] 53/3 53/14 56/5
consistently [1] 28/16
conspiracies [1] 9/1
conspiracy [1] 9/1
Constitution [2] 6/9 16/23
Constitutional [2] 5/6 15/5
constructed [1] 8/14
consult [1] 30/11
contact [1] 57/2
contacts [2] 29/13 31/4
contempt [16] 5/2 5/25 26/15 27/12 28/20 50/24 51/20 52/14 53/5 53/18 53/19 54/5 56/4 56/9 57/23 58/6
continue [5] 35/22 37/8 37/25 53/12 57/13
contract [1] 37/19
contracts [1] 29/13
control [1] 6/23
cooperate [6] 5/22 6/6 13/1 13/1 13/21 13/21
cooperative [1] 12/9
corollary [1] 24/5
correct [29] 10/17 10/21 10/22 15/12 18/21 22/12 23/5 23/9 24/12 24/13 25/4 30/22 34/1 34/18 35/11 38/3 38/4 43/9 47/20 48/11 50/2 50/9 52/10 52/17 52/18 53/4 53/15 56/6 59/4
could [13] 16/2 18/9 19/4 19/5 19/5 19/7 20/25 21/16 29/22 37/7 41/6 46/22 51/23
couldn't [2] 33/15 37/21
counsel [10] 1/21 5/3 10/3 14/11 15/4 15/24 16/8 29/22 30/18 54/7
county [4] 19/12 20/17 56/8 56/17
couple [1] 5/14
court [43] 1/1 1/10 2/3 2/7 6/23 7/2 7/17 7/23 8/19 12/23 14/2 16/19 17/6 19/3 20/9 21/10 21/10 21/14 21/15 22/3 22/22 24/10 24/12 25/22 27/20 29/8 31/13 39/21 40/9 48/16 52/4 53/18 54/4 54/8 55/15 55/16

55/22 56/5 56/6 56/20 59/7 59/13
Court's [11] 8/15 9/6 23/9 23/10 28/21 31/12 52/24 53/20 54/1 54/5 55/2
Court-appointed [1] 16/19
court-ordered [1] 27/20
courthouse [5] 6/1 14/9 18/23 54/21 55/11
courtroom [3] 18/14 24/18 49/15
courts [1] 47/3
Courtyard [1] 18/14
covered [1] 52/4
created [1] 33/7
credibility [1] 41/10
credible [1] 21/17
credit [3] 39/11 39/12 57/19
Crescent [1] 2/3
crime [1] 42/17
criminal [5] 4/21 10/8 10/14 26/22 28/11
criminals [1] 46/4
crypto [1] 45/7
cryptocurrency [13] 23/16 42/13 42/18 45/6 45/10 45/20 45/23 46/11 46/14 46/18 46/21 47/6 47/9
CSR [5] 2/7 59/3 59/11 59/12 59/16
cure [1] 53/24
current [1] 22/22
currently [4] 26/22 32/5 41/18 51/3
custodians [1] 33/8
custody [2] 53/18 56/8
cut [1] 31/5
CV [2] 1/4 4/3

**D**

dad [1] 23/25
Dallas [5] 1/15 2/4 10/10 10/23 13/12
Dallas/Fort [1] 10/10
dangerous [1] 46/4
daughter [2] 33/22 37/4
daughter's [1] 49/7
day [4] 28/8 33/15 54/7 59/9
days [2] 23/21 54/19
deal [2] 4/20 11/21
dealing [3] 16/13 26/4 26/10
deals [1] 14/6
dealt [2] 10/20 44/15
December [1] 59/9
decided [2] 9/2 9/8
decision [1] 28/19
decisions [1] 11/16
decline [1] 39/25
declined [1] 15/22
deeply [1] 22/7
defendant [11] 1/18 14/3 16/8 28/24 30/18 54/12 54/18 55/12 55/15 55/19 56/7
defendant's [2] 54/2 55/18
defendants [1] 28/11
defender [4] 1/21 4/23 6/11 53/9
Defenders [1] 15/3
defense [3] 10/9 10/14 11/14
denied [1] 54/8
deposed [1] 21/24
deposit [2] 42/10 46/19
deposition [47] 6/2 8/7 14/9 14/12 14/14 14/15 20/10 20/23 21/25 22/24 23/19 23/23 24/7 24/16 24/17 25/7

**D**

**deposition [30]** 25/12 25/13 26/6 26/8 26/12 27/8 27/20 27/20 28/12 28/16 29/7 29/8 29/21 30/1 31/8 31/11 40/13 41/7 47/24 47/25 49/14 53/7 54/13 54/21 55/11 55/20 56/2 56/24 56/25 57/1 57/4
**deputies [1]** 58/14
**Deputy [2]** 57/15 57/18
**describe [2]** 14/13 39/8
**described [1]** 18/2
**desire [1]** 17/15
**despite [1]** 53/23
**detailed [3]** 31/15 36/4 36/5
**determination [1]** 52/6
**determine [8]** 6/19 6/24 11/3 11/24 12/24 35/17 35/18 57/16
**determined [2]** 8/15 8/20
**DEVON [2]** 1/21 15/2
**diagnosed [1]** 51/1
**did [30]** 7/12 10/6 11/10 18/2 18/3 18/5 19/8 19/8 20/7 22/19 23/22 27/2 27/3 27/4 27/5 27/6 27/7 30/3 38/15 41/5 41/8 43/12 43/13 43/14 46/11 46/17 46/20 50/9 55/4 55/6
**didn't [13]** 19/20 21/5 23/19 23/22 26/11 27/25 36/14 40/24 40/25 45/10 47/8 48/5 53/2
**die [1]** 34/14
**different [3]** 9/2 47/3 52/13
**difficult [1]** 29/23
**difficulties [1]** 13/10
**direct [2]** 10/24 29/18
**direction [1]** 9/2
**directly [1]** 31/11
**disabuse [1]** 45/13
**disagree [2]** 20/5 21/9
**disclose [5]** 31/3 38/24 39/1 41/12 41/13
**disclosed [1]** 35/15
**disclosure [1]** 28/21
**discovery [19]** 6/2 6/19 14/5 14/7 22/21 23/3 23/11 25/6 25/11 26/5 26/7 26/10 26/19 27/13 27/24 31/12 52/25 53/1 53/23
**discuss [6]** 24/23 37/22 38/17 50/12 50/15 50/18
**Discussion [2]** 16/8 30/18
**discussions [1]** 20/8
**dish [1]** 18/11
**disobedience [1]** 55/1
**disposed [2]** 31/22 49/11
**distinctly [1]** 20/18
**DISTRICT [5]** 1/1 1/2 1/10 1/22 59/13
**disturbed [1]** 22/7
**diverted [1]** 29/14
**division [3]** 1/3 10/21 59/14
**DLA [1]** 1/13
**do [79]**
**docket [4]** 4/21 5/16 24/23 24/24
**document [1]** 25/19
**documented [1]** 54/2
**documenting [1]** 55/7
**documents [13]** 25/12 25/13 26/5 26/11 26/11 27/2 27/14 27/24 40/17 54/14 54/20 55/21 57/5
**does [2]** 21/15 38/8

**doesn't [2]** 16/18 30/10
**doing [4]** 37/24 37/25 47/2 51/11
**don't [67]**
**Donald [1]** 45/9
**done [14]** 5/9 6/5 6/7 7/5 28/6 29/20 32/21 33/2 33/6 37/19 37/23 38/14 49/5 53/12
**down [11]** 13/11 19/11 20/18 21/18 22/15 42/10 50/20 52/1 52/21 56/10 56/16
**draft [2]** 14/11 30/4
**drafted [1]** 30/6
**Drive [1]** 1/18
**drop [1]** 56/11
**due [6]** 4/24 6/8 22/14 23/20 44/6 52/19
**during [4]** 17/9 28/16 41/7 56/2

**E**

**E-Mail [2]** 2/9 59/19
**each [1]** 26/9
**easier [1]** 20/20
**eat [1]** 21/1
**ECF [1]** 55/8
**effective [1]** 12/11
**effectively [5]** 12/23 12/23 13/18 49/4 52/14
**effort [1]** 22/20
**efforts [1]** 58/5
**either [3]** 14/14 21/17 41/24
**else [3]** 9/20 28/14 56/20
**end [4]** 6/3 6/6 8/12 36/14
**enforcement [2]** 10/21 54/8
**engage [2]** 7/22 9/1
**ensure [1]** 6/8
**enter [1]** 23/15
**entered [1]** 14/5
**entire [1]** 9/2
**entities [1]** 40/5
**entitled [6]** 6/9 6/18 6/18 48/9 58/4 59/5
**entity [1]** 42/2
**Entry [2]** 24/23 24/24
**escorted [1]** 21/21
**especially [1]** 4/20
**established [1]** 39/5
**estate [2]** 6/24 7/14
**estimate [1]** 37/9
**et [2]** 1/4 4/4
**ethically [1]** 57/12
**evaluation [1]** 51/10
**evasive [2]** 29/11 55/13
**even [7]** 6/10 6/10 8/6 22/6 28/3 36/25 53/10
**ever [6]** 21/11 38/5 39/4 45/20 46/17 51/1
**every [3]** 5/20 26/9 32/20
**everyone [1]** 16/3
**everything [2]** 6/7 19/9
**evidence [1]** 48/5
**evidenced [1]** 24/11
**ex [3]** 33/22 37/4 49/7
**ex-wife [3]** 33/22 37/4 49/7
**exact [1]** 43/6
**example [1]** 22/23
**Exchange [1]** 10/12
**exchanges [2]** 45/19 46/10

**excuse [3]** 23/15 24/24 28/1
**executing [2]** 47/20 48/15
**executive [1]** 28/4
**exempt [1]** 12/2
**exhaustively [1]** 28/12
**expense [1]** 17/10
**experience [4]** 10/12 11/13 29/22 34/15
**Expires [1]** 59/16
**Explain [1]** 33/4
**express [1]** 5/13
**extent [1]** 13/1
**eye [1]** 30/7

**F**

**facetious [1]** 50/21
**facing [1]** 26/22
**fact [4]** 8/23 22/7 44/5 51/9
**failed [5]** 14/4 42/24 52/6 55/12 56/2
**failing [1]** 53/22
**failure [7]** 14/6 14/8 27/12 52/23 53/6 55/19 55/21
**fair [1]** 48/18
**faith [6]** 14/4 22/20 53/22 55/13 55/20 56/3
**family [4]** 28/13 34/6 44/2 44/7
**famous [1]** 16/21
**far [3]** 6/20 30/14 57/11
**Fargo [6]** 44/24 44/25 45/1 45/1 45/3 48/14
**FARRELL [6]** 2/2 9/14 9/25 10/5 11/8 11/17
**father [2]** 34/9 36/10
**FBI [5]** 26/21 28/1 38/16 39/15 39/17
**FBI/CIA [1]** 28/1
**FEDERAL [3]** 1/21 4/23 15/3
**fee [1]** 57/16
**feed [1]** 9/1
**feel [1]** 51/15
**fees [1]** 59/6
**few [2]** 31/1 37/13
**fiancee [1]** 13/9
**Fieldthorn [1]** 1/18
**Fifth [1]** 15/20
**file [2]** 7/12 55/6
**filed [11]** 6/21 7/1 7/13 8/6 8/14 8/14 24/12 54/3 54/11 54/23 55/1
**filings [1]** 22/22
**final [1]** 28/19
**finances [1]** 31/16
**financial [4]** 29/11 31/14 40/5 40/10
**find [7]** 5/24 10/6 34/13 41/9 42/19 47/5 56/4
**finds [1]** 55/10
**fine [5]** 22/14 38/21 52/19 56/12 57/24
**firm [4]** 9/9 10/4 10/11 12/22
**firms [1]** 7/6
**first [4]** 5/3 14/23 22/17 52/13
**five [3]** 23/21 23/25 54/19
**floor [3]** 21/22 52/21 57/17
**folks [3]** 8/20 10/6 18/19
**follow [5]** 17/4 41/5 45/16 47/12 47/17
**follow-up [5]** 17/4 41/5 45/16 47/12 47/17
**following [2]** 8/7 52/11
**food [1]** 21/1
**forbidding [1]** 28/2

**F**

**Force [6]** 1/12 1/13 35/6/1 36/7 36/9 36/17

**foregoing [2]** 59/4 59/5
**foreign [3]** 37/11 38/6 38/12
**forgiveness [2]** 20/20 20/21
**form [2]** 38/13 38/15
**formally [1]** 15/2
**format [1]** 59/6
**former [1]** 10/19
**FORT [11]** 1/3 1/5 1/23 2/8 10/10 10/11 11/8 13/11 15/3 59/14 59/17
**forthright [2]** 11/11 11/22
**forward [2]** 8/9 9/13
**found [2]** 47/4 51/10
**four [3]** 18/11 20/8 32/13
**frame [2]** 23/7 45/24
**frankly [5]** 8/25 13/14 22/5 22/12 50/23
**frequently [1]** 29/14
**frustrated [1]** 29/24
**full [1]** 31/13
**fully [1]** 31/1
**further [4]** 42/23 50/19 55/7 59/6

**G**

**gave [10]** 18/11 18/13 18/15 18/19 19/23 23/24 23/24 45/9 55/13 55/23
**gentlemen [7]** 10/2 12/22 13/5 31/18 35/20 49/6 56/10
**gentlemen that [1]** 49/6
**get [13]** 5/4 6/15 8/12 25/6 27/8 27/25 30/6 41/6 45/13 45/14 47/13 53/11 57/6
**give [9]** 6/2 15/21 16/2 19/5 28/20 29/18 36/4 55/14 58/10
**given [5]** 8/25 21/17 37/19 53/23 56/16
**giving [5]** 12/13 36/5 46/5 49/6 49/7
**glad [1]** 11/6
**go [12]** 8/9 12/24 17/22 19/11 22/18 30/2 40/21 45/15 46/8 47/22 52/2 56/16
**goes [1]** 17/20
**going [32]** 5/1 5/2 5/3 6/6 6/12 7/11 10/24 11/25 12/2 16/20 20/11 25/3 27/1 27/15 27/18 27/19 27/22 31/4 33/9 38/24 38/25 39/1 45/17 47/13 52/2 52/20 52/22 53/5 53/16 53/16 56/25 58/2
**gone [1]** 49/20
**good [13]** 9/21 9/25 11/17 11/21 12/14 12/20 14/4 22/20 53/22 55/12 55/20 56/3 58/3
**good-faith [1]** 22/20
**got [3]** 28/9 41/19 45/8
**gotten [2]** 29/22 38/13
**government [33]** 14/23 15/1 17/10 18/18 19/4 22/13 25/16 28/4 29/13 31/4 32/3 32/6 33/3 33/6 37/10 37/11 37/15 37/23 38/12 39/2 39/4 39/4 39/15 39/16 39/23 43/14 43/16 43/22 45/12 49/2 49/4 50/13 52/15
**governments [2]** 38/6 38/12
**grab [1]** 17/24
**gradually [1]** 8/12
**grandmother [2]** 44/2 44/15

**grandparents [1]** 34/6
**granted [5]** 21/11 23/17 54/9 54/17 54/23
**guess [3]** 21/2 24/5 32/8
**GUZMAN [4]** 2/7 59/3 59/11 59/11

**H**

**had [30]** 5/16 7/3 14/5 14/12 14/20 15/19 18/12 18/12 20/10 20/13 20/23 23/14 24/1 24/3 26/19 29/18 33/21 43/21 44/2 44/7 45/23 46/10 46/15 46/18 46/21 46/23 47/6 47/9 47/10 52/12
**Hal [3]** 31/24 47/19 48/2
**half [3]** 22/6 28/10 36/11
**hand [1]** 29/1
**handle [2]** 40/20 40/21
**handler [6]** 39/14 39/15 39/17 43/14 43/17 44/3
**handlers [1]** 28/2
**happen [1]** 28/19
**happened [2]** 22/4 45/7
**happy [10]** 7/10 7/20 8/9 13/13 13/14 15/12 16/6 16/7 35/19 51/18
**harassment [1]** 26/18
**hard [9]** 30/5 45/19 46/2 46/10 46/17 46/21 47/1 47/6 47/9
**has [31]** 5/18 5/18 7/1 8/20 10/12 10/16 11/13 13/10 14/2 14/11 18/17 19/12 23/9 24/20 26/10 30/10 30/14 34/23 35/15 38/13 39/2 39/3 49/2 49/5 49/20 49/22 52/6 52/6 53/21 53/25 55/4
**hate [2]** 15/22 21/14
**have [120]**
**haven't [7]** 12/10 28/6 36/23 37/5 45/23 46/16 49/16
**having [9]** 8/13 10/25 14/1 20/25 22/2 22/3 22/5 52/4 53/14
**he [61]**
**he'd [1]** 21/1
**he'll [1]** 13/21
**he's [13]** 10/10 11/12 11/19 15/22 16/17 30/21 39/18 51/22 56/2 57/1 57/3 57/5 57/11
**head [2]** 11/5 46/23
**healthcare [1]** 51/4
**healthy [1]** 18/23
**hear [4]** 7/9 7/10 9/19 29/5
**heard [4]** 5/13 22/2 22/3 47/4
**hearing [29]** 1/9 4/13 5/18 6/17 7/3 8/13 9/12 12/11 14/1 17/20 20/24 22/15 23/4 23/18 24/1 26/17 44/6 52/7 52/7 52/20 53/25 54/10 54/14 54/16 54/23 55/3 55/3 55/6 55/24
**held [8]** 21/3 26/15 28/19 32/24 33/2 52/14 55/24 57/23
**helped [1]** 44/15
**her [6]** 15/4 15/9 15/11 15/12 15/13 17/16
**here [30]** 4/19 4/24 5/2 5/8 5/10 5/14 6/11 9/22 10/10 10/11 11/8 12/11 13/19 15/3 16/16 20/12 22/9 23/1 28/3 28/9 30/25 31/19 36/2 49/15 51/17 51/18 53/9 54/21 55/11 58/10
**hiding [1]** 48/21
**highest [1]** 11/14

**Hill [2]** 48/9 48/14
**him [24]** 5/5 11/10 11/22 13/21 15/20 15/21 15/22 16/2 20/13 21/11 21/16 21/18 21/24 24/7 30/15 53/24 54/5 55/25 56/1 56/7 56/14 56/15 57/13 57/16
**himself [3]** 4/10 56/9 57/5
**hired [2]** 10/19 10/22
**his [25]** 4/14 5/6 14/7 14/8 15/20 15/21 21/12 23/16 23/16 23/25 24/21 27/19 30/21 53/24 54/13 54/21 55/11 55/14 55/19 55/21 55/21 55/22 56/9 56/11 56/15
**history [1]** 53/22
**hold [6]** 27/12 40/5 50/24 51/20 54/5 54/9
**holding [2]** 53/5 54/16
**holdings [1]** 23/17
**home [1]** 28/11
**homeless [4]** 18/13 18/15 18/19 19/23
**honest [2]** 11/11 11/22
**honestly [1]** 30/5
**Honor [65]**
**Honor's [2]** 25/10 25/18
**HONORABLE [3]** 1/9 11/9 11/9
**hoping [1]** 49/8
**hotel [3]** 18/11 19/6 19/8
**hour [1]** 56/16
**hours [4]** 18/24 26/24 28/8 29/6
**how [12]** 10/25 29/21 32/3 32/4 32/4 32/5 32/12 34/4 34/10 46/10 56/13 56/24

**I**

**I'd [5]** 7/10 8/10 13/11 20/12 40/21
**I'll [12]** 9/19 12/10 13/16 17/4 25/6 30/13 30/14 30/15 31/2 41/5 43/1 55/5
**I'm [46]** 5/3 6/14 10/24 13/2 13/13 15/12 15/18 16/6 16/6 16/11 16/12 16/22 19/11 19/15 19/19 24/6 27/11 29/17 30/2 31/10 31/18 32/12 32/23 32/23 34/8 35/19 36/3 36/5 38/22 38/24 42/16 42/20 43/4 47/12 48/6 50/21 50/21 50/22 50/23 50/25 51/18 51/19 52/1 52/8 57/12 58/10
**I've [28]** 4/12 5/16 5/23 5/24 6/7 6/10 9/3 9/8 9/9 13/19 14/12 16/13 17/11 18/2 26/8 29/6 38/11 38/13 41/19 44/19 44/19 47/2 47/3 47/4 53/10 53/10 55/25 55/25
**idea [4]** 12/14 12/20 46/13 58/3
**ideal [1]** 15/2
**identify [6]** 7/5 33/16 41/7 41/12 45/19 46/10
**illegal [1]** 38/14
**illness [1]** 51/1
**imagine [1]** 29/23
**immediately [3]** 22/14 52/20 57/22
**impose [1]** 52/19
**imposing [1]** 52/17
**impression [1]** 45/11
**include [2]** 34/5 37/7
**Included [1]** 25/13
**includes [3]** 26/5 26/6 52/25
**including [1]** 53/24
**incrimination [1]** 16/24
**Indeed [4]** 6/10 7/2 53/12 54/3

## I

**INDEX [1]** 2/10
**indicated [1]** 21/23
**individually [1]** 42/1
**individuals [4]** 11/24 13/19 33/7 38/11
**informant [2]** 38/16 39/6
**information [6]** 14/7 29/12 31/10 31/14 31/16 55/14
**informed [1]** 18/8
**instead [1]** 21/11
**intelligence [1]** 44/16
**intend [1]** 37/25
**intended [1]** 31/9
**intent [1]** 36/11
**interact [1]** 31/18
**interest [7]** 6/4 6/13 10/7 36/11 36/14 40/5 42/2
**interests [2]** 9/6 44/17
**intermediary [1]** 37/20
**interrogatories [11]** 14/7 22/23 23/16 24/2 24/4 25/9 25/18 27/4 27/5 54/13 54/19
**interrogatory [3]** 23/20 55/21 57/4
**interrupted [1]** 29/14
**interrupts [1]** 39/21
**intersects [1]** 44/17
**introduced [1]** 35/5
**investment [1]** 41/22
**involve [2]** 5/5 52/23
**involved [3]** 5/20 16/3 36/1
**involving [1]** 10/20
**is [97]**
**isn't [1]** 5/14
**issue [2]** 17/25 56/23
**issues [1]** 13/25
**it [97]**
**it's [24]** 5/4 6/6 6/12 8/17 9/17 9/21 13/10 16/18 18/4 20/14 20/15 20/17 20/20 21/4 25/2 25/21 26/14 35/15 35/17 37/19 44/17 48/19 57/13 58/13
**items [5]** 14/19 18/2 22/16 48/20 53/1
**its [3]** 16/19 46/3 55/6
**itself [2]** 14/16 48/10

## J

**jail [2]** 56/8 57/6
**Jeff [1]** 9/24
**JEFFREY [1]** 2/2
**Johnathan [1]** 39/18
**Johnny [5]** 8/11 14/22 22/17 27/18 52/12
**JOHNSON [62]**
**Johnson's [9]** 4/13 20/5 21/6 21/9 21/15 25/17 52/7 54/8 55/8
**joke [1]** 22/10
**JUDGE [6]** 1/10 9/25 14/19 21/21 22/6 24/18
**judgment [26]** 5/17 6/2 6/17 6/18 6/19 6/25 11/4 12/2 12/4 12/6 12/7 12/7 14/5 22/20 23/3 25/11 26/7 26/20 27/13 35/16 48/24 52/25 53/23 54/9 54/12 54/19
**Judicial [1]** 59/7
**judiciary [1]** 28/4
**JUDY [1]** 1/21
**jurors [1]** 14/21
**jury [9]** 14/19 15/1 18/1 19/15 21/19

21/22 21/23 22/7 52/16
**just [30]** 4/11 6/6 8/4 9/17 15/23 16/5 21/8 23/25 25/6 28/9 30/5 30/12 35/20 36/24 37/17 37/20 38/22 41/10 45/8 45/13 45/13 45/17 45/17 47/13 47/16 48/7 49/19 50/4 50/22 57/16
**JXC [2]** 43/3 48/13

## K

**keep [4]** 39/3 43/1 45/17 48/1
**kind [3]** 12/3 13/14 21/3
**kinds [1]** 33/14
**kitchen [1]** 18/10
**kitchenette [3]** 18/8 21/16 21/19
**know [44]** 4/19 7/6 11/2 11/10 11/22 13/2 19/16 20/16 21/8 28/9 29/21 30/3 31/3 32/7 32/11 32/16 32/18 32/22 33/14 33/18 33/19 33/20 34/4 34/9 34/10 34/16 36/21 36/24 37/12 37/18 37/20 40/2 41/9 41/10 43/3 43/19 45/22 46/12 46/22 47/6 51/5 56/13 56/14 58/4
**knowing [1]** 22/6
**knowledge [2]** 38/7 38/9
**known [3]** 9/3 11/8 13/19

## L

**laid [1]** 25/21
**Lambert [4]** 31/24 36/13 47/19 48/2
**laptop [1]** 47/10
**large [1]** 10/11
**largely [1]** 14/15
**last [12]** 4/19 5/13 6/16 7/3 23/4 23/14 26/17 28/9 28/20 41/3 44/6 44/9
**late [1]** 56/16
**later [2]** 5/1 9/21
**law [8]** 6/9 7/6 9/9 10/4 10/11 11/9 12/22 17/7
**lawyer [1]** 17/10
**least [13]** 5/22 9/7 13/20 15/19 16/13 20/10 22/11 45/23 52/9 52/18 53/4 53/15 56/5
**leave [2]** 20/25 56/17
**led [1]** 21/18
**left [4]** 12/9 27/11 50/23 52/8
**legal [3]** 8/16 53/9 58/10
**legislative [1]** 28/5
**Less [1]** 32/19
**let [15]** 4/17 4/17 4/22 13/2 13/16 17/3 17/15 19/13 30/2 30/13 31/1 35/22 37/8 48/7 52/1
**let's [7]** 8/11 13/24 17/25 22/18 25/23 39/3 48/7
**levels [1]** 11/14
**like [27]** 7/9 8/2 8/10 8/10 11/21 13/10 15/8 15/9 15/22 15/23 16/17 20/12 22/10 24/20 28/20 37/24 41/4 42/25 44/21 44/22 45/10 46/3 47/12 48/20 49/15 51/15 51/25
**limit [1]** 35/13
**limited [1]** 4/12
**lines [1]** 25/4
**list [3]** 40/4 41/15 44/22
**listed [1]** 12/13
**listen [3]** 6/14 16/25 31/7
**listening [2]** 47/1 52/8
**litigation [1]** 10/9

**little [2]** 7/3 23/13
**LLC [9]** 1/4 4/4 42/1 43/3 43/3 43/7 43/25 48/19 49/1
**LLP [1]** 1/13
**lockup [1]** 19/12
**long [5]** 24/14 25/25 28/10 47/11 56/13
**longer [1]** 39/10
**longtime [2]** 10/8 10/13
**look [4]** 9/5 10/16 11/3 29/8
**looking [1]** 45/11
**lot [11]** 5/15 8/23 18/23 44/17 45/13 45/14 46/4 46/4 46/24 47/3 47/4
**lots [1]** 45/5
**Lying [1]** 42/17

## M

**made [5]** 4/22 6/16 20/22 38/2 52/6
**mail [4]** 2/9 23/25 24/2 59/19
**mailed [1]** 24/3
**maintaining [1]** 10/7
**make [11]** 6/16 8/1 9/16 9/20 16/15 21/16 22/9 22/20 47/16 53/16 54/4
**making [1]** 50/21
**managed [1]** 28/11
**manners [1]** 33/14
**many [8]** 32/3 32/3 32/4 32/4 32/5 32/12 34/4 46/10
**MARK [1]** 1/9
**Marriott [1]** 18/14
**Marshal [3]** 52/20 53/17 56/7
**Marshals [1]** 56/13
**material [1]** 58/8
**matter [4]** 5/3 48/16 48/16 59/5
**matters [3]** 5/12 28/15 29/7
**may [5]** 13/6 15/15 15/16 30/8 57/9
**maybe [15]** 10/16 15/19 20/20 32/14 32/14 32/15 32/15 32/17 34/5 37/12 41/18 42/1 46/16 46/22 51/10
**me [41]** 4/17 4/20 5/13 6/5 7/10 11/10 12/16 13/2 13/3 15/2 15/13 16/19 17/3 18/22 19/13 19/21 23/15 24/24 25/3 26/14 27/25 29/18 31/1 32/10 32/12 33/21 35/5 35/17 35/22 35/25 36/14 37/3 37/8 40/21 45/11 45/13 47/1 47/8 48/7 49/15 52/1
**mean [4]** 35/6 35/7 38/8 56/24
**means [3]** 11/10 42/21 49/1
**meant [3]** 18/25 19/1 22/9
**mechanical [1]** 2/12
**media [1]** 21/6
**medications [1]** 51/8
**members [1]** 34/6
**men's [1]** 21/23
**mental [2]** 51/1 51/3
**mentally [1]** 51/16
**mentioned [1]** 20/25
**meritorious [1]** 7/2
**met [1]** 8/17
**method [1]** 14/22
**mguzman.csr [2]** 2/9 59/19
**microphone [1]** 29/4
**middle [1]** 54/17
**might [11]** 5/5 7/10 12/14 15/1 16/3 20/23 32/13 34/5 34/6 41/25 58/3
**million [6]** 5/17 6/17 35/16 37/13 37/14 38/2

**M**

mine [4] 18/8 19/9 33/10 48/24
minimal [3] 24/21 24/22 55/14
**Minimally [1]** 31/9
**minimum [2]** 25/1 25/2
**minute [1]** 30/12
**minutes [1]** 23/25
**Miranda [5]** 15/21 16/6 16/21 16/22 53/10
**missing [1]** 14/19
**misstating [2]** 44/9 44/12
**moment [2]** 27/8 51/8
**Monday [3]** 14/10 53/2 54/21
**money [7]** 33/8 33/10 37/10 38/5 38/11 46/24 57/20
**MONICA [5]** 2/7 29/5 59/3 59/11 59/11
**monthly [1]** 40/9
**months [5]** 11/20 12/5 16/13 51/10 58/13
**more [11]** 6/3 6/10 8/6 18/15 24/23 29/23 32/8 47/14 49/21 50/3 53/12
**morning [4]** 4/21 5/17 16/6 28/10
**most [2]** 10/6 29/25
**motion [19]** 5/4 6/22 7/1 7/12 8/2 8/5 8/14 14/2 24/25 25/10 54/3 54/8 54/9 54/11 54/15 54/17 54/24 55/1 55/7
**MOTIONS [1]** 1/9
**moved [4]** 23/14 31/22 49/11 49/16
**moving [2]** 34/3 48/20
**Mr [104]**
**Ms [11]** 4/10 4/17 4/18 4/23 15/2 15/19 16/15 17/15 30/19 56/19 57/11
**much [1]** 8/19
**mug [16]** 14/21 17/24 18/9 18/10 18/20 19/6 19/12 20/7 20/13 20/15 20/17 21/3 21/7 21/7 21/12 52/15
**mugs [1]** 55/16
**multiple [2]** 24/15 31/8
**must [1]** 50/5
**my [61]**
**myself [6]** 20/8 21/10 21/21 36/10 45/13 58/7

**N**

**name [7]** 41/8 41/13 41/25 42/1 43/16 43/19 44/21
**narratives [1]** 29/15
**Navy [1]** 44/16
**NCRA [1]** 59/12
**necessarily [1]** 33/13
**necessary [4]** 7/20 8/6 17/18 53/15
**necessitating [1]** 26/13
**need [15]** 5/24 7/16 7/22 9/19 9/21 9/21 15/13 25/25 27/21 27/22 36/21 50/6 50/7 56/14 58/5
**needing [1]** 5/5
**Neither [1]** 21/10
**never [9]** 19/7 23/18 44/19 44/19 46/21 47/9 47/13 48/4 49/17
**next [1]** 15/13
**nine [2]** 16/13 58/13
**no [59]** 1/4 7/15 7/19 7/22 7/24 7/25 8/4 8/7 8/13 9/4 12/9 12/17 13/4 13/13 15/7 15/10 15/16 17/19 18/9 18/22 20/24 21/20 23/9 24/3 27/11 32/1 35/24 36/19 37/24 39/10 40/6 40/7 41/21 42/4 42/5 42/6 42/12 42/14

42/18 43/21 46/6 46/13 46/20 46/20 47/21 48/22 49/5 50/23 51/2 51/5 51/7 51/9 52/9 53/14 53/25 55/1 57/12 59/12 59/12
**Nods [1]** 11/5
**noncompliance [2]** 55/8 55/18
**noncompliant [1]** 27/10
**none [1]** 46/7
**nonsense [1]** 29/15
**NORTHERN [3]** 1/2 1/22 59/13
**not [96]**
**note [5]** 4/11 12/10 29/10 30/14 55/5
**noted [1]** 24/15
**nothing [4]** 25/15 26/20 44/8 50/19
**notice [2]** 57/1 57/7
**noticed [1]** 14/9
**NOVEMBER [7]** 1/6 4/2 23/17 23/21 54/11 54/16 54/21
**now [8]** 5/3 6/22 8/19 13/24 29/6 31/14 40/15 57/16
**number [7]** 4/3 10/11 26/21 26/23 40/11 52/24 55/9
**numerous [1]** 53/23

**O**

**O'Connor [1]** 11/9
**O'Connor's [2]** 14/19 21/21
**oath [7]** 24/6 24/9 24/17 38/20 42/15 42/17 53/3
**object [4]** 7/4 7/11 49/7 55/4
**objected [2]** 8/18 12/10
**objecting [1]** 7/13
**objection [6]** 7/24 7/25 8/7 8/13 13/14 49/6
**objections [2]** 7/15 7/19
**obligation [1]** 57/12
**obstructive [5]** 14/15 26/9 28/16 30/3 53/13
**obviously [1]** 10/24
**Ocean [1]** 11/15
**October [1]** 54/3
**off [3]** 41/15 46/23 57/14
**office [8]** 10/13 10/23 11/1 22/15 24/1 42/20 52/21 56/11
**Officer [3]** 21/14 22/1 22/4
**officers [2]** 12/24 21/17
**Official [1]** 59/13
**oftentimes [1]** 33/7
**Oh [1]** 7/18
**OIA [1]** 38/13
**okay [49]** 4/8 4/17 5/6 7/16 7/22 8/10 8/12 12/18 13/17 13/22 13/23 15/14 15/17 16/13 17/3 17/19 17/23 18/4 19/10 19/17 23/7 25/20 27/10 27/17 30/16 30/24 31/7 31/21 32/2 34/3 34/19 37/2 37/8 38/13 39/2 39/8 40/2 40/8 40/19 41/3 41/6 44/13 50/3 52/2 52/3 57/18 57/22 58/11 58/15
**old [1]** 8/11
**one [26]** 5/1 8/11 8/11 9/4 15/2 16/18 17/10 18/7 19/21 21/17 21/18 23/2 23/4 28/20 30/16 32/13 32/14 32/15 34/9 39/14 42/5 46/16 47/14 50/4 52/24 53/11
**ongoing [1]** 39/20
**only [10]** 6/8 10/10 11/24 14/6 14/13 23/1 24/5 26/4 31/9 53/8

**operating [1]** 25/16
**operation [7]** 33/9 48/17 50/5 50/8 50/11 50/14 50/17
**operational [1]** 39/11
**opportunities [1]** 53/23
**opportunity [3]** 18/4 25/23 28/20
**options [2]** 18/23 18/23
**order [16]** 12/12 14/4 14/18 22/3 23/4 23/13 25/10 28/6 40/9 49/21 50/1 52/10 52/17 53/17 54/6 55/2
**ordered [14]** 6/1 14/3 22/18 23/21 25/14 26/11 27/13 27/14 27/20 27/23 28/15 40/12 54/18 55/19
**orders [14]** 23/2 23/10 25/18 26/6 27/11 28/21 31/12 52/24 53/20 54/1 55/8 55/24 56/6 58/12
**original [2]** 23/4 55/7
**other [21]** 6/13 12/9 18/15 27/12 28/14 32/10 33/15 34/6 35/22 39/15 39/23 40/10 41/20 41/25 42/5 50/23 50/24 52/10 52/23 53/14 54/7
**others [2]** 42/5 42/6
**otherwise [3]** 31/22 38/14 49/11
**Othram [8]** 35/1 37/6 43/8 44/1 47/18 48/2 48/10 49/9
**our [12]** 6/9 6/9 8/5 13/24 14/21 15/3 23/25 24/23 25/5 28/17 52/16 57/17
**out [28]** 4/24 6/24 8/25 9/5 9/12 12/11 12/24 14/24 16/2 20/22 21/6 25/21 27/22 27/25 28/8 28/9 28/18 29/25 30/6 30/13 34/14 36/14 39/19 42/3 49/8 52/5 53/8 57/6
**outset [1]** 24/16
**outside [2]** 18/13 18/14
**outstanding [4]** 5/17 19/25 23/2 25/19
**own [6]** 16/7 32/3 32/5 34/18 34/21 36/21
**owned [1]** 45/5

**P**

**p.m [2]** 1/7 4/2
**Pacific [1]** 11/15
**PAGE [1]** 3/2
**paid [1]** 14/20
**paper [1]** 46/2
**parents [1]** 34/6
**part [5]** 14/18 26/12 48/1 48/2 53/6
**partially [1]** 9/7
**participate [1]** 6/14
**past [2]** 4/25 22/5
**patience [3]** 6/3 29/24 56/19
**patient [1]** 16/12
**pay [3]** 52/22 56/11 57/16
**payable [2]** 22/14 52/19
**Pearl [1]** 1/14
**people [8]** 18/13 18/15 19/23 20/8 32/11 34/14 45/11 47/4
**per [2]** 33/10 40/13
**perfect [1]** 10/15
**perfectly [2]** 19/11 19/15
**perhaps [1]** 10/16
**perjured [1]** 42/19
**permission [5]** 4/13 20/20 20/21 21/11 22/16
**person [2]** 11/21 21/15
**person's [1]** 43/19
**personally [2]** 11/22 54/6

**P**

pertinent [1] 60/10
phone [3] 13/12 40/22 58/4
physically [1] 55/11
picked [1] 29/25
picture [1] 21/7
piece [5] 8/11 8/12 22/17 22/18 22/25
pieces [2] 52/13 52/23
Piper [1] 1/13
PITTMAN [2] 1/9 24/18
place [5] 14/9 26/18 42/25 53/17 56/7
placed [2] 35/10 46/18
places [1] 45/20
placing [2] 31/23 49/12
plaintiff [4] 1/13 14/11 54/6 55/6
plaintiffs [20] 4/5 4/6 6/17 6/21 6/25 7/1 7/13 8/15 8/22 8/24 23/14 31/24 47/20 48/3 48/9 48/15 49/13 54/3 54/11 54/23
plaintiffs' [9] 9/6 14/2 24/24 25/10 25/14 54/7 54/9 54/17 54/18
plan [1] 55/14
played [1] 11/7
please [11] 9/11 9/13 16/25 17/19 19/24 25/22 35/9 50/25 52/1 56/11 57/10
podium [2] 17/22 52/2
point [6] 1/4 4/3 12/15 23/3 31/24 46/16
pointed [1] 52/5
polite [1] 19/19
portfolio [1] 40/4
portion [2] 5/5 48/6
position [1] 48/8
possess [1] 46/11
possessed [1] 45/21
possible [6] 13/10 13/12 19/19 39/3 55/14 56/5
possibly [2] 5/5 6/7
post [13] 6/2 6/19 14/5 22/20 23/3 25/11 26/7 26/20 27/13 52/25 53/23 54/12 54/19
post-judgment [13] 6/2 6/19 14/5 22/20 23/3 25/11 26/7 26/20 27/13 52/25 53/23 54/12 54/19
posted [1] 21/7
powers [1] 12/13
precise [1] 49/22
preface [2] 31/2 47/2
prefer [4] 13/11 38/17 38/19 38/20
pregnant [1] 13/10
prepaid [1] 39/5
prepared [4] 31/15 31/20 40/15 41/12
prescribed [1] 59/7
present [3] 15/13 17/9 55/11
preservation [3] 48/19 48/25 49/21
preserved [3] 49/3 50/7 50/7
President [1] 45/9
pretty [2] 21/4 51/11
prevent [4] 47/19 47/22 48/3 48/14
previous [3] 5/18 18/12 23/20
previously [4] 6/5 18/7 42/24 43/24
Price [6] 2/3 9/9 9/24 10/1 10/4 11/20
print [1] 21/5
PRO [1] 1/18
probably [6] 4/19 6/12 12/20 13/20 26/24 49/22

problem [1] 51/24
proceedings [3] 2/12 58/16 59/5
proceeds [5] 43/8 44/1 48/1 48/9 48/15
process [5] 6/8 26/25 27/1 56/14 58/5
proclivity [1] 9/1
produce [8] 25/14 28/6 40/9 54/13 54/19 54/20 55/21 57/4
produced [2] 2/12 25/15
production [2] 25/18 40/11
professionals [1] 51/4
proof [1] 24/3
property [9] 14/23 15/1 17/25 18/18 19/4 22/14 52/15 53/4 55/22
proposed [1] 12/12
prosecution [1] 11/13
prosecutor [2] 10/8 11/13
protect [2] 8/21 8/22
protection [1] 54/6
provide [5] 29/12 31/10 31/15 53/9 57/1
provided [6] 17/10 24/3 39/5 39/11 40/3 40/8
providing [2] 27/13 57/7
psychiatric [1] 51/6
psychological [1] 51/10
public [5] 1/21 4/23 6/11 15/3 53/9
pun [1] 21/4
purely [1] 5/4
purge [5] 53/19 56/24 57/23 58/5 58/7
purges [2] 56/9 57/5
purpose [7] 4/12 31/23 36/11 47/19 47/25 48/13 49/12
pursuant [2] 31/4 40/11
pursue [1] 10/17
put [7] 11/17 15/23 23/1 27/15 27/18 35/20 53/10
putting [4] 36/11 36/14 48/19 49/3

**Q**

question [24] 13/6 17/4 19/25 26/9 32/11 32/23 33/15 33/25 35/16 35/17 36/2 37/21 38/2 40/1 41/3 43/18 45/25 46/9 47/7 47/14 48/8 48/12 49/10 49/22
questioning [1] 17/9
questions [40] 5/21 6/5 6/13 10/20 12/16 13/3 14/8 15/5 17/19 19/1 20/11 24/21 26/19 26/21 26/23 29/11 29/16 29/17 29/19 30/1 30/4 30/6 30/6 31/1 35/13 36/3 37/1 38/20 41/6 42/23 50/3 51/25 53/7 53/11 55/12 55/20 55/25 56/1 56/23 57/3
quickly [3] 15/8 15/15 26/1
quiet [3] 19/17 19/24 49/18
quip [1] 20/22
quite [5] 8/25 22/5 26/21 26/23 30/5
quoting [1] 31/11

**R**

radar [1] 36/13
raise [1] 28/25
rather [4] 15/8 26/12 35/17 46/5
reach [2] 31/23 49/12
read [7] 16/20 17/3 17/11 21/6 26/8 28/12 53/10
reading [1] 48/6

ready [3] 57/1 57/3 57/5
realize [1] 43/24
really [4] 16/11 16/11 34/13 56/22
reason [4] 11/7 26/12 43/25 44/6
reasons [1] 18/6
recall [3] 20/6 20/18 46/23
receive [1] 23/22
received [4] 24/1 37/10 37/14 38/5
receiver [27] 6/22 7/5 7/7 7/9 7/12 7/14 8/3 8/5 8/6 8/9 8/14 8/17 9/5 9/8 9/11 10/5 10/7 10/25 12/12 12/19 14/2 24/25 26/13 35/15 54/24 55/5 55/7
receivers [9] 2/2 12/14 12/21 13/3 13/11 49/5 51/23 56/13 58/8
receivership [4] 5/4 6/22 8/21 35/21
recently [1] 10/19
recess [1] 58/15
recollection [1] 20/7
recommendations [1] 8/8
record [12] 4/11 4/18 4/22 9/17 24/8 25/5 29/10 42/25 45/18 52/7 57/14 59/5
recoverable [2] 11/4 12/25
Reed [1] 11/9
referring [1] 42/20
reflect [2] 4/18 4/22
refuse [1] 43/18
refused [4] 12/25 29/12 30/14 57/11
refusing [4] 30/21 33/25 36/25 38/1
regarding [5] 14/7 16/21 16/22 28/14 31/14
regards [3] 8/3 14/1 52/24
related [1] 24/2
relationship [2] 26/21 26/22
release [1] 10/18
remain [3] 15/23 17/5 21/24
remainder [1] 17/20
remaining [1] 13/25
remove [1] 18/2
removed [2] 18/1 18/18
removing [1] 22/16
repeated [1] 53/22
repeatedly [4] 20/23 24/22 29/12 55/13
reported [2] 2/12 55/15
reporter [6] 2/7 20/9 21/10 24/10 39/21 59/13
REPORTER'S [1] 58/17
represent [2] 15/22 30/15
represented [1] 12/5
representing [1] 4/9
request [5] 4/22 25/14 40/11 40/14 40/15
requested [2] 24/13 26/11
requests [1] 25/19
required [4] 40/9 53/1 53/2 54/20
requirements [1] 8/16
requires [1] 31/13
respect [1] 8/23
respected [1] 10/14
respond [9] 20/2 23/8 28/15 53/1 54/12 54/25 55/12 55/19 56/2
response [6] 7/12 14/25 22/2 31/11 55/1 55/18
responses [4] 29/19 31/14 52/8 55/22
responsively [1] 31/2
Reston [1] 1/19

**R**

result [1] 6/2
resulting [1] 55/16
retired [1] 11/12
returned [2] 19/12 19/21
returns [1] 25/15
review [1] 14/12
reviewed [2] 8/13 29/21
reviewing [2] 29/6 52/6
rid [2] 45/8 45/14
right [16] 5/12 10/2 13/5 13/24 17/5 17/8 25/21 29/1 29/4 30/24 31/21 36/7 41/2 41/15 50/9 57/14
rights [10] 5/6 15/6 15/20 16/6 16/20 16/22 16/23 17/1 17/11 53/10
risk [1] 57/17
Robbins [1] 10/23
Robert [1] 8/24
role [2] 43/21 43/23
room [15] 1/22 2/7 14/19 15/1 18/1 18/11 19/9 21/19 21/22 21/23 21/23 22/7 27/6 52/16 59/17
rooms [1] 21/23
rope [1] 6/3
rough [2] 14/11 24/11
RPR [3] 2/7 59/3 59/11
ruling [1] 8/1
rulings [1] 53/16
rush [1] 24/14

**S**

safe [2] 42/10 46/19
said [39] 5/18 7/2 13/18 14/22 14/24 17/1 17/25 19/7 20/12 20/13 20/14 20/15 20/15 20/16 20/23 21/7 21/11 22/24 23/24 24/16 24/19 24/20 25/2 25/2 25/3 26/8 26/10 26/17 29/6 30/10 44/9 45/10 47/23 47/25 48/4 50/6 50/7 52/12 55/4
sale [6] 43/8 44/1 47/18 47/19 48/1 49/17
same [4] 19/14 24/17 30/4 54/7
sanction [7] 22/11 52/9 52/18 53/4 53/15 55/17 56/5
sanctioned [1] 26/15
SANDERS [12] 1/21 4/10 4/17 4/18 4/23 15/2 15/19 16/15 17/15 30/19 56/19 57/11
Sanford [1] 57/15
sat [1] 51/9
Saturday [1] 23/21
saw [1] 10/18
say [13] 8/2 14/13 16/18 17/6 19/8 21/8 28/14 33/24 44/18 46/6 48/5 50/10 50/20
saying [5] 19/3 20/6 20/19 31/2 47/2
says [3] 20/13 20/14 21/2
scheduled [2] 54/14 56/25
scope [1] 35/12
se [2] 1/18 33/10
seat [6] 10/3 19/25 27/16 28/17 28/25 29/3
second [5] 22/18 22/19 22/25 23/4 49/10
Security [3] 10/12 21/14 22/4
see [2] 9/12 58/3
seeing [1] 51/3

seems [1] 22/10
seen [2] 4/25 47/3
self [1] 16/24
self-incrimination [1] 16/24
send [4] 13/13 58/8 58/8 58/9
sense [1] 51/16
sentencing [1] 28/10
seriously [1] 53/3
serve [5] 7/7 9/5 10/5 10/6 55/21
served [1] 10/10
service [1] 56/17
services [3] 15/11 15/13 57/11
set [14] 32/10 32/22 33/21 34/7 34/9 35/2 35/4 35/9 36/9 36/10 43/7 43/12 43/14 43/25
setting [1] 43/21
several [11] 5/12 5/23 11/1 11/20 12/5 18/6 28/8 29/6 29/11 55/25 56/1
severe [6] 22/11 52/9 52/18 53/4 53/15 56/5
shall [1] 44/18
she [2] 15/4 44/15
she's [1] 17/17
shenanigans [1] 5/15
Sheridan [1] 44/19
Shh [1] 49/18
shoebox [1] 46/19
shoes [2] 12/23 13/19
short [1] 43/2
shot [2] 21/3 21/7
should [6] 8/22 15/21 26/14 52/14 56/25 58/12
shouldn't [1] 21/2
show [12] 4/23 14/3 18/4 20/24 22/2 22/19 25/12 25/23 52/5 54/4 54/9 55/19
showed [1] 14/19
shown [2] 53/21 53/25
sic [5] 7/20 36/25 48/9 48/14 53/4
side [1] 32/6
Signed [1] 59/9
signing [1] 12/12
silent [1] 17/5
simply [2] 5/9 26/16
since [5] 18/17 37/5 39/19 45/21 45/23
sink [1] 18/9
sir [4] 13/8 21/20 28/25 45/25
sit [4] 19/15 54/13 54/20 57/1
six [3] 18/24 22/5 26/24
soap [1] 18/11
social [1] 21/6
some [20] 4/24 7/6 7/6 9/7 11/10 12/15 18/11 18/13 18/22 21/1 25/15 28/1 37/7 38/15 39/19 41/4 44/7 47/10 51/22 53/16
somebody [4] 19/3 26/22 33/20 40/21
someone [1] 57/3
something [5] 25/3 28/2 32/20 34/5 44/22
sometimes [1] 37/19
somewhere [1] 37/12
song [1] 8/11
sorry [3] 7/18 16/22 26/3
sort [2] 28/1 34/13
sound [1] 21/16
sounds [4] 15/22 16/17 48/20 49/14

souvenir [1] 20/12
spa [1] 18/25
space [1] 10/15
speak [4] 4/13 16/7 17/8 29/4
speaks [1] 14/16
special [1] 36/11
specifically [2] 20/15 27/23
spent [2] 28/10 29/6
spot [2] 15/23 47/1
staff [6] 10/16 10/25 19/4 21/10 21/15 55/15
stand [12] 1/21 7/16 8/4 12/22 13/18 25/22 28/18 28/23 28/24 53/11 57/14 58/15
STAND-BY [1] 1/21
standby [3] 5/2 15/4 15/24
start [1] 51/14
started [1] 27/1
state [1] 44/17
stated [4] 30/5 31/8 40/13 41/8
statement [1] 23/9
statements [3] 20/5 40/9 40/11
STATES [12] 1/1 1/10 16/21 28/3 37/10 37/15 37/23 38/3 39/2 53/17 56/7 59/8
stay [2] 12/7 54/8
stayed [1] 5/18
staying [1] 18/15
steal [1] 19/20
stealing [2] 22/13 52/15
stenography [1] 2/12
step [3] 9/13 50/20 52/1
still [5] 10/7 15/18 22/23 39/20 51/24
stock [13] 34/25 35/1 37/6 37/7 43/8 47/18 48/2 48/10 48/10 48/15 49/6 49/8 49/9
stole [2] 15/1 55/16
stop [3] 26/2 26/18 57/10
stored [3] 45/21 46/11 46/13
stories [2] 6/14 38/23
story [4] 21/15 24/7 24/8 24/9
strategic [1] 11/16
Street [4] 1/14 1/22 2/7 59/17
study [1] 8/19
stuff [2] 46/3 46/3
subject [4] 6/24 12/1 26/7 35/16
submitted [2] 12/13 14/11
Subsequent [1] 54/23
Substack [1] 21/6
such [2] 53/18 56/8
suggested [1] 8/24
Suite [2] 1/14 2/4
suited [2] 7/8 9/5
summary [1] 25/17
supersede [1] 12/7
superseded [1] 5/19
supervise [1] 21/18
supplement [4] 8/5 24/23 24/24 55/6
support [1] 24/24
suppose [1] 20/19
supposed [4] 26/5 31/18 40/23 51/25
sure [7] 7/16 13/2 16/15 25/8 25/24 29/4 37/16
swore [3] 24/6 24/7 24/17
sworn [2] 24/10 29/2
synthetic [1] 36/12
system [2] 6/10 36/13

**T**

**table [1]** 19/3

**take [32]** 5/1 5/3 5/6 5/13 6/23 8/10 8/22 13/24 14/9 14/23 17/15 17/25 18/8 19/5 19/6 19/8 20/14 20/17 22/6 26/18 28/11 28/17 28/25 30/15 38/11 43/8 44/1 49/8 52/21 57/16 57/22 58/5

**taken [7]** 14/21 18/12 18/12 28/8 29/8 56/21 58/2

**taking [3]** 22/24 28/12 53/3

**talk [3]** 27/19 34/13 39/19

**talking [4]** 15/18 25/6 33/11 43/4

**Tarrant [1]** 20/17

**task [5]** 29/23 36/1 36/7 36/9 36/17

**tax [1]** 25/15

**taxpayers [1]** 14/20

**Taylor [1]** 1/22

**tea [2]** 18/22 18/23

**technology [1]** 36/13

**Telephone [6]** 1/15 1/19 1/23 2/5 2/8 59/18

**tell [8]** 11/1 25/3 26/14 32/12 34/19 34/21 34/24 57/3

**telling [3]** 21/16 29/17 36/23

**ten [2]** 32/17 32/19

**tendency [1]** 19/16

**tentative [1]** 8/8

**Terry [1]** 11/10

**testified [2]** 43/25 44/5

**testify [1]** 47/4

**testimony [2]** 47/4 52/7

**TEXAS [11]** 1/2 1/5 1/15 1/22 1/23 2/4 2/8 42/9 59/12 59/13 59/17

**than [11]** 6/13 6/16 20/20 20/21 28/14 32/9 32/19 42/5 46/5 50/24 52/10

**thank [22]** 4/18 5/7 5/8 5/10 9/23 10/2 11/7 13/5 13/17 16/16 20/1 21/13 22/1 27/17 30/17 30/24 31/21 56/17 56/19 57/18 58/14 58/15

**that [273]**

**that's [34]** 10/22 12/8 21/8 22/10 22/17 23/6 24/3 24/11 25/4 25/8 26/25 28/2 28/3 31/4 32/22 33/6 33/15 34/15 37/17 38/21 40/2 41/2 41/18 41/18 42/7 42/8 43/5 44/22 47/23 48/11 48/18 49/4 50/2 50/9

**theft [2]** 14/23 55/22

**their [2]** 12/22 22/4

**them [40]** 12/3 12/15 13/2 13/13 13/14 13/15 13/16 16/6 17/3 17/11 17/13 18/2 18/13 18/19 19/5 23/21 23/22 23/24 24/3 27/6 27/6 30/5 31/1 31/23 32/22 33/18 33/19 33/21 38/21 40/24 40/25 41/1 41/15 41/17 48/3 48/21 48/23 49/12 53/13 57/3

**then [14]** 5/6 14/21 18/9 18/15 20/21 20/22 23/4 23/8 37/2 37/4 41/4 45/9 54/23 55/23

**then-President [1]** 45/9

**theories [1]** 9/2

**there [32]** 5/14 6/24 8/2 9/10 9/12 11/24 14/21 15/5 17/24 18/9 18/24 20/3 20/8 20/24 21/18 23/9 26/19 26/20 26/23 26/25 31/18 32/13 33/7 38/10 38/21 42/11 44/7 44/15 44/22 44/22 45/11 56/25

**there's [10]** 18/22 19/24 32/21 32/21

32/21 33/6 36/19 43/25 48/4 57/12

**Therefore [2]** 53/14 56/4

**therein [1]** 12/3

**these [12]** 11/24 12/22 13/19 17/1 22/8 24/2 32/24 35/2 35/2 35/9 52/8 53/11

**they [15]** 12/2 12/2 12/3 12/23 13/2 13/18 19/7 19/8 32/10 33/8 34/25 35/4 37/7 45/12 50/7

**they're [7]** 6/18 7/20 9/12 11/25 33/2 35/1 39/10

**thing [9]** 4/19 11/6 12/3 14/13 16/18 21/1 27/25 34/13 52/13

**things [4]** 5/1 33/2 38/18 45/12

**think [31]** 5/23 5/24 6/4 7/10 7/19 8/6 15/1 16/3 16/4 18/24 20/14 22/11 22/12 22/13 24/22 27/21 29/25 32/13 33/1 33/2 33/9 34/8 35/23 37/6 43/5 44/21 45/1 46/3 46/15 50/25 57/2

**third [4]** 21/22 52/21 53/6 57/17

**this [89]**

**THOMPSON [25]** 1/13 4/6 8/1 12/13 12/16 20/2 22/3 23/2 25/22 26/10 27/21 29/14 29/20 35/13 35/25 40/3 41/4 42/23 45/15 46/8 48/12 52/8 56/1 56/18 58/9

**those [31]** 12/13 16/2 17/11 22/16 23/18 23/19 23/20 25/13 27/13 30/2 31/17 33/16 37/3 37/5 37/6 38/18 39/8 39/19 40/17 40/23 41/23 45/14 45/22 48/15 49/5 49/6 49/9 49/23 55/24 56/1 59/7

**though [1]** 30/24

**thought [2]** 10/15 11/20

**threatened [1]** 5/25

**threatening [1]** 54/6

**three [7]** 32/13 40/12 41/16 47/3 51/10 52/5 52/12

**through [7]** 5/22 7/20 29/22 30/2 37/19 49/17 49/20

**throughout [2]** 14/15 53/21

**Thus [2]** 6/20 55/3

**time [32]** 5/15 6/14 8/11 8/12 14/16 15/21 16/20 17/18 20/10 20/12 22/19 22/24 28/9 28/13 28/17 29/10 30/16 32/20 35/13 38/22 39/9 42/25 45/5 45/24 46/24 47/11 52/4 53/12 53/18 56/7 56/8 58/3

**times [6]** 5/14 5/23 5/25 24/15 31/8 38/10

**today [24]** 4/20 4/24 5/9 5/10 5/13 6/11 9/12 12/11 12/15 14/1 14/3 14/18 24/1 27/25 29/8 29/16 31/19 41/12 52/22 54/25 55/3 55/4 55/24 56/15

**today's [2]** 53/24 55/6

**together [2]** 23/1 26/17

**told [5]** 19/4 27/25 33/21 33/23 58/4

**too [3]** 11/2 11/21 16/4

**took [6]** 18/10 18/19 18/20 18/20 52/13 52/16

**top [1]** 46/23

**total [2]** 37/9 41/17

**totally [2]** 7/20 37/16

**touch [1]** 46/3

**touched [1]** 37/5

**towards [1]** 30/7

**transaction [3]** 48/1 48/13 49/20

**transcript [15]** 1/9 2/12 14/16 24/12 24/14 26/8 28/12 29/7 29/9 29/21 31/11 40/19 48/7 59/4 59/6

**transfer [1]** 49/22

**transferred [2]** 31/22 49/11

**transferring [1]** 48/23

**trial [4]** 12/6 18/17 28/10 54/17

**trip [1]** 18/25

**true [2]** 28/3 59/4

**Trump [1]** 45/9

**trust [16]** 32/6 34/11 34/17 34/18 34/21 34/22 35/9 35/10 35/22 35/25 36/1 36/7 36/9 36/17 36/20 37/4

**trustee [1]** 49/4

**trusts [8]** 32/3 32/4 32/24 33/7 33/16 34/4 35/2 35/3

**truthfully [2]** 19/1 37/21

**try [5]** 7/5 27/18 30/4 53/11 53/13

**trying [7]** 5/24 6/15 10/6 16/12 16/16 19/19 22/25

**turn [1]** 41/5

**Tweet [1]** 45/9

**two [18]** 5/22 9/10 9/16 12/14 12/22 18/13 18/15 23/2 23/10 23/15 27/11 32/9 32/13 32/14 32/15 34/23 35/20 52/23

**type [5]** 5/20 21/11 38/2 51/6 51/8

**typically [3]** 32/21 34/12 37/18

**U**

**U.S [12]** 10/13 10/20 10/23 11/1 33/6 38/12 42/20 44/17 45/12 49/2 49/4 52/20

**ultimately [1]** 36/14

**Umbra [2]** 36/12 37/7

**unanswered [1]** 30/1

**uncooperative [1]** 6/21

**uncredible [1]** 41/9

**under [12]** 6/9 15/20 16/21 16/23 24/6 24/9 25/16 38/20 41/17 42/15 42/17 45/10

**underlying [1]** 5/21

**underneath [1]** 46/18

**understand [13]** 17/1 17/11 17/14 31/5 35/6 35/14 42/15 42/16 46/25 47/7 51/16 51/19 51/21

**understanding [4]** 23/6 30/20 33/5 49/1

**understood [2]** 5/7 24/19

**undertook [1]** 22/8

**unfortunately [1]** 12/4

**UNITED [12]** 1/1 1/10 16/21 28/3 37/10 37/15 37/23 38/3 39/2 53/17 56/6 59/8

**unlawful [5]** 52/10 53/15 53/24 54/2 56/6

**unless [1]** 19/24

**Unlike [1]** 10/15

**unnamed [1]** 25/16

**unopposed [1]** 8/2

**unrelated [1]** 29/15

**unresponsive [3]** 14/14 26/9 28/16

**until [3]** 21/25 53/18 57/23

**up [40]** 4/23 5/1 5/3 5/6 5/13 13/24 14/19 14/23 15/8 17/4 17/25 21/3 21/18 22/9 22/24 25/12 28/23 32/10 32/22 33/21 34/7 34/9 35/3 35/4 35/9

## U

**up [15]** 36/9 36/10 36/14 4/5 43/12 43/14 43/21 43/25 44/7 45/16 47/12 47/17 52/13 56/17 57/13
**us [10]** 1/13 23/7 32/8 33/16 34/19 34/21 34/24 36/23 39/8 46/5
**use [5]** 15/11 19/4 19/9 21/16 33/8
**used [4]** 17/6 24/22 46/3 46/16
**using [2]** 48/13 48/24
**usually [1]** 34/13

## V

**various [5]** 5/25 11/16 27/24 28/11 45/12
**Vedder [6]** 2/3 9/9 9/24 10/1 10/4 11/19
**vehicle [1]** 36/12
**versed [1]** 12/3
**version [1]** 22/4
**very [18]** 4/23 5/16 5/16 7/2 12/3 15/15 24/16 26/1 26/1 26/16 29/8 31/7 43/1 43/2 44/16 47/1 51/18 51/23
**video [1]** 48/5
**videographer [1]** 20/9
**violated [1]** 27/11
**violating [1]** 54/5
**violation [1]** 49/25
**Virginia [1]** 1/19
**visit [7]** 12/15 12/21 13/16 15/9 15/20 17/15 56/14
**VOL [1]** 3/2
**VOLUME [1]** 1/8
**voluntary [2]** 51/12 51/13
**vs [4]** 1/6 4/4 16/21 16/22

## W

**Wait [1]** 16/11
**waive [2]** 16/6 17/13
**walked [1]** 20/21
**wallets [4]** 45/20 46/2 46/2 46/10
**want [21]** 4/11 5/2 16/15 16/18 17/22 20/16 20/16 29/10 30/2 30/10 30/19 35/10 36/3 37/22 38/21 40/2 47/16 50/20 56/14 56/15 56/16
**wanted [2]** 4/20 26/24
**warned [1]** 12/5
**warnings [2]** 15/21 16/3
**was [85]**
**washed [1]** 18/20
**wasn't [2]** 20/11 47/22
**WASPs [1]** 34/12
**waste [1]** 14/16
**water [9]** 14/20 18/11 18/19 19/5 19/14 20/6 22/7 26/24 55/16
**waters [1]** 52/16
**way [5]** 11/17 30/4 37/19 48/18 56/10
**we [26]** 5/12 5/16 6/14 7/3 7/9 8/5 8/6 8/7 9/21 10/22 12/8 13/12 14/22 21/11 23/2 23/11 23/22 24/13 26/17 34/12 34/12 34/13 39/19 44/18 52/13 57/15
**we'll [9]** 5/6 8/4 8/12 17/16 23/8 27/8 57/14 57/22 58/3
**we're [8]** 5/1 8/9 22/24 22/25 25/5 26/4 27/15 27/19
**we've [1]** 4/25
**Webster [4]** 8/24 9/3 9/3 10/16
**week [4]** 7/4 23/14 23/14 28/10

## week-and-a-half-long

**week-and-a-half-long [1]** 28/10
**welcome [1]** 5/11
**well [29]** 6/6 8/10 9/6 10/9 10/14 11/24 11/8 11/14 12/3 12/21 17/3 20/19 25/2 29/7 32/8 32/12 32/20 35/6 37/7 38/19 39/10 44/3 47/22 49/10 49/24 51/11 51/24 52/16 54/2
**well-documented [1]** 54/2
**well-known [1]** 11/8
**well-respected [1]** 10/14
**Wells [6]** 44/24 44/25 45/1 45/1 45/3 48/14
**went [8]** 5/22 9/2 18/10 26/23 27/20 29/20 35/8 49/17
**were [38]** 4/20 5/20 14/14 23/18 23/20 25/14 26/5 26/7 26/9 26/19 26/19 26/20 26/23 27/14 27/23 28/9 28/15 28/15 29/11 30/1 32/10 35/2 35/4 40/8 40/8 40/12 40/23 41/6 41/7 44/6 45/3 45/11 45/11 48/8 48/20 53/1 53/2 53/7
**what [38]** 6/4 6/19 6/24 11/24 11/25 12/24 12/25 22/4 23/1 23/24 25/1 27/20 28/19 29/20 29/23 29/25 30/20 35/6 35/7 36/7 36/21 38/8 38/19 39/23 41/22 42/22 43/4 43/16 44/9 44/21 45/7 47/23 49/4 50/5 50/11 50/13 58/3 58/5
**what's [6]** 6/24 11/4 11/4 33/9 37/9 49/24
**whatever [1]** 36/18
**whatsoever [2]** 40/5 43/23
**when [24]** 5/4 5/20 7/17 12/4 12/5 12/6 16/23 19/16 20/10 27/1 27/6 28/9 33/5 34/14 38/14 38/15 46/11 50/24 52/9 54/16 56/23 57/3 58/7 58/8
**where [11]** 11/12 12/8 18/14 21/22 21/24 26/19 45/9 45/20 46/10 46/13 49/3
**whether [8]** 34/10 34/16 35/15 36/16 47/6 52/14 56/15 56/16
**which [14]** 19/12 26/24 34/20 34/22 35/12 36/2 36/12 38/10 38/14 40/5 40/12 42/9 53/2 54/24
**while [3]** 10/7 55/10 55/13
**white [1]** 10/14
**white-collar [1]** 10/14
**who [9]** 4/5 8/24 31/18 33/8 33/20 33/23 39/13 39/17 45/11
**who's [1]** 26/22
**whole [1]** 49/8
**why [16]** 9/16 14/3 14/22 17/24 18/5 20/16 20/16 22/19 23/7 26/14 26/24 33/15 44/6 45/3 50/6 51/16
**wife [3]** 33/22 37/4 49/7
**will [14]** 4/6 7/19 9/8 9/10 12/12 13/2 15/4 17/6 17/10 17/15 21/2 28/19 33/24 57/2
**WILLENBURG [4]** 2/7 59/3 59/11 59/11
**WILLIAM [1]** 1/13
**willing [2]** 19/11 19/15
**willingness [1]** 53/25
**wish [1]** 51/21
**within [2]** 25/13 54/19
**without [1]** 22/16
**witness [5]** 28/18 28/23 29/2 30/9 30/10

## won't

**won't [4]** 12/2 50/12 50/15 50/18
**Woodforest [3]** 40/10 41/17 42/9
**Woodlands [1]** 42/9
**word [2]** 22/13 24/21
**words [1]** 48/24
**work [10]** 11/10 11/14 33/6 37/22 37/25 38/2 38/15 38/18 39/6 51/23
**worked [4]** 22/5 33/21 33/21 39/20
**working [1]** 39/24
**worst [1]** 20/25
**WORTH [11]** 1/3 1/5 1/23 2/8 10/10 10/11 11/8 13/11 15/3 59/14 59/17
**would [35]** 5/21 5/22 6/4 7/4 7/9 9/13 10/15 11/2 11/20 12/1 14/20 15/9 15/23 16/25 20/3 20/16 20/24 21/1 21/24 22/12 22/14 24/20 26/17 26/18 28/20 31/9 31/10 37/6 38/17 40/14 47/12 51/22 52/15 56/10 56/24
**wouldn't [2]** 20/24 32/22
**write [1]** 42/2
**written [9]** 14/7 22/21 23/11 25/6 26/4 26/10 27/24 52/25 55/1
**wrote [1]** 20/18
**Wyoming [10]** 43/3 43/7 43/25 44/2 44/4 44/6 44/14 44/16 48/13 49/1

## X

**Xavier [1]** 34/22

## Y

**yahoo.com [2]** 2/9 59/19
**yeah [8]** 27/9 33/14 37/2 42/8 44/25 47/15 48/25 57/8
**years [7]** 9/4 10/11 11/1 13/20 22/6 34/16 47/3
**yes [29]** 7/18 9/18 11/18 13/8 16/9 16/14 17/19 17/21 18/8 19/2 19/18 20/4 23/12 26/25 27/6 30/23 31/20 36/5 36/22 39/7 39/12 39/22 40/6 43/6 43/11 43/15 43/20 44/3 51/13
**yet [1]** 55/23
**you [345]**
**you'd [4]** 8/2 15/8 41/4 42/24
**you'll [4]** 10/3 56/14 57/23 58/4
**you're [27]** 5/11 6/9 9/21 19/3 25/2 29/16 31/3 31/19 33/25 34/10 34/16 36/25 37/19 38/1 38/20 42/15 46/25 47/1 47/13 49/15 51/15 51/16 51/24 51/25 52/21 58/2 58/4
**you've [11]** 5/13 5/14 6/4 12/25 22/18 27/11 27/24 37/14 37/23 38/2 42/19
**you-all [2]** 10/19 11/7
**your [141]**
**yours [1]** 20/15
**yourself [5]** 12/6 42/19 53/19 57/24 58/6

## Z

**zero [3]** 41/9 43/23 46/7
**zilch [1]** 46/7