IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| POINT BRIDGE CAPITAL, LLC, *et al.,* | § § § | |
| *Plaintiffs*, | § | |
| v. | § § | Case No. 4:24-cv-00988-P |
| CHARLES JOHNSON, | § § | |
| *Defendant*. | § § | |

## RECEIVERS' SECOND STATUS REPORT

Adam Farrell and Jeff Ansley of Vedder Price P.C., in their capacities as Court-appointed receivers ("Receiver(s)") for the Receivership Estate of defendant Charles Johnson (the "Defendant" or "Johnson") (the "Receivership Estate"), submit the following Second Status Report for the period ending January 9, 2026.

## I.    INTRODUCTION

On November 21, 2025, the Court issued an Order appointing Jeff Ansley and Adam Farrell to serve as Receivers in this case. ECF No. 144. Based on the record of this case, the Court determined that "a receiver is necessary and appropriate in aid of execution of the Judgment to identify, secure, preserve, and realize non-exempt assets in which [the Defendant] has a legal or beneficial interest." *Id.* at 2. The Defendant did not object to the Court's determination that a receivership was appropriate or to the appointment of the Receivers.

The Court directed Receivers to, among other actions, file an initial report within 20 days of appointment describing "assets and accounts identified; steps taken to secure and preserve them; any material irregularities, unexplained transfers, or issues affecting the integrity of the Receivership Estate, including any potential criminal conduct or wrongdoing; and any other

information that Receiver deems is necessary to bring to the Court's attention to enforce the Judgment." *Id*. at 6. Every 30 days thereafter, the Court directed Receivers to file supplemental reports summarizing material developments. *Id.*

Separately, on November 20, 2025, the Court held the Defendant in civil contempt following an evidentiary hearing and after taking testimony from Johnson. ECF No. 142. The Court ordered the United States Marshal to arrest the Defendant and place him in the custody of the Johnson County Jail until such a time as he purges himself of his contempt for his repeated failure to engage in post-judgment discovery in good faith. *Id*. at 3. The Defendant remains in the custody of the Johnson County Jail pursuant to the Court's contempt finding.

## II.   <u>SUMMARY OF RECEIVERSHIP ACTIVITIES TO DATE</u>

### A.  Steps Taken to Secure and Preserve Assets

The following is not intended to be an exhaustive list of each activity performed by Receivers. Rather, this summary provides an overview of Receivers' relevant actions taken in the period following the December 11, 2025 Initial Report.

### 1.  Investigation into Defendant's Missing Laptop and iPhone

Based upon information gathered from various sources, including Defendant and Defendant's father, Lawrence Johnson, on November 20, 2025, Defendant left certain personal property, including a personal laptop and an iPhone, at the Kimpton Harper Hotel in Fort Worth, Texas (the "Kimpton"). Defendant claimed he checked his belongings at the front desk prior to attending the November 20, 2025 hearing before this Court. Receivers confirmed that Johnson stayed at the Kimpton on that date.

Defendant has maintained that information concerning his assets is located on this laptop and that contact information for key individuals with relevant knowledge of his finances is located

on this iPhone. Further, Defendant has claimed that his inability to furnish information regarding his assets can be remedied through access to these devices. Receivers undertook efforts to locate these missing items through coordination with Kimpton's hotel manager and director of rooms, resulting in Kimpton personnel searching its checked baggage station and designated lost and found area. Additionally, at Receivers' request, Kimpton personnel reviewed available surveillance footage for evidence of both Johnson dropping off these items and their subsequent disposition. Kimpton personnel found no evidence that Defendant left any items at its location.

Additionally, Receivers inventoried each item in the custody of the United States Marshal that was in Defendant's possession at the time he was taken into custody. Neither the suitcase, the laptop, nor the iPhone was among the items in the Marshal's control. At the date of this report, the location of the missing items remains unknown. Given Defendant's claims, Receivers believe that identifying and retrieving the missing laptop and iPhone is critical to identifying assets, accounts, and other relevant information. Beyond claiming that the missing items were left at the Kimpton, Defendant has not provided any other information that would assist in locating these critical items.

### 2.  December 16, 2025 Interview of the Defendant

On December 5, 2025, the Court received public correspondence containing allegations regarding Defendant's custody conditions and attempts to purge his contempt. The Court ordered Receivers to file a brief preliminary report advising the Court of their position on whether Defendant has purged his contempt (ECF No. 149), which Receivers filed that day. ECF No. 150. In their Preliminary Report, Receivers detailed their observations concerning the Defendant's cooperation since their appointment and, *inter alia,* in the course of their December 3, 2025 interview of Defendant at the Johnson County Jail. *Id.*

The Court subsequently scheduled a pre-hearing conference and hearing "[i]n an effort to provide Mr. Johnson another opportunity to purge himself of his contempt and to allow him access to a laptop so he can access necessary information." ECF No. 152. As ordered, the conference and hearing were held on December 16, 2025. ECF No. 157. At the pre-hearing conference, Receivers interviewed Defendant at length on numerous issues related to post-judgment discovery and their ongoing efforts to trace assets potentially subject to the Receivership Estate. Receivers questioned Defendant on, *inter alia*: (i) his assets, including real and personal property; (ii) bank, brokerage, custodial, and digital-asset accounts; (iii) contract rights, receivables, royalties, and income streams; (iv) equity, membership, partnership or beneficial interest in any corporation, LLC, partnership, trust, or special-purpose vehicle; and (v) various claims or causes of action. At the subsequent hearing, Receivers provided a report to the Court detailing the information obtained during the interview. ECF No. 158.

At the hearing, the Court provided Defendant with the opportunity to testify under oath in an effort to purge his contempt. Receivers, along with Plaintiffs' counsel and the Court, questioned Defendant in an effort to obtain fundamental information regarding the nature and location of his assets. Following questioning, Receivers, at the Court's request, shared their view that Defendant continued to evade questions or otherwise provide incomplete answers regarding his assets. At the conclusion of the hearing, the Court found that Defendant had failed to purge his contempt.

Receivers are actively working to corroborate the accuracy of the information provided by Defendant as well as independently identify Defendant's assets. As previously reported, Receivers have already taken actions and will continue to take additional actions to obtain relevant information and documents from entities and individuals identified by Defendant or otherwise known to Receivers based on their investigation to date. Receivers' ability to efficiently complete

these tasks has been impeded by Defendant's apparent withholding or obfuscation of critical information. Despite these challenges, Receivers are working to independently obtain the information needed to identify and secure Defendant's assets.

### 3. Preservation Letters

Receivers took steps to preserve documents and records held by various financial institutions relating to the Receivership Estate. Receivers identified financial institutions that may possess documents, information, and assets within their possession, custody, or control that relate to the funds, property, and other assets of Defendant subject to the Receivership Estate. Receivers issued preservation letters of the identified financial institutions. The financial institution responses to these requests are ongoing and are being monitored and tracked by a dedicated paralegal assigned to this matter. Receivers intend to issue additional preservation letters and document subpoenas to other entities and individuals in the next reporting period.

### 4. Investigation into Defendant's Digital Currency Assets

Receivers are investigating Defendant's potential possession of cryptocurrency assets, including Bitcoin. While Defendant testified that he divested all cryptocurrency in or about 2017, there are numerous indications that his testimony was false and that he continues to possess cryptocurrency. This includes, *inter alia*, recent statements by Defendant claiming ownership of bitcoin assets, prior transactions with third parties involving cryptocurrency (including after the date on which Defendant claims his cryptocurrency had ceased), and other reliable sources. Given the potential value of these assets, Receivers are actively investigating to identify, secure, and preserve Defendant's cryptocurrency assets, if any. But the unique nature of these assets, combined with Defendant's apparent efforts to eliminate any digital trail associated with them, create significant investigatory challenges to overcome.

### 5. Motions

To date, Receivers filed a single motion for the Court's consideration: Receivers' Motion for Witness Production. ECF No. 165. This motion identifies individuals provided by Defendant who may be able to assist Receivers identifying and locating assets, and requests the Court order them to appear for a hearing before the Court in order to be examined by the Receivers. Receivers have also prepared a motion for authority to transfer Defendant's Umbra-related SPV interest and apply the value toward satisfaction of the judgment. This forthcoming motion requests authority to transfer Defendant's Umbra-related SPV interest and bases the valuation on a report from the Whitley Penn, LLC accounting firm. Receivers will finalize and file this motion in the coming days.

## B. Identified Assets and Accounts

Since the Court's appointment, Receivers' investigation has resulted in the identification of various assets and accounts, including: (i) banks and other financial institutions; (ii) trusts and LLCs; and (iii) venture investments with potential contract rights, equity, membership, partnership, special-purpose vehicles or beneficial interest in various organizations. Receivers are taking actions to secure, preserve, and apply these assets to the outstanding judgment in the civil action. This includes, for example, Receiver's forthcoming motion for authority to transfer Defendant's Umbra-related SPV interest and apply the value toward satisfaction of the judgment.

## C. Issues Affecting the Integrity of the Receivership Estate

The November 21, 2025 order directs Receivers to report "any material irregularities, unexplained transfers, or issues affecting the integrity of the Receivership Estate, including any potential criminal conduct or wrongdoing." ECF No. 144 at 6. As detailed below, Defendant's actions have affected the integrity of the Receivership Estate.

As outlined in the Receivers' Preliminary Report (ECF No. 150), the Receivers' Initial Status Report (ECF No. 155), and the Notice of Receivers in Response to Petition for Writ of Mandamus (ECF No. 162), Defendant's actions—which include providing evasive and incomplete answers—have impeded their efforts to efficiently secure the Receivership Estate. Receivers recognize and acknowledge that Defendant's custodial status is a relevant factor. Absent access to financial records, Receivers do *not* expect Defendant to provide a detailed and complete accounting as to each and every asset within his possession. Receivers *do* expect, however, Defendant to comply with the Court's orders and provide fundamental information regarding the nature and location of his assets. Defendant's failure to do so has disrupted Receivers' efforts and consequently, the integrity of the Receivership Estate.

Defendant's pre-custody actions also raise concerns. Based on the limited record the Receivers have reviewed thus far, Defendant's attempted transfer of the Othram, Inc. shares, described in further detail in the Receivers' Initial Report (ECF No. 155) and incorporated herein by reference, bears the hallmarks of conduct consistent with wire fraud under 18 U.S.C. § 1343 and money laundering under 18 U.S.C. § 1956. Additionally, Defendant's statements concerning the formation and control of the Wyoming LLC used to receive the Othram proceeds raise potential criminal concerns under 18 U.S.C. §§ 1621 and 1623. Receivers draw no definitive conclusions at this stage but have identified these incidents as potential criminal conduct that warrant further investigation as authorized by the Court's order. ECF No. 144 at 6.

**D.  Other Relevant Actions**

Receivers are working with Plaintiffs' counsel to engage a private investigator and a digital-asset specialist to assist with the ongoing investigation of Defendant's assets. As referenced

above, Receivers added paralegal Alexandra Borriello to assist them in fulfilling their duties in a more cost-effective and efficient manner.

### III. <u>**PROPOSED PLAN**</u>

Receivers, with assistance from Andrew Robbins[1], continue to investigate the information provided by Defendant in his December 3, 2025 and December 16, 2025 interviews and during his related testimony. Receivers are working to validate the information provided and to fulfill their obligations to the Court. These efforts including issuing document subpoenas, sending notice and preservation letters, interviewing witnesses with personal knowledge, as well as other appropriate investigatory actions.

In light of the unique challenges posed in this action and to reduce the expenditure of associated costs, Receivers respectfully request that the Court modify the current 30-day reporting requirement as directed in the November 21, 2025 Order (ECF No. 144) to a 90-day (quarterly) reporting schedule. As the Court directed, Receivers filed an initial report within 20 days of appointment and thereafter submitted this supplemental report summarizing the material developments in the following 30 days. Given Receivers' demonstrated good working relationship with Plaintiffs' counsel, the absence of emergent or unresolved issues requiring monthly reporting, and the desire to conserve the limited resources of the Receivership Estate, the Receivers submit that quarterly reporting will adequately keep the Court informed while reducing unnecessary administrative expense. Should material developments occur within the proposed quarterly period, Receivers will provide timely interim notice to the Court.

Receivers recommend that the receivership continue, as they are in the early stages of identifying Defendant's assets and securing the Receivership Estate. Receivers' early investigation

---

[1] Mr. Robbins is a shareholder at Vedder Price and a former Assistant United States Attorney from the United States Attorney's Office for the Northern District of Texas, Civil Division.

into this matter demonstrates that further investigation is necessary to determine Defendant's assets and potential criminal conduct.

Dated: January 9, 2026

Respectfully submitted,

*/s/ Jeff Ansley*

Jeffrey J. Ansley
State Bar No. 00790235
jansley@vedderprice.com
Adam D. Farrell
State Bar No. 24140298
afarrell@vedderprice.com

**VEDDER | PRICE P.C.**
300 Crescent Court, Suite 400
Dallas, Texas 75201
469.895.4790 (Ansley)

**RECEIVERS FOR DEFENDANT CHARLES JOHNSON AND THE RECEIVERSHIP ESTATE**

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 9, 2026, all counsel of record who have consented to electronic service were served with a true and correct copy of the foregoing document *via* the Court's CM/ECF system.

By: */s/ Jeff Ansley*

Jeffrey J. Ansley