**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| POINT BRIDGE CAPITAL, LLC, *et al.,* | § | |
| | § | |
| *Plaintiffs*, | § | |
| v. | § | Case No. 4:24-cv-00988-P |
| | § | |
| CHARLES JOHNSON, | § | |
| | § | |
| *Defendant*. | § | |

**RECEIVER'S FOURTH STATUS REPORT**

TO THE HONORABLE MARK T. PITTMAN:

Andrew Robbins of Vedder P.C., in his capacity as Court-appointed co-receiver for the receivership estate (the "Receivership Estate") of defendant Charles Johnson ("Defendant"), submits the following Fourth Status Report for the period ending July 12, 2026.

## I.    **INTRODUCTION**

On November 21, 2025, the Court issued an order appointing Jeff Ansley and Adam Farrell to serve as co-receivers ("Receivers") in this case. ECF No. 144. Based on the record of this case, the Court determined that "a receiver is necessary and appropriate in aid of execution of the Judgment to identify, secure, preserve, and realize non-exempt assets in which [the Defendant] has a legal or beneficial interest." *Id*. at 2. Defendant did not object to the Court's determination that a receivership was appropriate or to the appointment of Receivers.[1]

The Court directed Receivers to, among other actions, file an initial report within 20 days of appointment describing "assets and accounts identified; steps taken to secure and preserve them;

---

[1] As further described below, on July 7, 2026, Adam Farrell filed that certain Motion to Withdraw as Receiver. ECF No. 218. That same day, the Court entered an order accepting Farrell's resignation and appointing Andrew Robbins to serve as co-receiver with Jeff Ansley.  ECF No. 219.

any material irregularities, unexplained transfers, or issues affecting the integrity of the Receivership Estate, including any potential criminal conduct or wrongdoing; and any other information that Receiver deems is necessary to bring to the Court's attention to enforce the Judgment." *Id*. at 6. The Court directed Receivers to file periodic reports summarizing material developments every 30 days. *Id.* On January 3, 2026, the Court modified the 30-day reporting requirement to a 90-day (quarterly) reporting schedule. ECF No. 169.

Separately, on November 20, 2025, the Court held Defendant in civil contempt following an evidentiary hearing and after taking Defendant's testimony. ECF No. 142. The Court ordered the United States Marshal to arrest Defendant and place him in the custody of the Johnson County Jail until such a time as he purges himself of his contempt for his repeated failure to engage in post-judgment discovery in good faith. *Id*. at 3. The Court held a hearing on February 5, 2026, to determine whether Defendant had purged his contempt. ECF No. 200. Although the Court found that Defendant had failed to purge his contempt, it nevertheless ordered Defendant released from custody. *Id*. The Court admonished Defendant to fully and completely comply with Receivers in the execution of their duties. *Id*.

## II.    SUMMARY OF RECEIVERSHIP ACTIVITIES TO DATE

### A. Steps Taken to Secure and Preserve Assets

The following summary is not intended to be an exhaustive list of each activity performed by Receivers. Rather, this report provides an overview of Receivers' relevant actions taken in the current reporting period.

#### 1. Investigation into Defendant's Missing Digital Devices

Based upon information gathered from multiple sources, including Defendant and Defendant's father, Lawrence Johnson, on November 20, 2025, Defendant left certain personal

property, including a personal laptop and an iPhone (the "Digital Devices"), at the Kimpton Harper Hotel in Fort Worth, Texas (the "Kimpton"). Defendant claimed he checked his belongings, including the Digital Devices, at the front desk prior to attending the Court's November 20, 2025 hearing. Receivers independently confirmed that Defendant stayed at the Kimpton on that date.

Defendant consistently maintained that information concerning his assets is located on his personal laptop and that contact information for key individuals with relevant knowledge of his finances is located on his iPhone. Further, Defendant claimed that his inability to furnish information regarding his assets could be remedied through access to the Digital Devices. Receivers undertook efforts to locate the Digital Devices through communication and coordination, including an in-person visit, with Kimpton's hotel manager and director of rooms. These individuals represented to Receivers that hotel personnel conducted thorough searches of its checked baggage station and designated lost and found area but could not locate any items belonging to Defendant. At Receivers' direction, Kimpton personnel reviewed available surveillance footage for evidence of Defendant dropping off these items and their subsequent disposition. Kimpton personnel reported that their footage review did not show that Defendant left these or any other items at its Fort Worth location.

On January 30, 2026, following a contempt hearing, Defendant was released from custody. ECF No. 185. Shortly thereafter, Receivers learned that Defendant's parents went to the Kimpton to retrieve Defendant's belonging and obtained the Digital Devices. Receivers immediately notified the Court of this development.

Following notice, the Court ordered the parties to return for an emergency hearing on January 30, 2026. ECF No. 186. Defendant's parents thereafter surrendered custody of a suitcase containing the Digital Devices and other personal effects to Receivers. Separately, the Court

vacated the order releasing Defendant from custody and remanded Defendant to the Johnson County Jail. ECF No. 187. The Court found Defendant had failed to purge his contempt and set a hearing for February 5, 2026. ECF No. 191. The Court ordered that Defendant be released from custody at the February 5, 2026 hearing. ECF No. 200. After taking custody of the Digital Devices, Receivers retained a digital forensic to image the Digital Devices and collect all potentially relevant data contained therein.

### 2. January 15, 2026 Interview of Plaintiff Hal Lambert

On January 15, 2026, Receivers interviewed plaintiff Hal Lambert, with his counsel Will Thompson present. Receivers conducted a two-hour interview focused on the history of the civil proceedings, the business relationship between Lambert and Defendant, and the identification of third-party witnesses with personal knowledge of Defendant's business dealings. During the interview, Lambert provided detailed information regarding the origin and progression of the dispute, as well as key transactions between the parties. Further, Lambert identified relevant documents and third parties witnesses. Information obtained though the interview provided necessary context for the parties' financial interactions and identified areas of focus for further investigation.

### 3. Signed Authorization

To facilitate the collection of documents, communications, and financial records, Receivers prepared a number of written authorizations to facilitate the collection of relevant documents, communications, and financial records from third parties. These authorizations included a power of attorney and consent to disclosure of electronic communications and financial account records, as well as several express authorizations for the production of documents related to the Receivership Estate from various cryptocurrency exchanges, financial institutions, the

Internal Revenue Service, and social media and communications platforms. On January 30, 2026, Defendant reviewed, signed, and returned the authorizations to Receivers without objection. Receivers included relevant authorizations, along with the Court's November 21, 2025 order (ECF No. 144), as exhibits to subpoenas issued to third parties.

### 4.    Rule 45 Subpoenas and Preservation Letters

During the current reporting period, Receivers took meaningful actions to fulfill their charge from this Court to identify, preserve, and recover Receivership Estate assets, as well as investigate potential criminal activity. For example, Receivers served two subpoenas for documents pursuant to Federal Rule of Civil Procedure 45. In total, Receivers have issued 32 separate subpoenas to various individuals, private and public companies, financial institutions, and government agencies. Receivers have received responses from the majority of recipients, including substantive productions of approximately 18,000 documents. Receivers are continuing to work with certain subpoena recipients to facilitate the production of outstanding materials.

Separately, on June 25, 2026, the plaintiffs ("Plaintiffs") issued a subpoena to Receivers for the production of certain documents pursuant to Federal Rule of Civil Procedure 45. Defendant raised no objection to the subpoena. Receivers are preparing a response to Plaintiffs' subpoena, including a production of responsive non-privileged documents.

### 5.    Motions

During the current reporting period, Receivers filed two (2) motions for the Court's consideration: (i) Receiver Farrell's Motion to Withdraw as Receiver (ECF No. 218) and (ii) Receiver's Motion for Second Quarterly Fee Application (ECF No. 216). As of July 13, 2026, all motions filed have been addressed by the Court. On July 7, 2026, the Court entered an order

appointing Andrew Robbins to serve as co-receiver with Jeff Ansley. ECF No. 219. There are no motions currently pending before the Court.

### 6. Review and Analysis of Records

Receivers are conducting a review of the approximately 18,000 records produced in response to the Rule 45 subpoenas, as well as the approximately 210 gigabytes of data collected from the imaging of the Digital Devices. Given the volume of records (totaling 487,633 files) and complexity of the data, which includes encrypted communications, Receivers worked with digital forensic and eDiscovery experts to collect, process, and upload these materials to an eDiscovery platform. Through the platform, Receivers are reviewing these records to identify Defendant's assets, investigate potential criminal conduct, and perform other actions necessary to the administration of the Receivership Estate.

### B. Identified Assets and Accounts

Since the Court's appointment, Receivers' investigation has resulted in the identification of various assets and accounts, including (i) banks and other financial institutions; (ii) trusts and LLCs; and (iii) venture investments with potential contract rights, equity, membership, partnership, special-purpose vehicles, or beneficial interest in various organizations and entities. Receivers are actively reviewing account information and other relevant records, including financial transactions occurring before and after the entry of judgment in the underlying civil action. Receivers are taking appropriate actions to secure, preserve, and apply these assets to the outstanding judgment in the civil action.

### 1. Executed Umbra Transfer Agreement

Receivers' actions to apply Defendant's assets to the civil judgment include, for example, that certain Sealed Motion for Authority to Transfer Umbra-Related SPV Interest and Apply Value

Toward Satisfaction of the Judgment dated January 13, 2026  (the "Motion to Transfer"). ECF No.170. Receivers sought leave from the Court to file the Motion to Transfer under seal as it contained sensitive and non-public information regarding asset valuation, financial accounts, and anticipated disbursements from the Receivership Estate. The public disclosure of such material could impair the orderly administration of the receivership, undermine asset realization, and jeopardize future collection efforts. In the Motion to Transfer, Receivers moved the Court for authority to transfer Defendant's individual interest in an Umbra-related special-purpose investment vehicle to Plaintiffs in partial satisfaction of the multimillion-dollar judgment against Defendant. *Id.*

The Court granted the Motion to Transfer on February 4, 2026. ECF No. 196.  That certain executed Umbra Transfer Agreement was completed by Receivers on March 17, 2026.

### C.  Issues Affecting the Integrity of the Receivership Estate

The Court's November 21, 2025 order directs Receivers to report "any material irregularities, unexplained transfers, or issues affecting the integrity of the Receivership Estate, including any potential criminal conduct or wrongdoing." ECF No. 144, at 6. As detailed below, Defendant's actions have affected the integrity of the Receivership Estate and Receivers are continuing to investigate potential criminal conduct and wrongdoing.

As outlined in Receivers' "Second Status Report" (ECF No. 166), Defendant's pre-custody actions raise concerns of potential criminal conduct or wrongdoing. For example, Defendant's attempted transfer of the Othram, Inc. shares, described in further detail in Receivers' "Initial Report" (ECF No. 155) and incorporated herein by reference, bears the hallmarks of conduct consistent with wire fraud under 18 U.S.C. § 1343 and money laundering under 18 U.S.C. § 1956. Additionally, Defendant's statements concerning the formation and control of the Wyoming LLC

used to receive the Othram proceeds may constitute criminal perjury or false declarations under 18 U.S.C. §§ 1621 and 1623.

Receivers draw no definitive conclusions at this stage but have identified these incidents as potential criminal conduct that warrant further investigation as authorized by the Court's order. ECF No. 144, at 6. Receivers are continuing to investigate these issues and others involving Defendant's conduct and will notify the Court of relevant findings.

### D.  Other Relevant Actions

Receivers worked with Plaintiffs, through their counsel, to retain Dennis Brady, a private investigator, and Darrell Rasco, a digital-forensic specialist. These retained experts are working with Receivers to identify, secure, and preserve assets belonging to the Receivership Estate. Receivers may also retain a digital-asset specialist to assist with the ongoing investigation of Defendant's potential crypto assets.

### III.    PROPOSED PLAN

Receivers continue to actively investigate the information provided by Defendant in his December 3, 2025 and December 16, 2025 interviews, as well as related testimony. Receivers are working to validate the information provided by Defendant, as well as by other sources, and take necessary actions to fulfill their obligations to the Court. During the next requested reporting period, Receivers intend to conduct interviews of key witnesses with personal knowledge, review and analyze collected records, and take other appropriate investigatory actions.

Based on the facts and circumstances outlined in this report, Receivers recommend that the Court order that the receivership continue. Receivers need additional time to identify Defendant's assets and secure the Receivership Estate. Based on Receivers' investigatory findings to date,

further investigation is warranted to identify and recover Defendant's assets, as well as evaluate potential criminal conduct.

That certain Second Quarterly Fee Application (ECF No. 215), was filed by Receivers on May 15, 2026, after conferring with Plaintiffs' counsel (as required by ECF No. 144 at 7). On May 18, 2026 the Court granted the Second Quarterly Fee Application and found that "all of the fees and expenses sought to be paid and reimbursed through the Fee Application were actual, necessary, reasonable, and benefited the Receivership Estate." ECF No. 216. Receivers previously received payment for their first quarterly fee application. Receivers have not yet received payment for the Second Quarterly Fee Application. The next quarterly fee application is due by August 14, 2026.

Dated: July 13, 2026

Respectfully submitted,

/s/ Andrew S. Robbins
Andrew S. Robbins
State Bar No. 24151970
arobbins@vedder.com

**VEDDER P.C.**
300 Crescent Court, Suite 400
Dallas, Texas 75201
469.895.4750

**CO-RECEIVER FOR DEFENDANT
CHARLES JOHNSON AND THE
RECEIVERSHIP ESTATE**

## CERTIFICATE OF SERVICE

I certify that on July 13, 2026, all counsel of record who have consented to electronic service were served with a true and correct copy of the foregoing document via the Court's CM/ECF system.

By: */s/ Andrew S. Robbins*

Andrew S. Robbin