**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| POINT BRIDGE CAPITAL, LLC, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| v. | § | Case No. 4:24-cv-00988-P |
| | § | |
| CHARLES JOHNSON, | § | |
| | § | |
| *Defendant*. | § | |

# RECEIVERS' FIFTH STATUS REPORT

TO THE HONORABLE MARK T. PITTMAN:

Andrew Robbins and Jeffrey J. Ansley of Barnes & Thornburg, LLP, in their capacity as Court-appointed receivers for the receivership estate (the "Receivership Estate") of defendant Charles Johnson ("Defendant"), submit the following Fifth Status Report for the period ending October 11, 2026.

## I. INTRODUCTION

On November 21, 2025, the Court issued an order appointing Jeff Ansley and Adam Farrell to serve as co-receivers ("Receivers") in this case. ECF No. 144. Based on the record of this case, the Court determined that "a receiver is necessary and appropriate in aid of execution of the Judgment to identify, secure, preserve, and realize non-exempt assets in which [the Defendant] has a legal or beneficial interest." *Id*. at 2. Defendant did not object to the Court's determination that a receivership was appropriate or to the appointment of Receivers.[1]

[1] On July 7, 2026, Adam Farrell filed a Motion to Withdraw as Receiver. ECF No. 218. That same day, the Court entered an order accepting Adam Farrell's resignation and appointing Robbins to serve as co-receiver with Ansley. ECF No. 219.

The Court directed Receivers to, among other actions, file an initial report within 20 days of appointment describing "assets and accounts identified; steps taken to secure and preserve them; any material irregularities, unexplained transfers, or issues affecting the integrity of the Receivership Estate, including any potential criminal conduct or wrongdoing; and any other information that Receiver deems is necessary to bring to the Court's attention to enforce the Judgment." *Id*. at 6. The Court further directed Receivers to file periodic reports summarizing material developments in the case every 30 days. *Id.* On January 3, 2026, the Court modified the 30-day reporting requirement to a 90-day (quarterly) reporting schedule. ECF No. 169.

Separately, on November 20, 2025, the Court held Defendant in civil contempt following an evidentiary hearing and after hearing live testimony from Defendant. ECF No. 142. The Court then ordered the United States Marshal to arrest Defendant and place him in the custody of the Johnson County Jail until such a time as he purged himself of his contempt for his repeated failure to engage in post-judgment discovery in good faith. *Id*. at 3.

The Court later held a hearing on February 5, 2026, to determine whether Defendant had purged his contempt. ECF No. 200. Although the Court found that Defendant had failed to purge his contempt, it nevertheless ordered Defendant released from custody subject to release conditions enumerated by the Court. *Id*. Among those conditions, the Court admonished Defendant to fully and completely comply with Receivers in the execution of their duties. *Id*.

## II. <u>SUMMARY OF RECEIVERSHIP ACTIVITIES TO DATE</u>

### A. Steps Taken to Secure and Preserve Assets

The following summary is not intended to be an exhaustive list of each activity performed by Receivers. Rather, this report provides an overview of Receivers' relevant actions taken in the current reporting period.

### 1. Investigation into Defendant's Missing Digital Devices

Based upon information gathered from multiple sources, including Defendant and Defendant's father, Lawrence Johnson, on November 20, 2025, Defendant left certain personal property, including a personal laptop and an iPhone (the "Digital Devices"), at the Kimpton Harper Hotel in Fort Worth, Texas (the "Kimpton"). Defendant claimed he checked his belongings, including the Digital Devices, at the front desk prior to attending the Court's November 20, 2025 hearing. Receivers independently confirmed that Defendant was a registered guest at the Kimpton on that date.

Defendant has consistently maintained that information relevant to the Receivers' duties on behalf of the Court is held on the Digital Devices. Specifically, Defendant has repeatedly stated that information concerning his assets is located on his personal laptop and that contact information for key individuals with relevant knowledge of his finances is located on his iPhone. Further, Defendant claimed that his inability to provide Receivers with information regarding his assets could be remedied through access to the Digital Devices.

Receivers undertook efforts to locate the Digital Devices through communication and coordination, including an in-person visit, with the Kimpton's hotel manager and director of rooms. These individuals represented to Receivers that hotel personnel conducted thorough searches of its checked baggage station and designated lost and found area but could not locate any items belonging to Defendant. At Receivers' direction, Kimpton personnel reviewed available surveillance footage for evidence of Defendant dropping off these items and their subsequent disposition. Kimpton personnel reported that their footage review did not show that Defendant left these or any other items at its Fort Worth location.

On January 30, 2026, following a contempt hearing, Defendant was released from custody. ECF No. 185. Shortly thereafter, Receivers learned that Defendant's parents went to the Kimpton to retrieve his belongings and take possession of the Digital Devices. Receivers immediately notified the Court of this development.

Following notice, the Court ordered the parties to return for an emergency hearing on January 30, 2026. ECF No. 186. Defendant's parents thereafter surrendered custody of a suitcase containing the Digital Devices and other personal effects to Receivers. Separately, the Court vacated the order releasing Defendant from custody and remanded him (ECF No. 187), finding Defendant had failed to purge his contempt and set a contempt hearing for February 5, 2026. ECF No. 191. The Court ordered that Defendant be released from custody at the February 5, 2026 hearing. ECF No. 200. After taking custody of the Digital Devices, Receivers retained a digital forensic specialist to image the Digital Devices and collect all potentially relevant data contained therein.

**2. January 15, 2026 Interview of Plaintiff Hal Lambert**

On January 15, 2026, Receivers interviewed plaintiff Hal Lambert, with his counsel Will Thompson present. Receivers conducted a two-hour interview focused on the history of the civil proceedings, the business relationship between Lambert and Defendant, and the identification of various third-party witnesses with personal knowledge of Defendant's business dealings. Lambert was forthcoming at all times.

During the interview, Lambert provided detailed information regarding the origin and progression of the dispute, as well as key transactions between the parties. Further, Lambert identified relevant documents and third-party witnesses. Information obtained through the

interview provided necessary context for the parties' financial interactions and identified areas of focus for further investigation.

### 3. Signed Authorization

Receivers prepared numerous written authorizations to facilitate the collection of relevant documents, communications, and financial records from third parties. These authorizations included a power of attorney and consent to disclosure of electronic communications and financial account records, as well as several express authorizations for the production of documents related to the Receivership Estate from various cryptocurrency exchanges, financial institutions, the Internal Revenue Service, and social media and communications platforms.

On January 30, 2026, Defendant reviewed, signed, and returned the authorizations to Receivers without objection. Receivers included relevant authorizations, along with the Court's November 21, 2025 order (ECF No. 144), as exhibits to various subpoenas issued to third parties believed to be in possession of relevant documents.

### 4. Rule 45 Subpoenas and Preservation Letters

During the current reporting period, Receivers took meaningful actions to fulfill their charge from this Court to identify, preserve, and recover Receivership Estate assets, as well as investigate potential criminal activity. For example, Receivers served an additional subpoena for documents pursuant to Federal Rule of Civil Procedure 45.

In total, Receivers have issued 33 separate subpoenas to various individuals, private and public companies, financial institutions, and government agencies. Receivers have received responses from the majority of recipients, as well as voluntary responses from certain individuals and entities, including substantive productions of almost 20,000 documents. Receivers are continuing to work with certain subpoena recipients to facilitate the production of outstanding

materials. Receivers are also continuing to work with individuals and entities that are voluntarily providing records and information related to Defendant and his business interests.

On June 25, 2026, and on June 26, 2026, the plaintiffs ("Plaintiffs") issued subpoenas to Receivers for the production of certain documents pursuant to Federal Rule of Civil Procedure 45. Defendant raised no objection to the subpoenas. Receivers responded to Plaintiffs' subpoenas and produced responsive non-privileged documents.

**5. Motions**

During the current reporting period, Receivers filed one (1) motion for the Court's consideration: Receivers' Motion for Third Quarterly Fee Application (ECF No. 228). The Court granted the Receivers' Motion for Third Quarterly Fee Application on August 19, 2026. ECF No. 229. There are no other motions pending before the Court.

**6. Review and Analysis of Records**

Receivers are conducting an ongoing review of the almost 20,000 records produced voluntarily and in response to the Rule 45 subpoenas, as well as the approximately 210 gigabytes of data collected from the imaging of the Digital Devices. Given the volume of records (almost 500,000 files) and complexity of the data, which includes numerous encrypted communications, Receivers worked with digital forensic and eDiscovery experts to collect, process, and upload these materials to an eDiscovery platform. Through the platform, Receivers are reviewing these voluminous and complex records to identify Defendant's assets, investigate potential criminal conduct, and perform other actions necessary to the administration of the Receivership Estate.

**B. Identified Assets and Accounts**

Since the Court's appointment, Receivers' investigation has resulted in the identification of various assets and accounts, including: (i) banks and other financial institutions; (ii) trusts and

LLCs; (iii) venture investments with potential contract rights, equity, membership, partnership, special-purpose vehicles, or beneficial interest in various organizations and entities; and (iv) potential legal claims for damages. Receivers are actively reviewing account information and other relevant records, including financial transactions occurring before and after the entry of judgment in the underlying civil action.

The identification of certain financial transactions has prompted additional investigatory actions, including the issuance of subpoenas, to trace the Defendant's direction of funds through various accounts and entities. Receivers are taking appropriate actions to secure, preserve, and apply these assets to the outstanding judgment in the civil action.

**1. Executed Umbra Transfer Agreement**

Receivers' actions to apply Defendant's assets to the civil judgment include, for example, that certain Sealed Motion for Authority to Transfer Umbra-Related SPV Interest and Apply Value Toward Satisfaction of the Judgment dated January 13, 2026 (the "Motion to Transfer"). ECF No. 170. Receivers sought leave of Court to file the Motion to Transfer under seal as it contained sensitive and non-public information regarding asset valuation, financial accounts, and anticipated disbursements from the Receivership Estate.

The public disclosure of such material could impair the orderly administration of the receivership, undermine asset realization, and jeopardize future collection efforts. In the Motion to Transfer, Receivers moved the Court for authority to transfer Defendant's individual interest in an Umbra-related special-purpose investment vehicle to Plaintiffs in partial satisfaction of the multimillion-dollar judgment against Defendant. *Id.*

The Court granted the Motion to Transfer on February 4, 2026. ECF No. 196. Receivers executed the Umbra Transfer Agreement on March 17, 2026.

### C. Issues Affecting the Integrity of the Receivership Estate

The Court's November 21, 2025 order directs Receivers to report "any material irregularities, unexplained transfers, or issues affecting the integrity of the Receivership Estate, including any potential criminal conduct or wrongdoing." ECF No. 144, at 6. As detailed below, Defendant's actions have affected the integrity of the Receivership Estate and Receivers are continuing to investigate potential criminal conduct and wrongdoing.

As outlined in Receivers' "Second Status Report" (ECF No. 166), Defendant's pre-custody actions raise concerns of potential criminal conduct or wrongdoing. For example, Defendant's attempted transfer of the Othram, Inc. shares, described in further detail in Receivers' "Initial Report" (ECF No. 155) and incorporated herein by reference, bears the hallmarks of conduct consistent with wire fraud under 18 U.S.C. § 1343 and money laundering under 18 U.S.C. § 1956. Additionally, Defendant's statements concerning the formation and control of the Wyoming LLC used to receive the Othram proceeds may constitute criminal perjury or false declarations under 18 U.S.C. §§ 1621 and 1623.

Receivers draw no definitive conclusions at this stage but have identified these incidents as potential criminal conduct that warrant further investigation as authorized by the Court's order. ECF No. 144, at 6. Receivers are continuing to investigate these issues and others involving Defendant's conduct and will notify the Court of relevant findings.

### D. Other Relevant Actions

Receivers worked with Plaintiffs, through their counsel, to retain Dennis Brady, a private investigator, and Darrell Rasco, a digital-forensic specialist. These retained experts are working with Receivers to identify, secure, and preserve assets belonging to the Receivership Estate.

Receivers may also retain a digital asset specialist to assist with the ongoing investigation of Defendant's potential crypto assets.

## III. PROPOSED PLAN

Receivers continue to actively investigate the information provided by Defendant in his December 3 and December 16, 2025 interviews, as well as related testimony. Receivers are working to validate the information provided by Defendant, as well as by multiple other sources, and take necessary actions to fulfill their obligations to the Court. During the next requested reporting period, Receivers intend to conduct additional interviews of key witnesses with personal knowledge, review and analyze collected records, trace financial transactions, and take other appropriate investigatory actions.

Based on the facts and circumstances outlined in this report, Receivers recommend that the Court order that the receivership continue. Receivers need additional time to identify Defendant's assets, secure the Receivership Estate, and evaluate potential criminal conduct. Based on Receivers' extensive investigatory findings to date, further investigation is warranted and needed to identify and recover Defendant's assets, as well as evaluate potential criminal conduct.

The Second Quarterly Fee Application (ECF No. 215) was filed by Receivers on May 15, 2026. On May 18, 2026, the Court granted the Second Quarterly Fee Application and found that "all of the fees and expenses sought to be paid and reimbursed through the Fee Application were actual, necessary, reasonable, and benefited the Receivership Estate." ECF No. 216. The Third Quarterly Fee Application was filed by Receivers on August 14, 2026. ECF No. 228. On August 19, 2026, the Court granted the Third Quarterly Fee Application. ECF No. 229.

Receivers previously received payment for their First Quarterly Fee Application (ECF No. 205). Plaintiffs are working with Receivers to address payments due under the Second and Third Quarterly Fee Applications. The next quarterly fee application is due by November 14, 2026.

Dated: October 9, 2026

Respectfully submitted,

*/s/ Andrew S. Robbins*

Jeffrey J. Ansley
State Bar No. 00790235
jansley@btlaw.com
Andrew S. Robbins
State Bar No. 24151970
arobbins@btlaw.com

**BARNES & THORNBURG, LLP**
2121 North Pearl Street, Suite 700
Dallas, Texas 75201
(214) 258-4200

**RECEIVERS FOR DEFENDANT CHARLES JOHNSON AND THE RECEIVERSHIP ESTATE**

**CERTIFICATE OF SERVICE**

I certify that on October 9, 2026, all counsel of record who have consented to electronic service were served with a true and correct copy of the foregoing document via the Court's CM/ECF system.

By: */s/ Andrew S. Robbins*
Andrew S. Robbins